ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO.: 2025-CP-08-____

VOLVO CAR USA LLC,

          Plaintiff,

v.

LEAR CORPORATION,

          Defendant.

**SUMMONS**

**TO: LEAR CORPORATION**

YOU ARE HEREBY SUMMONED and required to answer the Verified Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Verified Complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: s/ Jeremy E. Bowers
        DAVID S. COX (SC Bar No. 66195)
        JEREMY E. BOWERS (SC Bar No. 74838)
        211 King Street, Suite #300
        Charleston SC 29401
        PHONE: (843) 577-7700
        dcox@barnwell-whaley.com
        jbowers@barnwell-whaley.com
*ATTORNEYS FOR THE PLAINTIFF, VOLVO CAR USA LLC*

May 29, 2025
Charleston, South Carolina

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

VOLVO CAR USA LLC,

          Plaintiff,

v.

LEAR CORPORATION,

          Defendant.

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO.: 2025-CP-08-_____

**VERIFIED COMPLAINT**

      COMES NOW the Plaintiff, VOLVO CAR USA LLC (hereinafter referred to "VCUSA" or the "Plaintiff"), by and through its undersigned counsel, complaining of the Defendant, LEAR CORPORATION (hereinafter referred to as "Lear" or the "Defendant"), and avers and says as follows:

## INTRODUCTION

      1.     This lawsuit arises from the refusal by Lear to ship and deliver certain automotive seat assemblies to VCUSA despite contractual obligations to do so resulting in the shutdown of VCUSA's vehicle assembly line in Ridgeville, South Carolina, and a catastrophic disruption to the automotive industry supply chain.

## PARTIES, JURISDICTION, AND VENUE

      2.     The Plaintiff, VOLVO CAR USA LLC, is a limited liability company duly organized and existing under the laws of the State of Delaware and with its principal place of business in the State of New Jersey.

      3.     VCUSA assembles passenger vehicles, including model EX90 and Polestar 3 SUVs, for domestic sale and export at its production facility located in Ridgeville, South Carolina.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

4.     The Defendant, LEAR CORPORATION, is a limited liability company duly organized and existing under the laws of the State of Delaware and with its principal place of business in the State of Michigan.

5.     Lear is a global automotive technology leader in seating and e-systems.

6.     Lear manufactures various component parts used in automotive assembly, including automotive seating and electrical systems, at its manufacturing facility located in Duncan, South Carolina.

7.     This Court has subject matter jurisdiction concerning this matter.

8.     This Court has personal jurisdiction over Lear because Lear regularly conducts business in Berkeley County, South Carolina, and because Lear contractually agreed to submit to the personal jurisdiction of this Court pursuant to Section 27.2(iv) of the Production Material Global Terms and Conditions entered into between the parties.

9.     Venue is proper in this Court because Lear contractually agreed that this Court constitutes proper venue pursuant to Section 27.2(iv) of the Production Material Global Terms and Conditions entered into between the parties.

## FACTUAL ALLEGATIONS

10.     Lear has been a supplier of certain automotive assemblies for VCUSA since VCUSA began vehicle assembly at the Ridgeville facility in 2018.

11.     VCUSA and Lear entered into Framework Purchase Agreements outlining the basic framework of their contractual relationship as to certain assemblies to be supplied by Lear.

12.     Under such Framework Purchase Agreements, VCUSA issues separate purchase orders for the parts needed for the specific seat assembles to be ordered by VCUSA (the "Purchase Orders"). A sample of these Purchase Orders are attached hereto as Exhibit #1.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

13.     Pursuant to the currently outstanding Purchase Orders, VCUSA purchases 1,558 potential seat components from Lear (the "Parts").

14.     A list of the relevant automotive seat components supplied by Lear to VCUSA pursuant to the outstanding Purchase Orders is set forth in the table attached hereto as Exhibit #2.

15.     Lear is VCUSA's sole supplier of these Parts, and Lear supplies 100% of VCUSA's requirements of these Parts.

16.     All of the automotive seat components set forth in Exhibit #2 are currently used by VCUSA in its assembly line production of the model EX90 and Polestar 3 SUVs at its Ridgeville facility.

17.     The complete seat assemblies supplied by Lear are extremely complex and come in multiple variations, based on color and material selections.

18.     VCUSA's Purchase Orders for the automotive seat assemblies set forth in Exhibit #2 incorporate and are governed by VCUSA's Production Material Global Terms and Conditions (the "Terms"). A copy of VCUSA's Production Material Global Terms and Conditions is attached hereto as Exhibit #3.

19.     Together, the Purchase Orders and Terms constitute the contracts between VCUSA and Lear (the "Contracts").

20.     The Contracts set firm prices for each of the Parts. Lear ships the Parts to VCUSA's Ridgeville facility for use in its assembly line production of the model EX90 and Polestar 3 SUVs.

21.     These automotive seat components are critical to VCUSA's vehicle assembly process.

22.     VCUSA employes a "just-in-time, just in sequence" inventory management system.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

23.     Lear's continued supply of the Parts is critical to VCUSA's ability to assemble EX90 and Polestar 3 SUVs at its Ridgeville facility.

24.     More than twelve hundred (1,200) workers operate the vehicle assembly line at VCUSA's Ridgeville facility.

25.     Without the Parts supplied by Lear, which is singularly sourced from Lear, VCUSA cannot assemble any of vehicles at the Ridgeville facility.

26.     On May 5, 2025, Dave Wood, the Plant Manager for Lear in Duncan, South Carolina, sent an email to Daniel Harvey, Senior Manager of Procurement Americas for VCUSA, stating Lear would no longer honor the Contracts. Exhibit #4 – Lear Call-Off Rejection Email dated May 5, 2025.

27.     Lear stated that it would no longer fulfill its obligations unless VCUSA and Lear reached an agreement concerning cost increases for the Parts caused by an increase in tariffs.

28.     In response, VCUSA wrote Lear's counsel stating a binding agreement existed between VCUSA and Lear for Lear to supply the automotive seat components in accordance with the Purchase Orders and Terms. Exhibit #5 – Volvo Response Letter dated Mary 13, 2025.

29.     VCUSA further reminded Lear that this procedure has been the standard practice between VCUSA and Lear since the inception of their business relationship and is also the prevailing industry practice.

30.     VCUSA notified Lear that if it failed to timely deliver conforming automotive seat components pursuant to the Purchase Orders that it would cause irreparable harm to VCUSA, its employees, and its customers.

31.     On May 16, 2025, Mr. Wood sent a follow-up email reiterating that Lear would no longer be honoring its contractual obligations to VCUSA and would not be shipping any additional

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

automotive seat components to VCUSA's Ridgeville facility. Exhibit #6 – Lear Follow-up Email dated May 16, 2025.

32.     Lear outlined the last sets of automotive seat components shipped to VCUSA and stated that VCUSA would likely see its "first impacts to [its] assembly line on 5/20/2025".

33.     Mr. Wood told VCUSA to "coordinate & communicate to your labor force the production impact date to minimize your costs" and stated Lear did "not assume any responsibility or costs attributable for plant shutdown…"

34.     Lear has followed through with its refusal to ship any additional automotive seat components to VCUSA's Ridgeville facility.

35.     VCUSA received its last shipment from Lear on or about May 19, 2025, even though additional "just in time, just in sequence" shipments were supposed to be delivered to VCUSA since then.

36.     VCUSA seeks as its primary form of relief from this Court an order of specific performance, pursuant to S.C. Code Ann. § 36-2-716 (2005), namely an order requiring Lear to continue shipping certain unique, single-sourced automotive seat assemblies to VCUSA, on contract terms, pursuant to the Purchase Orders in place on May 5, 2025.

37.     The Parts supplied by Lear to VCUSA pursuant to the Contracts are unique, manufactured for use in VCUSA's vehicle models, and tested to satisfy VCUSA's performance and safety requirements.

38.     VCUSA employs a "just-in-time, just in sequence" inventory management system, and as a result, it does not have sufficient inventory of the Parts on hand to sustain its assembly line capacity.

39.     VCUSA relies upon timely delivery of automotive seat components from Lear in order to keep the assembly line working smoothly and at the appropriate capacity level.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

40.     Because Lear has refused to continue with its shipments to VCUSA, the Ridgeville facility has been forced to shut down its assembly line, resulting in over twelve hundred (1,200) assembly line workers being sent home.

41.     Given the nature of the Parts, VCUSA reasonably estimates that it would take approximately thirty-six (36) months to establish an adequate supply chain with a replacement supplier.

42.     Such a delay would cause immeasurable economic consequences to VCUSA and cause catastrophic disruption in the automotive industry, both domestic and abroad.

43.     If the shutdown of VCUSA's Ridgeville facility continues, it will lead to the idling of a significant portion of VCUSA's assembly line workers and likely even the layoff or departure of hundreds of assembly line workers.

44.     Because of the assembly line shutdown, VCUSA is likely to lose a number of its assembly line workers to other employment opportunities, as these workers cannot idly sit through a prolonged shutdown without compensation, and VCUSA would need to lay off a significant amount of its workforce as a result.

45.     In such a scenario, it is unknown how long it may take for VCUSA to restore its workforce and its assembly line productivity to its current level.

46.     Further, in the event of a continued shutdown of the assembly line caused by Lear's refusal to deliver automotive seat components pursuant to the Contracts, VCUSA's relationship with its current and potential future customers will be immeasurably damaged.

47.     VCUSA, through the long years of service by its parent corporation and affiliates, and through its own efforts in the local and global communities, has built significant goodwill and a strong reputation across the world.

48.     However, as this shutdown caused by Lear's refusal to deliver automotive seat components begins to cause significant delays in the delivery of completed vehicles to customers, VCUSA is likely to suffer irreparable damage to their reputation within the automotive industry.

### FOR A FIRST CAUSE OF ACTION
**(Breach of Contract – Specific Performance and/or Equitable Injunctive Relief)**

49.     VCUSA repeats, realleges, and incorporates herein the allegations contained in Paragraphs One (1) through Forty-Eight (48) as if fully set forth in this First Cause of Action.

50.     The supply relationship between VCUSA and Lear is governed by the Contracts and Article 2 of the Uniform Commercial Code, S.C. Code Ann. § 36-2-101 et seq.

51.     The Contracts constitute valid, enforceable and mutually binding requirements contracts pursuant to S.C. Code Ann. § 36-2-306(1).

52.     Pursuant to S.C. Code Ann. § 36-2-716, a buyer may obtain specific performance "where the goods are unique or in other proper circumstances."

53.     As noted in the official comments to S.C. Code Ann. § 36-2-716, "[t]he test for uniqueness under this section must be made in terms of the total situation which characterizes the contract." S.C. Code Ann. § 36-2-716 (2005), cmt. 2.

54.     Also as noted in the official comments to S.C. Code Ann. § 36-2-716, "[o]utput and requirements contracts involving a particular or peculiarly available source or market present today the typical commercial specific performance situation…" S.C. Code Ann. § 36-2-716 (2005), cmt. 2.

55.     Lear has breached and/or repudiated its obligations under the Contracts in several respects, including, but not limited to, refusing to accept call-offs under the Purchase Orders and refusing to continue shipping the Parts after May 19, 2025 unless VCUSA agreed to renegotiate the Contracts because of the costs incurred by Lear as a result of tariffs.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

56.     Lear's failure and refusal to perform consistent with their contractual obligations leaves VCUSA without an adequate remedy at law.

57.     The Parts supplied by Lear to VCUSA pursuant to the Contracts are unique, manufactured for use in vehicle models assembled by VCUSA, and tested to satisfy VCUSA's performance and safety requirements.

58.     Given the nature of the Parts, VCUSA is unable to establish an adequate supply chain with a replacement supplier in an amount of time that would not cause catastrophic disruption to the automotive supply chain.

59.     For these reasons, VCUSA is entitled to Lear's specific performance of the Contracts pursuant to S.C. Code Ann. § 36-2-716.

60.     In the alternative, based upon the facts as stated above, the traditional factors for equitable injunctive relief warrant such relief in this case.

61.     Monetary or legal damages are an inadequate remedy for the substantial injury being sustained, and will continue to be sustained, by VCUSA to itself, its parent corporation and its affiliates, its customer relationships, its employees and workers, its goodwill and industry reputation, and its other suppliers.

62.     Further, the economic losses associated with Lear's refusal to continue shipping the Parts to VCUSA pursuant to the Purchase Orders and call-offs will be exceedingly, if not impossible, to quantify.

63.     An injunction is necessary and essential to prevent irreparable harm to VCUSA.

64.     In the event the Court issues an injunction, there will be no harm or added obligation imposed upon Lear in being compelled to do exactly what it is already contractually obligated to do.

65.     Such an injunction would preserve the status quo between VCUSA and Lear.

66. Even if Lear were to suffer some harm from an injunction, said harm would be in the form of monetary losses and would be significantly outweighed by the irreparable harm suffered by VCUSA and many others in the event an injunction is not granted.

## FOR A SECOND CAUSE OF ACTION
### (Breach of Contract – Damages)

67. VCUSA repeats, realleges, and incorporates herein the allegations contained in Paragraphs One (1) through Sixty-Six (66) as if fully set forth in this Second Cause of Action.

68. The Contracts constitute valid, enforceable and mutually binding requirements contracts pursuant to S.C. Code Ann. § 36-2-306(1).

69. Lear has breached and/or repudiated its obligations under the Contracts in several respects, including, but not limited to, refusing to accept call-offs under the Purchase Orders and refusing to continue shipping the Parts after May 19, 2025 unless VCUSA agreed to renegotiate the Contracts because of the costs incurred by Lear as a result of tariffs.

70. As a foreseeable result of Lear's breaches of the Contracts, VCUSA has shut down its assembly line at its Ridgeville facility, causing economic losses in addition to the irreparable harm it continues to suffer.

71. VCUSA is entitled to compensatory damages for the monetary and economic losses incurred as a result of Lear's breaches of the Contracts, in addition to an order of specific performance, pursuant to S.C. Code Ann. § 36-2-716(2).

WHEREFORE, the Plaintiff, VOLVO CAR USA LLC, respectfully prays for judgment against the Defendant, LEAR CORPORATION, including, but not limited to, the following relief:

a. Temporary, preliminary, and permanent specific performance and/or injunctive relief pursuant to Rule 65, SCRCP, and/or S.C. Code Ann. § 36-2-716(1), requiring Lear to continue to supply VCUSA with its requirements of the Parts at the contract prices and on the terms set forth in the Contracts;

b. Monetary damages in favor of VCUSA sufficient to compensate it for all forms of economic loss, including, but not limited to, direct, indirect, consequential and

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

incidental damages, lost profits, and any other monetary damages incurred as a result of Lear's breaches of the Contracts;

c.  An award of reasonable attorneys' fees and costs; and

d.  For any other relief the Court deems just and proper.

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: s/ Jeremy E. Bowers
        DAVID S. COX (SC Bar No. 66195)
        JEREMY E. BOWERS (SC Bar No. 74838)
        211 King Street, Suite #300
        Charleston SC 29401
        PHONE: 843-577-7700
        dcox@barnwell-whaley.com
        jbowers@barnwell-whaley.com
        *ATTORNEYS FOR THE PLAINTIFF, VOLVO CAR USA LLC*

May 29, 2025
Charleston, South Carolina

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #1

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

> **Terms & conditions see below**

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date     2024-07-19
Page     1 (5)

Supplier's Manufacturing Site
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

Our Reference
**639 Ian Cook**
Department/Location
**10123/VCCH**
Telephone
**+18545004338**
Telefax

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**ian.cook@volvocars.com**

| ADDED | Order Part No. | 32401899 | Part Folder ID | 32401899-AA -001 |
|---|---|---|---|---|
| | Description | BELT CATCH | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **639-930289-550** | ■ | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

| ADDED | Order Part No. | 32401900 | Part Folder ID | 32401900-AA -001 |
|---|---|---|---|---|
| | Description | BELT CATCH | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **639-930289-550** | ■ | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

Dates are formatted as ccyy-mm-dd or ccyyww

BLPR ENG T
2024-07-19 140039

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    2 (5)

---

| ADDED | Order Part No. | 32401901 | Part Folder ID | 32401901-AA -001 |
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

---

| ADDED | Order Part No. | 32401902 | Part Folder ID | 32401902-AA -001 |
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

---

| ADDED | Order Part No. | 32401903 | Part Folder ID | 32401903-AA -001 |
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

---

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date     2024-07-19
Page     3 (5)

| ADDED | Order Part No. | **32401908** | Part Folder ID | **32401908-AA -001** |
|---|---|---|---|---|
| | Description | **SEAT BELT,CHARCOAL** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** **AEIK0** | **639-930289-550** | | 1 | **PCE** | **2024-07-19** | **202427** |
| | Part has been added | | | | | |

NEW PNs V536 RSB 2nd row center VPC 99387

| ADDED | Order Part No. | **32401909** | Part Folder ID | **32401909-AA -001** |
|---|---|---|---|---|
| | Description | **SEAT BELT,DAWN** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** **AEIK0** | **639-930289-550** | | 1 | **PCE** | **2024-07-19** | **202445** |
| | Part has been added | | | | | |

NEW PNs V536 RSB 2nd row center VPC 99387

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    4 (5)

relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    5 (5)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Order No.**    639-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

| Terms & conditions see below |
|---|

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M223348 / 054
Date    2025-04-23
Page    1 (3)

Supplier's Manufacturing Site
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

Our Reference
**683 Julio Gonzalez Piera**
Department/Location
**10124/**
Telephone
**+18432769384**
Telefax

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**julio.gonzalez.piera@volvocars.com**

EL/PR ENGT
2025-05-23 105221

| ADDED | Order Part No. | 32447867 | Part Folder ID | 32447867-AA -002 |
|---|---|---|---|---|
| | Description | **HEAD REST,CHARCOAL SOLID** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **683-930289-550** | ▓ | 1 | **PCE** | 2025-04-23 | 202518 |
| | Part has been added | | | | | |

| ADDED | Order Part No. | 32447868 | Part Folder ID | 32447868-AA -003 |
|---|---|---|---|---|
| | Description | **HEAD REST,CHARCOAL SOLID** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **683-930289-550** | ▓ | 1 | **PCE** | 2025-04-23 | 202518 |
| | Part has been added | | | | | |

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M223348 / 054
Date    2025-04-23
Page    2 (3)

| ADDED | Order Part No. | 32447869 | | | | Part Folder ID | 32447869-AA -002 |
|---|---|---|---|---|---|---|---|
| | Description | SLEEVE | | | | | |
| | | Neutral | | | | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **683-930289-550** | ▓ | **1** | **PCE** | **2025-04-23** | **202518** |
| | Part has been added | | | | | |

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M223348 / 054
Date    2025-04-23
Page    3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Order No.**    683-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

---

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

> **Terms & conditions see below**

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
**Date    2025-01-06**
**Page    1 (3)**

| Supplier's Manufacturing Site | Our Reference |
|---|---|
| **LEAR CORPORATION** | **679 Juliette Brun** |
| **1200 WOODS CHAPEL ROAD** | Department/Location |
| **DUNCAN, SC 29334** | **10124/** |
| **USA** | Telephone |
| | **1234567890** |
| | Telefax |

| Supplier Partner Code | E-mail |
|---|---|
| **MFG AEIK0** | **juliette.brun@volvocars.com** |
| Supplier Reference | |

BL/FR ENG T
2025-01-06 075514

| ADDED | Order Part No. | 32447682 | | | Part Folder ID | 32447682-AA -001 |
|---|---|---|---|---|---|---|
| | Description | **HEATER** | | | | |
| | | Neutral | | | | |

| Ship to / from | Order No. | Price in CNY | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **679-930289-550** | ▓▓▓ | **1** | **PCE** | **2025-01-06** | **202501** |
| **AEIK0** | Part has been added | | | | | |

| ADDED | Order Part No. | 32447683 | | | Part Folder ID | 32447683-AA -001 |
|---|---|---|---|---|---|---|
| | Description | **HEATER** | | | | |
| | | Neutral | | | | |

| Ship to / from | Order No. | Price in CNY | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **679-930289-550** | ▓▓▓ | **1** | **PCE** | **2025-01-06** | **202501** |
| **AEIK0** | Part has been added | | | | | |

Dates are formatted as ccyy-mm-dd or ccyyww

| **Volvo Car USA LLC** | **Telephone** |
|---|---|
| 1234567890 | · 1234567890 |
| USA | |



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
Date    2025-01-06
Page    2 (3)

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
Date    2025-01-06
Page    3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Order No.**        679-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

**Volvo Car USA LLC**
1234567890
USA

**Telephone**
1234567890

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

> **Terms & conditions see below**

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M244524 / 047
Date    2024-10-02
Page    1 (3)

| Supplier's Manufacturing Site | Our Reference |
|---|---|
| **LEAR CORPORATION** | **683 Kellie Hoover** |
| **1200 WOODS CHAPEL ROAD** | Department/Location |
| **DUNCAN, SC 29334** | **10124/** |
| **USA** | Telephone |
| | **+18432918175** |
| | Telefax |

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**kellie.hoover@volvocars.com**

BL/FR ENG T
2024-10-02 200241

| **ADDED** | Order Part No. | **32447513** | Part Folder ID | **32447513-AA -001** |
|---|---|---|---|---|
| | Description | **ECU** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **683-930289-550** | ▆▆▆ | 1 | **PCE** | **2024-10-02** | **202445** |
| **AEIK0** | Part has been added | | | | | |

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For

Dates are formatted as ccyy-mm-dd or ccyyww



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M244524 / 047
Date    2024-10-02
Page    2 (3)

questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M244524 / 047
**Date**   2024-10-02
**Page**   3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
<u>Supplier Portal - Finance Automotive</u>

---

**Ship to No.**
**Delivery conditions**
FCA

**Order No.**     683-930289-550
**Terms of payment**
Free delivery month + 60 days

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

---

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

> **Terms & conditions see below**

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M240545 / 000
**Date    2022-02-08**
**Page    1 (3)**

| Supplier's Manufacturing Site | Our Reference |
|---|---|
| **LEAR CORPORATION** | **638 Quinton BLAIR** |
| **1200 WOODS CHAPEL ROAD** | Department/Location |
| **DUNCAN, SC 29334** | **21613/** |
| **USA** | Telephone |
| | **+12345678** |
| | Telefax |
| Supplier Partner Code | E-mail |
| **MFG AEIK0** | **quinton.blair@volvocars.com** |
| Supplier Reference | |

BL/PR ENG I
2022-02-08 140650

| **ADDED** | Order Part No. | **32367709** | Part Folder ID | **32367709-AA -001** |
|---|---|---|---|---|
| | Description | **UPHOLSTERY,ZINC** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **638-930289-550** | | **1** | **PCE** | **2022-02-08** | **202222** |
| **AEIK0** | Part has been added | | | | | |

| **ADDED** | Order Part No. | **32367710** | Part Folder ID | **32367710-AA -001** |
|---|---|---|---|---|
| | Description | **UPHOLSTERY,ZINC** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **638-930289-550** | | **1** | **PCE** | **2022-02-08** | **202222** |
| **AEIK0** | Part has been added | | | | | |

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car US Operations Inc**     **Telephone**
315 Sigma Drive                            +46-31-590000
USA



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M240545 / 000
Date    2022-02-08
Page    2 (3)

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact mpledi@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

**M240545 / 000**
**Date    2022-02-08**
**Page    3 (3)**

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required (invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE

RIDGEVILLE, SC 29472
USA

**Order No.**    638-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car US Operations Inc
1801 Volvo Car Drive

Ridgeville, SC 29472
USA

---

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #2

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| Part Number | Part Description | Program |
|---|---|---|
| 32347374 | Trimlist OB LH | V536 |
| 32347375 | Trimlist OB RH | V536 |
| 32347376 | Trimlist IB LH | V536 |
| 32347377 | Trimlist IB RH | V536 |
| 32332177 | Bracket undercarriage LH | V536 |
| 32332900 | Bracket undercarriage RH | V536 |
| 32332178 | Carrier upper backrest | V536 |
| 32347378 | Cable Guide Bracket LH | V536 |
| 32347380 | Retainer ambient light | V536 |
| 32332180 | Carrier upper backrest RH | V536 |
| 32347382 | Lid harness power | V536 |
| 32347383 | Cushion extension carrier comfort Manual | V536 |
| 32347379 | Cable Guide Bracket RH | V536 |
| 32347381 | Retainer ambient light | V536 |
| 32332185 | Side panel front, Charcoal solid, LH | V536 |
| 32332186 | Side panel front, Charcoal solid, RH | V536 |
| 32347297 | Side panel front, Dawn, LH | V536 |
| 32347298 | Side panel front, Dawn, RH | V536 |
| 32447000 | Side panel front, Charcoal solid, LH | V536 |
| 32447001 | Side panel front, Charcoal solid, RH | V536 |
| 32447002 | Side panel front, Dawn, LH | V536 |
| 32447003 | Side panel front, Dawn, RH | V536 |
| 32447354 | Side panel front, Charcoal solid, LH | V536 |
| 32447355 | Side panel front, Charcoal solid, RH | V536 |
| 32447356 | Side panel front, Dawn, LH | V536 |
| 32447357 | Side panel front, Dawn, RH | V536 |
| 32332187 | Cover belt, Charcoal Solid LH | V536 |
| 32378394 | Cover belt, Charcoal Solid RH BTS | V536 |
| 32332188 | Cover belt, Charcoal Solid RH | V536 |
| 32347299 | Cover belt, Dawn LH | V536 |
| 32378395 | Cover belt, Dawn RH BTS | V536 |
| 32347300 | Cover belt, Dawn RH | V536 |
| 32332189 | Side panel rear outer, power, Charcoal solid, LH | V536 |
| 32332190 | Side panel rear outer, power, Charcoal solid, RH | V536 |
| 32347301 | Side panel rear outer, power, Dawn, LH | V536 |
| 32347302 | Side panel rear outer, power, Dawn, RH | V536 |
| 32332191 | Side panel inner rear, Charcoal solid, LH | V536 |
| 32332192 | Side panel inner rear, Charcoal solid, RH | V536 |
| 32347303 | Side panel inner rear, Dawn, LH | V536 |
| 32347304 | Side panel inner rear, Dawn, RH | V536 |
| 32332193 | Panel rear inner, Charcoal solid, LH | V536 |
| 32332194 | Panel rear inner, Charcoal solid, RH | V536 |
| 32347305 | Panel rear inner, Dawn, LH | V536 |
| 32347306 | Panel rear inner, Dawn, RH | V536 |
| 32332195 | Handle Cushion extension Mec charcoal | V536 |
| 32347309 | MCE Bezel Charcoal Solid | V536 |
| 32347307 | Handle Cushion extension Mec Dawn | V536 |
| 32347311 | MCE Bezel Dawn | V536 |
| 32332196 | Hardback foiled w map pocket, Charcoal solid LH | V536 |
| 32332197 | Hardback foiled w map pocket, Charcoal solid RH | V536 |
| 32347293 | Ventilated Hardback foiled, Charcoal solid LH | V536 |
| 32347294 | Ventilated Hardback foiled, Charcoal solid RH | V536 |
| 32347313 | Hardback foiled w map pocket, Dawn LH | V536 |
| 32347314 | Hardback foiled w map pocket, Dawn RH | V536 |
| 32347295 | Ventilated Hardback foiled, Dawn LH | V536 |
| 32347296 | Ventilated Hardback foiled, Dawn RH | V536 |
| 32332198 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR LH SHORT INR | V536 |
| 32332199 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR RH SHORT INR | V536 |
| 32347321 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32347322 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32332200 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32332201 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347319 | COULISSE,DAWN SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32347320 | COULISSE,DAWN SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347323 | Side Panel Inner Front, Dawn, LH | V536 |
| 32347324 | Side Panel Inner Front, Dawn, RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32347325 | Side Panel Inner Front, Charcoal Solid, LH | V536 |
|---|---|---|
| 32347326 | Side Panel Inner Front, Charcoal Solid, RH | V536 |
| 32347327 | Plug Cover Inner Rear, Charcoal | V536 |
| 32347328 | Plug Cover Inner Rear, Dawn | V536 |
| 32272424 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32431818 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32332202 | Foam cushion, w cushion extension, Comfort | V536 |
| 32447288 | Foam cushion, w cushion extension, Comfort | V536 |
| 32272426 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32431819 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32332203 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32447289 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32332204 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32447290 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32332205 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32447291 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32332206 | Comfort cushion manual extenstion foam | V536 |
| 32347418 | Foam backrest, Comfort LH V536 | V536 |
| 32347330 | Foam backrest, w vent seat ,Comfort LH V536 | V536 |
| 32272433 | Foam backrest, w Massage, w vent seat, Side Support, Comfort LH V536 | V536 |
| 32347329 | Foam backrest, Comfort, RH V536 | V536 |
| 32347331 | Foam backrest, w vent seat ,Comfort, RH V536 | V536 |
| 32260952 | Foam backrest, w Massage, w vent seat, Side Support, Comfort, RH V536 | V536 |
| 32260925 | CABLE HARNESS DRIVER 10W | V536 |
| 32260945 | CABLE HARNESS PASSENGER10W | V536 |
| 32260940 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32272464 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32347886 | CABLE HARNESS DRIVER 12W | V536 |
| 32347898 | CABLE HARNESS PASSENGER 12W | V536 |
| 32347894 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32347906 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32347887 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347890 | CABLE HARNESS DRIVER 12W | V536 |
| 32347891 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32347899 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347902 | CABLE HARNESS DRIVER 12W | V536 |
| 32347903 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32347907 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32260929 | CABLE HARNESS DRIVER 16W | V536 |
| 32347888 | CABLE HARNESS DRIVER 16W | V536 |
| 32272457 | CABLE HARNESS PASSENGER 16W | V536 |
| 32403790 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347900 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260938 | CABLE HARNESS DRIVER 16W | V536 |
| 32403794 | CABLE HARNESS DRIVER 16W | V536 |
| 32347892 | CABLE HARNESS DRIVER 16W | V536 |
| 32272462 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260943 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32347896 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32272471 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32403792 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32347908 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32260930 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347889 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272458 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347901 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260939 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347893 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272463 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347905 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260944 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32347897 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32272472 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32347909 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272473 | CABLE HARNESS DRIVER 10W | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32357119 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357114 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32357129 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32357134 | CABLE HARNESS DRIVER 12W | V536 |
| 32357146 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357142 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357154 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32357135 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357138 | CABLE HARNESS DRIVER 12W | V536 |
| 32357139 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357143 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357147 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357150 | CABLE HARNESS DRIVER 12W | V536 |
| 32357151 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357155 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272476 | CABLE HARNESS DRIVER 16W | V536 |
| 32357136 | CABLE HARNESS DRIVER 16W | V536 |
| 32357122 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357148 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32272481 | CABLE HARNESS DRIVER 16W | V536 |
| 32357140 | CABLE HARNESS DRIVER 16W | V536 |
| 32357127 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357152 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357117 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357144 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357132 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32357156 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32272477 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357137 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357123 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357149 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272482 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357141 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357128 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357153 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357118 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357145 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357133 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32357157 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32260926 | CABLE HARNESS DRIVER 12W | V536 |
| 32357167 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260933 | CABLE HARNESS DRIVER 10W | V536 |
| 32260934 | CABLE HARNESS DRIVER 12W | V536 |
| 32403793 | CABLE HARNESS DRIVER 12W | V536 |
| 32260937 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260941 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32260942 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32272455 | CABLE HARNESS PASSENGER 12W | V536 |
| 32403789 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272456 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272459 | CABLE HARNESS PASSENGER 10W | V536 |
| 32272460 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272461 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272465 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32403791 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32272466 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272474 | CABLE HARNESS DRIVER 12W | V536 |
| 32272475 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32272478 | CABLE HARNESS DRIVER 10W | V536 |
| 32272479 | CABLE HARNESS DRIVER 12W | V536 |
| 32272480 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357115 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357116 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357120 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357121 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357124 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357125 | CABLE HARNESS PASSENGER 12W STPS | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32357126 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
|---|---|---|
| 32357130 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32357131 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32332207 | STPS LH | V536 |
| 32332899 | STPS RH | V536 |
| 32347334 | SBR sensor | V536 |
| 32288999 | OWS sensor system | V536 |
| 32285947 | OWS sensor system | V536 |
| 32447513 | OWS sensor system | V536 |
| 32289196 | LED lamp 3500K | V536 |
| 32408677 | LED lamp 3500K | V536 |
| 32332209 | Bracket side panel middle LH(OB) | V536 |
| 32332210 | Bracket side panel middle RH(OB) | V536 |
| 32332211 | Bracket side panel front LH ASM(OB) | V536 |
| 32332212 | Bracket side panel front RH ASM(OB) | V536 |
| 32347332 | Bracket side panel middle LH ASM(IB) | V536 |
| 32347333 | Bracket side panel middle RH ASM(IB, BEV) | V536 |
| 32332213 | BRACKET SIDE PANEL REAR LH (OB) | V536 |
| 32332214 | BRACKET SIDE PANEL REAR RH (OB) | V536 |
| 32332994 | BRACKET SIDE PANEL REAR IB LH | V536 |
| 32332995 | BRACKET SIDE PANEL REAR IB RH | V536 |
| 32332208 | Headrest bracket | V536 |
| 32332215 | OWS bracket | V536 |
| 32357158 | Bracket for NFAB LH | V536 |
| 32357159 | Bracket for NFAB RH | V536 |
| 32272299 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32272300 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32403830 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32403831 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447024 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447025 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447663 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447664 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447174 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32447685 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32206981 | Undercarriage, 6 way power with memory LH | V536 |
| 32206983 | Undercarriage, 6 way power with memory RH | V536 |
| 32272301 | Undercarriage, 6 way power with memory LH | V536 |
| 32272302 | Undercarriage, 6 way power with memory RH | V536 |
| 32447635 | Undercarriage, 6 way power with memory RH w End Stop | V536 |
| 32272330 | Backrest, power with memory LH | V536 |
| 32272331 | Backrest, power with memory RH | V536 |
| 32272340 | END STOP | V536 |
| 31652731 | ECU PSM 10W | V536 |
| 32315708 | ECU PSM 12W | V536 |
| 32315709 | ECU PSM 16W | V536 |
| 31652749 | CONTROL PANEL POWER SEAT LEFT | V536 |
| 31652750 | CONTROL PANEL POWER SEAT RIGHT | V536 |
| 31652747 | CONTROL PANEL POWER SEAT CAP (KNOB) | V536 |
| 32332734 | Side airbag LH | V536 |
| 32332735 | Side airbag RH | V536 |
| 32227909 | Far Side airbag LH | V536 |
| 32227910 | Far Side airbag RH | V536 |
| 32131828 | Belt buckle w hall element LH | V536 |
| 32131829 | Belt buckle w hall element RH | V536 |
| 32394091 | Belt buckle w hall element LH | V536 |
| 32394092 | Belt buckle w hall element RH | V536 |
| 32131830 | Belt buckle w BTS, USA/Canada | V536 |
| 32288993 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32447165 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32288992 | Heater mat cushion, w cushion extension, Comfort seat | V536 |
| 32288991 | Heater mat cushion,  w vent, w cushion extension, Comfort seat | V536 |
| 32273214 | Heater mat backrest, w vent, w massage, Comfort seat V536 | V536 |
| 32273213 | Heater mat backrest, w vent, Comfort seat V536 | V536 |
| 32273209 | Heater mat backrest, Comfort seat V536 | V536 |
| 32288813 | Lumbar support 4-way, w Vent | V536 |
| 32288996 | Cushion Ventilation fan assembly | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32450839 | Cushion Ventilation fan assembly | V536 |
| 32288994 | Lumbar support 2-way, wo mem | V536 |
| 32450838 | Lumbar support 2-way, wo mem | V536 |
| 32273210 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32288995 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32288998 | Lumbar support 4-way, wo mem | V536 |
| 32447637 | Lumbar support 4-way, w Vent | V536 |
| 32447638 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32447639 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32447636 | Lumbar support 4-way, wo mem | V536 |
| 32347347 | ASSEMBLY COST FRONT SEAT BASIC | V536 |
| 32347345 | ASSEMBLY COST FRONT SEAT CUSHION EXT | V536 |
| 32347341 | ASSEMBLY COSTS FRONT SEAT LEATHER | V536 |
| 32347351 | ASSEMBLY COSTS FRONT SEAT TEXTILE/VINYL | V536 |
| 32347342 | ASSEMBLY COST FRONT SEAT VENT | V536 |
| 32347340 | ASSEMBLY COST FRONT SEAT MASSAGE | V536 |
| 32347348 | ASSEMBLY COST FRONT SEAT FSAB | V536 |
| 32367422 | ASSEMBLY COST FRONT SEAT SPEAKER HR | V536 |
| 32347359 | ASSEMBLY COST FRONT SEAT OWS RH | V536 |
| 32367417 | ASSEMBLY COST FRONT SEAT STPS | V536 |
| 32367418 | ASSEMBLY COST FRONT SEAT 8-WAY POWER | V536 |
| 32367419 | ASSEMBLY COST FRONT SEAT BTS | V536 |
| 32367421 | Assembly cost front seat HR w speaker Leather | V536 |
| 32367738 | FRONT SEAT PROTECTOR BAG LH/RH | V536 |
| 32260832 | Frt Head Rest w/o Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272726 | Frt Head Rest w/o Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272727 | Frt Head Rest w/o Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260833 | Frt Head Rest w Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272409 | Frt Head Rest w Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272410 | Frt Head Rest w Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260830 | Frt Head Rest w/o Speaker Leather Free 1 (Textile/Vinyl, ChS/Metal grey) | V536 |
| 32272390 | HEAD REST,CHARCOAL, FRONT VINYL | V536 |
| 32272405 | HEAD REST,CARDAMOM, FRONT VINYL | V536 |
| 32272396 | HEAD REST,WHITE | V536 |
| 32260831 | HEAD REST,CHARCOAL, FRONT VINYL W SPEAKER | V536 |
| 32272407 | HEAD REST,CARDAMOM, FRONT VINYL W SPEAKER | V536 |
| 32272416 | HEAD REST,WHITE, FRONT VINYL W SPEAKER | V536 |
| 32332704 | Headrest guide sleeve | V536 |
| 32403047 | Cushion Extension Assembly | V536 |
| 32273847 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32273856 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32273849 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32273852 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32273864 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32273870 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32273866 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32273868 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |
| 32273890 | STRUCTURE 3RD ROW LH CUSHION | V536 |
| 32273891 | STRUCTURE 3RD ROW RH CUSHION | V536 |
| 32332882 | STRUCTURE 3RD ROW BACK W ISOFIX | V536 |
| 32447134 | STRUCTURE 3RD ROW BACK WO ISOFIX | V536 |
| 32403994 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32403995 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32447281 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32447282 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32403998 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32403999 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32403996 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32403997 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447283 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32447284 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447026 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447027 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32447285 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447286 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32420916 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32420917 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32332244 | ICS STRUCTURE | V536 |
| 32332245 | FOAM 2nd ROW RSC LH EE | V536 |
| 32332246 | FOAM 2nd ROW RSC RH EE | V536 |
| 32403806 | FOAM 2nd ROW RSC LH EE | V536 |
| 32403807 | FOAM 2nd ROW RSC RH EE | V536 |
| 32447405 | FOAM 2nd ROW RSC LH EE | V536 |
| 32447406 | FOAM 2nd ROW RSC RH EE | V536 |
| 32332247 | FOAM 2nd ROW RSB LH EE | V536 |
| 32332248 | FOAM 2nd ROW RSB RH EE | V536 |
| 32447014 | FOAM 2nd ROW RSB LH EE | V536 |
| 32447015 | FOAM 2nd ROW RSB RH EE | V536 |
| 32332249 | FOAM 2nd ROW RSC CTR NO ICS | V536 |
| 31693742 | FOAM 2nd ROW RSC CTR ICS REAR | V536 |
| 32332250 | FOAM 2nd ROW RSC CTR ICS FRONT | V536 |
| 32332251 | FOAM 2nd ROW RSB CTR | V536 |
| 32332252 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32332253 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32447012 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32447013 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32332317 | FOAM 3RD ROW RSC LH | V536 |
| 32347510 | FOAM 3RD ROW RSC RH | V536 |
| 32332318 | FOAM 3rd ROW RSB LH W ISOFIX | V536 |
| 32332319 | FOAM 3rd ROW RSB RH W ISOFIX | V536 |
| 32447135 | FOAM 3rd ROW RSB LH WO ISOFIX | V536 |
| 32447136 | FOAM 3rd ROW RSB RH WO ISOFIX | V536 |
| 32357329 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32357330 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32403915 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32403916 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32447574 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32447575 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32357332 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32357333 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32447010 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32447011 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32332254 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32332255 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32447682 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32447683 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32345383 | HEATING PAD RSC 2nd ROW 7-S | V536 |
| 32345384 | HEATING PAD RSC 2nd ROW RH 7-S | V536 |
| 32332256 | HEATING PAD RSB 2nd ROW | V536 |
| 32357326 | HEATING PAD RSC 2nd ROW 6-S | V536 |
| 32357327 | HEATING PAD RSC 2nd ROW RH 6-S | V536 |
| 32357328 | HEATING PAD RSB 2nd ROW 6-S | V536 |
| 32357316 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32357318 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32357317 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32357319 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32332257 | PLASTIC HANDLE EZ ENTRY 2R LH Charcoal | V536 |
| 32345157 | PLASTIC HANDLE EZ ENTRY 2R LH Dawn | V536 |
| 32332258 | PLASTIC HANDLE EZ ENTRY 2R RH Charcoal | V536 |
| 32345158 | PLASTIC HANDLE EZ ENTRY 2R RH Dawn | V536 |
| 32332259 | EE BEZEL 2ROW Charcoal | V536 |
| 32345159 | EE BEZEL 2ROW Dawn | V536 |
| 32332260 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32345160 | D-LOOP COVER 2ROW Dawn | V536 |
| 32332261 | D-LOOP 2ROW | V536 |
| 32332262 | BELT GUIDE 2ROW Charcoal | V536 |
| 32345161 | BELT GUIDE 2ROW Dawn | V536 |
| 32332263 | RECLINER HANDLE LH 2ROW Charcoal | V536 |
| 32345162 | RECLINER HANDLE LH 2ROW Dawn | V536 |
| 32332264 | RECLINER HANDLE RH 2ROW Charcoal | V536 |
| 32345163 | RECLINER HANDLE RH 2ROW Dawn | V536 |
| 32332265 | TRACK COVER LH R2 Charcoal | V536 |
| 32345164 | TRACK COVER LH R2 Dawn | V536 |
| 32332266 | TRACK COVER RH R2 Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32345165 | TRACK COVER RH R2 Dawn | V536 |
| 32332267 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32345166 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32332268 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32345167 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32332269 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |
| 32345168 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
| 32332270 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32345169 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32332271 | COVER RECLINER 20 LH Charcoal | V536 |
| 32345170 | COVER RECLINER 20 LH Dawn | V536 |
| 32332272 | COVER RECLINER 20 RH Charcoal | V536 |
| 32345171 | COVER RECLINER 20 RH Dawn | V536 |
| 32332273 | REAR BACK COVER OB LH Charcoal | V536 |
| 32345172 | REAR BACK COVER OB LH Dawn | V536 |
| 32332274 | REAR BACK COVER OB RH Charcoal | V536 |
| 32345173 | REAR BACK COVER OB RH Dawn | V536 |
| 32332275 | REAR BACK COVER CTR LH Charcoal | V536 |
| 32345174 | REAR BACK COVER CTR LH Dawn | V536 |
| 32332276 | REAR BACK COVER CTR RH Charcoal | V536 |
| 32345175 | REAR BACK COVER CTR RH Dawn | V536 |
| 32332277 | CENTER COVER | V536 |
| 32332278 | IMPACT ABSORBER PLATE | V536 |
| 32332279 | GAP CLOSURE LH Charcoal | V536 |
| 32345176 | GAP CLOSURE LH Dawn | V536 |
| 32332280 | GAP CLOSURE RH Charcoal | V536 |
| 32345177 | GAP CLOSURE RH Dawn | V536 |
| 32332281 | CONNECTOR BRACKET OTR LH | V536 |
| 32332282 | CONNECTOR BRACKET OTR RH | V536 |
| 32332283 | CONNECTOR BRACKET CTR | V536 |
| 32332284 | SEAT RAIL COVER LH Charcoal | V536 |
| 32345178 | SEAT RAIL COVER LH Dawn | V536 |
| 32332285 | SEAT RAIL COVER RH Charcoal | V536 |
| 32345179 | SEAT RAIL COVER RH Dawn | V536 |
| 32357320 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32357321 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32357322 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32357323 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32357324 | CARRIER SEAT RAIL INBOARD LH | V536 |
| 32357325 | CARRIER SEAT RAIL INBOARD RH | V536 |
| 32332290 | RELEASE STRAP RH 2ROW Charcoal | V536 |
| 32345180 | RELEASE STRAP RH 2ROW Dawn | V536 |
| 32332322 | SIDE VALANCE OUTBOARD 3rd ROW LH Charcoal | V536 |
| 32332323 | SIDE VALANCE OUTBOARD 3rd ROW RH Charcoal | V536 |
| 32332320 | CENTER COVER REAR CHARCOAL | V536 |
| 32345128 | CENTER COVER REAR DAWN | V536 |
| 32332325 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32403829 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32447182 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32357195 | Carrier, Armrest LH | V536 |
| 32357196 | Carrier, Armrest RH | V536 |
| 32403989 | Carrier, Armrest LH | V536 |
| 32403990 | Carrier, Armrest RH | V536 |
| 32447584 | Carrier, Armrest LH | V536 |
| 32447585 | Carrier, Armrest RH | V536 |
| 32332291 | CABLE HARNESS 2nd ROW OTR 7-S LH | V536 |
| 32332292 | CABLE HARNESS 2nd ROW OTR 7-S RH | V536 |
| 32403751 | CABLE HARNESS 2nd ROW OTR 6/7-S LH No Heat | V536 |
| 32403752 | CABLE HARNESS 2nd ROW OTR 6/7-S RH No Heat | V536 |
| 32403173 | CABLE HARNESS 2nd ROW OTR 6-S LH | V536 |
| 32403174 | CABLE HARNESS 2nd ROW OTR 6-S RH | V536 |
| 32332293 | CABLE HARNESS 2nd ROW OTR 5-S LH | V536 |
| 32332294 | CABLE HARNESS 2nd ROW OTR 5-S RH | V536 |
| 32403749 | CABLE HARNESS 2nd ROW OTR 5-S LH No Heat | V536 |
| 32403750 | CABLE HARNESS 2nd ROW OTR 5-S RH No Heat | V536 |
| 32332295 | CABLE HARNESS 2nd ROW CTR 7-S | V536 |
| 32332296 | CABLE HARNESS 2nd ROW CTR 5-S | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32332329 | CABLE HARNESS 3rd ROW LH | V536 |
| 32367077 | CABLE HARNESS 3rd ROW RH | V536 |
| 32332298 | HEAD REST MECH 2nd ROW OTR MECH | V536 |
| 32447016 | HEAD REST MECH 2nd ROW OTR MECH LH | V536 |
| 32447017 | HEAD REST MECH 2nd ROW OTR MECH RH | V536 |
| 32332299 | HEAD REST MECH 2nd ROW CTR | V536 |
| 32332300 | HEAD REST BEZEL 2nd ROW CTR Charcoal | V536 |
| 32345181 | HEAD REST BEZEL 2nd ROW CTR Dawn | V536 |
| 32332297 | HEAD REST MECH 3rd ROW ELEC | V536 |
| 32332304 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447028 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447961 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32345185 | CARPET 2nd ROW LH + RH 5-S Dawn | V536 |
| 32332305 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32447029 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32345186 | CARPET 2nd ROW CTR 5 + 7-S Dawn | V536 |
| 32332306 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447030 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447962 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32345187 | CARPET 2nd ROW LH 7-S EE Dawn | V536 |
| 32332307 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447031 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447963 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32345188 | CARPET 2nd ROW RH 7-S EE Dawn | V536 |
| 32332331 | CARPET 3rd ROW | V536 |
| 32403992 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447986 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447137 | CARPET 3rd ROW WO ISOFIX | V536 |
| 32332332 | CARPET 3rd ROW RH | V536 |
| 32332308 | ICS LABEL EU / ROW | V536 |
| 32447039 | ICS LABEL EU / ROW | V536 |
| 32332309 | ICS LABEL US | V536 |
| 32332310 | ICS LABEL CAN | V536 |
| 32447632 | ICS LABEL EU / ROW | V536 |
| 32447630 | ICS LABEL US | V536 |
| 32447631 | ICS LABEL CAN | V536 |
| 32332311 | ICS LABEL LATIN AMERICA | V536 |
| 32447040 | ICS LABEL LATIN AMERICA | V536 |
| 32447633 | ICS LABEL LATIN AMERICA | V536 |
| 32332312 | ICS LABEL RUSSIA | V536 |
| 32332313 | ICS LABEL CHINA | V536 |
| 32332314 | ICS LABEL TURKEY | V536 |
| 32407041 | ICS LABEL TURKEY | V536 |
| 32447634 | ICS LABEL TURKEY | V536 |
| 32131814 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32131815 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32131820 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32131821 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401664 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32401666 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32401665 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401667 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401908 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401909 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32131831 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32131833 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32131832 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32341256 | BELT BUCKLE ASSY 3R LH | V536 |
| 32341257 | BELT BUCKLE ASSY 3R RH | V536 |
| 32394097 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32394099 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32394098 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401671 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32401672 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401673 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32394100 | BELT BUCKLE ASSY 3R LH | V536 |
| 32394101 | BELT BUCKLE ASSY 3R RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32401901 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
|---|---|---|
| 32401903 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401902 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401899 | BELT BUCKLE ASSY 3R LH | V536 |
| 32401900 | BELT BUCKLE ASSY 3R RH | V536 |
| 32332315 | PROTECTION BAG 2R OUTER | V536 |
| 32357331 | PROTECTION BAG 2R OUTER 6 SEATER | V536 |
| 32332316 | PROTECTION BAG 2R CENTER | V536 |
| 32332333 | PROTECTION BAG 3R | V536 |
| 32332914 | ASSEMBLY COST 2R BASE | V536 |
| 32367880 | ASSEMBLY COST 2R 6S | V536 |
| 32332916 | Assy Non-textile uph | V536 |
| 32332917 | ASSEMBLY COST 2R ICS | V536 |
| 32332919 | ASSEMBLY COST 2R HEAT | V536 |
| 32332915 | ASSEMBLY COST 2R EASY ENTRY | V536 |
| 32367104 | ASSEMBLY COST 3R BASE | V536 |
| 32332738 | HEAD REST 2/3R OUTER NAPPA - Leather Charcoal | V536 |
| 32332740 | HEAD REST 2/3R OUTER NAPPA - Leather Dawn | V536 |
| 32345142 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Charcoal | V536 |
| 32345409 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Dawn | V536 |
| 32345403 | HEAD REST 2nd ROW CENTER Leather Charcoal | V536 |
| 32345405 | HEAD REST 2nd ROW CENTER Leather Dawn | V536 |
| 32332302 | HEAD REST OUTER WITH LABEL 7S / 6S TEXTILE-VINYL | V536 |
| 32345144 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32345145 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32447648 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32447647 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32345143 | HEAD REST 2/3R OUTER Vinyl Dawn | V536 |
| 32345410 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32447655 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32345411 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32345406 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32345407 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32367895 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32447654 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32447651 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32447650 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32447652 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32345137 | HEAD REST 2/3R OUTER Premium textile - Aspen | V536 |
| 32345184 | HEAD REST OUTER WITH LABEL 7S / 6S PREMIUM TEXTILE | V536 |
| 32345402 | HEAD REST 2nd ROW CENTER Premium Textile - Aspen | V536 |
| 32345138 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32345183 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32345182 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32447649 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32447656 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32447653 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32345398 | ARMREST ASSY V526 2ND ROW Leather Charcoal | V536 |
| 32345400 | ARMREST ASSY V526 2ND ROW Leather Dawn | V536 |
| 32357185 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32357186 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32367853 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32367854 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32367855 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32367856 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32403983 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32403984 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32403985 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32403986 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32403987 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32403988 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32447701 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32447702 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32447703 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32447704 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32447705 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32447706 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32332303 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
| 32345401 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32367504 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447006 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
| 32447008 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32447009 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447007 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32345397 | ARMREST ASSY V526 2ND ROW Premium Textile | V536 |
| 32345396 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32357187 | ARMREST ASSY 723B 2ND ROW LH TEXTILE 3 | V536 |
| 32357188 | ARMREST ASSY 723B 2ND ROW RH TEXTILE 3 | V536 |
| 31693743 | HEAD REST 2/3R OUTER Textile/Vinyl - Coarse | V536 |
| 32347360 | LOG PACK MARK COST COMMON LH | V536 |
| 32347361 | LOG PACK MARK COST COMMON RH | V536 |
| 32347362 | LOG PACK MARK COST US/CA LH | V536 |
| 32347363 | LOG PACK MARK COST US/CA RH          . | V536 |
| 32347364 | LOG PACK MARK COST 2W LH/RH | V536 |
| 32347365 | LOG PACK MARK COST 4W LH/RH | V536 |
| 32347366 | LOG PACK MARK COST 4W vent LH/RH | V536 |
| 32347367 | LOG PACK MARK COST 4W massage LH/RH | V536 |
| 32347368 | LOG PACK MARK COST 4W vent and masssage LH/RH | V536 |
| 32367100 | LOG PACK MARK COST HEADREST SPEAKER VINYL CHS LH/RH | V536 |
| 32367101 | LOG PACK MARK COST HEADREST VINYL CHS LH/RH | V536 |
| 32367102 | LOG PACK MARK COST HEADREST VENT TEXTILE LH/RH | V536 |
| 32347369 | LOG PACK MARK COST PSM 10W LH/RH | V536 |
| 32367917 | LOG PACK MARK COST PSM 12W LH/RH | V536 |
| 32367918 | LOG PACK MARK COST PSM 16W LH/RH | V536 |
| 32367919 | LOG PACK MARK COST HEADREST SPEAKER VINYL CDM DWN LH/RH | V536 |
| 32367920 | LOG PACK MARK COST HEADREST VINYL CDM DWN LH/RH | V536 |
| 32367921 | LOG PACK MARK COST HEADREST SPEAKER RECHARGE LH/RH | V536 |
| 32367922 | LOG PACK MARK COST HEADREST RECHARGE LH/RH | V536 |
| 32332920 | LOGISTIC COST BELT A CHS | V536 |
| 32367929 | LOGISTIC COST BELT A DWN | V536 |
| 32332921 | LOGISTIC COST BELT B CHS | V536 |
| 32367930 | LOGISTIC COST BELT B DWN | V536 |
| 32332922 | LOGISTIC COST 7S BASE | V536 |
| 32332923 | LOGISTIC COST 5S BASE | V536 |
| 32367889 | LOGISTIC COST 6S BASE | V536 |
| 32332925 | LOGISTIC COST 7S ICS STRUCTURE | V536 |
| 32332924 | LOGISTIC COST 5S ICS STRUCTURE | V536 |
| 32332926 | LOGISTIC COST HEAT 7S | V536 |
| 32367881 | LOGISTIC COST HEAT 5S | V536 |
| 32367882 | LOGISTIC COST HEAT 6S | V536 |
| 32332927 | LOGISTIC COST ARMREST 5S/7S VINYL CHS | V536 |
| 32367883 | LOGISTIC COST ARMREST 5S/7S VINYL CDM | V536 |
| 32367884 | LOGISTIC COST ARMREST 7S VINYL DWN | V536 |
| 32367885 | LOGISTIC COST ARMREST 7S RECHARGE | V536 |
| 32367886 | LOGISTIC COST ARMREST 6S VINYL CHS | V536 |
| 32367887 | LOGISTIC COST ARMREST 6S VINYL CDM | V536 |
| 32367888 | LOGISTIC COST ARMREST 6S VINYL DWN | V536 |
| 32367105 | LOGISTIC COST STRUCTURE 3RD ROW | V536 |
| 32367106 | LOGISTIC COST BELT BUCKLE | V536 |
| 32332820 | Upholstery, Midnight zinc white / Front Back LH w/o FSAB label | V536 |
| 32332821 | Upholstery, Midnight zinc white / Front Back RH w/o FSAB label | V536 |
| 32347157 | Upholstery, Midnight zinc white / Front Back LH | V536 |
| 32347158 | Upholstery, Midnight zinc white / Front Back RH | V536 |
| 32347159 | Upholstery, Midnight zinc white / Front cushion LH w CEXT | V536 |
| 32347160 | Upholstery, Midnight zinc white / Front cushion RH w CEXT | V536 |
| 32347161 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISO | V536 |
| 32347162 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISO | V536 |
| 32347163 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISIZE | V536 |
| 32347164 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISIZE | V536 |
| 32347165 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO A | V536 |
| 32347166 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO A | V536 |
| 32347167 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO B | V536 |
| 32347168 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO B | V536 |
| 32347169 | Upholstery, Midnight zinc white / 2nd row Center back w armrest | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32347170 | Upholstery, Midnight zinc white / 2nd row Cushion LH | V536 |
| 32347171 | Upholstery, Midnight zinc white / 2nd row Cushion RH | V536 |
| 32347172 | Upholstery, Midnight zinc white / 2nd row Cushion Center w ICS | V536 |
| 32347173 | Upholstery, Midnight zinc white / 2nd row Cushion Center no ICS | V536 |
| 32347174 | Upholstery, Midnight zinc white / Child seat | V536 |
| 32352643 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISO | V536 |
| 32352642 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISO | V536 |
| 32352645 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISIZE | V536 |
| 32352644 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISIZE | V536 |
| 32352640 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32352641 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32403907 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32403908 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32447576 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32447577 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32347175 | Upholstery, Midnight zinc white / 3rd row Back RH ISO | V536 |
| 32347176 | Upholstery, Midnight zinc white / 3rd row Back LH ISO | V536 |
| 32447144 | Upholstery, Midnight zinc white / 3rd row Back RH | V536 |
| 32447145 | Upholstery, Midnight zinc white / 3rd row Back LH | V536 |
| 32347179 | Upholstery, Midnight zinc white / 3rd row Cushion LH | V536 |
| 32357164 | Upholstery, Midnight zinc white / 3rd row Cushion RH | V536 |
| 32367438 | Upholstery, Charcoal/Front Back LH w FSAB | V536 |
| 32367439 | Upholstery, Charcoal/Front Back RH w FSAB | V536 |
| 32367440 | Upholstery, Charcoal/Front cushion LH w CEXT | V536 |
| 32367441 | Upholstery, Charcoal/Front cushion RH w CEXT | V536 |
| 32367442 | Upholstery, Charcoal/2nd row Back RH 7S ISO | V536 |
| 32367443 | Upholstery, Charcoal/2nd row Back LH 7S ISO | V536 |
| 32367444 | Upholstery, Charcoal/2nd row Back RH 7S ISIZE | V536 |
| 32367445 | Upholstery, Charcoal/2nd row Back LH 7S ISIZE | V536 |
| 32367447 | Upholstery, Charcoal/2nd row Cushion LH | V536 |
| 32367448 | Upholstery, Charcoal/2nd row Cushion RH | V536 |
| 32367452 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32367453 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |
| 32367454 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
| 32367455 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32367456 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32367457 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32367458 | Upholstery 3rd row Back RH | V536 |
| 32367459 | Upholstery 3rd row Back LH | V536 |
| 32367460 | Upholstery 3rd row Cushion LH | V536 |
| 32367461 | Upholstery 3rd row Cushion RH | V536 |
| 32332816 | Upholstery, Charcoal solid / Front Back LH w/o FSAB label | V536 |
| 32332817 | Upholstery, Charcoal solid / Front Back RH w/o FSAB label | V536 |
| 32332560 | Upholstery, Charcoal solid / Front Back LH | V536 |
| 32332561 | Upholstery, Charcoal solid / Front Back RH | V536 |
| 32332562 | Upholstery, Charcoal solid / Front cushion LH n CEXT | V536 |
| 32332563 | Upholstery, Charcoal solid / Front cushion RH n CEXT | V536 |
| 32431814 | Upholstery, Charcoal solid / Front cushion LH no CEXT | V536 |
| 32431815 | Upholstery, Charcoal solid / Front cushion RH no CEXT | V536 |
| 32367463 | Upholstery, Charcoal solid / Front cushion LH w CEXT | V536 |
| 32367464 | Upholstery, Charcoal solid / Front cushion RH w CEXT | V536 |
| 32332564 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISO | V536 |
| 32332565 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISO | V536 |
| 32347272 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISIZE | V536 |
| 32347273 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISIZE | V536 |
| 32332566 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISO | V536 |
| 32332567 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISO | V536 |
| 32347274 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISIZE | V536 |
| 32347275 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISIZE | V536 |
| 32332568 | Upholstery, Charcoal solid / 2nd row Center back | V536 |
| 32332569 | Upholstery, Charcoal solid / 2nd row Cushion LH | V536 |
| 32332570 | Upholstery, Charcoal solid / 2nd row Cushion RH | V536 |
| 32332571 | Upholstery, Charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32332572 | Upholstery, Charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32332573 | Upholstery, Charcoal solid / Child seat | V536 |
| 32357685 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32357686 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32357687 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
| 32357688 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32357689 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32357690 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32403909 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32403910 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32447578 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32447579 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32332574 | Upholstery, Charcoal solid / 3rd row Back RH ISO | V536 |
| 32332575 | Upholstery, Charcoal solid / 3rd row Back LH ISO | V536 |
| 32447139 | Upholstery, Charcoal solid / 3rd row Back RH | V536 |
| 32447138 | Upholstery, Charcoal solid / 3rd row Back LH | V536 |
| 32332576 | Upholstery, Charcoal solid / 3rd row Cushion LH | V536 |
| 32357163 | Upholstery, Charcoal solid / 3rd row Cushion RH | V536 |
| 32347117 | Upholstery, Cardamom / Front Back LH Quilted | V536 |
| 32347118 | Upholstery, Cardamom / Front Back RH Quilted | V536 |
| 32447425 | Upholstery, Cardamom / Front Back LH | V536 |
| 32447426 | Upholstery, Cardamom / Front Back RH | V536 |
| 32347119 | Upholstery, Cardamom / Front cushion LH n CEXT | V536 |
| 32347120 | Upholstery, Cardamom / Front cushion RH n CEXT | V536 |
| 32431816 | Upholstery, Cardamom / Front cushion LH no CEXT | V536 |
| 32431817 | Upholstery, Cardamom / Front cushion RH no CEXT | V536 |
| 32367465 | Upholstery, Cardamom / Front cushion LH w CEXT | V536 |
| 32367466 | Upholstery, Cardamom / Front cushion RH w CEXT | V536 |
| 32347121 | Upholstery, Cardamom / 2nd row Back RH 7S ISO Quilted | V536 |
| 32347122 | Upholstery, Cardamom / 2nd row Back LH 7S ISO Quilted | V536 |
| 32347278 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE Quilted | V536 |
| 32347279 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE Quilted | V536 |
| 32347123 | Upholstery, Cardamom / 2nd row Back RH 5S ISO Quilted | V536 |
| 32347124 | Upholstery, Cardamom / 2nd row Back LH 5S ISO Quilted | V536 |
| 32347280 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE Quilted | V536 |
| 32347281 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE Quilted | V536 |
| 32447431 | Upholstery, Cardamom / 2nd row Back RH 5S ISO | V536 |
| 32447432 | Upholstery, Cardamom / 2nd row Back LH 5S ISO | V536 |
| 32447434 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE | V536 |
| 32447433 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE | V536 |
| 32347125 | Upholstery, Cardamom / 2nd row Center back | V536 |
| 32347126 | Upholstery, Cardamom / 2nd row Cushion LH | V536 |
| 32347127 | Upholstery, Cardamom / 2nd row Cushion RH | V536 |
| 32347128 | Upholstery, Cardamom / 2nd row Cushion Center w ICS | V536 |
| 32347129 | Upholstery, Cardamom / 2nd row Cushion Center no ICS | V536 |
| 32347130 | Upholstery, Cardamom / Child seat | V536 |
| 32357691 | Upholstery, Cardamom / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357692 | Upholstery, Cardamom / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357693 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357694 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357695 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32357696 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32403911 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32403912 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32447580 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32447581 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32347131 | Upholstery, Cardamom / 3rd row Back RH ISO | V536 |
| 32347132 | Upholstery, Cardamom / 3rd row Back LH ISO | V536 |
| 32447140 | Upholstery, Cardamom / 3rd row Back RH | V536 |
| 32447141 | Upholstery, Cardamom / 3rd row Back LH | V536 |
| 32347133 | Upholstery, Cardamom / 3rd row Cushion LH | V536 |
| 32357166 | Upholstery, Cardamom / 3rd row Cushion RH | V536 |
| 32367467 | Upholstery, Dawn / Front Back LH Quilted | V536 |
| 32367468 | Upholstery, Dawn / Front Back RH Quilted | V536 |
| 32447447 | Upholstery, Dawn / Front Back LH | V536 |
| 32447448 | Upholstery, Dawn / Front Back RH | V536 |
| 32367469 | Upholstery, Dawn / Front cushion LH w CEXT | V536 |
| 32367470 | Upholstery, Dawn / Front cushion RH w CEXT | V536 |
| 32367471 | Upholstery, Dawn / 2nd row Back RH 7S ISO Quilted | V536 |
| 32367472 | Upholstery, Dawn / 2nd row Back LH 7S ISO Quilted | V536 |
| 32367473 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE Quilted | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32367474 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE Quilted | V536 |
|---|---|---|
| 32367479 | Upholstery, Dawn / 2nd row Center back | V536 |
| 32367480 | Upholstery, Dawn / 2nd row Cushion LH | V536 |
| 32367481 | Upholstery, Dawn / 2nd row Cushion RH | V536 |
| 32367482 | Upholstery, Dawn / 2nd row Cushion Center w ICS | V536 |
| 32367483 | Upholstery, Dawn / 2nd row Cushion Center no ICS | V536 |
| 32367484 | Upholstery, Dawn / Child seat | V536 |
| 32357697 | Upholstery, Dawn / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357698 | Upholstery, Dawn / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357699 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357700 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357701 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32357702 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32403913 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32403914 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32447582 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32447583 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32367485 | Upholstery, Dawn / 3rd row Back RH ISO | V536 |
| 32367486 | Upholstery, Dawn / 3rd row Back LH ISO | V536 |
| 32447143 | Upholstery, Dawn / 3rd row Back RH | V536 |
| 32447142 | Upholstery, Dawn / 3rd row Back LH | V536 |
| 32367487 | Upholstery, Dawn / 3rd row Cushion LH | V536 |
| 32367488 | Upholstery, Dawn / 3rd row Cushion RH | V536 |
| 32332814 | Upholstery, Metal grey / Front Back LH w/o FSAB label | V536 |
| 32332815 | Upholstery, Metal grey / Front Back RH w/o FSAB label | V536 |
| 32347134 | Upholstery, Metal grey / Front Back LH | V536 |
| 32347135 | Upholstery, Metal grey / Front Back RH | V536 |
| 32347136 | Upholstery, Metal grey / Front cushion LH | V536 |
| 32347137 | Upholstery, Metal grey / Front cushlon RH | V536 |
| 32347138 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347139 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347140 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347141 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347142 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347143 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347144 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347145 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347152 | Upholstery, Metal grey / 3rd row Back RH | V536 |
| 32347153 | Upholstery, Metal grey / 3rd row Back LH | V536 |
| 32332822 | Upholstery Front Back LH (-Unique 722D) | V536 |
| 32332823 | Upholstery Front Back RH  (-Unique 722D) | V536 |
| 32347180 | Upholstery Front Back LH w FAB label | V536 |
| 32347181 | Upholstery Front Back RH w FAB label | V536 |
| 32347182 | Upholstery Front cushion LH w  Mec CEXT | V536 |
| 32347183 | Upholstery Front cushion RH w Mec CEXT | V536 |
| 32347184 | Upholstery 2nd row Back  RH 7 seater ISOFIX | V536 |
| 32347185 | Upholstery 2nd row Back  LH 7 seater ISOFIX | V536 |
| 32347186 | Upholstery 2nd row Back  RH 7 seater ISIZE | V536 |
| 32347187 | Upholstery 2nd row Back  LH 7 seater ISIZE | V536 |
| 32347188 | Upholstery 2nd row Back  RH 5 seater ISOFIX* | V536 |
| 32347189 | Upholstery 2nd row Back  LH 5 seater ISOFIX* | V536 |
| 32347190 | Upholstery 2nd row Back  RH 5 seater ISIZE* | V536 |
| 32347191 | Upholstery 2nd row Back  LH 5 seater ISIZE* | V536 |
| 32347192 | Upholstery 2nd row Center back w armrest | V536 |
| 32347193 | Upholstery 2nd row Cushion LH | V536 |
| 32347194 | Upholstery 2nd row Cushion RH | V536 |
| 32347195 | Upholstery 2nd row Cushlon Center w ICS | V536 |
| 32347196 | Upholstery 2nd row Cushlon Center no ICS | V536 |
| 32347197 | ICS | V536 |
| 32347198 | Upholstery 3rd row Back  RH ISOFIX | V536 |
| 32347199 | Upholstery 3rd row Back  LH ISOFIX | V536 |
| 32347202 | Upholstery 3rd row Cushion LH | V536 |
| 32357165 | Upholstery 3rd row Cushion RH | V536 |
| 32347203 | Upholstery, charcoal solid / Front Back LH | V536 |
| 32347204 | Upholstery, charcoal solid / Front Back RH | V536 |
| 32347205 | Upholstery, charcoal solid / Front cushion LH | V536 |
| 32347206 | Upholstery, charcoal solid / Front cushion RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32347207 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347208 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347209 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347210 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347211 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347212 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347213 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347214 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347215 | Upholstery, charcoal solid / 2nd row Center back w armrest | V536 |
| 32347216 | Upholstery, charcoal solid / 2nd row Cushion LH | V536 |
| 32347217 | Upholstery, charcoal solid / 2nd row Cushion RH | V536 |
| 32347218 | Upholstery, charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32347219 | Upholstery, charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32347220 | Upholstery, charcoal solid / Child seat | V536 |
| 32347221 | Upholstery, charcoal solid / 3rd row Back RH | V536 |
| 32347222 | Upholstery, charcoal solid / 3rd row Back LH | V536 |
| 32347225 | Upholstery, charcoal solid / 3rd row Cushion LH | V536 |
| 32357160 | Upholstery, charcoal solid / 3rd row Cushion RH | V536 |
| 32347249 | Upholstery, dawn/porcelain / Front Back LH | V536 |
| 32347250 | Upholstery, dawn/porcelain / Front Back RH | V536 |
| 32347251 | Upholstery, dawn/porcelain / Front cushion LH | V536 |
| 32347252 | Upholstery, dawn/porcelain / Front cushion RH | V536 |
| 32347253 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347254 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347255 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347256 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347257 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347258 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347259 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347260 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347261 | Upholstery, dawn/porcelain / 2nd row Center back w armrest | V536 |
| 32347262 | Upholstery, dawn/porcelain / 2nd row Cushion LH | V536 |
| 32347263 | Upholstery, dawn/porcelain / 2nd row Cushion RH | V536 |
| 32347264 | Upholstery, dawn/porcelain / 2nd row Cushion Center w ICS | V536 |
| 32347265 | Upholstery, dawn/porcelain / 2nd row Cushion Center no ICS | V536 |
| 32347266 | Upholstery, dawn/porcelain / Child seat | V536 |
| 32347267 | Upholstery, dawn/porcelain / 3rd row Back RH | V536 |
| 32347268 | Upholstery, dawn/porcelain / 3rd row Back LH | V536 |
| 32347271 | Upholstery, dawn/porcelain / 3rd row Cushion LH | V536 |
| 32357162 | Upholstery, dawn/porcelain / 3rd row Cushion RH | V536 |
| 32367931 | Edge Protector LH | V536 |
| 32367932 | Edge Protector RH | V536 |
| 32367908 | V536 7S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367909 | V536 7S Center seat (Cardamom vinyl + ICS) | V536 |
| 32367910 | V536 7S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32367911 | 723B 6S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367912 | 723B 6S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32403626 | ECU PSM 10W | V536 |
| 32403627 | ECU PSM 12W | V536 |
| 32403628 | ECU PSM 16W | V536 |
| 966214 | Six point socket M6X16 Trim list FAB | V536 |
| 961613 | Weld nut inb. Trimlist  FAB | V536 |
| 30622524 | SIX POINT SOCKET SCREW M5x12 | V536 |
| 986060 | Six point socket screw PF5*12, front bracket | V536 |
| 30622814 | Self thread plastic PT5x14 | V536 |
| 999495 | Plastic rivet, 5,2*9,3, rear panel inner | V536 |
| 30624298 | Six point socket screw, M6*10, bracket front | V536 |
| 30697666 | Hogring | V536 |
| 30622533 | Six point socket screw, M5*14, hardback | V536 |
| 985865 | Screw for AB rivet nut | V536 |
| 986061 | Six point socket screw PF*14, lid harness | V536 |
| 982755 | SCREW M6x12 | V536 |
| 9475400 | Push pin plastic | V536 |
| 30776075 | SIX POINT SOCKET SCREW M5X14 | V536 |
| 30622665 | SIX POINT SOCKET SCREW M4x25 | V536 |
| 986113 | SHEETtracs Schraube, M5*14 | V536 |
| 32272827 | SCREW M8x20 | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 982756 | Screw M6x12 | V536 |
| 985955 | FLANGE NUT M10 HEX15 | V536 |
| 30622544 | SCREW M10 T50 | V536 |
| 985921 | FLANGE NUT M8 | V536 |
| 988867 | SEMS SCREW M6X18 | V536 |
| 30640977 | ITW EXPANDING RIVET 6,5x18 | V536 |
| 30622615 | RAYMOND FIXATION CLIP | V536 |
| 30622595 | RAYMOND FIXATION CLIP | V536 |
| 3521768 | PLASTIC CLIP | V536 |
| 32403707 | Screw for high grade steel | V536 |
| 32447626 | Screw for high grade steel | V536 |
| 30640964 | HEAD SCREW WITH SPEC IAL DOG POINT M5*12 | V536 |
| 949937 | Spring Nut M5 | V536 |
| 32447627 | Spring Nut M5 | V536 |
| 32403706 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 30746746 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 31109159 | Expansion Rivet | V536 |
| 32403705 | Six point socket screw, M6*10 | V536 |
| 30640814 | Tapping Flange Screw  M5*14 | V536 |
| 30769443 | Six point socket screw ST4.8x19 | V536 |
| 32403708 | Rivet Pop M4.75 | V536 |
| 32401663 | Blind Rivet 6.4 | V536 |
| 949921 | Spring Nut M6 | V536 |
| 986214 | SIX POINT SOCKET PAN HEAD SCREWS M6x16 | V536 |
| 30640782 | SCREW M8x20 | V536 |
| 985858 | FLANGE NUT M6X14 | V536 |
| 999127 | FLANGE NUT M10 HEX15 | V536 |
| 985860 | FLANGE NUT M8 | V536 |
| 30746829 | Six point socket screw M10*18,75, assebly cushion and backrest | V536 |
| 30769349 | M10 marriage bolt | V536 |
| 30769353 | M12 marriage bolt | V536 |
| 30746811 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 30746812 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 32403185 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 32403202 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 982794 | SCREW M8x20 | V536 |
| 31109219 | Push pin plastic | V536 |
| 986716 | Rivet Pop M4.75 | V536 |
| 32403172 | Boltscrew M6 x 1 x 22 Taptite 2000 | V536 |
| 9401876 | 2R Seat Module | V536 |
| 9401899 | 3R Seat Module | V536 |
| 32347372 | FS LH Seat Module | V536 |
| 32347373 | FS RH Seat Module | V536 |
| 30746912 | Screw thread forming M4x0.7x25 Taptite 2000 | V536 |
| 30769431 | Screw plastic tapping M6x2.14x14 Delta PT | V536 |
| 32403732 | ECU PSM 10W | V536 |
| 32403734 | ECU PSM 12W | V536 |
| 32403736 | ECU PSM 16W | V536 |
| 32403864 | ECU PSM 10W | V536 |
| 32403866 | ECU PSM 12W | V536 |
| 32403868 | ECU PSM 16W | V536 |
| 32447292 | ECU PSM 10W | V536 |
| 32447293 | ECU PSM 12W | V536 |
| 32447294 | ECU PSM 16W | V536 |
| 30624270 | Pop Rivet | V536 |
| 32403993 | Pop Rivet | V536 |
| 32403839 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32403840 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32403841 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32403842 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32403824 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32403825 | D-LOOP COVER 2ROW Dawn | V536 |
| 32403812 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32403813 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32403814 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32403815 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32403816 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32403817 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
|---|---|---|
| 32403818 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32403819 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32403820 | COVER RECLINER 20 LH Charcoal | V536 |
| 32403821 | COVER RECLINER 20 LH Dawn | V536 |
| 32403822 | COVER RECLINER 20 RH Charcoal | V536 |
| 32403823 | COVER RECLINER 20 RH Dawn | V536 |
| 32403808 | SEAT RAIL COVER LH Charcoal | V536 |
| 32403809 | SEAT RAIL COVER LH Dawn | V536 |
| 32403810 | SEAT RAIL COVER RH Charcoal | V536 |
| 32403811 | SEAT RAIL COVER RH Dawn | V536 |
| 32403835 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32403837 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32403836 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32403838 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32403529 | Upholstery, Charcoal solid / Front Back LH Ventilated | V536 |
| 32403530 | Upholstery, Charcoal solid / Front Back RH Ventilated | V536 |
| 32403535 | Upholstery, Charcoal solid / Front cushion LH w CEXT Ventilated | V536 |
| 32403536 | Upholstery, Charcoal solid / Front cushion RH w CEXT Ventilated | V536 |
| 32403531 | Upholstery, Cardamom / Front Back LH Ventilated | V536 |
| 32403532 | Upholstery, Cardamom / Front Back RH Ventilated | V536 |
| 32403537 | Upholstery, Cardamom / Front cushion LH w CEXT Ventilated | V536 |
| 32403538 | Upholstery, Cardamom / Front cushion RH w CEXT Ventilated | V536 |
| 32403541 | Upholstery, Cardamom / 2nd row Back RH 7S ISO | V536 |
| 32403542 | Upholstery, Cardamom / 2nd row Back LH 7S ISO | V536 |
| 32403543 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE | V536 |
| 32403544 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE | V536 |
| 32403545 | Upholstery, Cardamom / 2nd row Back RH 7S ISO C | V536 |
| 32403546 | Upholstery, Cardamom / 2nd row Back LH 7S ISO C | V536 |
| 32403547 | Upholstery, Cardamom / 2nd row Back RH 6S ISO | V536 |
| 32403548 | Upholstery, Cardamom / 2nd row Back LH 6S ISO | V536 |
| 32403549 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE | V536 |
| 32403550 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE | V536 |
| 32403551 | Upholstery, Cardamom / 2nd row Back RH 6S ISO C | V536 |
| 32403552 | Upholstery, Cardamom / 2nd row Back LH 6S ISO C | V536 |
| 32403533 | Upholstery, Dawn / Front Back LH Ventilated | V536 |
| 32403534 | Upholstery, Dawn / Front Back RH Ventilated | V536 |
| 32403539 | Upholstery, Dawn / Front cushion LH w CEXT Ventilated | V536 |
| 32403540 | Upholstery, Dawn / Front cushion RH w CEXT Ventilated | V536 |
| 32403553 | Upholstery, Dawn / 2nd row Back RH 7S ISO | V536 |
| 32403554 | Upholstery, Dawn / 2nd row Back LH 7S ISO | V536 |
| 32403555 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE | V536 |
| 32403556 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE | V536 |
| 32403557 | Upholstery, Dawn / 2nd row Back RH 7S ISO C | V536 |
| 32403558 | Upholstery, Dawn / 2nd row Back LH 7S ISO C | V536 |
| 32403559 | Upholstery, Dawn / 2nd row Back RH 6S ISO | V536 |
| 32403560 | Upholstery, Dawn / 2nd row Back LH 6S ISO | V536 |
| 32403561 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE | V536 |
| 32403562 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE | V536 |
| 32403563 | Upholstery, Dawn / 2nd row Back RH 6S ISO C | V536 |
| 32403564 | Upholstery, Dawn / 2nd row Back LH 6S ISO C | V536 |
| 32447183 | Upholstery,CHARCOAL/Front Back LH | V536 |
| 32447184 | Upholstery,CHARCOAL/Front Back RH | V536 |
| 32447185 | Upholstery,CHARCOAL/Front cushion LH | V536 |
| 32447186 | Upholstery,CHARCOAL/Front cushion RH | V536 |
| 32447187 | Upholstery,CHARCOAL/2nd row Back RH 7S ISOFIX | V536 |
| 32447188 | Upholstery,CHARCOAL/2nd row Back LH 7S ISOFIX | V536 |
| 32447538 | Upholstery,CHARCOAL/2nd row Back RH 7S ISIZE | V536 |
| 32447539 | Upholstery,CHARCOAL/2nd row Back LH 7S ISIZE | V536 |
| 32447189 | Upholstery,CHARCOAL/2nd row Cushion LH 7S | V536 |
| 32447190 | Upholstery,CHARCOAL/2nd row Cushion RH 7S | V536 |
| 32447191 | Upholstery,CHARCOAL/2nd row Center back w armrest | V536 |
| 32447192 | Upholstery,CHARCOAL/2nd row Cushion Center no ICS | V536 |
| 32447515 | Upholstery,CHARCOAL/2nd row Cushion Center with ICS | V536 |
| 32447516 | Upholstery,CHARCOAL/2nd row ICS | V536 |
| 32447193 | Upholstery,CHARCOAL/2nd row Back RH 6S ISOFIX | V536 |
| 32447194 | Upholstery,CHARCOAL/2nd row Back LH 6S ISOFIX | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32450448 | Upholstery,CHARCOAL/2nd row Back RH 6S ISIZE | V536 |
| 32450447 | Upholstery,CHARCOAL/2nd row Back LH 6S ISIZE | V536 |
| 32447195 | Upholstery,CHARCOAL/2nd row Cushion LH 6S | V536 |
| 32447196 | Upholstery,CHARCOAL/2nd row Cushion RH 6S | V536 |
| 32447197 | Upholstery,CHARCOAL/3rd row Back RH ISOFIX | V536 |
| 32447198 | Upholstery,CHARCOAL/3rd row Back LH ISOFIX | V536 |
| 32447540 | Upholstery,CHARCOAL/3rd row Back RH | V536 |
| 32447541 | Upholstery,CHARCOAL/3rd row Back LH | V536 |
| 32447199 | Upholstery,CHARCOAL/3rd row Cushion LH | V536 |
| 32447200 | Upholstery,CHARCOAL/3rd row Cushion RH | V536 |
| 32447201 | Upholstery,CARDAMOM/Front Back LH | V536 |
| 32447202 | Upholstery,CARDAMOM/Front Back RH | V536 |
| 32447203 | Upholstery,CARDAMOM/Front cushion LH | V536 |
| 32447204 | Upholstery,CARDAMOM/Front cushion RH | V536 |
| 32447205 | Upholstery,CARDAMOM/2nd row Back RH ISOFIX | V536 |
| 32447206 | Upholstery,CARDAMOM/2nd row Back LH ISOFIX | V536 |
| 32447542 | Upholstery,CARDAMOM/2nd row Back RH ISIZE | V536 |
| 32447543 | Upholstery,CARDAMOM/2nd row Back LH ISIZE | V536 |
| 32447207 | Upholstery,CARDAMOM/2nd row Cushion LH | V536 |
| 32447208 | Upholstery,CARDAMOM/2nd row Cushion RH | V536 |
| 32447209 | Upholstery,CARDAMOM/2nd row Center back w armrest | V536 |
| 32447210 | Upholstery,CARDAMOM/2nd row Cushion Center no ICS | V536 |
| 32447517 | Upholstery,CARDAMOM/2nd row Cushion Center with ICS | V536 |
| 32447518 | Upholstery,CARDAMOM/2nd row ICS | V536 |
| 32447211 | Upholstery,CARDAMOM/2nd row Back RH 6S ISOFIX | V536 |
| 32447212 | Upholstery,CARDAMOM/2nd row Back LH 6S ISOFIX | V536 |
| 32450450 | Upholstery,CARDAMOM/2nd row Back RH 6S ISIZE | V536 |
| 32450449 | Upholstery,CARDAMOM/2nd row Back LH 6S ISIZE | V536 |
| 32447213 | Upholstery,CARDAMOM/2nd row Cushion LH 6S | V536 |
| 32447214 | Upholstery,CARDAMOM/2nd row Cushion RH 6S | V536 |
| 32447215 | Upholstery,CARDAMOM/3rd row Back RH ISOFIX | V536 |
| 32447216 | Upholstery,CARDAMOM/3rd row Back LH ISOFIX | V536 |
| 32447544 | Upholstery,CARDAMOM/3rd row Back RH | V536 |
| 32447545 | Upholstery,CARDAMOM/3rd row Back LH | V536 |
| 32447217 | Upholstery,CARDAMOM/3rd row Cushion LH | V536 |
| 32447218 | Upholstery,CARDAMOM/3rd row Cushion RH | V536 |
| 32447219 | Upholstery,DAWN/Front Back LH | V536 |
| 32447220 | Upholstery,DAWN/Front Back RH | V536 |
| 32447221 | Upholstery,DAWN/Front cushion LH | V536 |
| 32447222 | Upholstery,DAWN/Front cushion RH | V536 |
| 32447223 | Upholstery,DAWN/2nd row Back RH ISOFIX | V536 |
| 32447224 | Upholstery,DAWN/2nd row Back LH ISOFIX | V536 |
| 32447546 | Upholstery,DAWN/2nd row Back RH ISIZE | V536 |
| 32447547 | Upholstery,DAWN/2nd row Back LH ISIZE | V536 |
| 32447225 | Upholstery,DAWN/2nd row Cushion LH | V536 |
| 32447226 | Upholstery,DAWN/2nd row Cushion RH | V536 |
| 32447227 | Upholstery,DAWN/2nd row Center back w armrest | V536 |
| 32447228 | Upholstery,DAWN/2nd row Cushion Center no ICS | V536 |
| 32447519 | Upholstery,DAWN/2nd row Cushion Center with ICS | V536 |
| 32447520 | Upholstery,DAWN/2nd row ICS | V536 |
| 32447229 | Upholstery,DAWN/2nd row Back RH 6S ISOFIX | V536 |
| 32447230 | Upholstery,DAWN/2nd row Back LH 6S ISOFIX | V536 |
| 32450452 | Upholstery,DAWN/2nd row Back RH 6S ISIZE | V536 |
| 32450451 | Upholstery,DAWN/2nd row Back LH 6S ISIZE | V536 |
| 32447231 | Upholstery,DAWN/2nd row Cushion LH 6S | V536 |
| 32447232 | Upholstery,DAWN/2nd row Cushion RH 6S | V536 |
| 32447233 | Upholstery,DAWN/3rd row Back RH ISOFIX | V536 |
| 32447234 | Upholstery,DAWN/3rd row Back LH ISOFIX | V536 |
| 32447548 | Upholstery,DAWN/3rd row Back RH | V536 |
| 32447549 | Upholstery,DAWN/3rd row Back LH | V536 |
| 32447235 | Upholstery,DAWN/3rd row Cushion LH | V536 |
| 32447236 | Upholstery,DAWN/3rd row Cushion RH | V536 |
| 32447239 | HEADREST DAWN FRONT W/O AUDIO | V536 |
| 32447237 | HEADREST CHARCOAL FRONT W/O AUDIO | V536 |
| 32447238 | HEADREST CARDAMOM FRONT W/O AUDIO | V536 |
| 32447242 | HEADREST AUDIO DAWN FRONT | V536 |
| 32447240 | HEADREST AUDIO CHARCOAL FRONT | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32447241 | HEADREST AUDIO CARDAMOM FRONT | V536 |
| 32431788 | HEADREST W LABEL CHARCOAL OUTER | V536 |
| 32431785 | HEADREST W LABEL CARDAMOM OUTER | V536 |
| 32431280 | HEADREST W LABEL DAWN OUTER | V536 |
| 32447660 | HEADREST W LABEL DAWN OUTER | V536 |
| 32431790 | HEADREST WITHOUT LABEL CHARCOAL OUTER | V536 |
| 32431787 | HEADREST WITHOUT LABEL CARDAMOM OUTER | V536 |
| 32431284 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32447662 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32431789 | HEADREST CHARCOAL CENTER | V536 |
| 32431786 | HEADREST CARDAMOM CENTER | V536 |
| 32431282 | HEADREST DAWN CENTER | V536 |
| 32447658 | HEADREST DAWN CENTER | V536 |
| 32447248 | ARMREST DAWN | V536 |
| 32447246 | ARMREST CHARCOAL | V536 |
| 32447247 | ARMREST CARDAMOM | V536 |
| 32431343 | ARM REST DAWN LH | V536 |
| 32431344 | ARM REST DAWN RH | V536 |
| 32431797 | ARM REST CHARCOAL LH | V536 |
| 32431798 | ARM REST CHARCOAL RH | V536 |
| 32431799 | ARM REST CARDAMOM LH | V536 |
| 32431800 | ARM REST CARDAMOM RH | V536 |
| 32431333 | ASSEMBLY COSTS FRONT SEAT LEATHER LH/RH | V536 |
| 32431334 | ASSEMBLY COSTS 2ROW/7 SEAT LEATHER | V536 |
| 32431335 | ASSEMBLY COSTS 2ROW/6 SEAT LEATHER LH/RH | V536 |
| 32431336 | ASSEMBLY COSTS 3ROW LEATHER LH/RH | V536 |
| 32431337 | LOGISTIC COST ARMREST 7S LEATHER | V536 |
| 32431338 | LOGISTIC COST ARMREST 6S LEATHER LH/RH | V536 |
| 32431339 | LOGISTIC COST DAWN HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431340 | LOGISTIC COST DAWN HEADREST STD LEATHER LH/RH | V536 |
| 32447558 | LOGISTIC COST CARDAMOM HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32447559 | LOGISTIC COST CARDAMOM HEADREST STD LEATHER LH/RH | V536 |
| 32431492 | LOGISTIC COST CHARCOAL HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431493 | LOGISTIC COST CHARCOAL HEADREST STD LEATHER LH/RH | V536 |
| 32450416 | OWS Service Kit | V536 |
| 32450417 | OWS Service Kit Vent | V536 |
| 32431937 | LOGISTIC COST FS LH , W/O EXTENSION | V536 |
| 32431938 | LOGISTIC COST FS RH , W/O EXTENSION | V536 |
| 32447793 | LOGISTIC COST / ARM REST, CHARCOAL LEATHER | V536 |
| 32447794 | LOGISTIC COST / ARM REST, CARDAMOM LEATHER | V536 |
| 32447795 | LOGISTIC COST / ARM REST, DAWN LEATHER | V536 |
| 32447901 | CABLE HARNESS DRIVER 10W | V536 |
| 32447885 | CABLE HARNESS DRIVER 12W | V536 |
| 32447886 | CABLE HARNESS DRIVER 16W | V536 |
| 32447894 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447902 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32447887 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447888 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447896 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447889 | CABLE HARNESS DRIVER 12W | V536 |
| 32447897 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447890 | CABLE HARNESS DRIVER 16W | V536 |
| 32447898 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447891 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447899 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447892 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447900 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447893 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447929 | CABLE HARNESS DRIVER 10W | V536 |
| 32447921 | CABLE HARNESS DRIVER 12W | V536 |
| 32447925 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447922 | CABLE HARNESS DRIVER 16W | V536 |
| 32447926 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447923 | CABLE HARNESS DRIVER 12W | V536 |
| 32447927 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447924 | CABLE HARNESS DRIVER 16W | V536 |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32447928 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447919 | CABLE HARNESS PASSENGER10W | V536 |
| 32447903 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447911 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447912 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447920 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32447905 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32447913 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32447906 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32447914 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32447907 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447915 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447908 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447916 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447909 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32447917 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32447910 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32447918 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32447938 | CABLE HARNESS PASSENGER 10W | V536 |
| 32447930 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447934 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447931 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447935 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447932 | CABLE HARNESS DRIVER 12W | V536 |
| 32447936 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447933 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447937 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32272400 | HEAD REST,CHARCOAL SOLID | 723N |
| 32272422 | HEAD REST,CHARCOAL SOLID | 723N |
| 32296023 | SIDE AIR BAG | 723N |
| 32296024 | SIDE AIR BAG | 723N |
| 32131682 | ADAPTER END FITTING | 723N |
| 32131683 | ADAPTER END FITTING | 723N |
| 32131693 | SEAT BELT,CHARCOAL | 723N |
| 32131694 | SEAT BELT,GOLD | 723N |
| 32131695 | SEAT BELT,CHARCOAL | 723N |
| 32131696 | SEAT BELT,GOLD | 723N |
| 32394094 | BELT CATCH | 723N |
| 32394096 | BELT CATCH | 723N |
| 986344 | SIX POINT SOCKET SCREW | 723N |
| 989922 | FLANGE SCREW | 723N |
| 31379190 | BACKREST FRAME | 723N |
| 31379191 | BACKREST FRAME | 723N |
| 32272230 | ARM REST,JUPITER | 723N |
| 32272231 | ARM REST,DARK ZINC | 723N |
| 32272613 | COVER | 723N |
| 32272614 | COVER | 723N |
| 32272627 | ARM REST | 723N |
| 32272628 | ARM REST | 723N |
| 32272629 | ARM REST | 723N |
| 32288647 | PIVOT | 723N |
| 32288648 | PIVOT | 723N |
| 39841471 | COVER,CHA | 723N |
| 39841477 | D-LOOP | 723N |
| 32272562 | LOCK,CHAR | 723N |
| 32272564 | LOCK,CHAR | 723N |
| 32272597 | LOCK | 723N |
| 32272598 | LOCK | 723N |
| 32272599 | LOCK | 723N |
| 32272600 | LOCK | 723N |
| 32431035 | LUMBAR SUPPORT 4-VÄGS | 723N |
| 32394095 | BELT CATCH | 723N |
| 32296021 | SIDE AIR BAG | 723N |
| 32296022 | SIDE AIR BAG | 723N |
| 32393991 | UPHOLSTERY JUPITER LH LEATHER- BACKREST LH | 723N |
| 32393992 | UPHOLSTERY LUNA LH LEATHER- BACKREST LH | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32393994 | UPHOL CS-MICRO TECH- BACKREST LH | 723N |
|---|---|---|
| 32393995 | UPHOLSTERY CS-WEAVE TECH- BACKREST LH | 723N |
| 32393996 | UPHOLSTERY JUPITER LH LEATHER- CUSHION LH | 723N |
| 32393997 | UPHOLSTERY LUNA LH LEATHER- CUSHION LH | 723N |
| 32393998 | UPHOL CS-PREMIUM TEXTILE- CUSHION LH | 723N |
| 32393999 | UPHOL CS-MICRO TECH- CUSHION LH | 723N |
| 32431001 | UPHOLSTERY JUPITER RH LEATHER- BACKREST RH | 723N |
| 32431002 | UPHOLSTERY LUNA RH LEATHER- BACKREST RH | 723N |
| 32431004 | UPHOL CS-MICRO TECH- BACKREST RH | 723N |
| 32431375 | UPHOLSTERY CS-WEAVE TECH- BACKREST RH | 723N |
| 32431006 | UPHOLSTERY JUPITER RH LEATHER- CUSHION RH | 723N |
| 32431007 | UPHOLSTERY LUNA RH LEATHER- CUSHION RH | 723N |
| 32431008 | UPHOL CS-PREMIUM TEXTILE- CUSHION RH | 723N |
| 32431009 | UPHOL CS-MICRO TECH- CUSHION RH | 723N |
| 32431015 | UPHOLSTERY LUNA | 723N |
| 32431016 | UPHOLSTERY LUNA | 723N |
| 32431017 | UPHOLSTERY LUNA | 723N |
| 32431019 | UPHOLSTERY JUPITER | 723N |
| 32431020 | UPHOLSTERY JUPITER | 723N |
| 32431021 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431022 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431023 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431024 | UPHOLSTERY MICRO TECH | 723N |
| 32431025 | UPHOLSTERY MICRO TECH | 723N |
| 32431026 | UPHOLSTERY MICRO TECH | 723N |
| 32431027 | UPHOLSTERY WEAVE TECH | 723N |
| 32431028 | UPHOLSTERY WEAVE TECH | 723N |
| 32431029 | UPHOLSTERY WEAVE TECH | 723N |
| 32431018 | UPHOLSTERY JUPITER RSB RH | 723N |
| 32272200 | HEATER | 723N |
| 32272201 | HEATER | 723N |
| 32272202 | HEATING PAD SEAT | 723N |
| 32272206 | HEATING PAD SEAT | 723N |
| 32273211 | HEATING PAD | 723N |
| 32357198 | HEATING PAD SEAT | 723N |
| 32273207 | HEATING PAD SEAT | 723N |
| 32272585 | OWS System | 723N |
| 32386816 | BELT,CHARCOAL / GOLD | 723N |
| 32386817 | BELT,CHARCOAL / GOLD | 723N |
| 32393857 | LOGISTIC COST FRONT SEAT | 723N |
| 32393557 | SUBMARINE BRACKET | 723N |
| 983750 | CABLE TIE | 723N |
| 32260792 | PADDING | 723N |
| 32260793 | PADDING | 723N |
| 32260796 | CARPET,CH | 723N |
| 32260797 | CARPET,CH | 723N |
| 32260800 | PLASTIC B | 723N |
| 32260801 | PLASTIC B | 723N |
| 32260802 | PLASTIC B | 723N |
| 32260803 | PLASTIC B | 723N |
| 32260923 | CABLE HAR | 723N |
| 32260924 | CABLE HAR | 723N |
| 32260927 | CABLE HAR | 723N |
| 32260928 | CABLE HAR | 723N |
| 32260931 | CABLE HAR | 723N |
| 32260932 | CABLE HAR | 723N |
| 32260935 | CABLE HAR | 723N |
| 32260936 | CABLE HAR | 723N |
| 32260947 | PADDING | 723N |
| 32260948 | PADDING | 723N |
| 32260949 | PADDING | 723N |
| 32260950 | PADDING S | 723N |
| 32260951 | PADDING | 723N |
| 32260953 | PADDING | 723N |
| 32260956 | CARRIER | 723N |
| 32260958 | PADDING S | 723N |
| 32272203 | TAPE | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32272204 | HARNESS | 723N |
|---|---|---|
| 32272205 | HARNESS | 723N |
| 32272207 | HARNESS | 723N |
| 32272209 | HARNESS | 723N |
| 32272234 | HEAD REST | 723N |
| 32272235 | HEAD REST | 723N |
| 32272360 | TRIMLIST | 723N |
| 32272361 | TRIMLIST | 723N |
| 32272363 | SIDE PANE | 723N |
| 32272364 | SIDE PANE | 723N |
| 32272432 | PADDING | 723N |
| 32272434 | PADDING | 723N |
| 32272601 | BUSHING | 723N |
| 32272602 | BUSHING | 723N |
| 32272603 | GUIDE BUS | 723N |
| 32272604 | GUIDE BUS | 723N |
| 32272605 | LATCH BEZ | 723N |
| 32272606 | LATCH BEZ | 723N |
| 32272607 | LATCH BEZ | 723N |
| 32272608 | LATCH BEZ | 723N |
| 32272609 | CASING, | 723N |
| 32272610 | CASING, | 723N |
| 32272611 | CASING, | 723N |
| 32272612 | CASING, | 723N |
| 32272615 | SIDE BOLS | 723N |
| 32272616 | SIDE BOLS | 723N |
| 32272623 | SIDE BOLS | 723N |
| 32272624 | SIDE BOLS | 723N |
| 32272633 | HEAD REST | 723N |
| 32272635 | HEAD REST | 723N |
| 32272636 | HEAD REST | 723N |
| 32272637 | HEAD REST | 723N |
| 32273822 | TRIMLIST | 723N |
| 32273823 | TRIMLIST | 723N |
| 32273824 | BRACKET | 723N |
| 32273825 | CARRIER | 723N |
| 32273827 | PLASTIC C | 723N |
| 32273828 | CASE SIDE | 723N |
| 32273829 | CASE SIDE | 723N |
| 32273830 | HARDBACK, | 723N |
| 32273831 | HARDBACK, | 723N |
| 32273832 | COULISSE, | 723N |
| 32273833 | COULISSE, | 723N |
| 32273834 | SENSOR | 723N |
| 32273835 | BRACKET | 723N |
| 32273836 | BRACKET | 723N |
| 32273837 | BRACKET | 723N |
| 32273838 | BRACKET | 723N |
| 32273839 | BRACKET | 723N |
| 32273840 | BRACKET | 723N |
| 32273842 | BRACKET | 723N |
| 32273843 | CABLE GUI | 723N |
| 32273844 | CABLE GUI | 723N |
| 32273845 | HANDLE,CH | 723N |
| 32332184 | RETAINER | 723N |
| 32332406 | PADDING | 723N |
| 32332407 | ANCHORAGE | 723N |
| 32332408 | PROTECTIN | 723N |
| 32332409 | PROTECTIN | 723N |
| 32332410 | PROTECTIN | 723N |
| 32332411 | GUIDE BUS | 723N |
| 32332412 | BUSHING,C | 723N |
| 32332415 | HATCH,CHA | 723N |
| 32332416 | LOCK COVE | 723N |
| 32332417 | LATCH BEZ | 723N |
| 32332418 | LATCH BEZ | 723N |
| 32332419 | COVER,CHA | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32332420 | COVER,CHA | 723N |
| 32332423 | RIM,CHARC | 723N |
| 32332424 | BRACKET | 723N |
| 32332425 | BRACKET | 723N |
| 32332427 | TRIM PLAT | 723N |
| 32332428 | TRIM PLAT | 723N |
| 32332433 | SIDE PANE | 723N |
| 32332489 | CASE SIDE | 723N |
| 32332490 | CASE SIDE | 723N |
| 32332491 | COVER,CHA | 723N |
| 32332492 | COVER,CHA | 723N |
| 32332493 | CASE SIDE | 723N |
| 32332494 | CASE SIDE | 723N |
| 32332602 | PANEL,CHA | 723N |
| 32332603 | PANEL,CHA | 723N |
| 32332621 | BRACKET | 723N |
| 32333655 | FRONT SEA | 723N |
| 32333866 | SKI HATCH | 723N |
| 32347570 | BRACKET | 723N |
| 32393705 | ARM REST | 723N |
| 32393706 | ARM REST,CHARCOAL SOLID | 723N |
| 32393707 | ARM REST,JUPITER | 723N |
| 32393708 | ARM REST,DARK ZINC | 723N |
| 32393878 | ARM REST,CHARCOAL SOLID | 723N |
| 32273212 | HEATING PAD BACKREST | 723N |
| 32357197 | HEATING PAD SEAT | 723N |
| 32367596 | LUMBAR SUPPORT | 723N |
| 32403160 | LOGISTIC COST | 723N |
| 32431152 | SPRING WASHER | 723N |
| 32431160 | CABLE HARNESS | 723N |
| 32431161 | CABLE HARNESS | 723N |
| 32431164 | CABLE HARNESS | 723N |
| 32431165 | CABLE HARNESS | 723N |
| 51081161 | ARM REST,CHARCOAL SOLID | 723N |
| 32403718 | ECU | 723N |
| 32403720 | ECU | 723N |
| 32285903 | SIX POINT SOCKET SCREW | 723N |
| 32272452 | CABLE HARNESS DRIVER 16W | 723N |
| 31109168 | SCREW-HARDBACK | 723N |
| 986215 | SCREW-SIDE PANEL TRIMLIST | 723N |
| 32272454 | CABLE HARNESS PASS 12W HEAT | 723N |
| 32431000 | UPHOLSTERY CS-WEAVE TECH- CUSHION LH | 723N |
| 32431010 | UPHOLSTERY CS-WEAVE TECH- CUSHION RH | 723N |
| 32393993 | UPHOL CS-PREMIUM TEXTILE- BACKREST LH | 723N |
| 32431003 | UPHOL CS-PREMIUM TEXTILE- BACKREST RH | 723N |
| 32393133 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393134 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393142 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393143 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393146 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393147 | CABLE HARNESS DRIVER 16 HEAT WO VENT | 723N |
| 32393156 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393157 | CABLE HARNESS DRIVER 16 HEAT WO VENT U | 723N |
| 32272448 | CABLE HARNESS DRIVER 16W HEAT | 723N |
| 32393135 | CABLE HARNESS PASS 12W HEAT SPEAKER W | 723N |
| 32393136 | CABLE HARNESS PASS 12W HEAT WITH VENT | 723N |
| 32393144 | CABLE HARNESS PASS 12W HEAT SPEAKER W | 723N |
| 32393145 | CABLE HARNESS PASS 12W HEAT WITH VENT | 723N |
| 32393148 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393149 | CABLE HARNESS PASS 16W HEAT WO VENT | 723N |
| 32393158 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393159 | CABLE HARNESS PASS 16W HEAT WO VENT US | 723N |
| 32272450 | CABLE HARNESS PASSENGER 16W HEAT | 723N |
| 32393129 | PADDING BACKREST LH FRONT SEAT MASSAGE | 723N |
| 32393131 | PADDING BACKREST LH FRONT SEAT VENT | 723N |
| 32393130 | PADDING BACKREST RH FRONT SEAT MASSAGE | 723N |
| 32393132 | PADDING BACKREST RH FRONT SEAT VENT | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32431011 | UPHOLSTERY FRONT LH BACK BEA WOOL, CHA | 723N |
| 32431012 | UPHOLSTERY FRONT LH  BACK MICROTECH CH | 723N |
| 32431013 | UPHOLSTERY FRONT RH BACK BEA WOOL, CHA | 723N |
| 32431014 | UPHOLSTERY FRONT RH  BACK MICROTECH CH | 723N |
| 30622757 | SCREW-ARMREST TO BACKREST FRAME | 723N |
| 30622762 | PLASTIC RIVET-ARMREST COVER | 723N |
| 32403622 | ECU PSM 12W | 723N |
| 32403623 | ECU PSM 16W | 723N |
| 32273206 | HEATING PAD SEAT FRONT SEAT | 723N |
| 32206974 | STS SENSOR | 723N |
| 31377491 | END STOP | 723N |
| 32288875 | UNDERCARRIAGE LH POWER MAN | 723N |
| 32288876 | UNDERCARRIAGE RH POWER MAN | 723N |
| 32273215 | LUMBAR SUPPORT | 723N |
| 32332644 | Air Distribution Back Rest | 723N |
| 32332645 | Air Distribution Cushion (for vent foam) | 723N |
| 32332797 | Front A-side spacer | 723N |
| 32332796 | Rear A-side spacer | 723N |
| 31446700 | Bolster A-side spacer | 723N |
| 31498088 | VENTILATION SEAT | 723N |
| 31488221 | MASSAGE UNIT | 723N |
| 30622539 | SCREW-CUSHION AND BACKREST | 723N |
| 32332651 | Air Distribution Cushion OWS Version | 723N |
| 32288877 | BACKREST FRAME LH ENGINE W | 723N |
| 32288878 | BACKREST FRAME RH ENGINE W | 723N |
| 32393229 | LUMBAR SUPPORT 4-WAY W MASSAGE W SIDE | 723N |
| 32393230 | LUMBAR SUPPORT 4-WAY W VENT | 723N |
| 31379170 | FRAMEWORK LH RELEASE MECHANISM | 723N |
| 31379228 | FRAMEWORK RH RELEASE MECHANISM | 723N |
| 32272963 | ASSEMBLY COSTS FRONT SEAT MASSAGE | 723N |
| 32272965 | ASSEMBLY COSTS FRONT SEAT VENT | 723N |
| 32272967 | ASSEMBLY COSTS FRONT SEAT SIDE SUPPORT | 723N |
| 32272968 | ASSEMBLY COSTS FRONT SEAT 4W LUMBAR | 723N |
| 32272969 | ASSEMBLY COSTS FRONT SEAT  CUSHION EXT | 723N |
| 32272970 | ASSEMBLY COSTS FRONT SEAT  HEAT | 723N |
| 32272971 | ASSEMBLY COSTS FRONT SEAT BASIC | 723N |
| 32403150 | ASSEMBLY COST FRONT STPS | 723N |
| 32403151 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403152 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32403153 | ASSEMBLY COST FRONT OWS | 723N |
| 32403154 | ASSEMBLY COST FRONT STPS | 723N |
| 32403155 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403156 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32260804 | ASSEMBLY COST REAR SEAT | 723N |
| 32260805 | ASSEMBLY COST SEAT HEATING | 723N |
| 32272972 | LOGISTIC COST FRONT SEAT LAMP LED | 723N |
| 32272974 | LOGISTIC COST FRONT SEAT CONTROL PANEL    (Switch) | 723N |
| 32272975 | LOGISTIC COST FRONT SEAT ECU PSM | 723N |
| 32328704 | LOGISTIC COST FRONT SEAT STRUCTURE. ENDSTOP, STPS SENSOR | 723N |
| 32393858 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM | 723N |
| 32403157 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403158 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403159 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328707 | LOGISTIC COST FRONT SEAT HEADREST | 723N |
| 32403164 | LOGISTIC COST FRONTSEAT HEADREST SPEAK | 723N |
| 32403183 | LOGISTIC COST FRONT SEAT RESTRAINT | 723N |
| 32403161 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403162 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403163 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328706 | LOGISTIC COST FRONT SEAT OWS | 723N |
| 32403175 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403176 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403177 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32403178 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403179 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403180 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32288645 | LOGISTIC COST ARM REST | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32403181 | LOGISTIC COST REAR COMFORT | 723N |
|----------|----------------------------|------|
| 32288643 | LOGISTIC COST STRUCTURE | 723N |
| 32403182 | LOGISTIC COST RS BELT | 723N |
| 32393520 | HARDBACK BCOMP WITH MAP POCKET LH | 723N |
| 32393521 | HARDBACK BCOMP WITH MAP POCKET RH | 723N |
| 32431357 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431358 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431359 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431360 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431361 | UPHOLSTERY,Charcoal Solid LH BACKREST | 723N |
| 32431362 | UPHOLSTERY,Charcoal Solid RH BACKREST | 723N |
| 32431363 | UPHOLSTERY,Charcoal Solid CUSHION | 723N |
| 32431400 | HEAD RESTRAINT Charcoal leather CTR | 723N |
| 32431356 | P519 amrest_Leather perforation charcoal with chamfer | 723N |
| 32467128 | TRIMLIST INNER BOLSTER LH | 723N |
| 32467129 | TRIMLIST INNER BOLSTER RH | 723N |
| 32467130 | TRIMLIST OUTER BOLSTER LH | 723N |
| 32467131 | TRIMLIST OUTER BOLSTER RH | 723N |

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #3

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## PRODUCTION MATERIAL GLOBAL TERMS AND CONDITIONS

**1    DEFINITIONS**

1.1    In the Purchase Agreement, the following definitions apply:

**Affiliate** means a legal entity that, directly or indirectly, Controls, is Controlled by, or is under common Control with a Party. In addition thereto, Affiliates of the Buyer include entities listed in Appendix 1.

**Authority** means a governmental (federal, state or municipal, etc.) agency, authority or administration, including any private entity acting on behalf of such agency, authority or administration, that has a right to investigate or regulate the Goods, the products into which the Goods may be installed, Buyer, Supplier or any of their Affiliates.

**Background IPR** means IPR owned by a Party (or its Affiliates) before entering into force of the Purchase Agreement, or IPR generated by a Party (or its Affiliates) outside the scope of the Purchase Agreement.

**Blanket Purchase Order** means one of the following instruments: (i) production Purchase Order: meaning purchase order used to purchase Goods for serial production, or (ii) nonproduction Purchase Order: meaning a purchase order used to purchase Service Parts or Components.

**BOM** means a list specifying the Components and the quantities of each Component needed to manufacture the Goods.

**Build-To-Print Goods** means Goods supplied by Supplier under the Purchase Agreement in accordance with design specifications provided solely by Buyer.

**Buyer** means the Party that issues a Purchase Order for the Purchase Agreement, or on whose behalf a Purchase Order is issued for the Purchase Agreement.

**Buyer Instruction** means Buyer's specific instructions listed in Appendix 2.

**Buyer-Owned Tooling** shall have the meaning ascribed to it in Section 18.2.1.

**Call-Off** means single or multiple instruction(s) issued in writing (printed or electronic) under a Blanket Purchase Order by Buyer, or on Buyer's behalf, to Supplier to supply a specified quantity of Goods to be delivered at a specified location by a specified date and time. The instruction includes information on binding quantities for actual delivery and on Volume Projections, in accordance with the relevant Buyer Instruction.

**Code of Conduct** means the code of conduct(s) listed in Appendix 3.

**Component** means an individual component, as specified in a BOM, of the Goods.

**Confidential Information** means the terms of the Purchase Agreement and all business, technical, financial and any other information that is provided by the Disclosing Party to the Receiving Party under the Purchase Agreement, or information generated under the Purchase Agreement, excluding information (i) that is or becomes generally available to the public (other than as a result of a disclosure by the Receiving Party, or any Affiliate, agent or consultant for whom the Receiving Party is responsible, in violation of these terms), (ii) that

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

was in the Receiving Party's possession before the Receiving Party received it from the Disclosing Party, (iii) that was or is rightfully disclosed by a third party to the Receiving Party without being subjected to confidentiality obligations, or (iv) that was or is independently developed without use of information disclosed by the Disclosing Party.

**Contract Documents** means the documents as specified in Section 3.3(ii)-(iii).

**Control** means the possession, directly or indirectly, by agreement or otherwise, of (i) at least 50% of the voting stock, partnership interest or other ownership interest, or (ii) the power (a) to appoint or remove a majority of the board of directors or other governing body of an entity, or (b) to cause the direction of the management of an entity.

**Criminal Laws** shall have the meaning ascribed to it in Section 21.5.1(i).

**Defect Trend** means an analysis made by Buyer (i) that is based on a sufficient quantity of actual Non-Conforming Goods, and (ii) that clearly shows that the cumulative number of Non-Conforming Goods (a) continuously and steadily has increased, and (b) is likely to continue to continuously and steadily increase.

**Delay** means the failure by Supplier to deliver to Buyer any relevant Goods by the time and date stated in the relevant Contract Document(s).

**Directed Sub-tier Supplier** means a particular Sub-tier Supplier as stated in Section 11.3.

**Disclosing Party** means the Party disclosing Confidential Information to the other Party under the Purchase Agreement.

**EDI** means electronic data interchange.

**ESOW** means an agreed written document setting out an engineering statement of work with respect to specific Goods, including any services to be performed, a job split between the Parties, final and interim completion dates or gateways and any and all documents referred to in such engineering statement of work.

**Field Service Action** means a recall, service action, extended warranty, safety, maintenance or improvement program, or similar action, involving or relating to Non-Conforming Goods, implemented or performed by Buyer, its Affiliates, dealers or other authorized repair facilities.

**Force Majeure** means a cause or event (including acts of God (such as fire, flood, earthquake, and other natural disaster)), riots, civil disorders, and war or acts of terrorism (whether or not declared as such by a government) beyond the reasonable control of a Party and that is not attributable to such Party's fault or negligence. Strikes, lock-outs or other industrial action or disputes solely related to Supplier, its Affiliates and/or its Sub-tier Suppliers, subcontractors or agents shall not be deemed as events of Force Majeure.

**Foreground IPR** means IPR to such results generated through design or development or other engineering services performed under the Purchase Agreement.

**Framework Purchase Agreement** means the agreement, including any attachments or appendixes thereto, between Buyer (or one of its Affiliates) and Supplier (or one of its Affiliates) that establishes the general terms applicable to Buyer's purchase of Goods from Supplier, under which Buyer and Supplier may enter into single or multiple Purchase Agreements stating the responsibilities and obligations specific to the applicable Goods.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**General Purchase Agreement Documents** means these terms and Buyer Instructions, including any updates thereof as updated and/or issued in accordance with these terms by Buyer from time to time, which form part of the Purchase Agreement.

**Goods** means the goods and services to be supplied by Supplier under the Purchase Agreement, including: (i) goods used in serial production, (ii) goods used as service parts or as accessories, (iii) components of goods referred to in items (i)-(ii), (iv) prototypes, (v) raw materials, (vi) software, irrespective if embedded in physical goods or supplied separately, (vii) Tooling, (viii) packaging in relation to goods referred to in items (i)-(vii), and (ix) design and development or other engineering services or any processing or assembly services in relation to goods referred to in items (i)-(viii).

**Incoterms** means the rules of the version of Incoterms as stated in the relevant Buyer Instruction.

**IPR** means all forms of intellectual property rights in any country or region, including patents, copyrights, design, and all other intellectual property rights of a similar nature (whether or not registrable, or registered or applied for registration), excluding Trademarks.

**Level One Materials** means Supplier's technical information categorized in accordance with Section 10.2.2.

**Level Two Materials** means Supplier's technical information categorized in accordance with Section 10.2.2.

**Listed Person** means (i) any individual, company, entity or organization designated for trade sanctions or export control restrictions on a list published by the EU, US, UN or other relevant country or authority, or otherwise subject to such trade sanctions or export control restrictions, and (ii) companies, entities or organizations that are owned 50% or greater by any combination of persons stated in item (i), or controlled by such persons.

**Losses** means all losses (including liabilities, damages, expenses and costs, as well as fees for attorneys, experts and other consultants, settlement costs and judgments) incurred by Buyer or any of its Affiliates, and their directors, officers, and employees.

**Lump-Sum Purchase Order** means one of the following instruments: (i) prototype Purchase Order: meaning purchase order used to purchase prototype Goods (except Tooling), (ii) prototype Tooling Purchase Order: meaning purchase order used to purchase prototype Tooling, (iii) production Tooling Purchase Order: meaning purchase order used to purchase Tooling for production of Goods for serial production, or (iv) engineering services Purchase Order: meaning purchase order used to purchase design and development or other engineering services or any processing or assembly services in relation to Goods.

**Minor Nonconformity** means a nonconformity in Non-Conforming Goods that does not, or that only in an immaterial way, adversely affect the performance, durability, interchangeability, reliability, maintainability, effective use or operation, weight or appearance of the Goods or of the product which the Goods are to be incorporated into or operate with.

**Non-Conforming Goods** means Goods that do not conform in all respects to the requirements stated in Sections 14.1 and 14.2.

**Offer** shall have the meaning ascribed to it in Section 3.1.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**Parties** means Buyer and Supplier and **Party** means either Buyer or Supplier.

**Personal Data** means all information that a Party obtains from the other Party as a result of the Purchase Agreement (i) relating to an identified or identifiable natural person, including the other Party's employees and customers, that directly or indirectly can identify that person, or (ii) deemed personal data according to applicable national, federal, state, and international laws and regulations now or hereafter in effect.

**Purchase Agreement** means the agreement for the purchase of Goods between Buyer and Supplier entered into pursuant to Section 3.2, including the Contract Documents.

**Purchase Order** means an instrument issued in writing (printed or electronic) by Buyer, or on Buyer's behalf, to Supplier for the purchase of Goods, that instrument being either (i) a Blanket Purchase Order, that will allow Buyer to issue Call-Offs during the term of such Blanket Purchase Order, or (ii) a Lump-Sum Purchase Order, that encompasses an order for the specified Goods.

**Quality Reject** means an instrument issued in writing (printed or electronic) by Buyer, or on Buyer's behalf, to Supplier upon (or in relation to) receipt of Goods that are subject to a Blanket Purchase Order and that are (i) received before or after the delivery date, (ii) in excess of the quantity in the Purchase Order(s) or Call-Off(s), or (iii) Non-Conforming Goods.

**Receiving Party** means the Party receiving Confidential Information from the other Party under the Purchase Agreement.

**Returnable Containers** means returnable racks, bins and other containers that are owned by Buyer or its Affiliates.

**Service Part** means Goods used as an interchangeable part (including both repairable and consumable parts) for the service or repair of Buyer products.

**Sub-tier Supplier** means a member of Supplier's direct or indirect sub-tier supply base (including Directed Sub-tier Suppliers and subcontractors of Supplier) that provides goods and/or services in connection with the Goods.

**Supplier** means the Party that accepts a Purchase Order for the Purchase Agreement.

**Supplier-Owned Tooling** shall have the meaning ascribed to it in Section 18.3.1.

**Supplier Portal** means the website(s) listed in Appendix 4 or such other website(s) as Buyer has informed Supplier in writing.

**Systematic Non-Conformity** means a nonconformity in the Goods (i) attributable to the same, or substantially the same, root cause, (ii) that occurs, or is likely to occur, at a statistically significant level, during the Warranty Period, and (iii) that causes the Goods to be Non-Conforming Goods. A single Minor Nonconformity will not be deemed a Systematic Non-Conformity, provided however that multiple Minor Nonconformities may, when considered collectively, be deemed a Systematic Non-Conformity.

**Technical Specification** means the drawings, specifications, samples, designs, instructions, standards, technical, functional, performance or property requirements or other technical or commercial information relating to the design, development, manufacture, packaging and labelling, delivery, installation, assembly, testing and/or use of the Goods that have

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

been furnished, specified or approved by Buyer, including information in a part folder, ESOW, temporary part deviation or temporary change approval, as applicable.

**Tooling** means the tools, including prototype and production tools, dies, fixtures, jigs, gauges, molds, patterns, including modifications, refurbishments and replacements, specifically manufactured or adapted for manufacture or quality control of Goods.

**Trademarks** means intellectual property rights in trademarks (including part numbers that are trademarks), service marks, trade names, business names or company names, in each case whether registered or unregistered, anywhere in the world, including all applications, registrations, renewals and the like, to the extent such rights are enforceable against a third party.

**Use** means to make, have made, use (including in a process), import, reproduce, prepare derivative works, develop, distribute to third parties, publicly perform and display, including the right to have a third party carry out such activities on the relevant Party's behalf.

**Volume Projections** means Buyer's estimates, forecasts or projections of its future volume, quantity or capacity requirements for the Goods, primarily as stated in the appendices to the Framework Purchase Agreement or in a Call-Off.

**Warranty Period** means the period that begins on the date the Goods are delivered to Buyer (or a third party designated by Buyer) and expires on the date that is the later of (i) the date on which the applicable period stated in the relevant Buyer Instruction ends, or (ii) the date on which any applicable government requirement covering the Goods ends, or (iii) with respect to Systematic Non-Conformities: 84 months after the Goods are delivered to the end-customer.

**Written Notice** means such notice as specified in Section 28.3.

## 2    GENERAL

2.1    These terms apply to, and form part of, any and all agreements on purchase of Goods by Buyer and its Affiliates, unless specified otherwise in the relevant agreement.

2.2    Buyer and its Affiliates may issue a Purchase Order to Supplier. Further, upon conclusion of a Purchase Agreement, Buyer may purchase Goods from Supplier under that Purchase Agreement. Except for obligations resulting from single or multiple Purchase Orders or Call-Offs, Buyer will not be responsible for any liabilities arising from any Purchase Orders or Call-Offs issued by any of its Affiliates under these terms.

2.3    Nothing in the Purchase Agreement prevents Buyer or any of its Affiliates from engaging others to provide goods or services the same as, or similar to, the Goods.

## 3    CONCLUSION OF PURCHASE AGREEMENT AND CONTRACT DOCUMENTS

3.1    A Lump-Sum Purchase Order constitutes an offer by Buyer to purchase Goods from Supplier. A Blanket Purchase Order constitutes an offer by Buyer to purchase Goods from Supplier if a Call-Off is issued thereunder for quantities of Goods as stated therein for actual

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

delivery. That Lump-Sum Purchase Order, or that first Call-Off under a Blanket Purchase Order, as the case may be, shall hereinafter be referred to as the Offer.

3.2 A Purchase Agreement is concluded when Supplier accepts the Offer. This occurs upon the earlier of:

   (i)     Supplier beginning work or performance pursuant to the Offer,

   (ii)    the date on which Buyer has received Supplier's notice of its acceptance of the Offer,

   (iii)   20 working days from the date of issue of the Offer, provided that Supplier has not, before the end of such time-period, notified Buyer in writing that it does not accept the Offer, and provided further that Buyer has not, in the absence of any acceptance from Supplier as stated in (i)-(ii), within 20 working days from the date of issue of the Offer revoked the Offer or relevant Blanket Purchase Order (such right of revocation being a right of Buyer, not an obligation, and shall, if used, be made without incurring any liability towards Supplier).

3.3   The following will apply upon conclusion of a Purchase Agreement:

   (i)     Supplier shall provide or manufacture, sell and deliver Goods, all in accordance with the terms stated in the Purchase Agreement,

   (ii)    the following terms will form part of the Purchase Agreement:

      (a)     the appendices to the Framework Purchase Agreement, to the extent such Framework Purchase Agreement is duly signed by the Parties,

         a.

      (b)     these terms, if no framework Purchase Agreement has been signed,

      (c)     the terms in all documents referenced or otherwise stated in these terms and further referenced or otherwise stated in such documents, including:

         a.     the Code of Conduct,

         b.     Buyer Instructions, to the extent such are published on Supplier Portal at the date of the conclusion of the Purchase Agreement, or subsequently published pursuant to the procedure stated in Section 7.1,

         c.     Purchase Order(s), to the extent such are issued by Buyer in accordance with these terms,

         d.     Call-Off(s), to the extent such are issued by Buyer in accordance with these terms, and

         e.     Technical Specification(s), or other supporting engineering or technical documents, to the extent such other documents are agreed by Buyer and Supplier in accordance with these terms,

   (iii)   certain documents stated in Section 3.3(ii) including the Code of Conduct, Buyer Instructions, Buyer standards, Buyer customer specific requirements or third party standards, are available online (at Buyer website, Supplier Portal, Buyer corporate standard website or such other source that publishes Buyer customer specific requirements or third party standards) and are incorporated herein, and

(iv)     each Purchase Agreement is a stand-alone agreement between the Parties to such Purchase Agreement and the conclusion of any Purchase Agreement by Buyer shall not obligate any Affiliate of Buyer to enter into any Purchase Agreement, each such Purchase Agreement to be entered into at the sole discretion of Buyer or that Affiliate.

3.4     Subject to Section 7.1.3, if there are any inconsistencies or contradictions between the terms of the Contract Documents, the documents will take precedence in the numerical order stated in Section 3.3 (ii), provided that the Technical Specification shall be deemed included in Section 3.3(ii)e (i.e. not in 3.3(ii)(a)) .

3.5     No terms in Supplier's quotation, acknowledgment, confirmation accepting the Purchase Order, Call-Off, invoice, specification, or similar document will form part of the Purchase Agreement. Supplier hereby expressly waives any right to rely on such terms.

## 4     TERM OF THE PURCHASE AGREEMENT

4.1     The Purchase Agreement will enter into force on the date stated on the relevant Purchase Order.

4.2     Subject to Section 24.4.1, the Purchase Agreement under a Blanket Purchase Order will be valid until terminated as stated in Section 24.

4.3     Subject to Section 24.4.1, the Purchase Agreement under a Lump-Sum Purchase Order will, unless terminated as stated in Section 24, be valid until Buyer's and Supplier's completion of their respective supply and payment obligations under that Purchase Agreement.

## 5     CALL-OFFS, CAPACITY AND QUANTITIES

5.1     Unless otherwise stated in a Blanket Purchase Order, Buyer may during the term of the Purchase Agreement issue Call-Offs on the terms stated in the Purchase Agreement. Supplier may only reject Call-Offs that fail to conform to the Purchase Agreement. If any Call-Off fails to conform to the Purchase Agreement, Supplier shall immediately notify Buyer, otherwise, the Call-Off will be deemed accepted by Supplier.

5.2     Supplier shall have sufficient production capacity to manufacture and supply to Buyer the volume of Goods in a given period, which at any given time corresponds to the requirements stated in the appendices to the Framework Purchase Agreement as they may be amended in accordance with Section 7.3.

5.3     Supplier shall manufacture and supply to Buyer the volumes of Goods at those times as stated in Call-Offs that conform to the Purchase Agreement.

5.4     Buyer will not be required to purchase the quantities stated in the Volume Projection. Buyer's purchase obligation is only as stated in the relevant Lump-Sum Purchase Order or in the relevant Call-Off as stated for actual delivery, as the case may be.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**6     DESIGN AND DEVELOPMENT OF GOODS**

6.1     If the Purchase Agreement comprises design and development or other engineering services as part of the Goods to be delivered by Supplier, such services will be stated in one or more Technical Specification(s) issued by Buyer to Supplier. Supplier shall exercise reasonable diligence and apply the best engineering practices in the industry to comply with the relevant Technical Specification(s). Each Party shall cooperate with the other Party for the timely achievement of final and interim completion dates or gateways stated in the Technical Specification(s). Supplier acknowledges that completion dates or gateways for deliverables are of the essence for Buyer.

6.2     When Supplier has completed to the reasonable satisfaction of Buyer all design, development or other engineering services relating to the Goods stated in the Technical Specification(s), Buyer will notify Supplier of that completion and its approval of the Technical Specification for such Goods. Supplier acknowledges that such completion and approval are conditions for any issue of a Blanket Purchase Order with respect to the relevant Goods, such to be issued at the sole discretion of Buyer.

6.3     Supplier acknowledges that all information and documentation provided by Buyer in, or in connection with, any agreed Technical Specification(s), including tests required by Buyer, are solely provided to ensure the completion of a final Technical Specification. All such information and documentation, or any approvals or confirmations given by, or on behalf of, Buyer in connection therewith, including under Section 6.2, will not limit or affect any of the warranties stated in Section 14. Supplier expressly acknowledges that Buyer will, notwithstanding any information or documentation furnished by Buyer relating to the Goods, rely on the particular skill and knowledge base of Supplier to develop and supply Goods which fulfil the warranties set out in Section 14, and that Supplier is responsible for, at its own expense, identifying and conducting such tests as Supplier may deem necessary to achieve such fulfilment.

**7     AMENDMENTS, MODIFICATIONS, DEVIATIONS AND CHANGES**

*7.1     Amendments, modifications and deviations to the Purchase Agreement*

7.1.1     Buyer may amend the General Purchase Agreement Documents, either as annual amendment(s) or as other amendment(s) as stated in this Section 7.1.1. Any amendment(s) of the General Purchase Agreement Documents will be published on Supplier Portal as follows:

     (i)     in case of annual amendment(s): on or around 1 May and will be effective as of the following 1 July, or a date stated by Buyer that is not earlier than 45 days after publication, and

     (ii)     in case of other amendment(s): on the date stated by Buyer in Written Notice to Supplier, including the date on which such other amendment(s) become effective, however not earlier than 45 days after the date of that notice.

7.1.2     If Supplier determines that it would not be possible for Supplier to comply with any amendment published by Buyer in accordance with Section 7.1.1 and Supplier gives Buyer a Written Notice of its objection no later than two weeks after the publishing date of such amendments on Supplier Portal, then

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(i)    Supplier will not be bound by the amendment(s) to which Supplier has objected and the relevant term(s) in the General Purchase Agreement Document stated in Supplier's notice will remain unchanged in the Purchase Agreement(s),

(ii)    all other amendments will become effective as stated in Section 7.1.1, and

(iii)    Buyer may terminate the Purchase Agreement in accordance with Section 24.1.1.

7.1.3    Notwithstanding Section 3.4

    (i)    any amendment to the Purchase Agreement not made in accordance with this Section 7 will be binding on Buyer only if that amendment is signed by authorized representatives of the Parties, and

    (ii)    any amendment or waiver of the General Purchase Agreement Documents will be binding on Buyer only if it is

        (a)    approved by the Senior Vice President(s) for Procurement of that Buyer group

            (as listed in Appendix 1) affected by that amendment or waiver, and

        (b)    stated that it is amending or waiving a term of the General Purchase Agreement Documents.

7.2    *Changes to the Goods etc.*

7.2.1    Supplier shall not make, and shall cause its Sub-tier Suppliers not to make, any changes to Goods, including changes to the Technical Specification and/or the design, functionality, performance or properties of the Goods or any changes to the manufacturing process of Goods, including a transfer of any portion of the design, manufacturing, or assembly process to a different facility or to different location within the same facility, without Buyer's prior written consent.

7.2.2    Buyer may request changes to Goods during the term of the Purchase Agreement, including changes to the Technical Specification and/or the design, functionality or performance of the Goods. Such requests will be submitted to Supplier in writing. Supplier shall within ten working days after the date of Buyer's request, or within such period as the Parties have agreed in writing, submit to Buyer a quotation. If within that time Supplier does not submit a quotation to Buyer, Supplier will be deemed to have accepted a change requested by Buyer.

    Supplier's quotation shall be submitted in the same way and format as Supplier's (or any of its Affiliates') initial quotation submitted to Buyer (or any of its Affiliates) prior to entering into the Framework Purchase Agreement for the business including the Goods. Supplier's quotation shall state costs in accordance with the agreed cost structure applicable for the Purchase Agreement. Further, Supplier's quotation shall include details of the possible effects of that change requests, including

    (i)    the schedule for completing the engineering activities required by the requested change(s),

    (ii)    any effect on quality, unit pricing or delivery time, and

    (iii)    any other factors that Supplier believes to be relevant.

If Supplier concludes that the possible effects are substantial, Supplier shall clearly state such substantial effects in the quotation.

7.2.3    If Supplier submits a quotation to Buyer in accordance with Section 7.2.2, the Parties shall negotiate in good faith the cost and timing impact of Buyer's change request and Supplier shall use reasonable efforts to meet Buyer's requests. Unless otherwise notified by Buyer, the Parties shall continue to perform their respective obligations under the Purchase Agreement pending agreement regarding that change request. If the Parties are unable to reach such an agreement in 20 working days from when Buyer received Supplier's quotation, Buyer may remove the affected Goods from the scope of the Purchase Agreement as of the date stated by Buyer, without affecting the remaining Goods under the Purchase Agreement and without incurring any liability to Supplier.

*7.3    Changes to capacity requirements*

7.3.1    Buyer may request increases to the capacity requirement stated in Section 5.2 during the term of the Purchase Agreement. Such requests will be submitted to Supplier in writing or stated in a Call-Off. Supplier shall within ten working days after the date of Buyer's request, or within such period as the Parties have agreed in writing, submit to Buyer a quotation. If within that time Supplier does not submit a quotation to Buyer, Supplier will be deemed to have accepted a change requested by Buyer.

Supplier's quotation shall be submitted in the same way and format as Supplier's (or any of its Affiliates') initial quotation submitted to Buyer (or any of its Affiliates) prior to entering into the Framework Purchase Agreement for the business including the Goods. Supplier's quotation shall state costs in accordance with the agreed cost structure applicable for the Purchase Agreement. Further, Supplier's quotation shall include details of the possible effects of that change request, including

(i)    the schedule for completing the activities required by the requested change(s),

(ii)    any effect on quality, unit price and delivery, and

(iii)    any other factors that Supplier believes to be relevant.

If Supplier concludes that the possible effects are substantial, Supplier shall clearly state such substantial effects in the quotation.

7.3.2    If Supplier submits a quotation to Buyer in accordance with Section 7.3.1, then Section 7.2.3 shall apply with necessary conforming changes.

*7.4    Changes to Purchase Orders*

7.4.1    If Buyer elects to terminate a Purchase Order, in whole or in part, the Parties' respective rights and obligations will be as stated in Section 24.

## 8    PACKAGING, MARKING, LABELLING, SHIPPING, DELIVERY

8.1    Supplier shall comply with Buyer's requirements for packing, marking, labeling, and shipping as stated in the relevant Buyer Instruction.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

8.2     For Goods to be timely delivered, they must be delivered in the quantity, and at the time, date and location, stated in the Purchase Order or Call-Off. If necessary for timely delivery, Supplier shall at its expense use expedited delivery. Accordingly, Supplier recognizes that time stipulated for delivery and correct quantity are of the essence.

8.3     This Section 8.3 applies to Supplier's that supply Goods which require delivery of specified Goods at a specified time and in the specified sequence immediately before they are required for serial production. Consistent with Buyer group's use of just-in-time and just-insequence manufacturing principles, Supplier shall

        (i)     arrange for standby personnel to appear at Buyer's production facility within reasonable time (taking into account the urgency of solving any Buyer production issues related to the Goods), and

        (ii)    ensure at least one person of the standby personnel speaks English (or such other language as agreed with Buyer).

8.4     The agreed delivery term shall be interpreted in accordance with Incoterms. Unless otherwise stated in the relevant Purchase Order or, in the Call-Off, the delivery term shall be as stated in the relevant Buyer Instruction.

8.5     Title to Goods will pass to Buyer at the same time as the risk passes to Buyer in accordance with Section 8.3, except that title to Tooling will pass to Buyer in accordance with Section18.2.1.

8.6     Buyer will not be required to inspect or test the Goods upon delivery or before use of the Goods.

## 9     QUALITY

9.1     Supplier shall work to continuously improve quality in its manufacture, production, and distribution of Goods. Supplier shall comply with Buyer's quality-assurance processes, inspections, and standards in effect at any given time for suppliers providing goods or services similar to the Goods. These standards include Buyer's quality program, ISO/TS 16949, and/or IATF 16949 (as applicable), including Buyer customer-specific requirements for IATF, ISO 15504, ISO 14001, and Buyer's supplier performance rating program.

9.2     Buyer may initiate programs designed to improve its products, including improve quality, increase customer satisfaction, efficiently reduce environmental impact, and reduce costs. Supplier shall participate in any such initiatives to the extent requested by Buyer.

## 10     IPR, SUPPLIER'S TECHNICAL INFORMATION AND TRADEMARKS

### 10.1     Suppliers Use of Buyer's IPR

10.1.1  Supplier may use the IPR, Trademarks, and Confidential Information of Buyer and its Affiliates only when performing under the Purchase Agreement. Accordingly, Supplier or its Affiliates may not without Buyer's written consent use Buyer and its Affiliates' IPR, Trademarks and Confidential Information for the production and/or supply of any goods or services to any third party or for any other purpose, except for providing a limited

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

sublicense to Sub-tier Suppliers for the sole purpose of providing Goods to Buyer under the Purchase Agreement.

10.2    *Buyer's Use of Supplier's Technical Information*

10.2.1    Supplier shall provide Buyer and its Affiliates with technical information Buyer needs to install, assemble, and otherwise use the Goods. Such technical information must comply with all standards of Buyer and its Affiliates in effect at any given time (including standards for computer-aided design, drafting, and approval). That information includes:

    (i)    information necessary to support Buyer's and its Affiliates' engineering release systems, as detailed in said standards,

    (ii)    package and installation drawings with functional requirements,

    (iii)    information required to support Buyer's and its Affiliates' obligations under law to provide information to others (including anyone performing service and repair), and

    (iv)    if the Goods include software

        (a)    a list that complies with the relevant Buyer Instruction stating the software components, licenses and copyright licensors or owners of the software, and

        (b)    source code to software components, that are subject to license terms that require distribution of that source code, if any.

10.2.2    Supplier and Buyer shall negotiate in good faith to categorize Supplier's technical information as Level One Materials or Level Two Materials and, if appropriate, itemize them in a Technical Specification or other written document.  For the avoidance of doubt, the information to be provided pursuant to Section 10.2.1 will be categorized as Level One Materials irrespective of any itemization in a Technical Specification or other written document.

10.2.3    Buyer may use or disclose Level One Materials without restriction, including sharing Level One Materials with anyone, regardless of whether those Level One Materials are marked Confidential, Proprietary or similarly, except that Buyer may not make or have made products

    (i)    that incorporate any Supplier patent that constitutes part of Supplier's Background IPR, and

    (ii)    bear one or more of Supplier's or its Affiliates' Trademarks.

10.2.4    Level Two Materials constitute Confidential Information.

10.2.5    If Supplier supplies software for use with the Goods, then the machine code of that software will constitute Level One Materials and, if not otherwise agreed, the source code of that software will constitute Level Two Materials.

10.3    *Ownership of Foreground IPR*

10.3.1    The Party performing work that creates Foreground IPR will own that IPR.

10.3.2    If in performing work jointly Buyer and Supplier create Foreground IPR and it is not possible to determine the extent to which each was responsible for that work or it is not possible to distinguish the contributions of Supplier from those of Buyer and Buyer and Supplier have

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

not agreed in writing on ownership of the related Foreground IPR, Buyer and Supplier will jointly own equal undivided shares in such Foreground IPR. Buyer and Supplier and their respective Affiliates will have the worldwide, perpetual, sub-licensable, and irrevocable right to Use such Foreground IPR to market and sell goods or services, independently of and without requiring consent from or the need to account to the other Party with whom such Foreground IPR is jointly owned and without payment of compensation to the other Party.

*10.4    Licenses to Supplier IPR*

10.4.1    Supplier hereby grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up license to copyright embodied in

    (i)    technical information, and

    (ii)    software,

provided to Buyer under the Purchase Agreement.

The copyright license granted hereunder includes the right

    (i)    to reproduce and prepare derivative works, and

    (ii)    to distribute to third parties, publicly perform and display, provided however, that this item (ii) applies only to Level One Materials

to the extent required for Buyer and its Affiliates, dealers and repairers to install, assemble, service, repair and otherwise use the Goods, and includes the right to have a third party carry out such activities on its behalf.

The copyright license granted hereunder is valid for the term during which such copyright is protected under law.

10.4.2    Except as stated in Sections 10.4.1, 10.4.5 and 18.2.1, and if not otherwise agreed, in these terms Supplier is not granting to Buyer or any of its Affiliates any licenses to its or its Affiliates' Background IPR.

10.4.3    If the Purchase Agreement contemplates Supplier or one or more Sub-tier Suppliers performing design and development or other engineering services and Buyer pays, or otherwise compensates Supplier for such services, by direct payment or by issue of a Purchase Order or Call-Off for the relevant Goods or otherwise, then Supplier hereby grants, and shall cause its Affiliates and Sub-tier Suppliers to grant, Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up license to Use and to market and sell goods or services that incorporate the relevant Foreground IPR of Supplier, its Affiliates or Sub-tier

Suppliers. The license granted hereunder is valid for the term during which such Foreground IPR is protected under law.

10.4.4    In performing services described in Section 10.4.3, Supplier shall promptly after creation provide Buyer with a report on any relevant Foreground IPR that is registerable under applicable law. To the extent Supplier has incorporated its or its Affiliates' or Sub-tier Supplier's registerable IPR in the Goods and an application to register that IPR is filed after Supplier starts performing those services, that IPR will be deemed to constitute relevant Foreground IPR licensed under Section 10.4.3.

10.4.5    Supplier hereby grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

permanent, paid-up license under any IPR that is owned or controlled by Supplier or its Affiliates (now or in the future) necessary to remanufacture and/or have remanufactured, but not to have newly manufactured, the Goods. Upon Buyer's request the Parties will negotiate in good faith any support to be provided by Supplier to Buyer for such activities. Section 19 applies for supply of Components, if any.

### 10.5    Use of software

10.5.1    Unless Buyer has consented in writing, Supplier shall not incorporate into the Goods any software, whether owned by Supplier or anyone else, that subject Buyer to license terms other than these terms. Buyer's consent in accordance with this Section will not affect any Supplier warranty or liability under the Purchase Agreement.

10.5.2    A Party shall not reverse engineer, reverse compile, disassemble or otherwise attempt to derive the source code to any software that has been provided as machine code by the other Party.

### 10.6    Claims of infringement – Supplier's indemnification

10.6.1    Supplier shall indemnify Buyer, its Affiliates, and their respective directors, officers, and employees of and from any and all Losses arising out of any claim of infringement of IPR or Trademarks, or misappropriation of third party confidential information, brought against Buyer, its Affiliates, or their respective directors, officers, or employees relating to the sale, use or handling of the Goods

(i)      alone,

(ii)     in combination by reason of their content, design or structure, or

(iii)    in combination with Supplier's recommendations.

10.6.2    Supplier's indemnification obligations under Section 10.6.1 will apply even if Buyer or its Affiliates have furnished a portion of the design of the Goods and/or specifies all or a portion of the processing of the Goods used by Supplier. Supplier's indemnification obligations will however not apply with respect to the design of Build-To-Print Goods.

10.6.3    If a claim of infringement or misappropriation is brought against Buyer, its Affiliates, or their directors, officers, or employees or other third parties (including dealers or importers), Buyer shall give Supplier notice thereof without undue delay. Buyer's failure to provide such notice will not relieve Supplier's indemnification obligations but will only result in a reduction of Supplier's indemnifications obligations, however, only if, and only to the extent, Supplier is actually prejudiced by that failure. Upon such notice, Supplier shall, at its

own cost and expense, take control of the defense and investigation of such claim, save that Buyer may, at its own cost and expense, employ and engage its own attorney(s) to cooperate with Supplier to participate in, handle and defend the same. Further, Buyer shall

(i)      provide control to Supplier to defend and settle the claim at Supplier's discretion,

(ii)     not agree to any liability, infringement or misappropriation, and

(iii)    agree to co-operate, at Supplier's expense, in good faith with Supplier in the defense as Supplier may reasonably request.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Supplier shall continuously inform Buyer of the development of any negotiations and proceedings. Supplier shall not enter into any settlement that involves any responsibility, commitment or other obligation of Buyer, its Affiliates, or their directors, officers, or employees or other third parties without the prior written consent of Buyer.

## 11    SUB-TIER SUPPLIERS

11.1    Supplier shall require all Sub-tier Suppliers to enter into written agreements with Supplier obligating the Sub-tier Suppliers, when acting in their capacity as Sub-tier Suppliers, to conduct themselves in a way that is consistent with the terms of the Purchase Agreement, including to undertake each action that is required of Supplier with regard to such Sub-tier Supplier under these terms. Supplier will be responsible for any and all actions, omissions, and defaults of any Sub-tier Supplier as if they were the actions, omissions, or defaults of Supplier.

11.2    Upon Buyer's request, Supplier shall

(i)     confirm to Buyer in writing that all Sub-tier Suppliers have entered to written agreements with Supplier in accordance with Section 11.1, and

(ii)    enforce Supplier's rights under such agreements for the benefit of Buyer.

11.3    At the written request of Buyer, Supplier shall use a Directed Sub-tier Supplier as Supplier for the goods and/or services stated in that request. Buyer shall also have the right to bring any claims against a Directed Sub-tier Supplier for any non-conforming goods and/or services supplied by that Directed Sub-tier Supplier, and Supplier shall procure that Buyer has such a right, unless the subject matter of the claim is covered by a separate agreement by Buyer and the relevant Directed Sub-tier Supplier.

11.4    The subcontracting of any work to Sub-tier Suppliers will not relieve Supplier from any of its obligations under the Purchase Agreement, except that Supplier shall not, subject to the fulfilment of its obligations stated in this Section 11, be responsible for any NonConforming Goods if such non-conformance is solely attributable to actions, omissions or defaults of a Directed Sub-tier Supplier.

## 12    CONFIDENTIALITY

12.1    Receiving Party shall use reasonable care to treat Confidential Information of Disclosing Party as confidential and shall not directly or indirectly disclose the Confidential

Information, in whole or in part, to any third party, except as explicitly stated in the Purchase Agreement. "Reasonable care" is the standard of care that the Party holding the information would use in protecting the confidentiality of its own confidential information.

12.2    Receiving Party may share Confidential Information of Disclosing Party with its Affiliates, consultants, Sub-tier Suppliers, contractors, experts, and agents, on condition that the person or entity with whom or which the information is being shared has agreed in writing to keep that information confidential on terms substantially similar to those stated in this Section 12. Notwithstanding the foregoing, Supplier shall obtain the prior written consent of Buyer before Supplier (or any of its Affiliates) shares any Buyer (or Directed Sub-tier

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Supplier) Confidential Information with anyone that manufactures or distributes motor vehicles or otherwise directly or indirectly competes with Buyer or the Directed Sub-tier Supplier, as the case may be, anywhere in the world.

12.3    Receiving Party may disclose Confidential Information of Disclosing Party if such disclosure is required by

(i)    law,

(ii)    a decision of an Authority to which Receiving Party is subject,

(iii)    any judicial or arbitral proceeding, or

(iv)    any securities exchange,

if the disclosure is limited to only Confidential Information required to be disclosed and that Receiving Party notifies the Disclosing Party in advance and uses reasonable efforts to obtain confidential treatment of such Confidential Information.

12.4    Supplier acknowledges that some of Buyer's and its Affiliates' electronic systems are designed for collaboration and sharing information among multiple parties, including other suppliers. Buyer recommends that Supplier does not enter Supplier Confidential Information into any electronic system of Buyer or any of its Affiliates unless Buyer or any of its Affiliates has provided Written Notice to Supplier that such system is configured to keep confidential any information that is entered into it. Otherwise, Buyer will not be required to treat as confidential the information entered into such electronic systems.

## 13    PRICE AND PAYMENT TERMS

13.1    The price for the Goods will be that stated in the Purchase Order and will include storage, packaging, handling, duties, if applicable, fees, and taxes (except for VAT and sales tax) in the country of origin, unless otherwise stated in the relevant Buyer Instruction. That price will remain in effect throughout the term of the Purchase Agreement, except for any changes mutually agreed to by the Parties in writing.

13.2    For Supplier's invoices to be valid, they must comply with the relevant Buyer Instruction. If required by Buyer and permitted in accordance with applicable legislation of both Buyer and Supplier, the Parties agree to apply self-billing, and Supplier accepts the terms of that self-billing agreement as stated in the relevant Buyer Instruction.

13.3    The time allowed for payment of Supplier invoices is as stated in the Purchase Order or the relevant Buyer Instruction.

13.4    Supplier shall separately show on its invoice all items of the total amount owed other than the price of the Goods. Supplier shall provide Buyer documents and information evidencing those items.

13.5    Unless prohibited by applicable law, Buyer may without notifying Supplier set off any Losses against Supplier against any performance or payment due to Supplier. Buyer will use reasonable efforts to give Supplier a Written Notice to enable the Parties to have good faith negotiations before making a set off.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

13.6    Buyer and Supplier shall cooperate to reduce the cost to Supplier of producing Goods, improve the quality of Goods, and make manufacture and assembly of Goods more efficient. Buyer and Supplier shall negotiate in good faith reducing the price Supplier charges Buyer for Goods to reflect any reduction in the cost to Supplier of producing Goods.

13.7    If another supplier offers Buyer goods equivalent to Goods (i.e. meaning goods that conform to a specification that is equivalent to the Technical Specification) at a total cost lower than the total cost of the same volume of Goods and Buyer notifies Supplier of that fact, then either

   (i)    effective no later than 60 days after it receives that notice, Supplier shall reduce the price it charges Buyer for Goods to match that lower total cost, or

   (ii)    Buyer may either

      (a)    terminate the Purchase Agreement, in whole or in part, effective no sooner than 60 days after Buyer notifies Supplier that it wishes to so terminate the Purchase Agreement, or

      (b)    purchase from that other supplier the equivalent goods, in which case any Buyer obligation to purchase a specified volume of Goods stated in a Purchase Order or Call-Off will be reduced accordingly effective 60 days after Buyer's notice to Supplier under this Section 13.7.

Buyer is not required to reveal to Supplier the identity of any such other supplier.

## 14    WARRANTY

14.1    Supplier warrants that the Goods will:

   (i)    conform in all respects to the agreed or approved Technical Specification, if issued,

   (ii)    comply with all laws of the countries in which the Goods, or the products into which the Goods are to be incorporated, are to be sold,

   (iii)    be free from faults in design, even if the design has been approved by Buyer,

   (iv)    be free from faults in title, materials and workmanship,

   (v)    be suitable for their intended use by Buyer (i.e. use in or in relation to a motor vehicle for sale and use by Buyer, its Affiliates and its customers in various territories throughout the world), taking into account the specified performance in the assembly, system, subsystem and vehicle location specified by Buyer and the

      environment in which the Goods are to perform or would reasonably be expected to perform, and

   (vi)    be free from any traces of such prohibited materials or substances as stated in Buyer Instruction referenced in Section 21.2.3.

14.2    In addition to the warranties provided under Section 14.1, Supplier warrants, with respect to any services to be provided under the Purchase Agreement as part of the Goods, that it will perform such services in accordance with the Technical Specification(s), if issued, and in a good and workmanlike manner, free from faults, exercising the knowledge, skill, and care

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

of an expert in the performance of similar services but in no event less than reasonable level of knowledge, skill and care and using competent, suitable experienced and properly trained, certified, licensed and skilled personnel.

14.3    Supplier will be liable for Non-Conforming Goods where the nonconformity is discovered or occurs during the Warranty Period, provided however that such time limitation shall not apply for such Non-Conforming Goods

(i)     that may cause or has caused damage or poses a significant threat of damage to property or to the health or safety of any person, or

(ii)    that result in a Field Service Action that Buyer or its Affiliates reasonably determine must be performed, either mandated by or voluntarily agreed upon by Buyer or its Affiliates, to comply with law or any requirement of an Authority.

14.4    The warranties by Supplier stated in this Section 14 shall survive any inspection, testing, delivery or acceptance of, or payment by Buyer for, the Goods.

14.5    The warranties by Supplier stated in this Section 14 are subject to the below limitations.

Supplier shall be under no liability of any Non-Conforming Goods:

(i)     resulting from any design specification provided solely by Buyer with respect to Build-To-Print Goods,

(ii)    resulting from normal wear and tear, willful damage, and negligence outside of Supplier's, or any of its Sub-tier Supplier's, control, or

(iii)   if Buyer fails to notify Supplier of the Non-Conforming Goods within one year of the non-conformance becoming apparent to Buyer. In case of a Systematic NonConformity, a non-conformance shall be deemed apparent to Buyer only when there is a Defect Trend. Supplier will be deemed to have been notified if a notice of NonConforming Goods is made in a Buyer electronic system to which Supplier has or has been offered access.

## 15      SUPPLIER'S LIABILITY FOR NON-CONFORMING DELIVERIES

*15.1    Delays and incorrect quantities*

15.1.1   Supplier shall promptly notify Buyer of

(i)     anything that will or might result in any Delay or Supplier's inability to fulfil the quantities stated in Purchase Order(s) or Call-Off(s), and

(ii)    how Supplier intends to minimize its effect.

15.1.2   Buyer may reject and/or return at Supplier's expense all or part of a delivery of Goods received in excess of the quantity in Purchase Order(s) or Call-Off(s) as stated for actual delivery. If Buyer issues a Quality Reject on such Goods under this Section 15.1.2, Supplier shall be liable to pay Buyer liquidated damages equal to an amount as stated in the relevant Buyer Instruction. The Parties agree that such amounts are not a penalty.

15.1.3   If a Delay occurs, Buyer may

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(i)    terminate, in whole or in part, the Purchase Agreement in accordance with Section 24.1.1 and any agreement with Supplier for purchase of other goods that Buyer does not need because of the Delay, and

(ii)    make substitute purchases from other supplier(s).

15.1.4    Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against all Losses arising out of the Delay.

15.1.5    Without limiting other remedies available to Buyer, if a Delay occurs

(i)    with respect to Goods ordered by Buyer under a Lump-Sum Purchase Order and that Delay is attributable to Supplier or any of its Sub-tier Suppliers, Supplier shall pay Buyer liquidated damages for that Delay equal to the amount of 2% of the total price stated in the relevant Purchase Order for each complete week of delay up to a maximum of 15% of the total price stated in the relevant Purchase Order in the aggregate, or

(ii)    with respect to Goods ordered by Buyer under a Blanket Purchase Order and that Delay is attributable to Supplier or any of its Sub-tier Suppliers, Supplier shall pay Buyer liquidated damages for that Delay equal to an amount as stated in the relevant Buyer Instruction.

The Parties agree that such amounts are not a penalty.

*15.2    Non-Conforming Goods*

15.2.1    Supplier shall promptly notify Buyer of any Non-Conforming Goods of which it has knowledge and any measures that Supplier is taking or proposes taking to remedy or minimize the effect of that nonconformity.

15.2.2    If Supplier delivers any Non-Conforming Goods, Buyer may demand that Supplier either

(i)    performs immediate rectification, or

(ii)    promptly delivers substitute conforming Goods.

If Buyer issues a Quality Reject on such Goods under this Section 15.2.2, Supplier shall pay Buyer liquidated damages equal to an amount as stated in the relevant Buyer Instruction. The Parties agree that such amounts are not a penalty.

15.2.3    If Supplier is unable to perform immediate rectification or deliver substitute conforming Goods in accordance with Section 15.2.2, as the case may be, or if doing so would interfere with Buyer's operations, Buyer may at Supplier's expense

(i)    do whatever is required to repair the Goods, or

(ii)    reject, in whole or in part, the delivery and/or terminate, in whole or in part, the Purchase Agreement in accordance with Section 24.1.1 and any agreement with Supplier for purchase of other goods which Buyer does not need because of the NonConforming Goods, and to make substitute purchases from other supplier(s).

15.2.4    Supplier has a right to perform rectification of Non-Conforming Goods only if Supplier can perform that rectification

(i)    at its premises, or, subject to Buyer's approval, at Buyer's site,

(ii)    without causing disruption or delay to Buyer or its Affiliates processes, and

(iii)   within the deadline established by Buyer.

If Buyer or its Affiliates have started to use any Non-Conforming Goods (including any preassembly, fitment or distribution to third parties) Supplier shall have no right to perform rectification of that Non-Conforming Goods and Buyer will, at its sole discretion, decide what actions to take to perform rectification.

15.2.5   Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against all Losses arising out of the Non-Conforming Goods, including, but not limited to, all Losses arising out of a Field Service Action.

15.2.6   Subject to Section 14.3, Supplier's warranty, as to any Goods that are repaired or replaced in accordance with this Section 15.2, shall

(i)     continue to apply to such Goods for the full remaining balance of the original Warranty Period of the Goods as originally delivered, or

(ii)    apply to such Goods for the Warranty Period applicable for Service Parts,

whichever period is longer.

*15.3    Field Service Actions*

15.3.1   Only Buyer may decide if to conduct a Field Service Action and how to conduct it, whether or not such Field Service Action is

(i)     required by law or an Authority (either mandated by or voluntarily agreed upon by Buyer or its Affiliates), or

(ii)    initiated independent of any Authority for any reason.

15.3.2   If Buyer determines a Field Service Action is necessary to remedy Non-Conforming Goods, Buyer shall promptly inform Supplier, but Buyer's failure to do so will not affect Supplier's liability for Non-Conforming Goods.

15.3.3   If Buyer so elects, Supplier shall pay Buyer up to half of all actual costs which Buyer incurs in connection with a Field Service Action, up to three times the aggregate price under the Purchase Agreement for the Goods that is subject of the Field Service Action, if

(i)     Buyer has determined in good faith that Supplier is likely to be liable for a portion of those costs, taking into account all relevant information then available, including Buyer's and Supplier's assessments of their respective responsibility, and

(ii)    in the 90 days after start of that Field Service Action Buyer and Supplier have not agreed in writing on how to allocate those costs.

For purposes of this Section 15.3.3, actual costs will be limited to the cost of parts and labor (including consultants, advisors and subcontractors) incurred by Buyer and its Affiliates, calculated in accordance with the relevant Buyer Instruction. If Supplier makes an interim payment under this Section 15.3.3, neither Buyer nor Supplier will be deemed to have

(i)     admitted that the interim amount (or the maximum amount) of that Field Service Action determined in accordance with this Section 15.3.3 is the amount for which Supplier is ultimately liable in connection with that Field Service Action, or

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(ii)     waived any right against the other Party relating to those Non-Conforming Goods.

## 16     PROTECTION OF SUPPLY

16.1     Supplier shall promptly notify Buyer of

(i)     any inability on its part, or the part of a Sub-tier Supplier, to perform their respective obligations under the Purchase Agreement, and

(ii)     its breach of the Purchase Agreement.

16.2     Supplier shall maintain a disaster recovery plan that includes emergency back-up capacity and record-protection and recovery. At Buyer's written request, Supplier shall provide Buyer a reasonably detailed description of its disaster recovery plan.

16.3     Supplier shall notify Buyer at least 30 days in advance of expiration of a Supplier collective bargaining agreement or other labor contract and shall promptly notify Buyer of any potential labor dispute involving or affecting Supplier that could affect Buyer's operations or the supply of Goods under the Purchase Agreement. Supplier shall include in any such notice its plan to avoid adverse effects to Buyer's operations or to ensure that Buyer's purchase of Goods will be met without disruption for at least 30 days after expiration of the collective bargaining agreement or labor contract or commencement of that labor dispute. After so notifying Buyer, Supplier shall keep Buyer informed of any changes to that plan and its labor situation.

## 17     WORK ON BUYER PREMISES

17.1     If Supplier performs any work on the premises of Buyer or its Affiliates, or utilizes any property owned or leased by Buyer or its Affiliates (whether on or off the premises of Buyer or its Affiliates), Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against any Losses for damages to any property or injuries (including death) arising out of Supplier's performance of work or use of the property of Buyer or its Affiliates, except for any such liability, claim, or demand arising out of negligence of Buyer, its Affiliates, or their directors, officers, or employees.

## 18     TOOLING

### 18.1     General

18.1.1     Supplier shall at its expense do the following regarding Tooling in its possession, regardless of who owns it:

(i)     maintain it in the condition necessary to produce the Goods, repairing it and replacing it as required by wear-and-tear and damage,

(ii)     properly store it,

(iii)     refrain from comingling it with property owned by Supplier or others,

(iv)     refrain from modifying or replacing it without Buyer's prior written approval,

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(v)     for a period of 15 years following the end of Buyer's serial production for which that Tooling is used, maintain it in the condition necessary for the continued supply of Service Parts and Components under a Blanket Purchase Order. Supplier will no longer be required to maintain such Tooling after that 15-year period has ended, unless the Parties otherwise agree in writing.

18.1.2     Supplier shall enter into a contract with each Sub-tier Supplier under which the Sub-tier Supplier is obligated to maintain Tooling in accordance with terms corresponding to Section 18.1.1.

*18.2     Buyer-Owned Tooling*

18.2.1     If Buyer purchases Tooling from Supplier, title to that Tooling (Buyer-Owned Tooling) will pass to Buyer when Buyer issues a Prototype Tool Order or Production Tool Order for that Tooling and Supplier fabricates or purchases that Tooling, regardless of whether Buyer has paid Supplier for that Tooling. Buyer will not be required to pay for that Tooling until the Tooling has been completed as stated in Section 18.2.8. Upon Buyer's payment for that Tooling, Supplier grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up, sub-licensable license to IPR of Supplier, if any, to use that Tooling only for producing Goods or Components, as applicable, for Buyer and its Affiliates.

18.2.2     Supplier will be responsible for insuring Buyer-Owned Tooling.

18.2.3     Supplier will bear the risk of loss and damage to Buyer-Owned Tooling beyond reasonable wear and tear.

18.2.4     Supplier shall permit, and cause its Sub-tier Suppliers to permit, Buyer to enter Supplier's and its Sub-tier Supplier's premises at any time of the day with no advance notice to inspect, retrieve, or recover Buyer-Owned Tooling and related Supplier records.

18.2.5     At Buyer's written request, Supplier shall promptly release Buyer-Owned Tooling to Buyer or deliver it, including information stated in Section 18.2.7 (if not already delivered) and other material related to that Buyer-Owned Tooling, to Buyer at any location designated by Buyer, properly packed and marked in accordance with the requirements of the carrier selected by Buyer. Buyer shall reimburse Supplier the reasonable cost of so delivering Buyer-Owned Tooling.

18.2.6     When permitted by law, Supplier waives any liens, claims, encumbrances, interests, or other rights that Supplier has with respect to Buyer-Owned Tooling for work performed on that Buyer-Owned Tooling or for any other reason.

18.2.7     No later than when samples of the Goods are produced using Buyer-Owned Tooling, Supplier shall provide Buyer with

(i)     drawings, CAD-data (e.g. 3D-data-models) and other technical information in a format customary in the industry required to install, assemble, maintain, and use that Buyer-Owned Tooling,

(ii)     a complete list of that Buyer-Owned Tooling and a document identifying where it is located, and

(iii)     information on the manufacturer of such Buyer-Owned Tooling.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

18.2.8    Buyer-Owned Tooling will be deemed completed when Buyer has approved it as stated in the relevant Buyer Instruction.

18.2.9    At Buyer's written request, Supplier shall promptly provide Buyer with status reports on construction or acquisition of Buyer-Owned Tooling that identify that Buyer-Owned Tooling and state any subcontractors working on that Buyer-Owned Tooling, the percentage of completion of the Tooling, and the percentage of sunk costs already expended.

18.2.10 Buyer will not be required to accept Buyer-Owned Tooling unless it is meeting the requirements to produce and capable of meeting the Volume Projections for the Goods, including the Service Parts.

18.2.11 Supplier shall mark the Tooling as property of Buyer and as further stated in the relevant Buyer Instruction. Supplier shall not otherwise mark Buyer-Owned Tooling in a way that might confuse or mislead anyone as to who owns that Buyer-Owned Tooling.

18.2.12 Supplier shall not relocate Buyer-Owned Tooling without Buyer's written consent, except

　　　　　(i)     in case of emergency, to safeguard that Buyer-Owned Tooling, and

　　　　　(ii)    for routine maintenance, if Supplier has notified Buyer in advance.

18.2.13 Supplier shall not destroy or scrap Buyer-Owned Tooling without Buyer's prior written consent.

18.2.14 Without Buyer's prior written consent, Supplier may not use Buyer-Owned Tooling to produce goods for anyone other than Buyer and its Affiliates.

18.2.15 Supplier shall not charge Buyer more for Buyer-Owned Tooling than an amount equal to the least of

　　　　　(i)     the maximum purchase price stated in the Production Tool Order,

　　　　　(ii)    Supplier's actual costs of acquiring that Buyer-Owned Tooling from a toolmaker, excluding markup, and

　　　　　(iii)   Supplier's actual costs of fabricating that Buyer-Owned Tooling in accordance with Buyer's guidelines

　　　　　except that if in the Framework Purchase Agreement the purchase price is explicitly stated to be a fixed price, Supplier shall charge Buyer that amount for that Buyer-Owned Tooling.

　　　　　Supplier shall permit Buyer to verify the price of any Buyer-Owned Tooling.

18.2.16 This Section 18.2 shall apply with necessary conforming changes with respect to Returnable Containers and other property that is owned by Buyer and is in the possession or under the control of Supplier for use under the Purchase Agreement.

*18.3    Supplier-Owned Tooling*

18.3.1    Supplier will be responsible for all costs it incurs relating to Tooling owned by Supplier or its Sub-tier Suppliers (Supplier-Owned Tooling).

18.3.2    If the Tooling includes Tooling with an expected life of less than 12 months after the date of start of production using that Tooling, Buyer will procure the first set of that Tooling.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

18.3.3   If Buyer or any of its Affiliates

     (i)     pays, or otherwise compensates, Supplier for Supplier-Owned Tooling, or

     (ii)    has any IPR or Trademarks in Supplier-Owned Tooling, or

     (iii)   has any IPR or Trademarks in Goods manufactured using Supplier-Owned Tooling,

Supplier shall not without Buyer's prior written consent use that Supplier-Owned Tooling to produce Goods or Components for anyone other than Buyer and its Affiliates.

18.3.4   Supplier hereby grants Buyer an option to purchase during the term of the Purchase Agreement and for 180 days thereafter some or all Supplier-Owned Tooling. If Buyer exercises this option, the purchase price will equal Supplier's actual cost for that Tooling minus the aggregate amount recovered by Supplier in the piece price of Goods. Supplier shall permit Buyer to verify Supplier costs and recovered amounts. If Buyer exercises the option under this Section 18.3.4, that Tooling shall become Buyer-Owned Tooling and Section 18.2 shall apply. The option under this Section 18.3.4 does not include SupplierOwned Tooling that Supplier uses, at the date when Buyer exercises its option, for the manufacture or quality control of goods for supply to other than Buyer and its Affiliates.

## 19     SERVICE PARTS AND COMPONENTS

19.1   During serial production of a Buyer product in which Goods are incorporated and for 15 years thereafter, Supplier shall supply Buyer and its Affiliates with whatever quantities of Service Parts and Components they order. Supplier shall enter into a contract with each Sub-tier Supplier under which that Sub-tier Supplier is obligated to supply Buyer and its Affiliates with Service Parts and Components in accordance with term(s) that corresponds to this Section 19.1, with any necessary conforming changes.

19.2   During serial production of Buyer products in which the Goods are incorporated, Supplier shall charge Buyer and its Affiliates for Service Parts no more than what Buyer, at the time of the relevant Call-Off, pays for such Goods for use in the relevant serial production.

19.3   For three years, or such period as the Parties have agreed in writing, after the end of serial production of Buyer products in which Goods are incorporated, Supplier shall charge Buyer

and its Affiliates for Service Parts no more than what Buyer paid for such Goods at the end of the relevant serial production. Buyer and Supplier shall negotiate in good faith the price to be paid by Buyer for Service Parts after that period. If the Parties are not able to reach an agreement, the price of Service Parts will equal the price of Goods at the end of said serial production.

19.4   Sections 19.2 and 19.3 shall apply to Components, with necessary conforming changes.

## 20     FINANCIAL AND OTHER INFORMATION

### 20.1   Financial information

20.1.1   At Buyer's written request, Supplier shall provide Buyer promptly after they become available an annual report, including balance sheet, profit and loss statement, and cash

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

flow report, and a Supplier group consolidated annual report. At Buyer's written request, Supplier shall provide Buyer corresponding documentation on its Sub-tier Suppliers.

20.1.2   At Buyer's written request, Supplier shall promptly provide Buyer with any additional financial and other business information related to Supplier and its Affiliates that Buyer reasonably requires to evaluate Supplier's performance under the Purchase Agreement.

20.1.3   If Supplier enters into composition proceedings, is declared bankrupt, goes into liquidation or for any other reason can be assumed to have become insolvent, Supplier shall promptly notify Buyer. Supplier shall promptly notify Buyer of any other event that might have a material adverse effect on Supplier's financial status or on Supplier's performance of its obligations under the Purchase Agreement.

20.1.4   If Supplier breaches any of its obligations under this Section 20.1, Supplier shall permit Buyer to perform, at Supplier's expense, an audit of Supplier in accordance with Section 22 to evaluate Supplier's financial performance.

20.2   *Technical and other information*

20.2.1   Supplier shall promptly notify Buyer via e-mail directed to PCO@volvocars.com if it has provided information to an Authority regarding the Goods, including information on potential or actual Non-Conforming Goods. Supplier shall include in that e-mail

   (i)     the date it notified that Authority,

   (ii)    which Authority has been notified,

   (iii)   what Goods were involved, and

   (iv)    the report type.

The obligation shall also apply with respect to goods of a comparable or derivative nature to the Goods.

20.2.2   Supplier shall promptly notify Buyer via e-mail directed to PCO@volvocars.com if Supplier has reason to believe it has information on potential or actual Non-Conforming Goods, even if Supplier has not provided that information to an Authority. Supplier shall include in that e-mail what Goods were involved.

20.2.3   At Buyer's written request, Supplier shall within ten business days provide Buyer and its Affiliates with access to and copies of any data, materials, or information provided to an Authority relating to the Goods, or any materials or substances used in the Goods or in connection with their production, including any test, manufacturing, field performance, or warranty data.

## 21     RESPONSIBLE BUSINESS

21.1   *Applicable laws and Code of Conduct*

21.1.1   Each Party shall comply with all applicable laws when performing their obligations under the Purchase Agreement. Without limiting the generality of the foregoing, Supplier shall, and shall cause its Sub-tier Suppliers to, at all times comply with all applicable laws, regulations and statutory requirements including but not limited to those relating to labor

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

and employment, the environment, competition, data privacy, anti-corruption and bribery and export control and trade sanctions. Additionally, Supplier shall, at its own expense, obtain and maintain all certifications, authorizations, licenses and permits necessary for it to perform its obligations under the Purchase Agreement.

21.1.2    Supplier shall comply with the Code of Conduct or similar principles. Supplier shall ensure that the Code of Conduct or similar principles are communicated and complied with by its employees, subcontractors and Sub-tier Suppliers.

*21.2    Environment, substance and materials reporting and compliance*

21.2.1    Supplier acknowledges that it is important to Buyer group that manufacture and sale of Buyer products be as efficient and sustainable as possible in terms of its impact on the environment. Supplier shall comply with the requirements stated in the relevant Buyer Instruction.

21.2.2    Supplier shall send Buyer copies of any information that relates to the Goods, their composition, and any hazardous materials used in making the Goods or that Buyer reasonably needs to comply with environmental laws, or is needed, to enable compliance with any requirement of an Authority (either mandated or voluntarily agreed upon by Buyer or any of its Affiliates) relating to the hazardous, toxic or other content or nature of the Goods, or the ability to recycle the Goods or materials in the Goods.

21.2.3    Supplier shall comply with Buyer's requirements relating to use (or prohibition on use) of certain materials and substances in the Goods and utilize and comply with Buyer's reporting processes and requirements relating to any data, materials or other information described in Section 21.2.1, as well as sustainability data, as stated in the relevant Buyer Instruction.

*21.3    Export control, trade sanctions and customs rules*

21.3.1    Supplier shall obtain and maintain any export license(s) required to sell Goods to Buyer.

21.3.2    Supplier shall provide Buyer with all other information and documentation necessary or useful for Buyer to comply with laws relating to import, export or re-export of Goods. Before the Parties agree on the final Technical Specification, Supplier shall provide Buyer

with the following information, under EU and/or US laws and regulations or those of other relevant jurisdictions:

(i)    the relevant export control classification numbers (also known as ECCN or dual-use numbers) of the Goods, (ii)    the origin of the Goods,

(iii)    the percentage, by value, of the content of the Goods that is of US origin, and the export control classification numbers of any such US-origin content,

(iv)    a description of any trade sanctions that apply to the Goods and/or Supplier selling Goods to Buyer,

(v)    the applicable customs classification codes, and

(vi)    at the request of Buyer

(a)    Supplier's declaration for preferential origin in the form required by Buyer, and

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

      (b)     a copy of the export license (individual or global), or a description of any general license, license exception, exemption, or lack of a licensing requirement (such as "No License Required" or "NLR")) on which Supplier is relying to lawfully export the Goods to Buyer.

21.3.3    In the event of any changes in any Goods, in the law, in any export licenses, or in Supplier's approach to international trade compliance, and as necessary to ensure continued compliance with applicable laws and regulations, Supplier shall update any information it provides to Buyer in accordance with Section 21.3.2.

21.3.4    Supplier represents and warrants that Supplier

      (i)     is not, has not been and will not be a Listed Person, and

      (ii)    shall not, in the course of performing under the Purchase Agreement

           (a)     conduct any business activity, directly or indirectly, with any Listed Person, including by supplying to Buyer items sourced from a Listed Person,

           (b)     conduct any business activity prohibited or restricted under trade sanctions or export control laws applicable to Buyer, or

           (c)     engage in any transaction that evades or attempts to violate restrictions under any trade sanctions or export control laws applicable to Buyer.

*21.4*    *Protection of Personal Data*

21.4.1    The Parties shall conduct any processing of Personal Data in compliance with applicable national, federal, state, and international laws and regulations relating to such Personal Data now or hereafter in effect. The Parties acknowledge that the intention is that neither Party will process Personal Data on behalf of the other Party under or in connection with the Purchase Agreement.

21.4.2    Notwithstanding Section 21.4.1, if either Party anticipates that a Party will process Personal Data on behalf of the other Party under or in connection with the Purchase Agreement, that Party shall promptly notify the other Party of that fact. To the extent necessary, the

Parties to that Purchase Agreement shall then negotiate in good faith amending or supplementing the Purchase Agreement so as to permit that the processing of Personal Data is performed in a way that complies with applicable laws, and neither Party shall process Personal Data on behalf of the other until the Purchase Agreement has been so amended or supplemented.

*21.5*    *Anti-corruption*

21.5.1    Supplier represents and warrants that Supplier and its directors and officers:

      (i)     have conducted and will conduct their operations and transactions, in particular those related to the Purchase Agreement, in compliance with all applicable laws, regulations and rules relating to anti-money laundering, anti-bribery and anticorruption, including the United States Foreign Corrupt Practices Act, the United Kingdom Bribery Act 2010, and all other applicable laws prohibiting bribing government officials and private persons (the "Criminal Laws"), and

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(ii)     are not, have not been within a five year period prior to the date of the Framework Purchase Agreement and will not be condemned or sentenced by any judicial or administrative authority for any corrupt or illegal practice under the Criminal Laws.

21.5.2     Supplier represents and warrants that Supplier and its Affiliates have implemented policies and procedures aiming at preventing corruption and bribery, including effective sanctions against any activity of its directors, officers and employees that might be considered a corrupt or illegal practice under the Criminal Laws.

*21.6     Consequences of non-compliance*

21.6.1     Supplier shall promptly notify Buyer any breach of the terms of this Section 21. Failure by Supplier and its directors, officers and employees to comply with the terms of Section 21 shall always be deemed to constitute a material breach of the Purchase Agreement and

(i)     result in Supplier having to take necessary remedies and indemnify Buyer, its Affiliates, and their directors, officers, and employees from any and all Losses resulting from or arising out of or relating to such failure to comply with obligations under this Section 21, and

(ii)     give Buyer a right to terminate, in whole or in part, the Purchase Agreement pursuant to Section 24.1.1.

## 22     AUDIT RIGHTS

22.1     Supplier shall permit, and shall cause its Sub-tier Suppliers to permit, one or more of Buyer and its designated representatives to conduct an audit of, and inspect the premises of, Supplier and its Affiliates and Sub-tier Suppliers, on at least five days' notice to determine whether Supplier has complied with its obligations under the Purchase Agreement. If Buyer reasonably believes that advance notice will interfere with Buyer verifying whether Supplier has complied with its obligations under the Purchase Agreement, Supplier will permit an audit without prior notice. Buyer will be responsible for the cost of each such audit, unless the audit shows that Supplier has breached one or more obligations under the Purchase Agreement, in which cases Supplier will be responsible for the cost of any such audit.

22.2     Supplier shall cooperate with, and shall cause its Affiliates and Sub-tier Suppliers to cooperate with, Buyer and its designated representatives in conduct of an audit under this Section 22 and shall provide, and shall cause its Affiliates and Sub-tier Suppliers to provide, Buyer with access to all premises, information and personnel that Buyer reasonably requests to have access to. Supplier may withhold information only if Supplier demonstrates that disclosing that information would be unlawful, would violate stock exchange regulations, or would breach a confidentiality obligation contained in a contract between Supplier and anyone other than one of its Affiliates or a Sub-tier Supplier.

22.3     During the term of the Purchase Agreement and two years thereafter or as long as required by law, whichever is longer, Supplier shall maintain, and shall cause its Affiliates and Subtier Suppliers to maintain, in accordance with best practices in the industry, sufficient records to allow Buyer to determine whether Supplier has complied with its obligations under the Purchase Agreement.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**23    ADVERTISING, PUBLICITY AND NEWS RELEASES**

23.1    Supplier shall not disseminate publicly advertising or promotional materials mentioning Buyer, its Affiliates, Trademarks of Buyer or its Affiliates or Goods without Buyer's prior written consent in accordance with the relevant Buyer Instruction.

23.2    Supplier shall not disseminate publicly news releases and other forms of publicity mentioning Buyer, its Affiliates, Trademarks of Buyer or its Affiliates or Goods without Buyer's prior written consent in accordance with the relevant Buyer Instruction.

**24    TERMINATION**

*24.1    Termination for cause by Buyer*

24.1.1    Buyer may terminate a Purchase Agreement in accordance with Sections 7.1.2, 13.7, 15.1.3, 15.2.3, 21.6.1 and 26.4.

24.1.2    Buyer may terminate the Purchase Agreement, in whole or in part, upon Written Notice to Supplier:

   (i)    if Supplier fails to comply with any requirement(s) of the Purchase Agreement. If the noncompliance relates to an obligation of Supplier that is, in the opinion of Buyer, capable of cure as stated in Section 24.1.3, Buyer may terminate under this Section 24.1.2 only if Supplier has failed to timely cure the noncompliance (as described in Section 24.1.3),

   (ii)    if Control of Supplier, or Supplier's ultimate parent company, changes. For purpose of this Section 24.1.2 a change of Control includes

      (a)    the sale or lease of Supplier's assets used for the production of the Goods, provided that such sale or lease is not made solely for the purpose of restructuring Supplier's financial arrangements, or

      (b)    exchange of a substantial portion of Supplier's assets used for the production of the Goods, provided that such exchange is not made solely for the purpose to maintaining or increasing Supplier's manufacturing, technical or quality capabilities.

   Supplier will provide Buyer with Written Notice of a change of Control within ten days after the change of Control has become effective. Buyer will have 60 days from the date of Supplier's Written Notice within which to notify Supplier of its decision to terminate the Purchase Agreement and the effective date of the termination, which will be no sooner than 30 days from the date of Buyer's notice, or

   (iii)    if Supplier

      (a)    becomes insolvent,

      (b)    files a voluntary petition in bankruptcy,

      (c)    has an involuntary petition in bankruptcy filed against it,

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(d)    has a receiver, administrator, custodian or trustee appointed over Supplier or its assets, or

(e)    executes an assignment for the benefit of its creditors.

In each case, Supplier is liable for all actual costs incurred by Buyer, including those for attorneys, experts, consultants and other professionals.

24.1.3    For all failures by Supplier to comply with the requirements of the Purchase Agreement, Buyer may, at its sole discretion, require Supplier to within ten days (or less if commercially reasonable under the circumstances) after Buyer's notice in writing to Supplier specifying the failure to cure the nonperformance.

24.1.4    A termination as stated in this Section 24.1 is effective on a date stated by Buyer in the Written Notice that is not later than 15 months after the date of that notice, unless otherwise agreed by the Parties.

24.1.5    No termination of the Purchase Agreement will relieve Supplier of any breach of, or any other liability accrued under, the Purchase Agreement.

*24.2    Termination for cause by Supplier*

24.2.1    Supplier may, subject to Section 27.6, terminate the Purchase Agreement, in whole or in part, upon Written Notice to Buyer:

(i)    in accordance with Section 26.4,

(ii)    if Buyer materially breaches

   (a)    Section 28.7,

   (b)    Section 13.3 and that breach causes a significant financial impact on Supplier,

   (c)    Section 12.1 with respect to Confidential Information of significant importance to Supplier, or

(iii)    if Buyer

   (a)    becomes insolvent,

   (b)    files a voluntary petition in bankruptcy,

   (c)    has an involuntary petition in bankruptcy filed against it,

   (d)    has a receiver, administrator, custodian or trustee appointed over Buyer or its assets, or

   (e)    executes an assignment for the benefit of its creditors.

In each case, Buyer is liable for all actual costs incurred by Supplier, including those for attorneys, experts, consultants and other professionals.

24.2.2    Notwithstanding Section 24.2.1, Buyer shall have 90 days, after receipt of Written Notice from Supplier in accordance with Section 24.2.1, in which to cure the basis for such notice, and the Purchase Agreement shall not terminate if Buyer cures such basis within said cure period.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

*24.3    Termination without cause*

24.3.1    A Party may terminate a Purchase Agreement, in whole or in part, at any time and for any reason, based on a Blanket Purchase Order upon 15 months Written Notice to the other Party, provided that, if the Purchase Agreement is terminated by Supplier, a condition for such termination is that Supplier gives such Written Notice sufficiently in advance, which may be more than 15 months, to enable Buyer to secure an alternative and acceptable supplier of goods equivalent to the Goods to prevent suspension of Buyer's serial production.

24.3.2    Buyer may terminate a Purchase Agreement, in whole or in part, at any time and for any reason, based on Lump-Sum Purchase Order, upon Written Notice to Supplier. Except as stated in Section 24.2, Supplier may not terminate a Purchase Agreement, in whole or in part, based on a Lump-Sum Purchase Order.

24.3.3    Notwithstanding Section 24.3.1, Buyer may terminate a Purchase Agreement, in whole or in part, at any time and for any or no reason, based on a Blanket Purchase Order upon notice in writing to Supplier, subject to Section 24.3.5.

24.3.4    A termination as stated in Section 24.3.1, 24.3.2 or 24.3.3

    (i)    will not result in the termination of any Framework Purchase Agreement, unless otherwise stated by Buyer in the notice of termination, and

    (ii)    will be effective as of the date stated in the notice, provided that the effective date of termination pursuant Section 24.3.1 shall not be earlier than 15 months from the date of the notice.

24.3.5    If Buyer terminates a Purchase Agreement as stated in Section 24.3.2 or 24.3.3, Buyer will pay Supplier, subject to Section 13.5, as a sole remedy for such termination:

    (i)    for unpaid Goods previously delivered that conform to the requirements of the Purchase Agreement,

    (ii)    any outstanding balance that Buyer owes Supplier for Tooling subject to a Purchase Agreement and that conforms to the requirements of that Purchase Agreement,

    (iii)    for undelivered finished Goods that

        (a)    conform to the requirements of the Purchase Agreement, and

        (b)    were produced in accordance with delivery or Call-Off schedules approved by Buyer and outstanding as of the date the termination was effective,

    provided that such Goods are delivered to Buyer in accordance with the Purchase Agreement,

    (iv)    actual costs that Supplier incurred before the date of the termination for work-inprocess and raw materials that

        (a)    are not damaged or destroyed,

        (b)    were not purchased by a third party with Buyer's prior approval in writing,

        (c)    cannot be used by Supplier to produce goods for itself or other customers, and

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(d)   are transferred to Buyer in accordance with Section 24.5.1,

provided, however, that this item (iv) is limited to costs for work-in-process and raw materials that Supplier acquired to complete quantities of Goods in accordance with delivery or Call-Off schedules approved by Buyer and outstanding as of the date the termination was effective,

(v)   actual costs incurred by Supplier in protecting Buyer's property pending delivery or return to Buyer, and

(vi)   other costs stated in the relevant Buyer Instruction.

24.4   *Survival*

24.4.1   Without limitation of the survivability of any terms hereunder which by their nature would reasonably be construed as surviving any expiration or termination of the Purchase Agreement, Sections 1, 3.3-3.5, 10, 12, 14, 15, 18, 19, 20.2, 21.2, 24.5, 25, 27, 28.2, 28.4-28.5 and 28.7-28.9 will survive the expiration or termination of the Purchase Agreement.

24.5   *Consequences of termination or expiration*

24.5.1   Upon, or in preparation for, the expiration or termination of the Purchase Agreement, Supplier shall do the following:

(i)   take all actions necessary to protect any of Buyer's property in the possession of Supplier or its suppliers and Sub-tier Suppliers,

(ii)   cooperate with Buyer to avoid disrupting production and to optimize outstanding deliveries of any Goods ordered under a Purchase Agreement based on a Blanket Purchase Order,

(iii)   upon request from Buyer, transfer title and possession of the Goods, Tooling owned by Supplier, work-in-process and raw materials that Buyer has agreed to acquire from Supplier and return Tooling and other property of Buyer,

(iv)   terminate all orders and subcontracts related to work to be performed after the effective date of any expiration or termination, and

(v)   subject to Section 24.4, cease all work under the Purchase Agreement after the effective date of any expiration or termination unless Buyer instructs Supplier to do, or the Parties have agreed, otherwise.

## 25   SUPPLIER CLAIMS

25.1       To bring against Buyer a claim arising out of the Purchase Agreement, including a claim arising out of amendments, modifications, deviations or changes as stated in Section 7, Supplier must provide Buyer with Written Notice of that claim no later than 30 days after Supplier becomes aware of the basis for that claim or 60 days after the date of the occurrence giving rise to the relevant claim, whichever is earlier and include in that notice sufficient supporting information to permit Buyer to assess that claim. Without limiting the foresaid, any and all claims by Supplier against Buyer, arising out of or in connection with the Purchase Agreement, must be notified by Supplier for dispute resolution not later than 12 months following the date on which such claim was received by Buyer. The failure to

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

notify within the time(s) stated in the preceding sentences will constitute a waiver by Supplier of such claim.

25.2     Buyer will be liable for direct costs incurred by Supplier only as stated in the relevant Buyer Instruction.

25.3     Unless prohibited by law or the Purchase Agreement, Buyer has no liability to Supplier or any of its Affiliates for any indirect or consequential losses, loss of production, loss of product, loss of use, and loss of revenue, profit, or anticipated profit, whether or not the losses were foreseeable at the time of entering into the Purchase Agreement, and whether or not incurred directly or indirectly by Supplier, any of its Affiliates, or their Sub-tier Suppliers or suppliers.

## 26     FORCE MAJEURE

26.1     A Party shall not be considered in breach of the Purchase Agreement to the extent that such Party's performance of its obligations under the Purchase Agreement is prevented by an event of Force Majeure that arises after conclusion of the Purchase Agreement and which could reasonably not have been foreseen or prevented.

26.2     The Party claiming Force Majeure shall promptly inform the other Party in writing and shall furnish within ten days thereafter evidence of the occurrence and expected duration of such event of Force Majeure.

26.3     In the event of Force Majeure, the Parties shall immediately consult with each other in order to find an equitable solution and shall use all reasonable efforts to minimize the consequences of such event of Force Majeure. Further, Buyer shall be entitled

(i)     to acquire the Goods covered by the Purchase Agreement from other sources for the duration of Supplier's inability to perform due to the event of Force Majeure, and

(ii)    to reduce without any obligation to Supplier, the quantity of the Goods stated in the relevant Purchase Order and/or Call-Off.

26.4     If the consequences of the Force Majeure event continue for a period of 30 days without a solution acceptable to both Parties, the Party that is not subject to Force Majeure shall be entitled to immediately terminate the relevant Purchase Agreement, without incurring any liability to the other Party as a result.

## 27     GOVERNING LAW AND DISPUTES

27.1     The Purchase Agreement (including the General Purchase Agreement Documents) shall be governed by and construed in accordance with the laws as stated in Section 27.2, without regard to any rules on conflict of laws. The terms stated in the United Nations Convention for the International Sale of Goods (CISG) do not apply to any Purchase Agreement.

27.2     Any disputes arising out of or relating to the Purchase Agreement shall be finally settled as follows:

(i)     If Buyer's principal place of business is Sweden (or any other country than as stated in this Section 27.2, or, with respect to item (v) Supplier's place of registration is outside

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

China, or, with respect to item (vi) Supplier's place of registration is outside India), then the Purchase Agreement shall be governed by the substantive laws of Sweden. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Gothenburg, Sweden. The language to be used shall be English.

(ii)    If Buyer's principal place of business is Belgium, then the Purchase Agreement shall be governed by the substantive laws of Belgium. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Gent, Belgium. The language to be used shall be English.

(iii)   If Buyer's principal place of business is Malaysia, then the Purchase Agreement shall be governed by the substantive laws of Malaysia. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Singapore International Arbitration Centre. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Singapore. The language to be used shall be English.

(iv)    If Buyer's principal place of business is United States of America, then South Carolina law, without regard to the conflict of law principles, governs all matters arising out of the Purchase Agreement. The Parties will bring any proceeding arising out of the Purchase Agreement only in the appropriate state or federal court of jurisdiction in Berkeley County, South Carolina. Each Party submits to the exclusive jurisdiction of those courts and waives any claim that the venue of that proceeding is improper. The Parties waive any right to jury trial.

(v)     If both Buyer's and Supplier's principal place of business is China, then the Purchase Agreement shall be governed by the substantive laws of China. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the China International Economic and Trade Arbitration Commission (CIETAC), with the following additions:

(a)    the arbitral tribunal shall be composed of three arbitrators,

(b)    no arbitrator needs to be a member of the Panel of Arbitrators issued by CIETAC,

(c)    the arbitral tribunal shall adopt an adversarial approach when examining the case, and

(d)    the Summary Procedure for claims not exceeding RMB 500,000 stated in Chapter IV of the CIETAC Arbitration Rules shall not apply.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

The seat of arbitration shall be Shanghai, China. The language to be used shall be English.

(vi)    If both Buyer's and Supplier's principal place of business is India, then the Purchase Agreement shall be governed by the substantive laws of India. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of Singapore International Arbitration Centre. The arbitral tribunal shall be composed by three arbitrators. The seat of arbitration shall be Bangalore, India. The Parties agree that the courts at Bangalore shall continue to have the exclusive jurisdiction to entertain any proceedings under sections 9, 27 and clause (c) of subsection (1) and subsection (3) of section 37 of the Arbitration and Conciliation Act 1996 as amended from time to time. The language to be used shall be English.

27.3    The Parties shall keep confidential any arbitral proceedings conducted in accordance with Section 27.2, all information disclosed in any such proceedings, and all documents submitted or issued by or on behalf of any of the disputing parties or the arbitrators in any such proceedings, as well as all decisions and awards made or declared in the course of any such proceedings, unless the Party to which any such information relates or, in the case of a decision or award, the other disputing parties give their prior written consent. The Parties shall not use any such information for any purpose other than conduct of any such proceedings and enforcement of any decision or award.

27.4    Notwithstanding Section 27.1 and 27.2, if anyone brings a claim against Buyer or any of its Affiliates for death, personal injury, or property damage resulting from a defect in the

Goods or because of an infringement of IPR or Trademark, or misappropriation of third party confidential information, Buyer may, at its sole discretion, conduct the court procedures necessary to enforce the indemnification against Supplier in accordance with these terms. In such case, the laws of the forum state shall govern exclusively the rights and obligations of Buyer and Supplier, however only with respect to that specific dispute.

27.5    Nothing in this Section 27 prevents a Party from applying to a court for any other remedies that are available by law, including specific injunction and interim relief.

27.6    Irrespective of any discussions or disputes between the Parties, Supplier shall always continue to fulfil its undertakings under the Purchase Agreement unless

(i)     Buyer has given a notice in writing that Supplier shall discontinue its fulfilments, or

(ii)    a court or an arbitral tribunal (in accordance with this Section 27) decides otherwise.

## 28    MISCELLANOUS

*28.1    EDI*

28.1.1    The Parties have agreed to apply EDI with respect to certain communication. Such EDI shall comply with and Supplier accepts the terms of that EDI agreement as stated in the relevant Buyer Instruction.

2:25-cv-04727-DCN    Date Filed 05/29/25    Entry Number 1-1    Page 91 of 249

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

*28.2    No waiver*

28.2.1    No failure or delay by either Party in exercising any right or remedy provided under the
Purchase Agreement or by law will constitute a waiver of that or any other right or remedy,
nor will any single or partial exercise of any right or remedy preclude any other or further
exercise of it or the exercise of any other right or remedy. Any amount paid by Buyer for
the Goods will not be deemed to be a waiver of any breach by Supplier or any amount
otherwise due to Buyer under the Purchase Agreement.

*28.3    Written Notices*

28.3.1    A Written Notice as stated in the Contract Documents must be in legible writing in the
English language delivered by personal delivery, email transmission or prepaid overnight
courier using an internationally recognized courier service and shall be effective upon
receipt, which shall be deemed to have occurred:

(i)    at the time and on the date of personal delivery,

(ii)    if sent by email, at the time and on the date indicated on a confirmation of receipt
relating to such email,

(iii)    at the time and on the date of delivery if delivered by courier as confirmed in the
records of such courier service, or

(iv)    at such time and date as delivery by personal delivery or courier is refused by the
addressee upon presentation,

in each case provided that such receipt occurred on a business day at the location of
receipt. A notice sent by email will be deemed to have been duly given, only if the recipient
has confirmed receipt of such email within three business days calculated from the time of
sending such e-mail and in such case the notice will be deemed to have occurred at the
time of sending the receipt. An automatic email reply shall not be construed as a
confirmation hereunder.

28.3.2    All such notices shall be addressed as stated in the Framework Purchase Agreement.

*28.4    Damages in addition to liquidated damages*

28.4.1    Buyer will be entitled to damages in addition to any liquidated damages that Supplier is
required to pay under the Purchase Agreement, if the Losses that occur exceed the amount
of those liquidated damages.

*28.5    Entire agreement*

28.5.1    The Purchase Agreement, including the terms of the documents expressly referred to
herein (which are hereby incorporated by reference), constitutes the entire agreement
among the Parties with respect to the subject matter of the Purchase Agreement and,
except as expressly contemplated herein, supersedes all prior agreements, commitments,
understandings and negotiations, both written and oral, among the Parties with respect to
the subject matter of the Purchase Agreement.

*28.6    Relationship of the Parties*

28.6.1    Supplier, in providing Goods to Buyer under the Purchase Agreement, is acting as an
independent contractor. Supplier is not an agent of Buyer or any of its Affiliates and has no

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

authority to represent them as to any matters, except as expressly permitted in the Purchase Agreement. The Purchase Agreement does not constitute a partnership or joint venture.

*28.7    Assignment*

28.7.1    The Parties shall not assign the whole or any part of the Purchase Agreement or any benefit or interest under the Purchase Agreement, without first obtaining the other Party's consent thereto in writing. Notwithstanding the aforesaid, Buyer may, without Supplier's consent, assign the Purchase Agreement to any of its Affiliates.

*28.8    Severability*

28.8.1    If any term of the Purchase Agreement, or part thereof, is found to be invalid or unenforceable, the remainder of the terms of the Purchase Agreement shall remain in full force and effect and shall be enforceable. Supplier and Buyer shall use their commercially reasonable efforts to replace the invalid or unenforceable term by a valid and enforceable one reflecting as closely as possible the original intention of Supplier and Buyer.

*28.9    Interpretation*

28.9.1    Any additional words or phrases other than those stated in Section 1.1 that are defined in other Sections of these terms will have the meaning stated in that other Section.

28.9.2    Words or phrases defined in these terms will have the same meaning in all documents that form part of the Purchase Agreement. Words or phrases defined in any other document

being part of the Purchase Agreement will have the meaning stated in that document only if that definition does not constitute an amendment or waiver of any term under these terms.

28.9.3    The headings and captions are provided for convenience only and do not create or affect any substantive rights.

28.9.4    Examples are provided for illustrative purposes only.

28.9.5    No term will be construed against Buyer as the drafting party.

28.9.6    The term "including" means including without limitation. The term "days" means calendar days. The term "document" means a document in printed or electronic form. Words in the singular shall include the plural and vice versa.

28.9.7    The English version of any of the General Purchase Agreement Documents will control if the Parties disagree over any translation. For the avoidance of doubt, if one or more, but not all, General Purchase Agreement Documents are translated, this shall not be construed (nor imply) that non-translated documents are not applicable.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**APPENDIX 1**

Groups of Affiliates

**Geely Auto Group** means Geely Automobile Holdings Limited incorporated in the Cayman Islands (with shares listed on the Hong Kong Stock Exchange), and any company, entity or organization which Geely Automobile Holdings Limited Controls.

**Lynk & Co Group** means Lynk & Co Investment Co., Ltd and any company, entity or organization which Lynk & Co Investment Co., Ltd. Controls

**Polestar Group** means Polestar Holding AB, having its principal seat in Gothenburg, Sweden with organization number 556786-7840. and any company, entity or organization which Polestar Holding AB. Controls.

**Volvo Car Group** means the Swedish limited liability company Volvo Car AB, Swedish company reg. no. 556810-8988, and any company, entity or organization which Volvo Car AB Controls.

**Zhejiang Geely Group** means Zhejiang Geely Holding Group Co. Limited, a company incorporated under the laws of China, and any company, entity or organization which Zhejiang Geely Holding Group Co. Limited Controls, however, excluding the Geely Auto Group, the Lynk & Co Group, the Polestar Group and the Volvo Car Group.

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**APPENDIX 2**

This Appendix 2 is divided into sub-appendixes 2:1-5. Each sub-Appendix 1 applies as stated below.

<u>**Sub-Appendix 2:1**</u>

The following instructions apply to Purchase Agreements where Buyer is part of the Geely Auto Group:

Instructions will be provided if applicable

<u>**Sub-Appendix 2:2**</u>

The following instructions apply to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Instructions will be provided if applicable

<u>**Sub-Appendix 2:3**</u>

The following instructions apply to Purchase Agreements where Buyer is part of the Polestar Group:

Instructions will be provided if applicable

<u>**Sub-Appendix 2:4**</u>

The following instructions, published on Supplier Portal stated in Sub-Appendix 4:4, apply to Purchase Agreements where Buyer is part of the Volvo Car Group:

| | |
|---|---|
| Claims Instruction | Global |
| Global Customs & Export Control Instruction | Global |
| Global Standard Payment Instruction | Global |
| Instruction for Obsolete Claims Caused by Termination at Buyers Option | Global |
| Instruction for Overtime Claims Requested by Buyers Option | Global |
| Logistics Instruction | Global |
| Packaging Requirements Instruction | Global |
| Packaging Rental Pricelist | Global |
| Packaging Replacement Pricelist | Global |
| Schedule A Special Packaging Requirements | Global |
| Schedule B Expendable Packaging Portfolio | Global |
| Schedule C Packaging Portfolio APAC | Asia |

| | |
|---|---|
| Schedule D Packaging Portfolio EMEA | Europe |
| Schedule E Packaging Portfolio Americas | Americas |
| Service Parts Logistics Instruction | Global |
| Service Parts Packaging Requirements | Global |
| Software Bill of Material Instruction | Global |
| Supplement to Volvo Cars Instructions for Logistics – Volvo Cars Charleston | Charleston |
| Supplier Advertising and Reference Instruction | Global |
| Supplier Manufacturing Instruction | Global |
| Tax Instruction | Global |
| Tooling Procurement and Audit Instruction | Global |
| Volvo Cars Global Procurement Sustainability Instruction | Global |
| Warranty and Cost Recovery Instruction | Global |
| Warranty Instruction | Global |

### Sub-Appendix 2:5:

The following instructions apply to Purchase Agreements where Buyer is part of the Zheijiang Geely Group:

Instructions will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## APPENDIX 3

This Appendix 3 is divided into sub-appendixes C:1-5. Each sub-Appendix 1pplies as stated below.

### Sub-Appendix 3:1:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Geely Auto Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:2:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:3:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Polestar Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:4:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Volvo Car Group: The code of conduct for business partners adopted by Volvo Car AB and in effect at any given time and made available at https://group.volvocars.com/sustainability or successor sites.

### Sub-Appendix 3:5:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Zhejiang Geely Group:

Code of Conduct will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**APPENDIX 4**

This Appendix 4 is divided into sub-appendixes D:1-5. Each sub-Appendix 1pplies as stated below.

### Sub-Appendix 4:1:

The following website apply to Purchase Agreements where Buyer is part of the Geely Auto Group:

Link will be provided if applicable

### Sub-Appendix 4:2:

The following website apply to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Link will be provided if applicable

### Sub-Appendix 4:3:

The following website apply to Purchase Agreements where Buyer is part of the Polestar Group:

Link will be provided if applicable

### Sub-Appendix 4:4:

The following website apply to Purchase Agreements where Buyer is part of the Volvo Car Group:
Supplier Portal - Global Terms and Conditions

### Sub-Appendix 4:5:

The following website apply to Purchase Agreements where Buyer is part of the Zhejiang Geely Group:

Link will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #4

**Jeremy E. Bowers**

| | |
|---|---|
| **From:** | Wood, David <DWood02@lear.com> |
| **Sent:** | Monday, May 5, 2025 5:15 PM |
| **To:** | daniel.harvey@volvocars.com; Mccaslin, Joshua; Curtis, Alana; Fowler, Doris; Harlin, Fredrik (FH; Vostry, Michal; Kaindl, Martina; Jones, Mark |
| **Cc:** | Alban, Matt; Staples, Corey; Baird, Paul; Puckett, Mike; Nelson, Shaun |
| **Subject:** | Release Rejection due to lack of tariff authorization. |

Daniel

We have received your release on 5/5/2025 . In the absence of tariff authorization by Volvo, Lear rejects all new releases issued by Volvo Charleston including your recent release.

Please keep in mind that Volvo Charleston and Lear Duncan are on release-by-release contract and by rejection of release by Lear, there is no contract in place between the parties. Lear will not be responsible for any costs due to an impact at Volvo Charleston.

Lear reserves all of its rights in this matter.


**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan 1200 Woods Chapel Road Duncan, SC 29334 |

 **LEAR**

Legal Disclaimer

This e-mail message and any attachments may contain legally privileged, confidential or proprietary information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**Lear Corporation**

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #5

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**V O L V O**

May 13, 2025

J. Calhoun Watson
Robinson Gray
2151 Pickens Street, Suite 500
P.O. Box 11449
Columbia, SC 29211
cwatson@robinsongray.com

Re: Purchase Agreement for SPA2 Seat Programs ("Agreement")

Dear Cal:

This letter is in response to your May 9, 2025 letter.

In your letter, you state that Lear has no obligation to accept, and can reject, Volvo Cars' call-offs, and that there is "no enforceable contract between the parties as to quantities contained in future call-offs." However, this statement is erroneous. A binding agreement between the parties was formed when Volvo Cars issued a blanket purchase order and call-offs under it, which Lear accepted by accepting the first call-off. Pursuant to the Agreement, Lear is required to comply with and supply parts as ordered in call-offs, unless a call-off fails to conform to the Agreement. See Section 5.1 of the Production Material Global Terms and Conditions. This has been our practice from the beginning of our business relationship and is also the prevailing industry practice. Lear's threats to reject call-offs are not in good faith and are in breach of the Agreement and our prior established practices.

In the same letter, you indicate Lear is willing to resume supply if the parties "resolve[s] the commercial claims related to the volume drops in the SPA2 Programs." This position is inherently contradictory. On the one hand, you argue for a call-off-by-call-off arrangement, yet on the other, you request a resolution for a compensation claim that is based on overall volume expectations and long-term investment. These positions are fundamentally incompatible. If Lear insists there is no blanket supply obligation, then it cannot simultaneously assert a claim based on failed volume expectations. Please let us know if Lear intends to formally waive any and all volume-related claims.

From our side, we reiterate our position that there is a valid and enforceable agreement between the parties and remind Lear of its obligation to timely deliver parts as specified in the call-offs under the Agreement. We must emphasize, from prior conversations and correspondence with Lear, that timely and conforming delivery is critical to ensure uninterrupted manufacturing operations. Failure to deliver per call-offs and rejection of call-offs will cause substantial irreparable harm and have severe consequences for Volvo Cars' operations, our employees, and customers.

The amount and number of liquidated damages is the current industry standard for nonconforming delivery and delivery delays causing manufacturing interruptions. If Lear does not deliver conforming products in a timely manner, it causes a loss of production that is difficult

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**V O L V O**

to fully measure because the loss of production must be carried through to the loss of sales of finished vehicles. While you dispute this number, it is the industry standard particularly for smaller manufacturing operations. This is particularly critical for Volvo Cars' Charleston, South Carolina location, where there is not an opportunity for redirection of employees to other lines if Lear causes delivery delays, and a delay in one shop affects all shops as they are not isolated as in larger facilities. The liquidated damages amount provided is proportionate to the damages that are probable because of delays and does not constitute a penalty. It is a probable loss caused by the breach of the Agreement's terms for timely and nonconforming delivery.

In your letter, you also asked us to reach an agreement on how tariffs should be handled. However, you should be aware that your client has unilaterally taken decisions on how to handle tariffs and has been debiting tariff-related costs to our directed Tier 2 suppliers without any authorization from us and without any contractual or legal basis for doing so. We demand that such practices cease immediately. We expect full and prompt correction and confirmation of such.

Lear's conduct and threats to stop shipments create significant concern for our production planning and operation purposes in the immediate future. Accordingly, this letter should also serve as Volvo Cars' demand for adequate assurances of Lear's continued performance in accordance with the Agreement, UCC §2-609, its state equivalent and applicable law. Under Section 2-609, a party to a contract has the right to demand adequate assurance of due performance where reasonable grounds of insecurity arise, as they have in this case. Therefore, Volvo Cars demands that, on or before 5:00 p.m. ET on Thursday, May 15, 2025, Lear provide written assurances that it will timely deliver parts to Volvo Cars in accordance with the Agreement.

Furthermore, Volvo Cars would like to remind Lear of its contractual obligation to continue to deliver in accordance with the Agreement, purchase orders, and subsequent call-offs consistent with our established practices and industry standards even if there is a disagreement about the Agreement between the parties. In accordance with Section 27.6 of the Production Material Global Terms and Conditions, Lear has the obligation to continue delivery irrespective of any dispute between the parties. Should deliveries fail to occur as scheduled, Volvo Cars will incur irreparable harm and substantial losses including the liquidated damages provided by our team. Lear's threats to reject call-offs are not in good faith and are in breach of the Agreement and prior practices.

We desire to work through the current disputes and move forward under the current Agreement. However, Volvo Cars reserves all legal and contractual rights and remedies.

Sincerely,

Katya Gill,
Sr Legal Counsel
Volvo Car USA LLC

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #6

## Jeremy E. Bowers

| | |
|---|---|
| **From:** | Wood, David <DWood02@lear.com> |
| **Sent:** | Friday, May 16, 2025 5:41 PM |
| **To:** | daniel.harvey@volvocars.com; Mccaslin, Joshua; Fowler, Doris; Harlin, Fredrik (FH; Vostry, Michal; Kaindl, Martina; Jones, Mark; Capozzi, Joseph; Dassin, Philippe; Carlander-Reuterfelt, Désirée |
| **Cc:** | Alban, Matt; Staples, Corey; Baird, Paul; Puckett, Mike; Nelson, Shaun |
| **Subject:** | RE: No Surprise Communication |

All,

As a follow up to our rejection of release communication on 5/5/2025 and the letter from our legal counsel on 5/9/2025, Lear is sending this communication to inform VCCH that beyond the below detailed sequences to meet the accepted release/call-off, transport for production material pickup will not be loaded by Lear Corporation. We would estimate based on your current demand and material coverage at VCCH you could see your first impacts to your assembly line on 5/20/2025

The last seats to be shipped from Lear Duncan are as follows:

| | |
|---|---|
| Front Seats: | Sequence 141699 |
| V536 2nd & 3rd Row: | Sequence 141598 |
| 723 2nd Row | Sequence 141602 |

Volvo should coordinate & communicate to your labor force the production impact date to minimize your costs.  **Lear does not assume any responsibility or costs attributable for plant shutdown, if any.**

Lear reserves all its rights in this matter.

**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan 1200 Woods Chapel Road Duncan, SC 29334 |

 **LEAR**

**From:** Wood, David
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** daniel.harvey@volvocars.com; Mccaslin, Joshua <joshua.mccaslin@volvocars.com>; Curtis, Alana <alana.curtis@volvocars.com>; Fowler, Doris <doris.fowler@volvocars.com>; Harlin, Fredrik (FH <fredrik.harlin@volvocars.com>; Vostry, Michal <michal.vostry@volvocars.com>; Kaindl, Martina <martina.kaindl@volvocars.com>; Jones, Mark <mark.jones@volvocars.com>

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 2:34 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**Cc:** Alban, Matt <MAlban@lear.com>; Staples, Corey <CStaples@lear.com>; Baird, Paul <PBaird@lear.com>; Puckett, Mike <MPuckett@lear.com>; Nelson, Shaun <SNelson08@lear.com>
**Subject:** Release Rejection due to lack of tariff authorization.

Daniel

We have received your release on 5/5/2025 . In the absence of tariff authorization by Volvo, Lear rejects all new releases issued by Volvo Charleston including your recent release.

Please keep in mind that Volvo Charleston and Lear Duncan are on release-by-release contract and by rejection of release by Lear, there is no contract in place between the parties. Lear will not be responsible for any costs due to an impact at Volvo Charleston.

Lear reserves all of its rights in this matter.

**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan |
| | 1200 Woods Chapel Road |
| | Duncan, SC 29334 |

 **LEAR**

Legal Disclaimer

This e-mail message and any attachments may contain legally privileged, confidential or proprietary information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**Lear Corporation**

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

VOLVO CAR USA LLC,

                 Plaintiff,

   v.

LEAR CORPORATION,

                 Defendant.

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO.: 2025-CP-08-01840

**PLAINTIFF'S NOTICE OF and MOTION FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND/OR TEMPORARY INJUNCTION**

NOW COMES the Plaintiff, VOLVO CAR USA LLC (hereinafter referred to as "VCUSA"), by and through its undersigned attorneys, and hereby moves under South Carolina Rule of Civil Procedure 65 for a Temporary Restraining Order and/or Temporary Injunction requiring the Defendant, LEAR CORPORATION ("Lear"), to continue shipping certain unique automotive seat assemblies to VCUSA, on contract terms, in order to prevent the continued shutdown of VCUSA's vehicle assembly line located in Ridgeville, South Carolina, and the resulting catastrophic disruption to the automotive supply chain, including VCUSA's customers across the world. The issuance of a temporary restraining order will preserve the status quo and prevent irreparable harm to VCUSA until such time as the Court is able to hold a full preliminary evidentiary hearing.

In support of this Motion for Emergency *Ex Parte* Temporary Restraining Order and/or Temporary Injunction, VCUSA relies upon the Verified Complaint for Specific Performance and Other Relief filed contemporaneously herewith, and on the facts and legal arguments and authorities set forth in the Memorandum in Support of Motion for Temporary Restraining Order and/or Temporary Injunction attached hereto. These filings demonstrate that VCUSA has suffered and will continue to suffer irreparable injury, loss, and damage as a result of Lear's wrongful conduct in rejecting call-offs issued by VCUSA pursuant to the terms of their binding agreement

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

for the supply of certain automotive seat components in breach of the parties' contract and their business relationship. A Temporary Restraining Order and/or Temporary Injunction is necessary to prevent further irreparable injury, loss, and damage to VCUSA, including, but not limited to, the continued shutdown of the vehicle assembly line located in Ridgeville, the resulting loss of income suffered by the employees who work on the vehicle assembly line, the potential layoff of assembly line workers, the catastrophic disruption to the automotive supply chain, and the resulting damage to VCUSA's brand and image worldwide. As demonstrated in the supporting materials, the potential harm to VCUSA if the Temporary Restraining Order and/or Temporary Injunction is denied decidedly outweighs any potential harm to Lear from granting the temporary restraining order and/or temporary injunction, and VCUSA has a strong likelihood of success on the merits. The public interest also weighs in favor of granting the temporary restraining order and/or temporary injunction.

WHEREFORE, VCUSA respectfully requests that the Court grant its Motion for Emergency *Ex Parte* Temporary Restraining Order and/or Temporary Injunction. VCUSA has submitted a Proposed Order Granting Emergency *Ex Parte* Temporary Restraining Order, which is attached hereto, ordering Lear to immediately resume and continue shipping the relevant automotive seat assemblies to VCUSA until further Order of this Court and scheduling a hearing on VCUSA's request for a preliminary injunction. VCUSA reserves the right to submit accompanying memorandum, exhibits, and other evidence in support of its motion.

[SIGNATURE BLOCK ON THE NEXT PAGE]

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: s/ David S. Cox
   DAVID S. COX (SC Bar No. 66195)
   JEREMY E. BOWERS (SC Bar No. 74838)
   211 King Street, Suite #300
   Charleston SC 29401
   843-577-7700
   dcox@barnwell-whaley.com
   jbowers@barnwell-whaley.com
*ATTORNEYS FOR THE PLAINTIFF, VOLVO CAR USA LLC*

May 29, 2025
Charleston, South Carolina

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

STATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO.: 2025-CP-08-____

VOLVO CAR USA LLC,

        Plaintiff,

      v.

LEAR CORPORATION,

        Defendant.

**AFFIDAVIT OF DANIEL HARVEY**

PERSONALLY APPEARED before me, DANIEL HARVEY, who first being duly sworn deposes and says as follows:

1.    I am a resident of Charleston County, South Carolina, am over the age of eighteen (18), and am competent to give this affidavit. The following statements are made based upon my personal knowledge, unless otherwise provided, and my review of the business records of Volvo Car USA LLC which are kept in the ordinary course of business.

2.    I am the Senior Manager of Procurement Americas for Volvo Car USA LLC (hereinafter referred to as "VCUSA") which is located at 1801 Volvo Car Drive, Ridgeville, South Carolina 29472 ("Ridgeville facility").

3.    I have held the position of Senior Manager of Procurement Americas for VCUSA since July 2023.

4.    VCUSA is headquartered in Mahwah, New Jersey, and has a vehicle production facility located in Ridgeville, South Carolina.

5.    VCUSA is the United States subsidiary of Volvo Car Corporation, a Swedish multinational manufacturer of luxury vehicles.

6.    VCUSA assembles passenger vehicles at its Ridgeville facility, including model EX90 and Polestar 3 SUVs, for domestic sale and export.

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

7.     Prior to the shutdown started on Thursday, May 22, 2025, VCUSA's Ridgeville facility had over twelve hundred (1,200) workers operating the assembly line.

8.     Lear is a global automotive technology leader that manufactures various component parts used in automotive assembly, including automotive seating and electrical systems.

9.     Lear has been a supplier of certain automotive assemblies for VCUSA since it began vehicle assembly at the Ridgeville facility in 2018.

10.     VCUSA and Lear entered into Framework Purchase Agreements outlining the basic framework of their contractual relationship as to certain assemblies to be supplied by Lear.

11.     Under such Framework Purchase Agreements, VCUSA issues separate purchase orders for the parts needed for the specific seat assembles to be ordered by VCUSA (the "Purchase Orders").

12.     Pursuant to the currently outstanding Purchase Orders, VCUSA purchases 1,558 potential seat components from Lear (the "Parts").

13.     A list of the relevant automotive seat components supplied by Lear to VCUSA pursuant to the outstanding Purchase Orders is set forth in the table attached hereto as Exhibit #2. Exhibit #2 – Parts List.

14.     All of the automotive seat components set forth in Exhibit #2 are currently used by VCUSA in its assembly line production of the model EX90 and Polestar 3 SUVs at its Ridgeville facility.

15.     Lear is VCUSA's sole supplier of these Parts, and Lear supplies 100% of VCUSA's requirements of these Parts.

16.     The complete seat assemblies supplied by Lear are extremely complex and come in multiple variations, based on color and material selections.

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

17.     VCUSA's Purchase Orders to Lear for the automotive seat assemblies set forth in Exhibit #2 incorporate and are governed by VCUSA's Production material Global Terms and Conditions (the "Terms").

18.     Together, the Purchase Orders and Terms set firm prices for each of the Parts.

19.     Lear ships the Parts to VCUSA's Ridgeville facility for use in its assembly line production of the model EX90 and Polestar 3 SUVs.

20.     The Parts are critical to the vehicle assembly process.

21.     The Parts are used in the assembly of both the model EX90 and Polestar 3 SUVs.

22.     Without the Parts, VCUSA cannot complete the assembly of a model EX90 and Polestar 3 SUVs.

23.     On May 5, 2025, I received an email from Dave Wood, the Plant Manager for Lear in Duncan, South Carolina, stating Lear would no longer honor the Purchase Orders, Terms, or call-offs under the Purchase Orders.

24.     I understood Mr. Wood's email to state that Lear would no longer ship the Parts ordered by VCUSA unless VCUSA agreed to certain price adjustments caused by the tariff situation.

25.     On May 16, 2025, I received a follow-up email from Mr. Wood reiterating that Lear would no longer be honoring its contractual obligations to VCUSA and would not be shipping any additional automotive seat components to VCUSA's Ridgeville facility.

26.     In the follow-up email, Mr. Wood further stated that VCUSA would likely see its "first impacts to [its] assembly line on 5/20/2025".

27.     Lear followed through with its refusal to ship any additional automotive seat components to VCUSA's Ridgeville facility, as VCUSA received its last shipment from Lear on

3

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

or about May 19, 2025, even though additional "just in time, just in sequence" shipments were supposed to be delivered to VCUSA since then.

28.     The Parts supplied by Lear to VCUSA pursuant to the Contracts are unique, manufactured for use in VCUSA's vehicle models, and tested to satisfy VCUSA's performance and safety requirements.

29.     VCUSA employs a "just-in-time, just in sequence" inventory management system, and as a result, it does not carry sufficient inventory of the Parts on hand to sustain its assembly line capacity.

30.     VCUSA relies upon timely delivery of automotive seat components from Lear in order to keep the assembly line working smoothly and at the appropriate capacity level.

31.     Because Lear has refused to continue with its shipments to VCUSA, the Ridgeville facility has been forced to shut down its assembly line, resulting in over twelve hundred (1,200) assembly line workers being sent home.

32.     Given the nature of the Parts, VCUSA reasonably estimates that it would take approximately thirty-six (36) months to establish an adequate supply chain with a replacement supplier.

33.     If the shutdown of VCUSA's Ridgeville facility continues, it will lead to the idling of a significant portion of VCUSA's assembly line workers and likely even the layoff or departure of hundreds of assembly line workers.

34.     Because of the assembly line shutdown, VCUSA is likely to lose a number of its assembly line workers to other employment opportunities, as these workers cannot idly sit through a prolonged shutdown without compensation, and VCUSA would need to lay off a significant amount of its workforce as a result.

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

35.     In such a scenario, it is unknown how long it may take for VCUSA to restore its workforce and its assembly line productivity to its current level.

36.     Because of the continued shutdown of the assembly line caused by Lear's refusal to deliver automotive seat components pursuant to the Contracts, VCUSA's relationship with its current and potential future customers will be immeasurably damaged.

37.     The shutdown of the Ridgeville facility has already began a cascading effect upon other suppliers of VCUSA as VCUSA cannot place orders with other suppliers until the assembly line restarts its operations.

**FURTHER AFFIANT SAYETH NOT.**

Daniel Harvey

SWORN TO AND SUBSCRIBED before me this

29 day of May , 2025.

NOTARY PUBLIC FOR Berkeley County, S.C.
My Commission Expires: Feb, 25, 2026

> NEVA J. DEFIBAUGH
> Notary Public, State of South Carolina
> My Commission Expires Feb. 25, 2026

5

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #2

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| Part Number | Part Description | Program |
|---|---|---|
| 32347374 | Trimlist OB LH | V536 |
| 32347375 | Trimlist OB RH | V536 |
| 32347376 | Trimlist IB LH | V536 |
| 32347377 | Trimlist IB RH | V536 |
| 32332177 | Bracket undercarriage LH | V536 |
| 32332900 | Bracket undercarriage RH | V536 |
| 32332178 | Carrier upper backrest | V536 |
| 32347378 | Cable Guide Bracket LH | V536 |
| 32347380 | Retainer ambient light | V536 |
| 32332180 | Carrier upper backrest RH | V536 |
| 32347382 | Lid harness power | V536 |
| 32347383 | Cushion extension carrier comfort Manual | V536 |
| 32347379 | Cable Guide Bracket RH | V536 |
| 32347381 | Retainer ambient light | V536 |
| 32332185 | Side panel front, Charcoal solid, LH | V536 |
| 32332186 | Side panel front, Charcoal solid, RH | V536 |
| 32347297 | Side panel front, Dawn, LH | V536 |
| 32347298 | Side panel front, Dawn, RH | V536 |
| 32447000 | Side panel front, Charcoal solid, LH | V536 |
| 32447001 | Side panel front, Charcoal solid, RH | V536 |
| 32447002 | Side panel front, Dawn, LH | V536 |
| 32447003 | Side panel front, Dawn, RH | V536 |
| 32447354 | Side panel front, Charcoal solid, LH | V536 |
| 32447355 | Side panel front, Charcoal solid, RH | V536 |
| 32447356 | Side panel front, Dawn, LH | V536 |
| 32447357 | Side panel front, Dawn, RH | V536 |
| 32332187 | Cover belt, Charcoal Solid LH | V536 |
| 32378394 | Cover belt, Charcoal Solid RH BTS | V536 |
| 32332188 | Cover belt, Charcoal Solid RH | V536 |
| 32347299 | Cover belt, Dawn LH | V536 |
| 32378395 | Cover belt, Dawn RH BTS | V536 |
| 32347300 | Cover belt, Dawn RH | V536 |
| 32332189 | Side panel rear outer, power, Charcoal solid, LH | V536 |
| 32332190 | Side panel rear outer, power, Charcoal solid, RH | V536 |
| 32347301 | Side panel rear outer, power, Dawn, LH | V536 |
| 32347302 | Side panel rear outer, power, Dawn, RH | V536 |
| 32332191 | Side panel inner rear, Charcoal solid, LH | V536 |
| 32332192 | Side panel inner rear, Charcoal solid, RH | V536 |
| 32347303 | Side panel inner rear, Dawn, LH | V536 |
| 32347304 | Side panel inner rear, Dawn, RH | V536 |
| 32332193 | Panel rear inner, Charcoal solid, LH | V536 |
| 32332194 | Panel rear inner, Charcoal solid, RH | V536 |
| 32347305 | Panel rear inner, Dawn, LH | V536 |
| 32347306 | Panel rear inner, Dawn, RH | V536 |
| 32332195 | Handle Cushion extension Mec charcoal | V536 |
| 32347309 | MCE Bezel Charcoal Solid | V536 |
| 32347307 | Handle Cushion extension Mec Dawn | V536 |
| 32347311 | MCE Bezel Dawn | V536 |
| 32332196 | Hardback foiled w map pocket, Charcoal solid LH | V536 |
| 32332197 | Hardback foiled w map pocket, Charcoal solid RH | V536 |
| 32347293 | Ventilated Hardback foiled, Charcoal solid LH | V536 |
| 32347294 | Ventilated Hardback foiled, Charcoal solid RH | V536 |
| 32347313 | Hardback foiled w map pocket, Dawn LH | V536 |
| 32347314 | Hardback foiled w map pocket, Dawn RH | V536 |
| 32347295 | Ventilated Hardback foiled, Dawn LH | V536 |
| 32347296 | Ventilated Hardback foiled, Dawn RH | V536 |
| 32332198 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR LH SHORT INR | V536 |
| 32332199 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR RH SHORT INR | V536 |
| 32347321 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32347322 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32332200 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32332201 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347319 | COULISSE,DAWN SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32347320 | COULISSE,DAWN SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347323 | Side Panel Inner Front, Dawn, LH | V536 |
| 32347324 | Side Panel Inner Front, Dawn, RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32347325 | Side Panel Inner Front, Charcoal Solid, LH | V536 |
|---|---|---|
| 32347326 | Side Panel Inner Front, Charcoal Solid, RH | V536 |
| 32347327 | Plug Cover Inner Rear, Charcoal | V536 |
| 32347328 | Plug Cover Inner Rear, Dawn | V536 |
| 32272424 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32431818 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32332202 | Foam cushion, w cushion extension, Comfort | V536 |
| 32447288 | Foam cushion, w cushion extension, Comfort | V536 |
| 32272426 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32431819 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32332203 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32447289 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32332204 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32447290 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32332205 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32447291 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32332206 | Comfort cushion manual extenstion foam | V536 |
| 32347418 | Foam backrest, Comfort LH V536 | V536 |
| 32347330 | Foam backrest, w vent seat ,Comfort LH V536 | V536 |
| 32272433 | Foam backrest, w vent seat, Side Support, Comfort LH V536 | V536 |
| 32347329 | Foam backrest, Comfort, RH V536 | V536 |
| 32347331 | Foam backrest, w vent seat ,Comfort, RH V536 | V536 |
| 32260952 | Foam backrest, w Massage, w vent seat, Side Support, Comfort, RH V536 | V536 |
| 32260925 | CABLE HARNESS DRIVER 10W | V536 |
| 32260945 | CABLE HARNESS PASSENGER10W | V536 |
| 32260940 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32272464 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32347886 | CABLE HARNESS DRIVER 12W | V536 |
| 32347898 | CABLE HARNESS PASSENGER 12W | V536 |
| 32347894 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32347906 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32347887 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347890 | CABLE HARNESS DRIVER 12W | V536 |
| 32347891 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32347899 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347902 | CABLE HARNESS DRIVER 12W | V536 |
| 32347903 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32347907 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32260929 | CABLE HARNESS DRIVER 16W | V536 |
| 32347888 | CABLE HARNESS DRIVER 16W | V536 |
| 32272457 | CABLE HARNESS PASSENGER 16W | V536 |
| 32403790 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347900 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260938 | CABLE HARNESS DRIVER 16W | V536 |
| 32403794 | CABLE HARNESS DRIVER 16W | V536 |
| 32347892 | CABLE HARNESS DRIVER 16W | V536 |
| 32272462 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260943 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32347896 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32272471 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32403792 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32347908 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32260930 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347889 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272458 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347901 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260939 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347893 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272463 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347905 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260944 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32347897 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32272472 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32347909 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272473 | CABLE HARNESS DRIVER 10W | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32357119 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357114 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32357129 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32357134 | CABLE HARNESS DRIVER 12W | V536 |
| 32357146 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357142 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357154 | CABLE HARNESS DRIVER 12W OWS | V536 |
| 32357135 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357138 | CABLE HARNESS DRIVER 12W | V536 |
| 32357139 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357143 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357147 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357150 | CABLE HARNESS DRIVER 12W | V536 |
| 32357151 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357155 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272476 | CABLE HARNESS DRIVER 16W | V536 |
| 32357136 | CABLE HARNESS DRIVER 16W | V536 |
| 32357122 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357148 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32272481 | CABLE HARNESS DRIVER 16W | V536 |
| 32357140 | CABLE HARNESS DRIVER 16W | V536 |
| 32357127 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357152 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357117 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357144 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357132 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32357156 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32272477 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357137 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357123 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357149 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272482 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357141 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357128 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357153 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357118 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357145 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357133 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32357157 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32260926 | CABLE HARNESS DRIVER 12W | V536 |
| 32357167 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260933 | CABLE HARNESS DRIVER 10W | V536 |
| 32260934 | CABLE HARNESS DRIVER 12W | V536 |
| 32403793 | CABLE HARNESS DRIVER 12W | V536 |
| 32260937 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260941 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32260942 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32272455 | CABLE HARNESS PASSENGER 12W | V536 |
| 32403789 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272456 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272459 | CABLE HARNESS PASSENGER 10W | V536 |
| 32272460 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272461 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272465 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32403791 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32272466 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272474 | CABLE HARNESS DRIVER 12W | V536 |
| 32272475 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32272478 | CABLE HARNESS DRIVER 10W | V536 |
| 32272479 | CABLE HARNESS DRIVER 12W | V536 |
| 32272480 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357115 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357116 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357120 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357121 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357124 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357125 | CABLE HARNESS PASSENGER 12W STPS | V536 |

| 32357126 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
|---|---|---|
| 32357130 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32357131 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32332207 | STPS LH | V536 |
| 32332899 | STPS RH | V536 |
| 32347334 | SBR sensor | V536 |
| 32288999 | OWS sensor system | V536 |
| 32285947 | OWS sensor system | V536 |
| 32447513 | OWS sensor system | V536 |
| 32289196 | LED lamp 3500K | V536 |
| 32408677 | LED lamp 3500K | V536 |
| 32332209 | Bracket side panel middle LH(OB) | V536 |
| 32332210 | Bracket side panel middle RH(OB) | V536 |
| 32332211 | Bracket side panel front LH ASM(OB) | V536 |
| 32332212 | Bracket side panel front  RH ASM(OB) | V536 |
| 32347332 | Bracket side panel middle LH ASM(IB) | V536 |
| 32347333 | Bracket side panel middle RH ASM(IB, BEV) | V536 |
| 32332213 | BRACKET SIDE PANEL REAR LH (OB) | V536 |
| 32332214 | BRACKET SIDE PANEL REAR RH (OB) | V536 |
| 32332994 | BRACKET SIDE PANEL REAR IB LH | V536 |
| 32332995 | BRACKET SIDE PANEL REAR IB RH | V536 |
| 32332208 | Headrest bracket | V536 |
| 32332215 | OWS bracket | V536 |
| 32357158 | Bracket for NFAB LH | V536 |
| 32357159 | Bracket for NFAB RH | V536 |
| 32272299 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32272300 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32403830 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32403831 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447024 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447025 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447663 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447664 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447174 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32447685 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32206981 | Undercarriage,  6 way power with memory LH | V536 |
| 32206983 | Undercarriage,  6 way power with memory RH | V536 |
| 32272301 | Undercarriage,  6 way power with memory LH | V536 |
| 32272302 | Undercarriage,  6 way power with memory RH | V536 |
| 32447635 | Undercarriage,  6 way power with memory RH w End Stop | V536 |
| 32272330 | Backrest, power with memory LH | V536 |
| 32272331 | Backrest, power with memory RH | V536 |
| 32272340 | END STOP | V536 |
| 31652731 | ECU PSM 10W | V536 |
| 32315708 | ECU PSM 12W | V536 |
| 32315709 | ECU PSM 16W | V536 |
| 31652749 | CONTROL PANEL POWER SEAT LEFT | V536 |
| 31652750 | CONTROL PANEL POWER SEAT RIGHT | V536 |
| 31652747 | CONTROL PANEL POWER SEAT CAP (KNOB) | V536 |
| 32332734 | Side airbag LH | V536 |
| 32332735 | Side airbag RH | V536 |
| 32227909 | Far Side airbag LH | V536 |
| 32227910 | Far Side airbag RH | V536 |
| 32131828 | Belt buckle w hall element LH | V536 |
| 32131829 | Belt buckle w hall element RH | V536 |
| 32394091 | Belt buckle w hall element LH | V536 |
| 32394092 | Belt buckle w hall element RH | V536 |
| 32131830 | Belt buckle w BTS, USA/Canada | V536 |
| 32288993 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32447165 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32288992 | Heater mat cushion, w cushion extension, Comfort seat | V536 |
| 32288991 | Heater mat cushion,  w vent, w cushion extension, Comfort seat | V536 |
| 32273214 | Heater mat backrest, w vent, w massage, Comfort seat V536 | V536 |
| 32273213 | Heater mat backrest, w vent, Comfort seat V536 | V536 |
| 32273209 | Heater mat backrest, Comfort seat V536 | V536 |
| 32288813 | Lumbar support 4-way, w Vent | V536 |
| 32288996 | Cushion Ventilation fan assembly | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32450839 | Cushion Ventilation fan assembly | V536 |
|---|---|---|
| 32288994 | Lumbar support 2-way, wo mem | V536 |
| 32450838 | Lumbar support 2-way, wo mem | V536 |
| 32273210 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32288995 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32288998 | Lumbar support 4-way, wo mem | V536 |
| 32447637 | Lumbar support 4-way, w Vent | V536 |
| 32447638 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32447639 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32447636 | Lumbar support 4-way, wo mem | V536 |
| 32347347 | ASSEMBLY COST FRONT SEAT BASIC | V536 |
| 32347345 | ASSEMBLY COST FRONT SEAT CUSHION EXT | V536 |
| 32347341 | ASSEMBLY COSTS FRONT SEAT LEATHER | V536 |
| 32347351 | ASSEMBLY COSTS FRONT SEAT TEXTILE/VINYL | V536 |
| 32347342 | ASSEMBLY COST FRONT SEAT VENT | V536 |
| 32347340 | ASSEMBLY COST FRONT SEAT MASSAGE | V536 |
| 32347348 | ASSEMBLY COST FRONT SEAT FSAB | V536 |
| 32367422 | ASSEMBLY COST FRONT SEAT SPEAKER HR | V536 |
| 32347359 | ASSEMBLY COST FRONT SEAT OWS RH | V536 |
| 32367417 | ASSEMBLY COST FRONT SEAT STPS | V536 |
| 32367418 | ASSEMBLY COST FRONT SEAT 8-WAY POWER | V536 |
| 32367419 | ASSEMBLY COST FRONT SEAT BTS | V536 |
| 32367421 | Assembly cost front seat HR w speaker Leather | V536 |
| 32367738 | FRONT SEAT PROTECTOR BAG LH/RH | V536 |
| 32260832 | Frt Head Rest w/o Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272726 | Frt Head Rest w/o Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272727 | Frt Head Rest w/o Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260833 | Frt Head Rest w Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272409 | Frt Head Rest w Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272410 | Frt Head Rest w Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260830 | Frt Head Rest w/o Speaker Leather Free 1 (Textile/Vinyl, ChS/Metal grey) | V536 |
| 32272390 | HEAD REST,CHARCOAL, FRONT VINYL | V536 |
| 32272405 | HEAD REST,CARDAMOM, FRONT VINYL | V536 |
| 32272396 | HEAD REST,WHITE | V536 |
| 32260831 | HEAD REST,CHARCOAL, FRONT VINYL W SPEAKER | V536 |
| 32272407 | HEAD REST,CARDAMOM, FRONT VINYL W SPEAKER | V536 |
| 32272416 | HEAD REST,WHITE, FRONT VINYL W SPEAKER | V536 |
| 32332704 | Headrest guide sleeve | V536 |
| 32403047 | Cushion Extension Assembly | V536 |
| 32273847 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32273856 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32273849 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32273852 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32273864 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32273870 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32273866 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32273868 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |
| 32273890 | STRUCTURE 3RD ROW LH CUSHION | V536 |
| 32273891 | STRUCTURE 3RD ROW RH CUSHION | V536 |
| 32332882 | STRUCTURE 3RD ROW BACK W ISOFIX | V536 |
| 32447134 | STRUCTURE 3RD ROW BACK WO ISOFIX | V536 |
| 32403994 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32403995 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32447281 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32447282 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32403998 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32403999 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32403996 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32403997 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447283 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32447284 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447026 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447027 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32447285 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447286 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32420916 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32420917 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332244 | ICS STRUCTURE | V536 |
|---|---|---|
| 32332245 | FOAM 2nd ROW RSC LH EE | V536 |
| 32332246 | FOAM 2nd ROW RSC RH EE | V536 |
| 32403806 | FOAM 2nd ROW RSC LH EE | V536 |
| 32403807 | FOAM 2nd ROW RSC RH EE | V536 |
| 32447405 | FOAM 2nd ROW RSC LH EE | V536 |
| 32447406 | FOAM 2nd ROW RSC RH EE | V536 |
| 32332247 | FOAM 2nd ROW RSB LH EE | V536 |
| 32332248 | FOAM 2nd ROW RSB RH EE | V536 |
| 32447014 | FOAM 2nd ROW RSB LH EE | V536 |
| 32447015 | FOAM 2nd ROW RSB RH EE | V536 |
| 32332249 | FOAM 2nd ROW RSC CTR NO ICS | V536 |
| 31693742 | FOAM 2nd ROW RSC CTR ICS REAR | V536 |
| 32332250 | FOAM 2nd ROW RSC CTR ICS FRONT | V536 |
| 32332251 | FOAM 2nd ROW RSB CTR | V536 |
| 32332252 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32332253 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32447012 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32447013 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32332317 | FOAM 3RD ROW RSC LH | V536 |
| 32347510 | FOAM 3RD ROW RSC RH | V536 |
| 32332318 | FOAM 3rd ROW RSB LH W ISOFIX | V536 |
| 32332319 | FOAM 3rd ROW RSB RH W ISOFIX | V536 |
| 32447135 | FOAM 3rd ROW RSB LH WO ISOFIX | V536 |
| 32447136 | FOAM 3rd ROW RSB RH WO ISOFIX | V536 |
| 32357329 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32357330 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32403915 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32403916 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32447574 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32447575 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32357332 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32357333 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32447010 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32447011 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32332254 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32332255 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32447682 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32447683 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32345383 | HEATING PAD RSC 2nd ROW 7-S | V536 |
| 32345384 | HEATING PAD RSC 2nd ROW RH 7-S | V536 |
| 32332256 | HEATING PAD RSB 2nd ROW | V536 |
| 32357326 | HEATING PAD RSC 2nd ROW 6-S | V536 |
| 32357327 | HEATING PAD RSC 2nd ROW RH 6-S | V536 |
| 32357328 | HEATING PAD RSB 2nd ROW 6-S | V536 |
| 32357316 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32357318 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32357317 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32357319 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32332257 | PLASTIC HANDLE EZ ENTRY 2R LH Charcoal | V536 |
| 32345157 | PLASTIC HANDLE EZ ENTRY 2R LH Dawn | V536 |
| 32332258 | PLASTIC HANDLE EZ ENTRY 2R RH Charcoal | V536 |
| 32345158 | PLASTIC HANDLE EZ ENTRY 2R RH Dawn | V536 |
| 32332259 | EE BEZEL 2ROW Charcoal | V536 |
| 32345159 | EE BEZEL 2ROW Dawn | V536 |
| 32332260 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32345160 | D-LOOP COVER 2ROW Dawn | V536 |
| 32332261 | D-LOOP 2ROW | V536 |
| 32332262 | BELT GUIDE 2ROW Charcoal | V536 |
| 32345161 | BELT GUIDE 2ROW Dawn | V536 |
| 32332263 | RECLINER HANDLE LH 2ROW Charcoal | V536 |
| 32345162 | RECLINER HANDLE LH 2ROW Dawn | V536 |
| 32332264 | RECLINER HANDLE RH 2ROW Charcoal | V536 |
| 32345163 | RECLINER HANDLE RH 2ROW Dawn | V536 |
| 32332265 | TRACK COVER LH R2 Charcoal | V536 |
| 32345164 | TRACK COVER LH R2 Dawn | V536 |
| 32332266 | TRACK COVER RH R2 Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32345165 | TRACK COVER RH R2 Dawn | V536 |
| 32332267 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32345166 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32332268 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32345167 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32332269 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |
| 32345168 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
| 32332270 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32345169 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32332271 | COVER RECLINER 20 LH Charcoal | V536 |
| 32345170 | COVER RECLINER 20 LH Dawn | V536 |
| 32332272 | COVER RECLINER 20 RH Charcoal | V536 |
| 32345171 | COVER RECLINER 20 RH Dawn | V536 |
| 32332273 | REAR BACK COVER OB LH Charcoal | V536 |
| 32345172 | REAR BACK COVER OB LH Dawn | V536 |
| 32332274 | REAR BACK COVER OB RH Charcoal | V536 |
| 32345173 | REAR BACK COVER OB RH Dawn | V536 |
| 32332275 | REAR BACK COVER CTR LH Charcoal | V536 |
| 32345174 | REAR BACK COVER CTR LH Dawn | V536 |
| 32332276 | REAR BACK COVER CTR RH Charcoal | V536 |
| 32345175 | REAR BACK COVER CTR RH Dawn | V536 |
| 32332277 | CENTER COVER | V536 |
| 32332278 | IMPACT ABSORBER PLATE | V536 |
| 32332279 | GAP CLOSURE LH Charcoal | V536 |
| 32345176 | GAP CLOSURE LH Dawn | V536 |
| 32332280 | GAP CLOSURE RH Charcoal | V536 |
| 32345177 | GAP CLOSURE RH Dawn | V536 |
| 32332281 | CONNECTOR BRACKET OTR LH | V536 |
| 32332282 | CONNECTOR BRACKET OTR RH | V536 |
| 32332283 | CONNECTOR BRACKET CTR | V536 |
| 32332284 | SEAT RAIL COVER LH Charcoal | V536 |
| 32345178 | SEAT RAIL COVER LH Dawn | V536 |
| 32332285 | SEAT RAIL COVER RH Charcoal | V536 |
| 32345179 | SEAT RAIL COVER RH Dawn | V536 |
| 32357320 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32357321 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32357322 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32357323 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32357324 | CARRIER SEAT RAIL INBOARD LH | V536 |
| 32357325 | CARRIER SEAT RAIL INBOARD RH | V536 |
| 32332290 | RELEASE STRAP RH 2ROW Charcoal | V536 |
| 32345180 | RELEASE STRAP RH 2ROW Dawn | V536 |
| 32332322 | SIDE VALANCE OUTBOARD 3rd ROW LH Charcoal | V536 |
| 32332323 | SIDE VALANCE OUTBOARD 3rd ROW RH Charcoal | V536 |
| 32332320 | CENTER COVER REAR CHARCOAL | V536 |
| 32345128 | CENTER COVER REAR DAWN | V536 |
| 32332325 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32403829 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32447182 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32357195 | Carrier, Armrest LH | V536 |
| 32357196 | Carrier, Armrest RH | V536 |
| 32403989 | Carrier, Armrest LH | V536 |
| 32403990 | Carrier, Armrest RH | V536 |
| 32447584 | Carrier, Armrest LH | V536 |
| 32447585 | Carrier, Armrest RH | V536 |
| 32332291 | CABLE HARNESS 2nd ROW OTR 7-S LH | V536 |
| 32332292 | CABLE HARNESS 2nd ROW OTR 7-S RH | V536 |
| 32403751 | CABLE HARNESS 2nd ROW OTR 6/7-S LH No Heat | V536 |
| 32403752 | CABLE HARNESS 2nd ROW OTR 6/7-S RH No Heat | V536 |
| 32403173 | CABLE HARNESS 2nd ROW OTR 6-S LH | V536 |
| 32403174 | CABLE HARNESS 2nd ROW OTR 6-S RH | V536 |
| 32332293 | CABLE HARNESS 2nd ROW OTR 5-S LH | V536 |
| 32332294 | CABLE HARNESS 2nd ROW OTR 5-S RH | V536 |
| 32403749 | CABLE HARNESS 2nd ROW OTR 5-S LH No Heat | V536 |
| 32403750 | CABLE HARNESS 2nd ROW OTR 5-S RH No Heat | V536 |
| 32332295 | CABLE HARNESS 2nd ROW CTR 7-S | V536 |
| 32332296 | CABLE HARNESS 2nd ROW CTR 5-S | V536 |

| | | |
|---|---|---|
| 32332329 | CABLE HARNESS 3rd ROW LH | V536 |
| 32367077 | CABLE HARNESS 3rd ROW RH | V536 |
| 32332298 | HEAD REST MECH 2nd ROW OTR MECH | V536 |
| 32447016 | HEAD REST MECH 2nd ROW OTR MECH LH | V536 |
| 32447017 | HEAD REST MECH 2nd ROW OTR MECH RH | V536 |
| 32332299 | HEAD REST MECH 2nd ROW CTR | V536 |
| 32332300 | HEAD REST BEZEL 2nd ROW CTR Charcoal | V536 |
| 32345181 | HEAD REST BEZEL 2nd ROW CTR Dawn | V536 |
| 32332297 | HEAD REST MECH 3rd ROW ELEC | V536 |
| 32332304 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447028 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447961 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32345185 | CARPET 2nd ROW LH + RH 5-S Dawn | V536 |
| 32332305 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32447029 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32345186 | CARPET 2nd ROW CTR 5 + 7-S Dawn | V536 |
| 32332306 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447030 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447962 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32345187 | CARPET 2nd ROW LH 7-S EE Dawn | V536 |
| 32332307 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447031 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447963 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32345188 | CARPET 2nd ROW RH 7-S EE Dawn | V536 |
| 32332331 | CARPET 3rd ROW | V536 |
| 32403992 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447986 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447137 | CARPET 3rd ROW WO ISOFIX | V536 |
| 32332332 | CARPET 3rd ROW RH | V536 |
| 32332308 | ICS LABEL EU / ROW | V536 |
| 32447039 | ICS LABEL EU / ROW | V536 |
| 32332309 | ICS LABEL US | V536 |
| 32332310 | ICS LABEL CAN | V536 |
| 32447632 | ICS LABEL EU / ROW | V536 |
| 32447630 | ICS LABEL US | V536 |
| 32447631 | ICS LABEL CAN | V536 |
| 32332311 | ICS LABEL LATIN AMERICA | V536 |
| 32447040 | ICS LABEL LATIN AMERICA | V536 |
| 32447633 | ICS LABEL LATIN AMERICA | V536 |
| 32332312 | ICS LABEL RUSSIA | V536 |
| 32332313 | ICS LABEL CHINA | V536 |
| 32332314 | ICS LABEL TURKEY | V536 |
| 32407041 | ICS LABEL TURKEY | V536 |
| 32447634 | ICS LABEL TURKEY | V536 |
| 32131814 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32131815 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32131820 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32131821 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401664 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32401666 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32401665 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401667 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401908 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401909 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32131831 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32131833 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32131832 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32341256 | BELT BUCKLE ASSY 3R LH | V536 |
| 32341257 | BELT BUCKLE ASSY 3R RH | V536 |
| 32394097 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32394099 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32394098 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401671 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32401672 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401673 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32394100 | BELT BUCKLE ASSY 3R LH | V536 |
| 32394101 | BELT BUCKLE ASSY 3R RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32401901 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32401903 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401902 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401899 | BELT BUCKLE ASSY 3R LH | V536 |
| 32401900 | BELT BUCKLE ASSY 3R RH | V536 |
| 32332315 | PROTECTION BAG 2R OUTER | V536 |
| 32357331 | PROTECTION BAG 2R OUTER 6 SEATER | V536 |
| 32332316 | PROTECTION BAG 2R CENTER | V536 |
| 32332333 | PROTECTION BAG 3R | V536 |
| 32332914 | ASSEMBLY COST 2R BASE | V536 |
| 32367880 | ASSEMBLY COST 2R 6S | V536 |
| 32332916 | Assy Non-textile uph | V536 |
| 32332917 | ASSEMBLY COST 2R ICS | V536 |
| 32332919 | ASSEMBLY COST 2R HEAT | V536 |
| 32332915 | ASSEMBLY COST 2R EASY ENTRY | V536 |
| 32367104 | ASSEMBLY COST 3R BASE | V536 |
| 32332738 | HEAD REST 2/3R OUTER NAPPA - Leather Charcoal | V536 |
| 32332740 | HEAD REST 2/3R OUTER NAPPA - Leather Dawn | V536 |
| 32345142 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Charcoal | V536 |
| 32345409 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Dawn | V536 |
| 32345403 | HEAD REST 2nd ROW CENTER Leather Charcoal | V536 |
| 32345405 | HEAD REST 2nd ROW CENTER Leather Dawn | V536 |
| 32332302 | HEAD REST OUTER WITH LABEL 7S / 6S TEXTILE-VINYL | V536 |
| 32345144 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32345145 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32447648 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32447647 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32345143 | HEAD REST 2/3R OUTER Vinyl Dawn | V536 |
| 32345410 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32447655 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32345411 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32345406 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32345407 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32367895 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32447654 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32447651 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32447650 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32447652 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32345137 | HEAD REST 2/3R OUTER Premium textile - Aspen | V536 |
| 32345184 | HEAD REST OUTER WITH LABEL 7S / 6S PREMIUM TEXTILE | V536 |
| 32345402 | HEAD REST 2nd ROW CENTER Premium Textile - Aspen | V536 |
| 32345138 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32345183 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32345182 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32447649 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32447656 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32447653 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32345398 | ARMREST ASSY V526 2ND ROW Leather Charcoal | V536 |
| 32345400 | ARMREST ASSY V526 2ND ROW Leather Dawn | V536 |
| 32357185 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32357186 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32367853 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32367854 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32367855 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32367856 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32403983 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32403984 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32403985 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32403986 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32403987 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32403988 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32447701 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32447702 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32447703 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32447704 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32447705 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32447706 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332303 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
|---|---|---|
| 32345401 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32367504 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447006 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
| 32447008 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32447009 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447007 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32345397 | ARMREST ASSY V526 2ND ROW Premium Textile | V536 |
| 32345396 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32357187 | ARMREST ASSY 723B 2ND ROW LH TEXTILE 3 | V536 |
| 32357188 | ARMREST ASSY 723B 2ND ROW RH TEXTILE 3 | V536 |
| 31693743 | HEAD REST 2/3R OUTER Textile/Vinyl - Coarse | V536 |
| 32347360 | LOG PACK MARK COST COMMON LH | V536 |
| 32347361 | LOG PACK MARK COST COMMON RH | V536 |
| 32347362 | LOG PACK MARK COST US/CA LH | V536 |
| 32347363 | LOG PACK MARK COST US/CA RH | V536 |
| 32347364 | LOG PACK MARK COST 2W LH/RH | V536 |
| 32347365 | LOG PACK MARK COST 4W LH/RH | V536 |
| 32347366 | LOG PACK MARK COST 4W vent LH/RH | V536 |
| 32347367 | LOG PACK MARK COST 4W massage LH/RH | V536 |
| 32347368 | LOG PACK MARK COST 4W vent and masssage LH/RH | V536 |
| 32367100 | LOG PACK MARK COST HEADREST SPEAKER VINYL CHS LH/RH | V536 |
| 32367101 | LOG PACK MARK COST HEADREST VINYL CHS LH/RH | V536 |
| 32367102 | LOG PACK MARK COST HEADREST VENT TEXTILE LH/RH | V536 |
| 32347369 | LOG PACK MARK COST PSM 10W LH/RH | V536 |
| 32367917 | LOG PACK MARK COST PSM 12W LH/RH | V536 |
| 32367918 | LOG PACK MARK COST PSM 16W LH/RH | V536 |
| 32367919 | LOG PACK MARK COST HEADREST SPEAKER VINYL CDM DWN LH/RH | V536 |
| 32367920 | LOG PACK MARK COST HEADREST VINYL CDM DWN LH/RH | V536 |
| 32367921 | LOG PACK MARK COST HEADREST SPEAKER RECHARGE LH/RH | V536 |
| 32367922 | LOG PACK MARK COST HEADREST RECHARGE LH/RH | V536 |
| 32332920 | LOGISTIC COST BELT A CHS | V536 |
| 32367929 | LOGISTIC COST BELT A DWN | V536 |
| 32332921 | LOGISTIC COST BELT B CHS | V536 |
| 32367930 | LOGISTIC COST BELT B DWN | V536 |
| 32332922 | LOGISTIC COST 7S BASE | V536 |
| 32332923 | LOGISTIC COST 5S BASE | V536 |
| 32367889 | LOGISTIC COST 6S BASE | V536 |
| 32332925 | LOGISTIC COST 7S ICS STRUCTURE | V536 |
| 32332924 | LOGISTIC COST 5S ICS STRUCTURE | V536 |
| 32332926 | LOGISTIC COST HEAT 7S | V536 |
| 32367881 | LOGISTIC COST HEAT 5S | V536 |
| 32367882 | LOGISTIC COST HEAT 6S | V536 |
| 32332927 | LOGISTIC COST ARMREST 5S/7S VINYL CHS | V536 |
| 32367883 | LOGISTIC COST ARMREST 5S/7S VINYL CDM | V536 |
| 32367884 | LOGISTIC COST ARMREST 7S VINYL DWN | V536 |
| 32367885 | LOGISTIC COST ARMREST 7S RECHARGE | V536 |
| 32367886 | LOGISTIC COST ARMREST 6S VINYL CHS | V536 |
| 32367887 | LOGISTIC COST ARMREST 6S VINYL CDM | V536 |
| 32367888 | LOGISTIC COST ARMREST 6S VINYL DWN | V536 |
| 32367105 | LOGISTIC COST STRUCTURE 3RD ROW | V536 |
| 32367106 | LOGISTIC COST BELT BUCKLE | V536 |
| 32332820 | Upholstery, Midnight zinc white / Front Back LH w/o FSAB label | V536 |
| 32332821 | Upholstery, Midnight zinc white / Front Back RH w/o FSAB label | V536 |
| 32347157 | Upholstery, Midnight zinc white / Front Back LH | V536 |
| 32347158 | Upholstery, Midnight zinc white / Front Back RH | V536 |
| 32347159 | Upholstery, Midnight zinc white / Front cushion LH w CEXT | V536 |
| 32347160 | Upholstery, Midnight zinc white / Front cushion RH w CEXT | V536 |
| 32347161 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISO | V536 |
| 32347162 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISO | V536 |
| 32347163 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISIZE | V536 |
| 32347164 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISIZE | V536 |
| 32347165 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO A | V536 |
| 32347166 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO A | V536 |
| 32347167 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO B | V536 |
| 32347168 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO B | V536 |
| 32347169 | Upholstery, Midnight zinc white / 2nd row Center back w armrest | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32347170 | Upholstery, Midnight zinc white / 2nd row Cushion LH | V536 |
| 32347171 | Upholstery, Midnight zinc white / 2nd row Cushion RH | V536 |
| 32347172 | Upholstery, Midnight zinc white / 2nd row Cushion Center w ICS | V536 |
| 32347173 | Upholstery, Midnight zinc white / 2nd row Cushion Center no ICS | V536 |
| 32347174 | Upholstery, Midnight zinc white / Child seat | V536 |
| 32352643 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISO | V536 |
| 32352642 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISO | V536 |
| 32352645 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISIZE | V536 |
| 32352644 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISIZE | V536 |
| 32352640 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32352641 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32403907 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32403908 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32447576 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32447577 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32347175 | Upholstery, Midnight zinc white / 3rd row Back RH ISO | V536 |
| 32347176 | Upholstery, Midnight zinc white / 3rd row Back LH ISO | V536 |
| 32447144 | Upholstery, Midnight zinc white / 3rd row Back RH | V536 |
| 32447145 | Upholstery, Midnight zinc white / 3rd row Back LH | V536 |
| 32347179 | Upholstery, Midnight zinc white / 3rd row Cushion LH | V536 |
| 32357164 | Upholstery, Midnight zinc white / 3rd row Cushion RH | V536 |
| 32367438 | Upholstery, Charcoal/Front Back LH w FSAB | V536 |
| 32367439 | Upholstery, Charcoal/Front Back RH w FSAB | V536 |
| 32367440 | Upholstery, Charcoal/Front cushion LH w CEXT | V536 |
| 32367441 | Upholstery, Charcoal/Front cushion RH w CEXT | V536 |
| 32367442 | Upholstery, Charcoal/2nd row Back RH 7S ISO | V536 |
| 32367443 | Upholstery, Charcoal/2nd row Back LH 7S ISO | V536 |
| 32367444 | Upholstery, Charcoal/2nd row Back RH 7S ISIZE | V536 |
| 32367445 | Upholstery, Charcoal/2nd row Back LH 7S ISIZE | V536 |
| 32367447 | Upholstery, Charcoal/2nd row Cushion LH | V536 |
| 32367448 | Upholstery, Charcoal/2nd row Cushion RH | V536 |
| 32367452 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32367453 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |
| 32367454 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
| 32367455 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32367456 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32367457 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32367458 | Upholstery 3rd row Back RH | V536 |
| 32367459 | Upholstery 3rd row Back LH | V536 |
| 32367460 | Upholstery 3rd row Cushion LH | V536 |
| 32367461 | Upholstery 3rd row Cushion RH | V536 |
| 32332816 | Upholstery, Charcoal solid / Front Back LH w/o FSAB label | V536 |
| 32332817 | Upholstery, Charcoal solid / Front Back RH w/o FSAB label | V536 |
| 32332560 | Upholstery, Charcoal solid / Front Back LH | V536 |
| 32332561 | Upholstery, Charcoal solid / Front Back RH | V536 |
| 32332562 | Upholstery, Charcoal solid / Front cushion LH n CEXT | V536 |
| 32332563 | Upholstery, Charcoal solid / Front cushion RH n CEXT | V536 |
| 32431814 | Upholstery, Charcoal solid / Front cushion LH no CEXT | V536 |
| 32431815 | Upholstery, Charcoal solid / Front cushion RH no CEXT | V536 |
| 32367463 | Upholstery, Charcoal solid / Front cushion LH w CEXT | V536 |
| 32367464 | Upholstery, Charcoal solid / Front cushion RH w CEXT | V536 |
| 32332564 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISO | V536 |
| 32332565 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISO | V536 |
| 32347272 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISIZE | V536 |
| 32347273 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISIZE | V536 |
| 32332566 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISO | V536 |
| 32332567 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISO | V536 |
| 32347274 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISIZE | V536 |
| 32347275 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISIZE | V536 |
| 32332568 | Upholstery, Charcoal solid / 2nd row Center back | V536 |
| 32332569 | Upholstery, Charcoal solid / 2nd row Cushion LH | V536 |
| 32332570 | Upholstery, Charcoal solid / 2nd row Cushion RH | V536 |
| 32332571 | Upholstery, Charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32332572 | Upholstery, Charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32332573 | Upholstery, Charcoal solid / Child seat | V536 |
| 32357685 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32357686 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32357687 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
| 32357688 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32357689 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32357690 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32403909 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32403910 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32447578 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32447579 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32332574 | Upholstery, Charcoal solid / 3rd row Back RH ISO | V536 |
| 32332575 | Upholstery, Charcoal solid / 3rd row Back LH ISO | V536 |
| 32447139 | Upholstery, Charcoal solid / 3rd row Back RH | V536 |
| 32447138 | Upholstery, Charcoal solid / 3rd row Back LH | V536 |
| 32332576 | Upholstery, Charcoal solid / 3rd row Cushion LH | V536 |
| 32357163 | Upholstery, Charcoal solid / 3rd row Cushion RH | V536 |
| 32347117 | Upholstery, Cardamom / Front Back LH Quilted | V536 |
| 32347118 | Upholstery, Cardamom / Front Back RH Quilted | V536 |
| 32447425 | Upholstery, Cardamom / Front Back LH | V536 |
| 32447426 | Upholstery, Cardamom / Front Back RH | V536 |
| 32347119 | Upholstery, Cardamom / Front cushion LH n CEXT | V536 |
| 32347120 | Upholstery, Cardamom / Front cushion RH n CEXT | V536 |
| 32431816 | Upholstery, Cardamom / Front cushion LH no CEXT | V536 |
| 32431817 | Upholstery, Cardamom / Front cushion RH no CEXT | V536 |
| 32367465 | Upholstery, Cardamom / Front cushion LH w CEXT | V536 |
| 32367466 | Upholstery, Cardamom / Front cushion RH w CEXT | V536 |
| 32347121 | Upholstery, Cardamom / 2nd row Back RH 7S ISO Quilted | V536 |
| 32347122 | Upholstery, Cardamom / 2nd row Back LH 7S ISO Quilted | V536 |
| 32347278 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE Quilted | V536 |
| 32347279 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE Quilted | V536 |
| 32347123 | Upholstery, Cardamom / 2nd row Back RH 5S ISO Quilted | V536 |
| 32347124 | Upholstery, Cardamom / 2nd row Back LH 5S ISO Quilted | V536 |
| 32347280 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE Quilted | V536 |
| 32347281 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE Quilted | V536 |
| 32447431 | Upholstery, Cardamom / 2nd row Back RH 5S ISO | V536 |
| 32447432 | Upholstery, Cardamom / 2nd row Back LH 5S ISO | V536 |
| 32447434 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE | V536 |
| 32447433 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE | V536 |
| 32347125 | Upholstery, Cardamom / 2nd row Center back | V536 |
| 32347126 | Upholstery, Cardamom / 2nd row Cushion LH | V536 |
| 32347127 | Upholstery, Cardamom / 2nd row Cushion RH | V536 |
| 32347128 | Upholstery, Cardamom / 2nd row Cushion Center w ICS | V536 |
| 32347129 | Upholstery, Cardamom / 2nd row Cushion Center no ICS | V536 |
| 32347130 | Upholstery, Cardamom / Child seat | V536 |
| 32357691 | Upholstery, Cardamom / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357692 | Upholstery, Cardamom / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357693 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357694 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357695 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32357696 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32403911 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32403912 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32447580 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32447581 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32347131 | Upholstery, Cardamom / 3rd row Back RH ISO | V536 |
| 32347132 | Upholstery, Cardamom / 3rd row Back LH ISO | V536 |
| 32447140 | Upholstery, Cardamom / 3rd row Back RH | V536 |
| 32447141 | Upholstery, Cardamom / 3rd row Back LH | V536 |
| 32347133 | Upholstery, Cardamom / 3rd row Cushion LH | V536 |
| 32357166 | Upholstery, Cardamom / 3rd row Cushion RH | V536 |
| 32367467 | Upholstery, Dawn / Front Back LH Quilted | V536 |
| 32367468 | Upholstery, Dawn / Front Back RH Quilted | V536 |
| 32447447 | Upholstery, Dawn / Front Back LH | V536 |
| 32447448 | Upholstery, Dawn / Front Back RH | V536 |
| 32367469 | Upholstery, Dawn / Front cushion LH w CEXT | V536 |
| 32367470 | Upholstery, Dawn / Front cushion RH w CEXT | V536 |
| 32367471 | Upholstery, Dawn / 2nd row Back RH 7S ISO Quilted | V536 |
| 32367472 | Upholstery, Dawn / 2nd row Back LH 7S ISO Quilted | V536 |
| 32367473 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE Quilted | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32367474 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE Quilted | V536 |
|---|---|---|
| 32367479 | Upholstery, Dawn / 2nd row Center back | V536 |
| 32367480 | Upholstery, Dawn / 2nd row Cushion LH | V536 |
| 32367481 | Upholstery, Dawn / 2nd row Cushion RH | V536 |
| 32367482 | Upholstery, Dawn / 2nd row Cushion Center w ICS | V536 |
| 32367483 | Upholstery, Dawn / 2nd row Cushion Center no ICS | V536 |
| 32367484 | Upholstery, Dawn / Child seat | V536 |
| 32357697 | Upholstery, Dawn / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357698 | Upholstery, Dawn / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357699 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357700 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357701 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32357702 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32403913 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32403914 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32447582 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32447583 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32367485 | Upholstery, Dawn / 3rd row Back RH ISO | V536 |
| 32367486 | Upholstery, Dawn / 3rd row Back LH ISO | V536 |
| 32447143 | Upholstery, Dawn / 3rd row Back RH | V536 |
| 32447142 | Upholstery, Dawn / 3rd row Back LH | V536 |
| 32367487 | Upholstery, Dawn / 3rd row Cushion LH | V536 |
| 32367488 | Upholstery, Dawn / 3rd row Cushion RH | V536 |
| 32332814 | Upholstery, Metal grey / Front Back LH w/o FSAB label | V536 |
| 32332815 | Upholstery, Metal grey / Front Back RH w/o FSAB label | V536 |
| 32347134 | Upholstery, Metal grey / Front Back LH | V536 |
| 32347135 | Upholstery, Metal grey / Front Back RH | V536 |
| 32347136 | Upholstery, Metal grey / Front cushion LH | V536 |
| 32347137 | Upholstery, Metal grey / Front cushion RH | V536 |
| 32347138 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347139 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347140 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347141 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347142 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347143 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347144 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347145 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347152 | Upholstery, Metal grey / 3rd row Back RH | V536 |
| 32347153 | Upholstery, Metal grey / 3rd row Back LH | V536 |
| 32332822 | Upholstery Front Back LH (-Unique 722D) | V536 |
| 32332823 | Upholstery Front Back RH  (-Unique 722D) | V536 |
| 32347180 | Upholstery Front Back LH w FAB label | V536 |
| 32347181 | Upholstery Front Back RH w FAB label | V536 |
| 32347182 | Upholstery Front cushion LH w  Mec CEXT | V536 |
| 32347183 | Upholstery Front cushion RH w Mec CEXT | V536 |
| 32347184 | Upholstery 2nd row Back  RH 7 seater ISOFIX | V536 |
| 32347185 | Upholstery 2nd row Back  LH 7 seater ISOFIX | V536 |
| 32347186 | Upholstery 2nd row Back  RH 7 seater ISIZE | V536 |
| 32347187 | Upholstery 2nd row Back  LH 7 seater ISIZE | V536 |
| 32347188 | Upholstery 2nd row Back  RH 5 seater ISOFIX* | V536 |
| 32347189 | Upholstery 2nd row Back  LH 5 seater ISOFIX* | V536 |
| 32347190 | Upholstery 2nd row Back  RH 5 seater ISIZE* | V536 |
| 32347191 | Upholstery 2nd row Back  LH 5 seater ISIZE* | V536 |
| 32347192 | Upholstery 2nd row Center back w armrest | V536 |
| 32347193 | Upholstery 2nd row Cushion LH | V536 |
| 32347194 | Upholstery 2nd row Cushion RH | V536 |
| 32347195 | Upholstery 2nd row Cushion Center w ICS | V536 |
| 32347196 | Upholstery 2nd row Cushion Center no ICS | V536 |
| 32347197 | ICS | V536 |
| 32347198 | Upholstery 3rd row Back  RH ISOFIX | V536 |
| 32347199 | Upholstery 3rd row Back  LH ISOFIX | V536 |
| 32347202 | Upholstery 3rd row Cushion LH | V536 |
| 32357165 | Upholstery 3rd row Cushion RH | V536 |
| 32347203 | Upholstery, charcoal solid / Front Back LH | V536 |
| 32347204 | Upholstery, charcoal solid / Front Back RH | V536 |
| 32347205 | Upholstery, charcoal solid / Front cushion LH | V536 |
| 32347206 | Upholstery, charcoal solid / Front cushion RH | V536 |

| | | |
|---|---|---|
| 32347207 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347208 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347209 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347210 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347211 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347212 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347213 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347214 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347215 | Upholstery, charcoal solid / 2nd row Center back w armrest | V536 |
| 32347216 | Upholstery, charcoal solid / 2nd row Cushion LH | V536 |
| 32347217 | Upholstery, charcoal solid / 2nd row Cushion RH | V536 |
| 32347218 | Upholstery, charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32347219 | Upholstery, charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32347220 | Upholstery, charcoal solid / Child seat | V536 |
| 32347221 | Upholstery, charcoal solid / 3rd row Back RH | V536 |
| 32347222 | Upholstery, charcoal solid / 3rd row Back LH | V536 |
| 32347225 | Upholstery, charcoal solid / 3rd row Cushion LH | V536 |
| 32357160 | Upholstery, charcoal solid / 3rd row Cushion RH | V536 |
| 32347249 | Upholstery, dawn/porcelain / Front Back LH | V536 |
| 32347250 | Upholstery, dawn/porcelain / Front Back RH | V536 |
| 32347251 | Upholstery, dawn/porcelain / Front cushion LH | V536 |
| 32347252 | Upholstery, dawn/porcelain / Front cushion RH | V536 |
| 32347253 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347254 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347255 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347256 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347257 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347258 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347259 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347260 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347261 | Upholstery, dawn/porcelain / 2nd row Center back w armrest | V536 |
| 32347262 | Upholstery, dawn/porcelain / 2nd row Cushion LH | V536 |
| 32347263 | Upholstery, dawn/porcelain / 2nd row Cushion RH | V536 |
| 32347264 | Upholstery, dawn/porcelain / 2nd row Cushion Center w ICS | V536 |
| 32347265 | Upholstery, dawn/porcelain / 2nd row Cushion Center no ICS | V536 |
| 32347266 | Upholstery, dawn/porcelain / Child seat | V536 |
| 32347267 | Upholstery, dawn/porcelain / 3rd row Back RH | V536 |
| 32347268 | Upholstery, dawn/porcelain / 3rd row Back LH | V536 |
| 32347271 | Upholstery, dawn/porcelain / 3rd row Cushion LH | V536 |
| 32357162 | Upholstery, dawn/porcelain / 3rd row Cushion RH | V536 |
| 32367931 | Edge Protector LH | V536 |
| 32367932 | Edge Protector RH | V536 |
| 32367908 | V536 7S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367909 | V536 7S Center seat (Cardamom vinyl + ICS) | V536 |
| 32367910 | V536 7S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32367911 | 723B 6S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367912 | 723B 6S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32403626 | ECU PSM 10W | V536 |
| 32403627 | ECU PSM 12W | V536 |
| 32403628 | ECU PSM 16W | V536 |
| 966214 | Six point socket M6X16 Trim list FAB | V536 |
| 961613 | Weld nut inb. Trimlist  FAB | V536 |
| 30622524 | SIX POINT SOCKET SCREW M5x12 | V536 |
| 986060 | Six point socket screw PF5*12, front bracket | V536 |
| 30622814 | Self thread plastic PT5x14 | V536 |
| 999495 | Plastic rivet, 5,2*9,3, rear panel inner | V536 |
| 30624298 | Six point socket screw, M6*10, bracket front | V536 |
| 30697666 | Hogring | V536 |
| 30622533 | Six point socket screw, M5*14, hardback | V536 |
| 985865 | Screw for AB rivet nut | V536 |
| 986061 | Six point socket screw PF*14, lid harness | V536 |
| 982755 | SCREW M6x12 | V536 |
| 9475400 | Push pin plastic | V536 |
| 30776075 | SIX POINT SOCKET SCREW M5X14 | V536 |
| 30622665 | SIX POINT SOCKET SCREW M4x25 | V536 |
| 986113 | SHEETtracs Schraube, M5*14 | V536 |
| 32272827 | SCREW M8x20 | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 982756 | Screw M6x12 | V536 |
|---|---|---|
| 985955 | FLANGE NUT M10 HEX15 | V536 |
| 30622544 | SCREW M10 T50 | V536 |
| 985921 | FLANGE NUT M8 | V536 |
| 988867 | SEMS SCREW M6X18 | V536 |
| 30640977 | ITW EXPANDING RIVET 6,5x18 | V536 |
| 30622615 | RAYMOND FIXATION CLIP | V536 |
| 30622595 | RAYMOND FIXATION CLIP | V536 |
| 3521768 | PLASTIC CLIP | V536 |
| 32403707 | Screw for high grade steel | V536 |
| 32447626 | Screw for high grade steel | V536 |
| 30640964 | HEAD SCREW WITH SPEC IAL DOG POINT M5*12 | V536 |
| 949937 | Spring Nut M5 | V536 |
| 32447627 | Spring Nut M5 | V536 |
| 32403706 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 30746746 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 31109159 | Expansion Rivet | V536 |
| 32403705 | Six point socket screw, M6*10 | V536 |
| 30640814 | Tapping Flange Screw  M5*14 | V536 |
| 30769443 | Six point socket screw ST4.8x19 | V536 |
| 32403708 | Rivet Pop M4.75 | V536 |
| 32401663 | Blind Rivet 6.4 | V536 |
| 949921 | Spring Nut M6 | V536 |
| 986214 | SIX POINT SOCKET PAN HEAD SCREWS M6x16 | V536 |
| 30640782 | SCREW M8x20 | V536 |
| 985858 | FLANGE NUT M6X14 | V536 |
| 999127 | FLANGE NUT M10 HEX15 | V536 |
| 985860 | FLANGE NUT M8 | V536 |
| 30746829 | Six point socket screw M10*18,75, assebly cushion and backrest | V536 |
| 30769349 | M10 marriage bolt | V536 |
| 30769353 | M12 marriage bolt | V536 |
| 30746811 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 30746812 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 32403185 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 32403202 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 982794 | SCREW M8x20 | V536 |
| 31109219 | Push pin plastic | V536 |
| 986716 | Rivet Pop M4.75 | V536 |
| 32403172 | Boltscrew M6 x 1 x 22 Taptite 2000 | V536 |
| 9401876 | 2R Seat Module | V536 |
| 9401899 | 3R Seat Module | V536 |
| 32347372 | FS LH Seat Module | V536 |
| 32347373 | FS RH Seat Module | V536 |
| 30746912 | Screw thread forming M4x0.7x25 Taptite 2000 | V536 |
| 30769431 | Screw plastic tapping M6x2.14x14 Delta PT | V536 |
| 32403732 | ECU PSM 10W | V536 |
| 32403734 | ECU PSM 12W | V536 |
| 32403736 | ECU PSM 16W | V536 |
| 32403864 | ECU PSM 10W | V536 |
| 32403866 | ECU PSM 12W | V536 |
| 32403868 | ECU PSM 16W | V536 |
| 32447292 | ECU PSM 10W | V536 |
| 32447293 | ECU PSM 12W | V536 |
| 32447294 | ECU PSM 16W | V536 |
| 30624270 | Pop Rivet | V536 |
| 32403993 | Pop Rivet | V536 |
| 32403839 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32403840 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32403841 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32403842 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32403824 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32403825 | D-LOOP COVER 2ROW Dawn | V536 |
| 32403812 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32403813 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32403814 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32403815 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32403816 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32403817 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
| 32403818 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32403819 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32403820 | COVER RECLINER 20 LH Charcoal | V536 |
| 32403821 | COVER RECLINER 20 LH Dawn | V536 |
| 32403822 | COVER RECLINER 20 RH Charcoal | V536 |
| 32403823 | COVER RECLINER 20 RH Dawn | V536 |
| 32403808 | SEAT RAIL COVER LH Charcoal | V536 |
| 32403809 | SEAT RAIL COVER LH Dawn | V536 |
| 32403810 | SEAT RAIL COVER RH Charcoal | V536 |
| 32403811 | SEAT RAIL COVER RH Dawn | V536 |
| 32403835 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32403837 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32403836 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32403838 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32403529 | Upholstery, Charcoal solid / Front Back LH Ventilated | V536 |
| 32403530 | Upholstery, Charcoal solid / Front Back RH Ventilated | V536 |
| 32403535 | Upholstery, Charcoal solid / Front cushion LH w CEXT Ventilated | V536 |
| 32403536 | Upholstery, Charcoal solid / Front cushion RH w CEXT Ventilated | V536 |
| 32403531 | Upholstery, Cardamom / Front Back LH Ventilated | V536 |
| 32403532 | Upholstery, Cardamom / Front Back RH Ventilated | V536 |
| 32403537 | Upholstery, Cardamom / Front cushion LH w CEXT Ventilated | V536 |
| 32403538 | Upholstery, Cardamom / Front cushion RH w CEXT Ventilated | V536 |
| 32403541 | Upholstery, Cardamom / 2nd row Back RH 7S ISO | V536 |
| 32403542 | Upholstery, Cardamom / 2nd row Back LH 7S ISO | V536 |
| 32403543 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE | V536 |
| 32403544 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE | V536 |
| 32403545 | Upholstery, Cardamom / 2nd row Back RH 7S ISO C | V536 |
| 32403546 | Upholstery, Cardamom / 2nd row Back LH 7S ISO C | V536 |
| 32403547 | Upholstery, Cardamom / 2nd row Back RH 6S ISO | V536 |
| 32403548 | Upholstery, Cardamom / 2nd row Back LH 6S ISO | V536 |
| 32403549 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE | V536 |
| 32403550 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE | V536 |
| 32403551 | Upholstery, Cardamom / 2nd row Back RH 6S ISO C | V536 |
| 32403552 | Upholstery, Cardamom / 2nd row Back LH 6S ISO C | V536 |
| 32403533 | Upholstery, Dawn / Front Back LH Ventilated | V536 |
| 32403534 | Upholstery, Dawn / Front Back RH Ventilated | V536 |
| 32403539 | Upholstery, Dawn / Front cushion LH w CEXT Ventilated | V536 |
| 32403540 | Upholstery, Dawn / Front cushion RH w CEXT Ventilated | V536 |
| 32403553 | Upholstery, Dawn / 2nd row Back RH 7S ISO | V536 |
| 32403554 | Upholstery, Dawn / 2nd row Back LH 7S ISO | V536 |
| 32403555 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE | V536 |
| 32403556 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE | V536 |
| 32403557 | Upholstery, Dawn / 2nd row Back RH 7S ISO C | V536 |
| 32403558 | Upholstery, Dawn / 2nd row Back LH 7S ISO C | V536 |
| 32403559 | Upholstery, Dawn / 2nd row Back RH 6S ISO | V536 |
| 32403560 | Upholstery, Dawn / 2nd row Back LH 6S ISO | V536 |
| 32403561 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE | V536 |
| 32403562 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE | V536 |
| 32403563 | Upholstery, Dawn / 2nd row Back RH 6S ISO C | V536 |
| 32403564 | Upholstery, Dawn / 2nd row Back LH 6S ISO C | V536 |
| 32447183 | Upholstery,CHARCOAL/Front Back LH | V536 |
| 32447184 | Upholstery,CHARCOAL/Front Back RH | V536 |
| 32447185 | Upholstery,CHARCOAL/Front cushion LH | V536 |
| 32447186 | Upholstery,CHARCOAL/Front cushion RH | V536 |
| 32447187 | Upholstery,CHARCOAL/2nd row Back RH 7S ISOFIX | V536 |
| 32447188 | Upholstery,CHARCOAL/2nd row Back LH 7S ISOFIX | V536 |
| 32447538 | Upholstery,CHARCOAL/2nd row Back RH 7S ISIZE | V536 |
| 32447539 | Upholstery,CHARCOAL/2nd row Back LH 7S ISIZE | V536 |
| 32447189 | Upholstery,CHARCOAL/2nd row Cushion LH 7S | V536 |
| 32447190 | Upholstery,CHARCOAL/2nd row Cushion RH 7S | V536 |
| 32447191 | Upholstery,CHARCOAL/2nd row Center back w armrest | V536 |
| 32447192 | Upholstery,CHARCOAL/2nd row Cushion Center no ICS | V536 |
| 32447515 | Upholstery,CHARCOAL/2nd row Cushion Center with ICS | V536 |
| 32447516 | Upholstery,CHARCOAL/2nd row ICS | V536 |
| 32447193 | Upholstery,CHARCOAL/2nd row Back RH 6S ISOFIX | V536 |
| 32447194 | Upholstery,CHARCOAL/2nd row Back LH 6S ISOFIX | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32450448 | Upholstery,CHARCOAL/2nd row Back RH 6S ISIZE | V536 |
| 32450447 | Upholstery,CHARCOAL/2nd row Back LH 6S ISIZE | V536 |
| 32447195 | Upholstery,CHARCOAL/2nd row Cushion LH 6S | V536 |
| 32447196 | Upholstery,CHARCOAL/2nd row Cushion RH 6S | V536 |
| 32447197 | Upholstery,CHARCOAL/3rd row Back RH ISOFIX | V536 |
| 32447198 | Upholstery,CHARCOAL/3rd row Back LH ISOFIX | V536 |
| 32447540 | Upholstery,CHARCOAL/3rd row Back RH | V536 |
| 32447541 | Upholstery,CHARCOAL/3rd row Back LH | V536 |
| 32447199 | Upholstery,CHARCOAL/3rd row Cushion LH | V536 |
| 32447200 | Upholstery,CHARCOAL/3rd row Cushion RH | V536 |
| 32447201 | Upholstery,CARDAMOM/Front Back LH | V536 |
| 32447202 | Upholstery,CARDAMOM/Front Back RH | V536 |
| 32447203 | Upholstery,CARDAMOM/Front cushion LH | V536 |
| 32447204 | Upholstery,CARDAMOM/Front cushion RH | V536 |
| 32447205 | Upholstery,CARDAMOM/2nd row Back RH ISOFIX | V536 |
| 32447206 | Upholstery,CARDAMOM/2nd row Back LH ISOFIX | V536 |
| 32447542 | Upholstery,CARDAMOM/2nd row Back RH ISIZE | V536 |
| 32447543 | Upholstery,CARDAMOM/2nd row Back LH ISIZE | V536 |
| 32447207 | Upholstery,CARDAMOM/2nd row Cushion LH | V536 |
| 32447208 | Upholstery,CARDAMOM/2nd row Cushion RH | V536 |
| 32447209 | Upholstery,CARDAMOM/2nd row Center back w armrest | V536 |
| 32447210 | Upholstery,CARDAMOM/2nd row Cushion Center no ICS | V536 |
| 32447517 | Upholstery,CARDAMOM/2nd row Cushion Center with ICS | V536 |
| 32447518 | Upholstery,CARDAMOM/2nd row ICS | V536 |
| 32447211 | Upholstery,CARDAMOM/2nd row Back RH 6S ISOFIX | V536 |
| 32447212 | Upholstery,CARDAMOM/2nd row Back LH 6S ISOFIX | V536 |
| 32450450 | Upholstery,CARDAMOM/2nd row Back RH 6S ISIZE | V536 |
| 32450449 | Upholstery,CARDAMOM/2nd row Back LH 6S ISIZE | V536 |
| 32447213 | Upholstery,CARDAMOM/2nd row Cushion LH 6S | V536 |
| 32447214 | Upholstery,CARDAMOM/2nd row Cushion RH 6S | V536 |
| 32447215 | Upholstery,CARDAMOM/3rd row Back RH ISOFIX | V536 |
| 32447216 | Upholstery,CARDAMOM/3rd row Back LH ISOFIX | V536 |
| 32447544 | Upholstery,CARDAMOM/3rd row Back RH | V536 |
| 32447545 | Upholstery,CARDAMOM/3rd row Back LH | V536 |
| 32447217 | Upholstery,CARDAMOM/3rd row Cushion LH | V536 |
| 32447218 | Upholstery,CARDAMOM/3rd row Cushion RH | V536 |
| 32447219 | Upholstery,DAWN/Front Back LH | V536 |
| 32447220 | Upholstery,DAWN/Front Back RH | V536 |
| 32447221 | Upholstery,DAWN/Front cushion LH | V536 |
| 32447222 | Upholstery,DAWN/Front cushion RH | V536 |
| 32447223 | Upholstery,DAWN/2nd row Back RH ISOFIX | V536 |
| 32447224 | Upholstery,DAWN/2nd row Back LH ISOFIX | V536 |
| 32447546 | Upholstery,DAWN/2nd row Back RH ISIZE | V536 |
| 32447547 | Upholstery,DAWN/2nd row Back LH ISIZE | V536 |
| 32447225 | Upholstery,DAWN/2nd row Cushion LH | V536 |
| 32447226 | Upholstery,DAWN/2nd row Cushion RH | V536 |
| 32447227 | Upholstery,DAWN/2nd row Center back w armrest | V536 |
| 32447228 | Upholstery,DAWN/2nd row Cushion Center no ICS | V536 |
| 32447519 | Upholstery,DAWN/2nd row Cushion Center with ICS | V536 |
| 32447520 | Upholstery,DAWN/2nd row ICS | V536 |
| 32447229 | Upholstery,DAWN/2nd row Back RH 6S ISOFIX | V536 |
| 32447230 | Upholstery,DAWN/2nd row Back LH 6S ISOFIX | V536 |
| 32450452 | Upholstery,DAWN/2nd row Back RH 6S ISIZE | V536 |
| 32450451 | Upholstery,DAWN/2nd row Back LH 6S ISIZE | V536 |
| 32447231 | Upholstery,DAWN/2nd row Cushion LH 6S | V536 |
| 32447232 | Upholstery,DAWN/2nd row Cushion RH 6S | V536 |
| 32447233 | Upholstery,DAWN/3rd row Back RH ISOFIX | V536 |
| 32447234 | Upholstery,DAWN/3rd row Back LH ISOFIX | V536 |
| 32447548 | Upholstery,DAWN/3rd row Back RH | V536 |
| 32447549 | Upholstery,DAWN/3rd row Back LH | V536 |
| 32447235 | Upholstery,DAWN/3rd row Cushion LH | V536 |
| 32447236 | Upholstery,DAWN/3rd row Cushion RH | V536 |
| 32447239 | HEADREST DAWN FRONT W/O AUDIO | V536 |
| 32447237 | HEADREST CHARCOAL FRONT W/O AUDIO | V536 |
| 32447238 | HEADREST CARDAMOM FRONT W/O AUDIO | V536 |
| 32447242 | HEADREST AUDIO DAWN FRONT | V536 |
| 32447240 | HEADREST AUDIO CHARCOAL FRONT | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32447241 | HEADREST AUDIO CARDAMOM FRONT | V536 |
| 32431788 | HEADREST W LABEL CHARCOAL OUTER | V536 |
| 32431785 | HEADREST W LABEL CARDAMOM OUTER | V536 |
| 32431280 | HEADREST W LABEL DAWN OUTER | V536 |
| 32447660 | HEADREST W LABEL DAWN OUTER | V536 |
| 32431790 | HEADREST WITHOUT LABEL CHARCOAL OUTER | V536 |
| 32431787 | HEADREST WITHOUT LABEL CARDAMOM OUTER | V536 |
| 32431284 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32447662 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32431789 | HEADREST CHARCOAL CENTER | V536 |
| 32431786 | HEADREST CARDAMOM CENTER | V536 |
| 32431282 | HEADREST DAWN CENTER | V536 |
| 32447658 | HEADREST DAWN CENTER | V536 |
| 32447248 | ARMREST DAWN | V536 |
| 32447246 | ARMREST CHARCOAL | V536 |
| 32447247 | ARMREST CARDAMOM | V536 |
| 32431343 | ARM REST DAWN LH | V536 |
| 32431344 | ARM REST DAWN RH | V536 |
| 32431797 | ARM REST CHARCOAL LH | V536 |
| 32431798 | ARM REST CHARCOAL RH | V536 |
| 32431799 | ARM REST CARDAMOM LH | V536 |
| 32431800 | ARM REST CARDAMOM RH | V536 |
| 32431333 | ASSEMBLY COSTS FRONT SEAT LEATHER LH/RH | V536 |
| 32431334 | ASSEMBLY COSTS 2ROW/7 SEAT LEATHER | V536 |
| 32431335 | ASSEMBLY COSTS 2ROW/6 SEAT LEATHER LH/RH | V536 |
| 32431336 | ASSEMBLY COSTS 3ROW LEATHER LH/RH | V536 |
| 32431337 | LOGISTIC COST ARMREST 7S LEATHER | V536 |
| 32431338 | LOGISTIC COST ARMREST 6S LEATHER LH/RH | V536 |
| 32431339 | LOGISTIC COST DAWN HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431340 | LOGISTIC COST DAWN HEADREST STD LEATHER LH/RH | V536 |
| 32447558 | LOGISTIC COST CARDAMOM HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32447559 | LOGISTIC COST CARDAMOM HEADREST STD LEATHER LH/RH | V536 |
| 32431492 | LOGISTIC COST CHARCOAL HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431493 | LOGISTIC COST CHARCOAL HEADREST STD LEATHER LH/RH | V536 |
| 32450416 | OWS Service Kit | V536 |
| 32450417 | OWS Service Kit Vent | V536 |
| 32431937 | LOGISTIC COST FS LH , W/O EXTENSION | V536 |
| 32431938 | LOGISTIC COST FS RH , W/O EXTENSION | V536 |
| 32447793 | LOGISTIC COST / ARM REST, CHARCOAL LEATHER | V536 |
| 32447794 | LOGISTIC COST / ARM REST, CARDAMOM LEATHER | V536 |
| 32447795 | LOGISTIC COST / ARM REST, DAWN LEATHER | V536 |
| 32447901 | CABLE HARNESS DRIVER 10W | V536 |
| 32447885 | CABLE HARNESS DRIVER 12W | V536 |
| 32447886 | CABLE HARNESS DRIVER 16W | V536 |
| 32447894 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447902 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32447887 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447888 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447896 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447889 | CABLE HARNESS DRIVER 12W | V536 |
| 32447897 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447890 | CABLE HARNESS DRIVER 16W | V536 |
| 32447898 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447891 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447899 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447892 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447900 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447893 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447929 | CABLE HARNESS DRIVER 10W | V536 |
| 32447921 | CABLE HARNESS DRIVER 12W | V536 |
| 32447925 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447922 | CABLE HARNESS DRIVER 16W | V536 |
| 32447926 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447923 | CABLE HARNESS DRIVER 12W | V536 |
| 32447927 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447924 | CABLE HARNESS DRIVER 16W | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32447928 | CABLE HARNESS DRIVER 16W VENT | V536 |
|---|---|---|
| 32447919 | CABLE HARNESS PASSENGER10W | V536 |
| 32447903 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447911 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447912 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447920 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32447905 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32447913 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32447906 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32447914 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32447907 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447915 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447908 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447916 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447909 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32447917 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32447910 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32447918 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32447938 | CABLE HARNESS PASSENGER 10W | V536 |
| 32447930 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447934 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447931 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447935 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447932 | CABLE HARNESS DRIVER 12W | V536 |
| 32447936 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447933 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447937 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32272400 | HEAD REST,CHARCOAL SOLID | 723N |
| 32272422 | HEAD REST,CHARCOAL SOLID | 723N |
| 32296023 | SIDE AIR BAG | 723N |
| 32296024 | SIDE AIR BAG | 723N |
| 32131682 | ADAPTER END FITTING | 723N |
| 32131683 | ADAPTER END FITTING | 723N |
| 32131693 | SEAT BELT,CHARCOAL | 723N |
| 32131694 | SEAT BELT,GOLD | 723N |
| 32131695 | SEAT BELT,CHARCOAL | 723N |
| 32131696 | SEAT BELT,GOLD | 723N |
| 32394094 | BELT CATCH | 723N |
| 32394096 | BELT CATCH | 723N |
| 986344 | SIX POINT SOCKET SCREW | 723N |
| 989922 | FLANGE SCREW | 723N |
| 31379190 | BACKREST FRAME | 723N |
| 31379191 | BACKREST FRAME | 723N |
| 32272230 | ARM REST,JUPITER | 723N |
| 32272231 | ARM REST,DARK ZINC | 723N |
| 32272613 | COVER | 723N |
| 32272614 | COVER | 723N |
| 32272627 | ARM REST | 723N |
| 32272628 | ARM REST | 723N |
| 32272629 | ARM REST | 723N |
| 32288647 | PIVOT | 723N |
| 32288648 | PIVOT | 723N |
| 39841471 | COVER,CHA | 723N |
| 39841477 | D-LOOP | 723N |
| 32272562 | LOCK,CHAR | 723N |
| 32272564 | LOCK,CHAR | 723N |
| 32272597 | LOCK | 723N |
| 32272598 | LOCK | 723N |
| 32272599 | LOCK | 723N |
| 32272600 | LOCK | 723N |
| 32431035 | LUMBAR SUPPORT 4-VÄGS | 723N |
| 32394095 | BELT CATCH | 723N |
| 32296021 | SIDE AIR BAG | 723N |
| 32296022 | SIDE AIR BAG | 723N |
| 32393991 | UPHOLSTERY JUPITER LH LEATHER- BACKREST LH | 723N |
| 32393992 | UPHOLSTERY LUNA LH LEATHER- BACKREST LH | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32393994 | UPHOL CS-MICRO TECH- BACKREST LH | 723N |
| 32393995 | UPHOLSTERY CS-WEAVE TECH- BACKREST LH | 723N |
| 32393996 | UPHOLSTERY JUPITER LH LEATHER- CUSHION LH | 723N |
| 32393997 | UPHOLSTERY LUNA LH LEATHER- CUSHION LH | 723N |
| 32393998 | UPHOL CS-PREMIUM TEXTILE- CUSHION LH | 723N |
| 32393999 | UPHOL CS-MICRO TECH- CUSHION LH | 723N |
| 32431001 | UPHOLSTERY JUPITER RH LEATHER- BACKREST RH | 723N |
| 32431002 | UPHOLSTERY LUNA RH LEATHER- BACKREST RH | 723N |
| 32431004 | UPHOL CS-MICRO TECH- BACKREST RH | 723N |
| 32431375 | UPHOLSTERY CS-WEAVE TECH- BACKREST RH | 723N |
| 32431006 | UPHOLSTERY JUPITER RH LEATHER- CUSHION RH | 723N |
| 32431007 | UPHOLSTERY LUNA RH LEATHER- CUSHION RH | 723N |
| 32431008 | UPHOL CS-PREMIUM TEXTILE- CUSHION RH | 723N |
| 32431009 | UPHOL CS-MICRO TECH- CUSHION RH | 723N |
| 32431015 | UPHOLSTERY LUNA | 723N |
| 32431016 | UPHOLSTERY LUNA | 723N |
| 32431017 | UPHOLSTERY LUNA | 723N |
| 32431019 | UPHOLSTERY JUPITER | 723N |
| 32431020 | UPHOLSTERY JUPITER | 723N |
| 32431021 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431022 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431023 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431024 | UPHOLSTERY MICRO TECH | 723N |
| 32431025 | UPHOLSTERY MICRO TECH | 723N |
| 32431026 | UPHOLSTERY MICRO TECH | 723N |
| 32431027 | UPHOLSTERY WEAVE TECH | 723N |
| 32431028 | UPHOLSTERY WEAVE TECH | 723N |
| 32431029 | UPHOLSTERY WEAVE TECH | 723N |
| 32431018 | UPHOLSTERY JUPITER RSB RH | 723N |
| 32272200 | HEATER | 723N |
| 32272201 | HEATER | 723N |
| 32272202 | HEATING PAD SEAT | 723N |
| 32272206 | HEATING PAD SEAT | 723N |
| 32273211 | HEATING PAD | 723N |
| 32357198 | HEATING PAD SEAT | 723N |
| 32273207 | HEATING PAD SEAT | 723N |
| 32272585 | OWS System | 723N |
| 32386816 | BELT,CHARCOAL / GOLD | 723N |
| 32386817 | BELT,CHARCOAL / GOLD | 723N |
| 32393857 | LOGISTIC COST FRONT SEAT | 723N |
| 32393557 | SUBMARINE BRACKET | 723N |
| 983750 | CABLE TIE | 723N |
| 32260792 | PADDING | 723N |
| 32260793 | PADDING | 723N |
| 32260796 | CARPET,CH | 723N |
| 32260797 | CARPET,CH | 723N |
| 32260800 | PLASTIC B | 723N |
| 32260801 | PLASTIC B | 723N |
| 32260802 | PLASTIC B | 723N |
| 32260803 | PLASTIC B | 723N |
| 32260923 | CABLE HAR | 723N |
| 32260924 | CABLE HAR | 723N |
| 32260927 | CABLE HAR | 723N |
| 32260928 | CABLE HAR | 723N |
| 32260931 | CABLE HAR | 723N |
| 32260932 | CABLE HAR | 723N |
| 32260935 | CABLE HAR | 723N |
| 32260936 | CABLE HAR | 723N |
| 32260947 | PADDING | 723N |
| 32260948 | PADDING | 723N |
| 32260949 | PADDING | 723N |
| 32260950 | PADDING S | 723N |
| 32260951 | PADDING | 723N |
| 32260953 | PADDING | 723N |
| 32260956 | CARRIER | 723N |
| 32260958 | PADDING S | 723N |
| 32272203 | TAPE | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32272204 | HARNESS | 723N |
|---|---|---|
| 32272205 | HARNESS | 723N |
| 32272207 | HARNESS | 723N |
| 32272209 | HARNESS | 723N |
| 32272234 | HEAD REST | 723N |
| 32272235 | HEAD REST | 723N |
| 32272360 | TRIMLIST | 723N |
| 32272361 | TRIMLIST | 723N |
| 32272363 | SIDE PANE | 723N |
| 32272364 | SIDE PANE | 723N |
| 32272432 | PADDING | 723N |
| 32272434 | PADDING | 723N |
| 32272601 | BUSHING | 723N |
| 32272602 | BUSHING | 723N |
| 32272603 | GUIDE BUS | 723N |
| 32272604 | GUIDE BUS | 723N |
| 32272605 | LATCH BEZ | 723N |
| 32272606 | LATCH BEZ | 723N |
| 32272607 | LATCH BEZ | 723N |
| 32272608 | LATCH BEZ | 723N |
| 32272609 | CASING, | 723N |
| 32272610 | CASING, | 723N |
| 32272611 | CASING, | 723N |
| 32272612 | CASING, | 723N |
| 32272615 | SIDE BOLS | 723N |
| 32272616 | SIDE BOLS | 723N |
| 32272623 | SIDE BOLS | 723N |
| 32272624 | SIDE BOLS | 723N |
| 32272633 | HEAD REST | 723N |
| 32272635 | HEAD REST | 723N |
| 32272636 | HEAD REST | 723N |
| 32272637 | HEAD REST | 723N |
| 32273822 | TRIMLIST | 723N |
| 32273823 | TRIMLIST | 723N |
| 32273824 | BRACKET | 723N |
| 32273825 | CARRIER | 723N |
| 32273827 | PLASTIC C | 723N |
| 32273828 | CASE SIDE | 723N |
| 32273829 | CASE SIDE | 723N |
| 32273830 | HARDBACK, | 723N |
| 32273831 | HARDBACK, | 723N |
| 32273832 | COULISSE, | 723N |
| 32273833 | COULISSE, | 723N |
| 32273834 | SENSOR | 723N |
| 32273835 | BRACKET | 723N |
| 32273836 | BRACKET | 723N |
| 32273837 | BRACKET | 723N |
| 32273838 | BRACKET | 723N |
| 32273839 | BRACKET | 723N |
| 32273840 | BRACKET | 723N |
| 32273842 | BRACKET | 723N |
| 32273843 | CABLE GUI | 723N |
| 32273844 | CABLE GUI | 723N |
| 32273845 | HANDLE,CH | 723N |
| 32332184 | RETAINER | 723N |
| 32332406 | PADDING | 723N |
| 32332407 | ANCHORAGE | 723N |
| 32332408 | PROTECTIN | 723N |
| 32332409 | PROTECTIN | 723N |
| 32332410 | PROTECTIN | 723N |
| 32332411 | GUIDE BUS | 723N |
| 32332412 | BUSHING,C | 723N |
| 32332415 | HATCH,CHA | 723N |
| 32332416 | LOCK COVE | 723N |
| 32332417 | LATCH BEZ | 723N |
| 32332418 | LATCH BEZ | 723N |
| 32332419 | COVER,CHA | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332420 | COVER,CHA | 723N |
|---|---|---|
| 32332423 | RIM,CHARC | 723N |
| 32332424 | BRACKET | 723N |
| 32332425 | BRACKET | 723N |
| 32332427 | TRIM PLAT | 723N |
| 32332428 | TRIM PLAT | 723N |
| 32332433 | SIDE PANE | 723N |
| 32332489 | CASE SIDE | 723N |
| 32332490 | CASE SIDE | 723N |
| 32332491 | COVER,CHA | 723N |
| 32332492 | COVER,CHA | 723N |
| 32332493 | CASE SIDE | 723N |
| 32332494 | CASE SIDE | 723N |
| 32332602 | PANEL,CHA | 723N |
| 32332603 | PANEL,CHA | 723N |
| 32332621 | BRACKET | 723N |
| 32333655 | FRONT SEA | 723N |
| 32333866 | SKI HATCH | 723N |
| 32347570 | BRACKET | 723N |
| 32393705 | ARM REST | 723N |
| 32393706 | ARM REST,CHARCOAL SOLID | 723N |
| 32393707 | ARM REST,JUPITER | 723N |
| 32393708 | ARM REST,DARK ZINC | 723N |
| 32393878 | ARM REST,CHARCOAL SOLID | 723N |
| 32273212 | HEATING PAD BACKREST | 723N |
| 32357197 | HEATING PAD SEAT | 723N |
| 32367596 | LUMBAR SUPPORT | 723N |
| 32403160 | LOGISTIC COST | 723N |
| 32431152 | SPRING WASHER | 723N |
| 32431160 | CABLE HARNESS | 723N |
| 32431161 | CABLE HARNESS | 723N |
| 32431164 | CABLE HARNESS | 723N |
| 32431165 | CABLE HARNESS | 723N |
| 51081161 | ARM REST,CHARCOAL SOLID | 723N |
| 32403718 | ECU | 723N |
| 32403720 | ECU | 723N |
| 32285903 | SIX POINT SOCKET SCREW | 723N |
| 32272452 | CABLE HARNESS DRIVER 16W | 723N |
| 31109168 | SCREW-HARDBACK | 723N |
| 986215 | SCREW-SIDE PANEL TRIMLIST | 723N |
| 32272454 | CABLE HARNESS PASS 12W HEAT | 723N |
| 32431000 | UPHOLSTERY CS-WEAVE TECH- CUSHION LH | 723N |
| 32431010 | UPHOLSTERY CS-WEAVE TECH- CUSHION RH | 723N |
| 32393993 | UPHOL CS-PREMIUM TEXTILE- BACKREST LH | 723N |
| 32431003 | UPHOL CS-PREMIUM TEXTILE- BACKREST RH | 723N |
| 32393133 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393134 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393142 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393143 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393146 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393147 | CABLE HARNESS DRIVER 16 HEAT WO VENT | 723N |
| 32393156 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393157 | CABLE HARNESS DRIVER 16 HEAT WO VENT U | 723N |
| 32272448 | CABLE HARNESS DRIVER 16W HEAT | 723N |
| 32393135 | CABLE HARNESS PASS 12W  HEAT SPEAKER W | 723N |
| 32393136 | CABLE HARNESS PASS 12W HEAT WITH VENT | 723N |
| 32393144 | CABLE HARNESS PASS 12W HEAT SPEAKER  W | 723N |
| 32393145 | CABLE HARNESS PASS 12W HEAT  WITH VENT | 723N |
| 32393148 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393149 | CABLE HARNESS PASS 16W HEAT WO VENT | 723N |
| 32393158 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393159 | CABLE HARNESS PASS 16W HEAT WO VENT US | 723N |
| 32272450 | CABLE HARNESS PASSENGER 16W HEAT | 723N |
| 32393129 | PADDING BACKREST LH FRONT SEAT MASSAGE | 723N |
| 32393131 | PADDING BACKREST LH FRONT SEAT VENT | 723N |
| 32393130 | PADDING BACKREST RH FRONT SEAT MASSAGE | 723N |
| 32393132 | PADDING BACKREST RH FRONT SEAT VENT | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32431011 | UPHOLSTERY FRONT LH BACK BEA WOOL, CHA | 723N |
| 32431012 | UPHOLSTERY FRONT LH  BACK MICROTECH CH | 723N |
| 32431013 | UPHOLSTERY FRONT RH BACK BEA WOOL, CHA | 723N |
| 32431014 | UPHOLSTERY FRONT RH  BACK MICROTECH CH | 723N |
| 30622757 | SCREW-ARMREST TO BACKREST FRAME | 723N |
| 30622762 | PLASTIC RIVET-ARMREST COVER | 723N |
| 32403622 | ECU PSM 12W | 723N |
| 32403623 | ECU PSM 16W | 723N |
| 32273206 | HEATING PAD SEAT FRONT SEAT | 723N |
| 32206974 | STS SENSOR | 723N |
| 31377491 | END STOP | 723N |
| 32288875 | UNDERCARRIAGE LH POWER MAN | 723N |
| 32288876 | UNDERCARRIAGE RH POWER MAN | 723N |
| 32273215 | LUMBAR SUPPORT | 723N |
| 32332644 | Air Distribution Back Rest | 723N |
| 32332645 | Air Distribution Cushion (for vent foam) | 723N |
| 32332797 | Front A-side spacer | 723N |
| 32332796 | Rear A-side spacer | 723N |
| 31446700 | Bolster A-side spacer | 723N |
| 31498088 | VENTILATION SEAT | 723N |
| 31488221 | MASSAGE UNIT | 723N |
| 30622539 | SCREW-CUSHION AND BACKREST | 723N |
| 32332651 | Air Distribution Cushion OWS Version | 723N |
| 32288877 | BACKREST FRAME LH ENGINE W | 723N |
| 32288878 | BACKREST FRAME RH ENGINE W | 723N |
| 32393229 | LUMBAR SUPPORT 4-WAY W MASSAGE W SIDE | 723N |
| 32393230 | LUMBAR SUPPORT 4-WAY W VENT | 723N |
| 31379170 | FRAMEWORK LH RELEASE MECHANISM | 723N |
| 31379228 | FRAMEWORK RH RELEASE MECHANISM | 723N |
| 32272963 | ASSEMBLY COSTS FRONT SEAT MASSAGE | 723N |
| 32272965 | ASSEMBLY COSTS FRONT SEAT VENT | 723N |
| 32272967 | ASSEMBLY COSTS FRONT SEAT SIDE SUPPORT | 723N |
| 32272968 | ASSEMBLY COSTS FRONT SEAT 4W LUMBAR | 723N |
| 32272969 | ASSEMBLY COSTS FRONT SEAT  CUSHION EXT | 723N |
| 32272970 | ASSEMBLY COSTS FRONT SEAT  HEAT | 723N |
| 32272971 | ASSEMBLY COSTS FRONT SEAT BASIC | 723N |
| 32403150 | ASSEMBLY COST FRONT STPS | 723N |
| 32403151 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403152 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32403153 | ASSEMBLY COST FRONT OWS | 723N |
| 32403154 | ASSEMBLY COST FRONT STPS | 723N |
| 32403155 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403156 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32260804 | ASSEMBLY COST REAR SEAT | 723N |
| 32260805 | ASSEMBLY COST SEAT HEATING | 723N |
| 32272972 | LOGISTIC COST FRONT SEAT LAMP LED | 723N |
| 32272974 | LOGISTIC COST FRONT SEAT CONTROL PANEL    (Switch) | 723N |
| 32272975 | LOGISTIC COST FRONT SEAT ECU PSM | 723N |
| 32328704 | LOGISTIC COST FRONT SEAT STRUCTURE. ENDSTOP, STPS SENSOR | 723N |
| 32393858 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM | 723N |
| 32403157 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403158 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403159 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328707 | LOGISTIC COST FRONT SEAT HEADREST | 723N |
| 32403164 | LOGISTIC COST FRONTSEAT HEADREST SPEAK | 723N |
| 32403183 | LOGISTIC COST FRONT SEAT RESTRAINT | 723N |
| 32403161 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403162 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403163 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328706 | LOGISTIC COST FRONT SEAT OWS | 723N |
| 32403175 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403176 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403177 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32403178 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403179 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403180 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32288645 | LOGISTIC COST ARM REST | 723N |

| 32403181 | LOGISTIC COST REAR COMFORT | 723N |
|---|---|---|
| 32288643 | LOGISTIC COST STRUCTURE | 723N |
| 32403182 | LOGISTIC COST RS BELT | 723N |
| 32393520 | HARDBACK BCOMP WITH MAP POCKET LH | 723N |
| 32393521 | HARDBACK BCOMP WITH MAP POCKET RH | 723N |
| 32431357 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431358 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431359 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431360 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431361 | UPHOLSTERY,Charcoal Solid LH BACKREST | 723N |
| 32431362 | UPHOLSTERY,Charcoal Solid RH BACKREST | 723N |
| 32431363 | UPHOLSTERY,Charcoal Solid CUSHION | 723N |
| 32431400 | HEAD RESTRAINT Charcoal leather CTR | 723N |
| 32431356 | P519 amrest_Leather perforation charcoal with chamfer | 723N |
| 32467128 | TRIMLIST INNER BOLSTER LH | 723N |
| 32467129 | TRIMLIST INNER BOLSTER RH | 723N |
| 32467130 | TRIMLIST OUTER BOLSTER LH | 723N |
| 32467131 | TRIMLIST OUTER BOLSTER RH | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:46 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

TATE OF SOUTH CAROLINA

COUNTY OF BERKELEY

VOLVO CAR USA LLC,

     Plaintiff,

  v.

LEAR CORPORATION,

     Defendant.

IN THE COURT OF COMMON PLEAS
NINTH JUDICIAL CIRCUIT
CASE NO.: 2025-CP-08-01840

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR EMERGENCY *EX PARTE* TEMPORARY RESTRAINING ORDER AND/OR TEMPORARY INJUNCTION**

   NOW COMES the Plaintiff, VOLVO CAR USA LLC (hereinafter referred to as "VCUSA"), and hereby submits this Memorandum of Law in Support of its Motion for Emergency *Ex Parte* Temporary Restraining Order, pursuant to South Carolina Rule of Civil Procedure 65, seeking an Order requiring the Defendant, LEAR CORPORATION ("Lear"), to continue shipping certain unique, single-sourced automotive seat assemblies to VCUSA, on contract terms, in order to prevent the continued shutdown of VCUSA's vehicle assembly line located in Ridgeville, South Carolina, and the resulting catastrophic disruption to the automotive supply chain, including VCUSA's customers across the world.

## <u>INTRODUCTION</u>

   This matter arises from the refusal by Lear to ship and deliver certain automotive seat assemblies to VCUSA despite contractual obligations to do so, resulting in the shutdown of VCUSA's vehicle assembly line in Ridgeville, South Carolina, and a catastrophic disruption to the automotive industry supply chain. VCUSA seeks an emergency temporary restraining order, and will ultimately seek a preliminary injunction, requiring Lear to continue shipping certain unique automotive seat assemblies to VCUSA, on contract terms, in order to prevent the continued shutdown of VCUSA's vehicle assembly line. As more fully set forth below and in the supporting Verified Complaint and Affidavit of Daniel Harvey, balancing the elements for injunctive relief

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

and further balancing the equities of the parties weigh strongly in favor of granting VCUSA's request for a temporary restraining order.

## **FACTUAL BACKGROUND**

The following facts are supported by VCUSA's Verified Complaint, the affidavit of Daniel Harvey, VCUSA's Senior Manager for Procurement Americas, and the other documents attached as exhibits to this Memorandum.

### A. **Contracts Between VCUSA and Lear**

VCUSA, headquartered in Mahwah, New Jersey, and with its vehicle production facility located in Ridgeville, South Carolina, is the United States division of Volvo Cars, a Swedish multinational manufacturer of luxury vehicles. VCUSA assembles passenger vehicles at its Ridgeville facility, including model EX90 and Polestar 3 SUVs, for domestic sale and export. It currently employs more than two thousand employees at its Ridgeville facility.

Lear, headquartered in Southfield, Michigan, and with a manufacturing facility in Duncan, South Carolina, is a global automotive technology leader in seating and e-systems. It manufactures various component parts used in automotive assembly, including automotive seating and electrical systems.

Lear has been a supplier of certain automotive assemblies for VCUSA since it began vehicle assembly at the Ridgeville facility in 2018. VCUSA and Lear entered into Framework Purchase Agreements outlining the basic framework of their contractual relationship as to certain assemblies to be supplied by Lear. Under such Framework Purchase Agreements, VCUSA issues separate purchase orders for the parts needed for the specific seat assemblies to be ordered by VCUSA (the "Purchase Orders"). Pursuant to the currently outstanding Purchase Orders, VCUSA purchases 1,558 potential seat components from Lear (the "Parts"). Exhibit #1 – Purchase Orders

2

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(redacted)[1]. A list of the relevant automotive seat components supplied by Lear to VCUSA pursuant to the outstanding Purchase Orders is set forth in the table attached hereto as <u>Exhibit #2</u>. <u>Exhibit #2</u> – Parts List. All of the automotive seat components set forth in <u>Exhibit #2</u> are currently used by VCUSA in its assembly line production of the model EX90 and Polestar 3 SUVs at its Ridgeville facility. Lear is VCUSA's sole supplier of these Parts, and Lear supplies 100% of VCUSA's requirements of these Parts. The complete seat assemblies supplied by Lear are extremely complex and come in multiple variations, based on color and material selections.

VCUSA's Purchase Orders to Lear for the automotive seat assemblies set forth in <u>Exhibit #1</u> incorporate and are governed by VCUSA's Production Material Global Terms and Conditions (the "Terms"). <u>Exhibit #3</u> – Production Material Global Terms and Conditions. Together, the Purchase Orders and Terms constitute the contracts between VCUSA and Lear (the "Contracts"). The Contracts set firm prices for each of the Parts. Lear ships the Parts to VCUSA's Ridgeville facility for use in its assembly line production of the model EX90 and Polestar 3 SUVs.

VCUSA purchases 100% of its requirements for the Parts from Lear, meaning Lear is VCUSA's sole source of supply for the Parts. These automotive seat components are critical to the vehicle assembly process. In the event Lear ceases shipping the Parts to VCUSA, it causes catastrophic disruptions in the assembly line at the Ridgeville facility and can even lead to the complete shutdown of the assembly line, resulting in over twelve hundred (1,200) assembly line workers being sent home. It further results in the inability of VCUSA to fulfill customer orders.

### B. Breach of the Contracts by Lear

On May 5, 2025, Dave Wood, the Plant Manager for Lear in Duncan, South Carolina, sent an email to Daniel Harvey, Senior Manager of Procurement Americas for VCUSA, stating Lear

---

[1] Given the number of currently outstanding Purchase Orders between VCUSA and Lear, it would be overly burdensome to include all of them in this emergency motion. However, VCUSA has provided a sampling of such Purchase Orders. The Purchase Orders for the other Parts identified in <u>Exhibit #2</u> are substantially similar to those attached hereto as <u>Exhibit #1</u>, except for the part number, description, price, and quantity.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

would no longer honor the Contracts. <u>Exhibit #4</u> – Lear Call-Off Rejection Email dated May 5, 2025. Lear stated that it would no longer fulfill its obligations unless VCUSA and Lear reached an agreement concerning cost increases for the Parts caused by an increase in tariffs. In response, VCUSA wrote Lear's counsel stating a binding agreement existed between VCUSA and Lear for Lear to supply the automotive seat components in accordance with the Purchase Orders and Terms. <u>Exhibit #5</u> – VCUSA Response Letter dated May 13, 2025. VCUSA further reminded Lear that this procedure has been the standard practice between VCUSA and Lear since the inception of their business relationship and is also the prevailing industry practice. VCUSA notified Lear that if it failed to timely deliver conforming automotive seat components pursuant to the Purchase Orders that it would cause irreparable harm to VCUSA, its employees, and its customers.

On May 16, 2025, Mr. Wood sent a follow-up email reiterating that Lear would no longer be honoring its contractual obligations to VCUSA and would not be shipping any additional automotive seat components to VCUSA's Ridgeville facility. <u>Exhibit #6</u> – Lear Follow-up Email dated May 16, 2025. Lear outlined the last sets of automotive seat components shipped to VCUSA and stated that VCUSA would likely see its "first impacts to [its] assembly line on 5/20/2025". Mr. Wood told VCUSA to "coordinate & communicate to your labor force the production impact date to minimize your costs" and stated Lear did "not assume any responsibility or costs attributable for plant shutdown…" Lear has followed through with its refusal to ship any additional automotive seat components to VCUSA's Ridgeville facility. VCUSA received its last shipment from Lear on or about May 19, 2025, even though additional "just in time, just in sequence" shipments were supposed to be delivered to VCUSA since then.

### C.  VCUSA's Irreparable Harm

In the Verified Complaint, VCUSA seeks specific performance of the Contracts by Lear pursuant to S.C. Code Ann. § 36-2-716. The Parts supplied by Lear to VCUSA pursuant to the

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Contracts are unique, manufactured for use in VCUSA's vehicle models, and tested to satisfy VCUSA's performance and safety requirements. VCUSA employs a "just-in-time, just in sequence" inventory management system, and as a result, it does not have sufficient inventory of the Parts on hand to sustain its assembly line capacity. VCUSA relies upon timely delivery of automotive seat components from Lear in order to keep the assembly line working smoothly and at the appropriate capacity level.

Because Lear has refused to continue with its shipments to VCUSA, the Ridgeville facility has been forced to shut down its assembly line, resulting in over twelve hundred (1,200) assembly line workers being sent home. Given the nature of the Parts, VCUSA reasonably estimates that it would take approximately thirty-six (36) months to establish an adequate supply chain with a replacement supplier. Such a delay would cause immeasurable economic consequences to VCUSA and cause catastrophic disruption in the automotive industry, both domestic and abroad.

If the shutdown of VCUSA's Ridgeville facility continues, it will lead to the idling of a significant portion of VCUSA's assembly line workers and likely even the layoff or departure of hundreds of assembly line workers. Because of the assembly line shutdown, VCUSA is likely to lose a number of its assembly line workers to other employment opportunities, as these workers cannot idly sit through a prolonged shutdown without compensation, and VCUSA would need to lay off a significant amount of its workforce as a result. In such a scenario, it is unknown how long it may take for VCUSA to restore its workforce and its assembly line productivity to its current level. VCUSA has put forth significant efforts to recruit and hire assembly line workers at the Ridgeville facility in order to expand its assembly capabilities.

Further, because of the continued shutdown of the assembly line caused by Lear's refusal to deliver automotive seat components pursuant to the Contracts, VCUSA's relationship with its current and potential future customers will be immeasurably damaged. VCUSA, through the long

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

years of service by its parent corporation and through its own efforts in the local and global communities, has built significant goodwill and a strong reputation across the world. However, as this shutdown caused by Lear's refusal to deliver automotive seat components begins to cause significant delays in the delivery of completed vehicles to customers, VCUSA, and its parent corporation and affiliates, are likely to suffer irreparable damage to their reputation within the automotive industry.

## **STANDARD OF REVIEW**

The granting of a temporary restraining order is governed by Rule 65, SCRCP. The same standard that applies to the application for a preliminary injunction applies to the application for a temporary restraining order. "An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Peek v. Spartanburg Reg'l Healthcare Sys.*, 367 S.C. 450,454,626 S.E.2d 34, 36 (Ct. App. 2005). "Generally, for a preliminary injunction to be granted, the plaintiff must establish that: (1) he would suffer irreparable harm if the injunction is not granted; (2) he will likely succeed on the merits of the litigation; and (3) there is an inadequate remedy at law." *AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 51, 674 S.E.2d 505, 508-09 (Ct. App. 2009) (citing *Scratch Golf Co. v. Dunes West Residential Golf Props.*, 361 S.C. 117, 121, 603 S.E.2d 905, 908 (2004)). "Before granting an injunction, the trial court should balance the equities: the court should look at the particular facts of each case and the equities of each party and determine which side, if any, is more entitled to equitable relief." *Id.* (citing *Peek*, 367 S.C. at 455, 626 S.E.2d at 36-37). "The purpose of an injunction is to preserve the status quo and prevent possible irreparable injury to a party pending litigation." *Id.* South Carolina courts generally issue a party temporary injunctive relief when reasonably necessary to protect a party's legal rights pending the judicial resolution of the facts at issue. *See Transcontinental Gas Pipe Line Corp. v. Porter*, 252 S.C. 478, 480-81, 167 S.E.2d 313, 315 (1969); *see also Peek*, 367 S.C. at 454, 626

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

S.E.2d at 36 (2005) ("To obtain an injunction, the plaintiff must allege facts sufficient to constitute a cause of action for injunction and demonstrate the injunction is reasonably necessary to protect the legal rights pending in the litigation").

## ARGUMENTS

VCUSA seeks an emergency temporary restraining order requiring Lear to continue shipping the Parts, as more fully set forth in the table provided Exhibit #2, to VCUSA, on contract terms, in order to prevent the continued shutdown of VCUSA's vehicle assembly line. Such a temporary restraining order is appropriate at this stage of the litigation. VCUSA is likely to succeed on the merits because binding contracts existed between VCUSA and Lear obligating Lear to supply VCUSA with the Parts, and Lear has refused to ship those Parts to VCUSA. If Lear is not required to continue shipping these Parts to VCUSA, on contract terms, VCUSA will suffer irreparable harm including, but not limited to, the continued shutdown of VCUSA's assembly line, the likely loss of some of its existing workforce, delays of unknown length in the restoration of the assembly line to its current assembly capacity, delays of unknown length in the delivery of completed vehicles to its customers, and immeasurable damage to VCUSA's goodwill and reputation. These harms to VCUSA caused by Lear's refusal to uphold its contractual obligations do not have an adequate remedy at law. When weighing the facts leading to the present circumstances, the equities favor requiring Lear to ship the Parts to VCUSA, on contract terms, and thereby restoring VCUSA's assembly line while the parties adjudicate the claims set forth in the Verified Complaint.

### A.  VCUSA is likely to succeed on the merits of its claims.

VCUSA is likely to prevail on its claims for breach of contract and specific performance against Lear. The elements for breach of contract are the existence of the contract, its breach, and the damages caused by such breach.  Fuller v. E. Fire & Cas. Ins. Co., 240 S.C. 75, 89, 124 S.E.2d

602, 610 (1962). "'In construing a **c**ontract, it is axiomatic that the main concern of the court is to ascertain and give effect to the intention of the parties.'" *Progressive Max Ins. Co. v. Floating Caps, Inc.*, 405 S.C. 35, 46, 747 S.E.2d 178, 183 (2013) (quoting *D.A. Davis Constr. Co. v. Palmetto Props., Inc.*, 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984)). "'Parties are governed by their outward expressions and the court is not at liberty to consider their secret intentions.'" *Id.* (quoting *Blakeley v. Rabon*, 266 S.C. 68, 73, 221 S.E.2d 767, 769 (1976)). "'If its language is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required and the contract's language determines the instrument's force and effect.'" *Id.* (quoting *Ellie, Inc. v. Miccichi*, 358 S.C. 78, 93, 594 S.E.2d 485, 493 (Ct. App. 2004)). Courts "are without authority to alter an unambiguous contract by construction or to make new contracts for the parties." *S.C. Dep't. of Transp. v. M & T Enters. of Mt. Pleasant*, 379 S.C. 645, 655, 667 S.E.2d 7, 13 (Ct. App. 2008) (citations omitted). "A court must enforce an unambiguous contract according to its terms regardless of its wisdom or folly, apparent unreasonableness, or the parties' failure to guard their rights carefully." *Id.*

Under South Carolina law, a "requirements contract" is permissible and can constitute a binding, enforceable contractual agreement. S.C. Code Ann. § 36-2-306(1) (2005) provides:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

S.C. Code Ann. § 36-2-306(1) (2005). Courts across the country have imposed preliminary injunctions to require specific performance of requirements contracts in the automotive industry. *See Dana Ltd. v. Mico Indus.*, 2015 Mich. Cir. LEXIS 73, at *11 (Kent County 2015) ("[S]upply-chain litigation in the automotive industry more readily lends itself to injunctive relief because a

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

breach of contract disrupting the 'just in time' delivery of components can cause catastrophic harm throughout the supply chain.") (citations omitted).

In the present case, the Contracts are enforceable requirement contracts under South Carolina law. Lear is VCUSA's sole supplier of the Parts and supplies 100% of the Parts required by VCUSA in its assembly of EX90 and Polestar 3 SUVs at the Ridgeville facility. These Parts are singly sourced from Lear by VCUSA. After VCUSA and Lear entered into Framework Purchase Agreements outlining the basic framework of their contractual relationship, VCUSA issues Purchase Orders for the parts needed for the specific seat assembles to be ordered by VCUSA. VCUSA then issues call-offs, individual orders under those Purchase Orders, in order to satisfy VCUSA's "just-in-time, just in sequence" inventory management system. This has been the practice between VCUSA and Lear since the very beginning of their contractual relationship, and it is the industry-wide standard practice.

Lear has not only accepted this practice through its prior performance but through its acceptance of each and every Purchase Order issued by VCUSA for each of the Parts. Each time Lear accepted a new Purchase Order, it accepted this procedure for VCUSA's purchase of the Parts. Each Purchase Order states it is governed by the written agreement between VCUSA and Lear and the global terms set forth in VCUSA's Production material Global Terms and Conditions. According to the Contract, Lear is required to supply the Parts for the life of the relevant programs.

Pursuant to S.C. Code Ann. § 36-2-716 (2005), a buyer may obtain specific performance "where the goods are unique or in other proper circumstances." As noted in the official comments, "[t]he test for uniqueness under this section must be made in terms of the total situation which characterizes the contract." S.C. Code Ann. § 36-2-716 (2005), cmt. 2. "Output and requirements contracts involving a particular or peculiarly available source or market present today the typical commercial specific performance situation…" S.C. Code Ann. § 36-2-716 (2005), cmt. 2. In the

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

present case, specific performance is especially appropriate where the Parts constitute an array of assemblies with multiple variations. Additionally, there are a limited number of potential suppliers of these Parts. These parts have been engineered and tested to satisfy the design and safety standards required by VCUSA.

Lear is the sole supplier of the Parts to VCUSA. These are unique components that form a full assembly with multiple variations. They are not readily accessible from alternative suppliers. For these reasons, VCUSA is likely to succeed on the merits.

**B.  VCUSA will suffer irreparable harm if Lear is not required to immediately continue its supply of the Parts to VCUSA.**

There can be little to no doubt that VCUSA will suffer irreparable harm if the Court does not grant a temporary restraining order at this stage of the proceedings. As part of a request for a temporary restraining order, a plaintiff must demonstrate that it would suffer irreparable harm if the injunction is not granted. *Scratch Golf Co. v. Dunes West Residential Golf Props.*, 361 S.C. 117, 121, 603 S.E.2d 905, 908 (2004). "The sole purpose of an injunction is to preserve the status quo to avoid potential irreparable injury to the aggrieved party pending litigation." *Levine v. Spartanburg Reg'l Svcs. Dist., Inc.*, 367 S.C. 458, 464, 626 S.E.2d 38, 41 (Ct. App. 2005). Whether "a wrong is irreparable, in the sense that equity may intervene, and whether there is an adequate remedy at law, are questions that are not decided by narrow and artificial rules." *Kirk v. Clark*, 191 S.C. 205, 211, 4 S.E.2d 13, 16 (1939). There is no showing of irreparable harm if the losses are compensable by money damages. *MailSource, LLC v. M.A. Bailey & Assoc., Inc.*, 356 S.C. 363, 369-70, 588 S.E.2d 635, 639 (Ct. App. 2003) (finding the resulting loss of business from violation of a non-compete agreement to be calculable and not constitute irreparable injury); *see also Hodges v. Abraham*, 253 F.Supp.2d 846, 864 (D.S.C. 2002); *see also* Wright & Miller, *Federal Practice and Procedure*, 11A Fed. Prac. & Proc. Civ. 2d § 2948.1 (2008). Because the harm caused to VCUSA by Lear's refusal to ship the Parts pursuant to its contractual obligations extends beyond

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

simple economic losses, VCUSA will suffer irreparable harm in the event the Court does not enter the temporary restraining order requiring Lear to continue shipping the Parts to VCUSA, on contract terms.

Because VCUSA employs a "just-in-time, just in sequence" inventory management system, when Lear stopped shipping the Parts to VCUSA, there was sufficient inventory of the Parts on hand to sustain VCUSA's assembly line capacity for a very limited period of time. Once the limited inventory of the Parts on hand had been used, VCUSA had no choice but to shut down the entire assembly line at the Ridgeville facility, thereby causing catastrophic harm to VCUSA's supply and production chain. Under these assembly line circumstances, the failure of one supplier, such as Lear, to fulfill its contractual obligations timely and as needed causes a ripple effect and disrupts the entire supply chain. Unless the Court enters an order requiring Lear to continue shipping the Parts to VCUSA, this shutdown will continue.

Hundreds, if not thousands, of assembly line workers will be without work. VCUSA has exerted tremendous resources and efforts into building its assembly line workforce in order to increase production and expand its initial scope of production beyond the model S60 sedan. The continued shutdown will likely lead to the departure of some workers to other job opportunities because they simply cannot sit idly by and wait for the assembly line to restart. The likely loss of some of its workforce during the shutdown caused by Lear's refusal to adhere to its contractual obligations is an irreparable harm for which VCUSA cannot be compensated through monetary damages.

Further, unless the Court enters an order requiring Lear to continue shipping the Parts to VCUSA, VCUSA will have to find a replacement supplier. Given the nature of the Parts and the strict performance and safety standards these Parts must meet, VCUSA reasonably estimates that it would take approximately thirty-six (36) months to establish an adequate supply chain with a

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

replacement supplier. Such a delay would cause immeasurable economic consequences to VCUSA and could even threaten VCUSA's very existence. S*ee Levine v. Spartanburg Reg'l Svcs. Dist., Inc.*, 367 S.C. 458, 464, 626 S.E.2d 38, 41 (Ct. App. 2005) (finding a doctor "would also lose competency in anesthesiology if she were unable to ply her trade as the lawsuit progressed … [s]uch inactivity could lead to the loss of her professional practice and career, which can be an irreparable harm."); *see also District of Columbia v. E. Trans-Waste of Md., Inc.*, 758 A.2d 1, 15 (D.C. 2000) ("While economic loss does not, in and of itself, constitute irreparable harm, such harm will be found if economic loss threatens the very existence of [plaintiff's] business."). This type of delay would also cause catastrophic disruption in the automotive industry, both domestic and abroad, and lead existing and potential customers to purchase from competitors with available inventory.

The shutdown will already cause delays in the delivery of vehicles to VCUSA's customers, but the continued shutdown is likely to result in such significant delays that it will cause irreparable harm to VCUSA's goodwill and reputation in the automotive industry. South Carolina courts have upheld injunctive relief to prevent the loss of a business or business goodwill. *See Peek v. Spartanburg Reg'l Healthcare Sys.*, 367 S.C. 450,454,626 S.E.2d 34, 36 (Ct. App. 2005); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994) (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1985)) ("the possibility of permanent loss of customers to a competitor or the loss of goodwill" may indicate the existence of irreparable harm). Other courts have also held that the "loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).

If Lear is free to not comply with its contractual obligations to supply the Parts to VCUSA at the times and in the quantities specified in the call-offs, the irreparable harm to VCUSA will

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

only increase with each passing day. While there will be economic losses likely in the tens, if not hundreds, of millions of dollars, there will be harm caused to VCUSA for which it cannot be compensated, including the likely loss of some of its existing workforce, delays of unknown length in the restoration of the assembly line to its current assembly capacity, delays of unknown length in the delivery of completed vehicles to its customers, and immeasurable damage to VCUSA's goodwill and reputation. The certainty and scope of immediate and irreparable harm that VCUSA will suffer without the temporary restraining order necessitates its entry. Without the temporary restraining order, the very existence of VCUSA could be threatened.

**C.  There is not an adequate remedy at law for VCUSA.**

Because the continued shutdown of VCUSA's assembly line caused by Lear's refusal to timely ship the Parts in the quantities ordered by VCUSA will cause disruptions in VCUSA's workforce and damages VCUSA's goodwill, there is not an adequate remedy at law available to VCUSA, and it requires the entry of a temporary restraining order requiring Lear to continue shipping the Parts to VCUSA. Whether "a wrong is irreparable, in the sense that equity may intervene, and whether there is an adequate remedy at law, are questions that are not decided by narrow and artificial rules." Kirk v. Clark, 191 S.C. 205, 211, 4 S.E.2d 13, 16 (1939). There is an adequate remedy at law when a plaintiff's damages are compensable through money damages. *See MailSource, LLC v. M.A. Bailey & Assoc., Inc.*, 356 S.C. 363, 369-70, 588 S.E.2d 635, 639 (Ct. App. 2003) (finding business losses as a result of a breach of a non-compete agreement not to be irreparable injuries for which there is no adequate remedy at law); *see also Hodges v. Abraham*, 253 F.Supp.2d 846, 864 (D.S.C. 2002); *see also* Wright & Miller, *Federal Practice and Procedure*, 11A Fed. Prac. & Proc. Civ. 2d § 2948.1 (2008). Further, purely economic injuries, such as lost profits or lost market share, are not subject to preliminary injunctive relief because monetary

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

damages provide an adequate remedy at law. *See Southtech Orthopedics, Inc. v. Dingus*, 428 F.Supp.2d 410, 418 (E.D.N.C. 2006).

As noted in the section above, monetary damages will be insufficient to compensate VCUSA if Lear is not required to ship the Parts to VCUSA at the times and in the quantities ordered by VCUSA. Absent a temporary restraining order requiring Lear to continue to ship the Parts to VCUSA, on contract terms, VCUSA will have to find a replacement supplier. However, in order to bring a replacement supplier that will produce the Parts to the specifications and standards required by VCUSA, it will take approximately thirty-six (36) months to establish an adequate supply chain with the replacement supplier. This is the very reason why, in the Terms, should Lear terminate the contractual relationship without cause that it had to provide at least fifteen (15) months notice to VCUSA "in order to secure an alternative and acceptable supplier of goods equivalent to the Goods to prevent suspension of Buyer's serial production." Such a delay threatens the very existence of VCUSA, not to mention the irreparable harm that would be caused to VCUSA's goodwill and reputation. No monetary measure could compensate VCUSA, and as a result, there is no adequate remedy at law.

### D. The balance of harms favors granting emergency relief to VCUSA in order to restore its operations.

In contract to the irreparable harm to VCUSA if the temporary restraining order is not granted, ordering Lear to continue to supply the Parts as required by the Contracts will merely maintain the status quo and require Lear to do nothing more than what it is obligated to do under the Contracts. A temporary restraining order "should issue only if necessary to preserve the status quo ante, and only upon a showing by the moving party that without such relief it will suffer irreparable harm, that it has a likelihood of success on the merits, and that there is no adequate remedy at law." *Poynter Invs. v. Century Builders of Piedmont*, 387 S.C. 583, 586-87,

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

694 S.E.2d 15, 17 (2010); e.g., *AJG Holdings, LLC v. Dunn*, 382 S.C. 43, 674 S.E.2d 505 (Ct. App. 2009) (internal citation omitted).

Lear cannot escape its contractual obligations and cannot argue that its continued performance of the Contracts is impossible due to the increased performance costs caused by tariffs on its component parts. "A party to a contract must perform its obligations under the contract unless its performance is rendered impossible by an act of God, the law, or by a third party." *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 593, 493 S.E.2d 875, 879 (Ct. App. 1997). "Impossibility must be real and not a mere inconvenience." *Id.* "A party to a contract cannot be excused from performance on the theory of impossibility of performance unless it is made to appear that the thing to be done cannot by any means be accomplished, for if it is only improbable or out of the power of the obligor, it is not deemed in law impossible." *Id.* (internal quotation marks and citation omitted). "A party claiming impossibility of performance has the burden of proving the defense." *Id.* "Subjective impossibility, possibility which is personal to the promisor and does not inhere in the nature of the act to be performed, does not excuse nonperformance of a contractual obligation." *Moon v. Jordan*, 301 S.C. 161, 164, 390 S.E.2d 488, 490 (Ct. App. 1990). "Accordingly, the fact that one is unable to perform a contract because of his inability to obtain money, whether due to his poverty, a financial panic, or failure of a third party on whom he relies for furnishing the money, will not ordinarily excuse nonperformance in the absence of a contract provision in that regard." *Id.* (citing 17 Am. Jur. 2d *Contracts* § 415 (1964)).

An increase in costs incurred by a supplier in the performance of a contract does not render the contract impossible to perform. To the extent Lear believes that the parties' Contracts require VCUSA to bear some of the increased costs caused by the tariffs, the appropriate remedy for Lear is a suit for monetary damages. In the event this Court enters the temporary restraining order and requires Lear to continue to perform under the Contracts, the only harm suffered by Lear would

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

be increased costs. On the other hand, in the event this Court does not enter the temporary restraining order, VCUSA will suffer irreparable damage, including, but not limited to, the continued shutdown of VCUSA's assembly line, the likely loss of some of its existing workforce, delays of unknown length in the restoration of the assembly line to its current assembly capacity, delays of unknown length in the delivery of completed vehicles to its customers, and immeasurable damage to VCUSA's goodwill and reputation. Thus, the balance of harms between the parties weighs strongly in favor of granting VCUSA's request for a temporary restraining order.

Further, the potential harm caused to innocent third parties weighs in favor of granting VCUSA's request for a temporary restraining order. Without it, VCUSA's assembly line at the Ridgeville facility will remain shutdown until such time as VCUSA finds a suitable replacement supplier. This shutdown would harm the assembly line workers at the Ridgeville facility and other suppliers of VCUSA who would not be receiving orders from VCUSA until the assembly line restarts, which could be more than thirty-six (36) months from now when VCUSA is able to bring a replacement supplier of the Parts fully onboard. In other words, unless the Court orders Lear to continue shipping the Parts to VCUSA, on contract terms, not only will VCUSA's Ridgeville facility remain shut down, but it is likely other suppliers and sub-suppliers of VCUSA will also be forced to shut down.

## **CONCLUSION**

For the foregoing reasons as set forth in this Memorandum as well as the exhibits and affidavits attached hereto, VCUSA respectfully asks this Honorable Court to enter a Temporary Restraining Order, substantially in the form attached to the Motion, ordering Lear to immediately resume and continue shipping the Parts to VCUSA for ten (10) days or until such time as the Court can schedule a hearing on VCUSA's request for a preliminary injunction.

BARNWELL WHALEY PATTERSON & HELMS, LLC

BY: s/ David S. Cox
      DAVID S. COX (SC Bar No. 66195)
      JEREMY E. BOWERS (SC Bar No. 74838)
      211 King Street, Suite #300
      Charleston SC 29401
      843-577-7700
      dcox@barnwell-whaley.com
      jbowers@barnwell-whaley.com
*ATTORNEYS FOR THE PLAINTIFF, VOLVO CAR USA LLC*

May 29, 2025
Charleston, South Carolina

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #1

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

| Terms & conditions see below |
| --- |

| **PURCHASE ORDER** | **M198905 / 021** | |
| **BLANKET PRODUCTION MATERIAL** | **Date** | **2024-07-19** |
| | **Page** | **1 (5)** |

Supplier's Manufacturing Site
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

Our Reference
**639 Ian Cook**
Department/Location
**10123/VCCH**
Telephone
**+18545004338**
Telefax

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**ian.cook@volvocars.com**

BL/PR ENG T
2024-07-19 140039

| **ADDED** | Order Part No. | **32401899** | Part Folder ID | **32401899-AA -001** |
| --- | --- | --- | --- | --- |
| | Description | **BELT CATCH** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/** | **639-930289-550** | ▮ | **1** | **PCE** | **2024-07-19** | **202436** |
| **AEIK0** | Part has been added | | | | | |

New PNs V536 RSB VPC100571

| **ADDED** | Order Part No. | **32401900** | Part Folder ID | **32401900-AA -001** |
| --- | --- | --- | --- | --- |
| | Description | **BELT CATCH** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/** | **639-930289-550** | ▮ | **1** | **PCE** | **2024-07-19** | **202436** |
| **AEIK0** | Part has been added | | | | | |

New PNs V536 RSB VPC100571

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    2 (5)

| ADDED | Order Part No. | 32401901 | Part Folder ID | 32401901-AA -001 |
|---|---|---|---|---|
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | ▓ | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

| ADDED | Order Part No. | 32401902 | Part Folder ID | 32401902-AA -001 |
|---|---|---|---|---|
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | ▓ | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

| ADDED | Order Part No. | 32401903 | Part Folder ID | 32401903-AA -001 |
|---|---|---|---|---|
| | Description | BELT CATCH,CHARCOAL | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | ▓ | 1 | PCE | 2024-07-19 | 202436 |
| | Part has been added | | | | | |

New PNs V536 RSB VPC100571

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    3 (5)

| ADDED | Order Part No. | 32401908 | | Part Folder ID | 32401908-AA -001 |
|---|---|---|---|---|---|
| | Description | SEAT BELT,CHARCOAL | | | |
| | | Neutral | | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | ▓▓ | 1 | PCE | 2024-07-19 | 202427 |
| | Part has been added | | | | | |

NEW PNs V536 RSB 2nd row center VPC 99387

| ADDED | Order Part No. | 32401909 | | Part Folder ID | 32401909-AA -001 |
|---|---|---|---|---|---|
| | Description | SEAT BELT,DAWN | | | |
| | | Neutral | | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| CHA03/ AEIK0 | 639-930289-550 | ▓▓ | 1 | PCE | 2024-07-19 | 202445 |
| | Part has been added | | | | | |

NEW PNs V536 RSB 2nd row center VPC 99387

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
Date    2024-07-19
Page    4 (5)

relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M198905 / 021
**Date**    2024-07-19
**Page**    5 (5)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required (invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Order No.**     639-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

| **Terms & conditions see below** |
| --- |

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M223348 / 054
**Date     2025-04-23**
**Page     1 (3)**

Supplier's Manufacturing Site
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

Our Reference
**683 Julio Gonzalez Piera**
Department/Location
**10124/**
Telephone
**+18432769384**
Telefax

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**julio.gonzalez.piera@volvocars.com**

---

| **ADDED** | Order Part No. | **32447867** | Part Folder ID | **32447867-AA -002** |
| --- | --- | --- | --- | --- |
| | Description | **HEAD REST,CHARCOAL SOLID** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/ AEIK0** | **683-930289-550** | ▮ | 1 | **PCE** | **2025-04-23** | **202518** |
| | Part has been added | | | | | |

---

| **ADDED** | Order Part No. | **32447868** | Part Folder ID | **32447868-AA -003** |
| --- | --- | --- | --- | --- |
| | Description | **HEAD REST,CHARCOAL SOLID** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/ AEIK0** | **683-930289-550** | ▮ | 1 | **PCE** | **2025-04-23** | **202518** |
| | Part has been added | | | | | |

---

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

BLPR ENGT
2025-05-23 105221

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M223348 / 054
Date   2025-04-23
Page   2 (3)

| ADDED | Order Part No. | 32447869 | | Part Folder ID | 32447869-AA -002 |
|---|---|---|---|---|---|
| | Description | **SLEEVE** | | | |
| | | Neutral | | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/ AEIK0** | **683-930289-550** | ■ | 1 | **PCE** | **2025-04-23** | **202518** |
| | Part has been added | | | | | |

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

| | |
|---|---|
| M223348 / 054 | |
| Date | 2025-04-23 |
| Page | 3 (3) |

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Order No.**     683-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

---

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

| Terms & conditions see below |
| --- |

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
Date    2025-01-06
Page    1 (3)

Supplier's Manufacturing Site
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

Our Reference
**679 Juliette Brun**
Department/Location
**10124/**
Telephone
**1234567890**
Telefax

Supplier Partner Code
**MFG AEIK0**
Supplier Reference

E-mail
**juliette.brun@volvocars.com**

BL/PR ENG T
2025-01-06 075514

| **ADDED** | Order Part No. | **32447682** | Part Folder ID | **32447682-AA -001** |
| --- | --- | --- | --- | --- |
| | Description | **HEATER** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in CNY | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/ AEIK0** | **679-930289-550** | ███ | **1** | **PCE** | **2025-01-06** | **202501** |
| | Part has been added | | | | | |

| **ADDED** | Order Part No. | **32447683** | Part Folder ID | **32447683-AA -001** |
| --- | --- | --- | --- | --- |
| | Description | **HEATER** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in CNY | Unit | Unit of Price | Price Effective Date | First Delivery Date |
| --- | --- | --- | --- | --- | --- | --- |
| **CHA03/ AEIK0** | **679-930289-550** | ███ | **1** | **PCE** | **2025-01-06** | **202501** |
| | Part has been added | | | | | |

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car USA LLC**
1234567890
USA

**Telephone**
1234567890



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
Date    2025-01-06
Page    2 (3)

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car USA LLC**
1234567890
USA

**Telephone**
1234567890

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP080180840



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M239644 / 020
Date    2025-01-06
Page    3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Order No.**    679-930289-550
**Terms of payment**
Free delivery month + 60 days

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

---

**Volvo Car USA LLC**
1234567890
USA

**Telephone**
1234567890

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

> **Terms & conditions see below**

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

| | |
|---|---|
| M244524 / 047 | |
| Date | 2024-10-02 |
| Page | 1 (3) |

| Supplier's Manufacturing Site | Our Reference |
|---|---|
| **LEAR CORPORATION** | **683 Kellie Hoover** |
| **1200 WOODS CHAPEL ROAD** | Department/Location |
| **DUNCAN, SC 29334** | **10124/** |
| **USA** | Telephone |
| | **+18432918175** |
| | Telefax |
| Supplier Partner Code | E-mail |
| **MFG AEIK0** | **kellie.hoover@volvocars.com** |
| Supplier Reference | |

*BL/PR ENG T*
*2024-10-02 200241*

| **ADDED** | Order Part No. | **32447513** | Part Folder ID | **32447513-AA -001** |
|---|---|---|---|---|
| | Description | **ECU** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **683-930289-550** | ▆▆ | 1 | **PCE** | **2024-10-02** | **202445** |
| **AEIK0** | Part has been added | | | | | |

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact EDIVCC@volvocars.com

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For

Dates are formatted as ccyy-mm-dd or ccyyww

| **Volvo Car USA LLC** | **Telephone** |
|---|---|
| 1801 Volvo Car Drive, | +46-31-590000 |
| Ridgeville, SC 29472 | |
| USA | |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M244524 / 047
Date     2024-10-02
Page     2 (3)

questions regarding EDI contract, please contact EDIVCC@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M244524 / 047
Date    2024-10-02
Page    3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Order No.**    683-930289-550
**Terms of payment**
Free delivery month + 60 days

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE
RIDGEVILLE, SC 29472
USA

**Invoice Address**
Volvo Car USA LLC
Charleston Plant
1801 Volvo Car Drive
Ridgeville, SC 29472
USA

---

**Volvo Car USA LLC**
1801 Volvo Car Drive,
Ridgeville, SC 29472
USA

**Telephone**
+46-31-590000



ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Order receiver (AEIK0)
**LEAR CORPORATION**
**1200 WOODS CHAPEL ROAD**
**DUNCAN, SC 29334**
**USA**

┌─────────────────────────────────┐
│  **Terms & conditions see below**  │
└─────────────────────────────────┘

**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M240545 / 000
Date    2022-02-08
Page    1 (3)

| Supplier's Manufacturing Site | Our Reference |
|---|---|
| **LEAR CORPORATION** | **638 Quinton BLAIR** |
| **1200 WOODS CHAPEL ROAD** | Department/Location |
| **DUNCAN, SC 29334** | **21613/** |
| **USA** | Telephone |
| | **+12345678** |
| | Telefax |
| Supplier Partner Code | |
| **MFG AEIK0** | E-mail |
| Supplier Reference | **quinton.blair@volvocars.com** |

BL/PR ENG I
2022-02-08 140650

---

| **ADDED** | Order Part No. | **32367709** | Part Folder ID | **32367709-AA -001** |
|---|---|---|---|---|
| | Description | **UPHOLSTERY,ZINC** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **638-930289-550** | ▪▪▪ | **1** | **PCE** | **2022-02-08** | **202222** |
| **AEIK0** | Part has been added | | | | | |

---

| **ADDED** | Order Part No. | **32367710** | Part Folder ID | **32367710-AA -001** |
|---|---|---|---|---|
| | Description | **UPHOLSTERY,ZINC** | | |
| | | Neutral | | |

| Ship to / from | Order No. | Price in USD | Unit | Unit of Price | Price Effective Date | First Delivery Date |
|---|---|---|---|---|---|---|
| **CHA03/** | **638-930289-550** | ▪▪▪ | **1** | **PCE** | **2022-02-08** | **202222** |
| **AEIK0** | Part has been added | | | | | |

---

Dates are formatted as ccyy-mm-dd or ccyyww

**Volvo Car US Operations Inc**
315 Sigma Drive
USA

**Telephone**
+46-31-590000



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M240545 / 000
Date    2022-02-08
Page    2 (3)

ATTENTION! Above mentioned First Delivery Date is preliminary.
The demands will be stated in the delivery schedule which will be sent
once an EDI contract has been established for each relation. For
questions regarding EDI contract, please contact mpledi@volvocars.com

AUDIT RIGHTS. Buyer will have the right at any reasonable time to send
its authorized representatives to examine all pertinent documents and
materials in the possession or under the the control of Seller
relating to any of Seller's obligations under a Purchase Order or any
payments requested by Seller pursuant to a Purchase Order. Seller
shall maintain all pertinent books and records relating to a Purchase
Order for a period of two years after completion of services or deli-
very of Supplies pursuant to that Purchase Order.

**Volvo Car US Operations Inc**
315 Sigma Drive
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840



**PURCHASE ORDER**
**BLANKET PRODUCTION MATERIAL**

M240545 / 000
Date    2022-02-08
Page    3 (3)

## TERMS & CONDITIONS

This Purchase Order ("PO") is governed by the Buyer's and the Supplier's written agreement. Where the Buyer and the Supplier have no prior written agreement, this PO is governed by Volvo Cars Production Material Global Terms and Conditions ("Global Terms"). In this PO "Buyer", as defined in the Global Terms, is the legal entity specified under the heading "Invoice Address" below.

For correspondence and to enable the invoice to be matched with the goods, following information must be provided: Order number, part number, unit, unit price, total price per article and the delivery note number with date.

Please, kindly visit our Supplier Portal for further finance information required
(invoice requirements, contact details, etc.)
Supplier Portal - Finance Automotive

---

**Ship to No.**
**Delivery conditions**
FCA

**Ship to Address**
VOLVO CAR US OPERATIONS
1801 VOLVO CAR DRIVE

RIDGEVILLE, SC 29472
USA

**Order No.**     638-930289-550
**Terms of payment**
Free delivery month + 60 days

**Invoice Address**
Volvo Car US Operations Inc
1801 Volvo Car Drive

Ridgeville, SC 29472
USA

---

**Volvo Car US Operations Inc**
315 Sigma Drive
USA

**Telephone**
+46-31-590000

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #2

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| Part Number | Part Description | Program |
|---|---|---|
| 32347374 | Trimlist OB LH | V536 |
| 32347375 | Trimlist OB RH | V536 |
| 32347376 | Trimlist IB LH | V536 |
| 32347377 | Trimlist IB RH | V536 |
| 32332177 | Bracket undercarriage LH | V536 |
| 32332900 | Bracket undercarriage RH | V536 |
| 32332178 | Carrier upper backrest | V536 |
| 32347378 | Cable Guide Bracket LH | V536 |
| 32347380 | Retainer ambient light | V536 |
| 32332180 | Carrier upper backrest RH | V536 |
| 32347382 | Lid harness power | V536 |
| 32347383 | Cushion extension carrier comfort Manual | V536 |
| 32347379 | Cable Guide Bracket RH | V536 |
| 32347381 | Retainer ambient light | V536 |
| 32332185 | Side panel front, Charcoal solid, LH | V536 |
| 32332186 | Side panel front, Charcoal solid, RH | V536 |
| 32347297 | Side panel front, Dawn, LH | V536 |
| 32347298 | Side panel front, Dawn, RH | V536 |
| 32447000 | Side panel front, Charcoal solid, LH | V536 |
| 32447001 | Side panel front, Charcoal solid, RH | V536 |
| 32447002 | Side panel front, Dawn, LH | V536 |
| 32447003 | Side panel front, Dawn, RH | V536 |
| 32447354 | Side panel front, Charcoal solid, LH | V536 |
| 32447355 | Side panel front, Charcoal solid, RH | V536 |
| 32447356 | Side panel front, Dawn, LH | V536 |
| 32447357 | Side panel front, Dawn, RH | V536 |
| 32332187 | Cover belt, Charcoal Solid LH | V536 |
| 32378394 | Cover belt, Charcoal Solid RH BTS | V536 |
| 32332188 | Cover belt, Charcoal Solid RH | V536 |
| 32347299 | Cover belt, Dawn LH | V536 |
| 32378395 | Cover belt, Dawn RH BTS | V536 |
| 32347300 | Cover belt, Dawn RH | V536 |
| 32332189 | Side panel rear outer, power, Charcoal solid, LH | V536 |
| 32332190 | Side panel rear outer, power, Charcoal solid, RH | V536 |
| 32347301 | Side panel rear outer, power, Dawn, LH | V536 |
| 32347302 | Side panel rear outer, power, Dawn, RH | V536 |
| 32332191 | Side panel inner rear, Charcoal solid, LH | V536 |
| 32332192 | Side panel inner rear, Charcoal solid, RH | V536 |
| 32347303 | Side panel inner rear, Dawn, LH | V536 |
| 32347304 | Side panel inner rear, Dawn, RH | V536 |
| 32332193 | Panel rear inner, Charcoal solid, LH | V536 |
| 32332194 | Panel rear inner, Charcoal solid, RH | V536 |
| 32347305 | Panel rear inner, Dawn, LH | V536 |
| 32347306 | Panel rear inner, Dawn, RH | V536 |
| 32332195 | Handle Cushion extension Mec charcoal | V536 |
| 32347309 | MCE Bezel Charcoal Solid | V536 |
| 32347307 | Handle Cushion extension Mec Dawn | V536 |
| 32347311 | MCE Bezel Dawn | V536 |
| 32332196 | Hardback foiled w map pocket, Charcoal solid LH | V536 |
| 32332197 | Hardback foiled w map pocket, Charcoal solid RH | V536 |
| 32347293 | Ventilated Hardback foiled, Charcoal solid LH | V536 |
| 32347294 | Ventilated Hardback foiled, Charcoal solid RH | V536 |
| 32347313 | Hardback foiled w map pocket, Dawn LH | V536 |
| 32347314 | Hardback foiled w map pocket, Dawn RH | V536 |
| 32347295 | Ventilated Hardback foiled, Dawn LH | V536 |
| 32347296 | Ventilated Hardback foiled, Dawn RH | V536 |
| 32332198 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR LH SHORT INR | V536 |
| 32332199 | COULISSE,CHARCOAL SOLID SLIDE RAIL REAR RH SHORT INR | V536 |
| 32347321 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32347322 | COULISSE DAWN SLIDE RAIL - LH, SHORT INNER | V536 |
| 32332200 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32332201 | COULISSE,CHARCOAL SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347319 | COULISSE,DAWN SO SLIDE RAIL FRONT LH LONG OUTR | V536 |
| 32347320 | COULISSE,DAWN SO SLIDE RAIL FRONT RH LONG OUTR | V536 |
| 32347323 | Side Panel Inner Front, Dawn, LH | V536 |
| 32347324 | Side Panel Inner Front, Dawn, RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32347325 | Side Panel Inner Front, Charcoal Solid, LH | V536 |
|---|---|---|
| 32347326 | Side Panel Inner Front, Charcoal Solid, RH | V536 |
| 32347327 | Plug Cover Inner Rear, Charcoal | V536 |
| 32347328 | Plug Cover Inner Rear, Dawn | V536 |
| 32272424 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32431818 | Foam cushion, w/o cushion extension, comfort | V536 |
| 32332202 | Foam cushion, w cushion extension, Comfort | V536 |
| 32447288 | Foam cushion, w cushion extension, Comfort | V536 |
| 32272426 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32431819 | Foam cushion, w/o cushion extension, w OWS, Comfort | V536 |
| 32332203 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32447289 | Foam cushion, w cushion extension, w OWS, Comfort | V536 |
| 32332204 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32447290 | Foam cushion, w cushion extension, w vent, comfort | V536 |
| 32332205 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32447291 | Foam cushion, w cushion extension, w. vent ,w. OWS, comfort | V536 |
| 32332206 | Comfort cushion manual extenstion foam | V536 |
| 32347418 | Foam backrest, Comfort LH V536 | V536 |
| 32347330 | Foam backrest, w vent seat ,Comfort LH V536 | V536 |
| 32272433 | Foam backrest, w Massage, w vent seat, Side Support, Comfort LH V536 | V536 |
| 32347329 | Foam backrest, Comfort, RH V536 | V536 |
| 32347331 | Foam backrest, w vent seat ,Comfort, RH V536 | V536 |
| 32260952 | Foam backrest, w Massage, w vent seat, Side Support, Comfort, RH V536 | V536 |
| 32260925 | CABLE HARNESS DRIVER 10W | V536 |
| 32260945 | CABLE HARNESS PASSENGER10W | V536 |
| 32260940 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32272464 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32347886 | CABLE HARNESS DRIVER 12W | V536 |
| 32347898 | CABLE HARNESS PASSENGER 12W | V536 |
| 32347894 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32347906 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32347887 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347890 | CABLE HARNESS DRIVER 12W | V536 |
| 32347891 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32347899 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32347902 | CABLE HARNESS DRIVER 12W | V536 |
| 32347903 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32347907 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32260929 | CABLE HARNESS DRIVER 16W | V536 |
| 32347888 | CABLE HARNESS DRIVER 16W | V536 |
| 32272457 | CABLE HARNESS PASSENGER 16W | V536 |
| 32403790 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347900 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260938 | CABLE HARNESS DRIVER 16W | V536 |
| 32403794 | CABLE HARNESS DRIVER 16W | V536 |
| 32347892 | CABLE HARNESS DRIVER 16W | V536 |
| 32272462 | CABLE HARNESS PASSENGER 16W | V536 |
| 32347904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32260943 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32347896 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32272471 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32403792 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32347908 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32260930 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347889 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272458 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347901 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260939 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32347893 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32272463 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32347905 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32260944 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32347897 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32272472 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32347909 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272473 | CABLE HARNESS DRIVER 10W | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32357119 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357114 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32357129 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32357134 | CABLE HARNESS DRIVER 12W | V536 |
| 32357146 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357142 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357154 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32357135 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357138 | CABLE HARNESS DRIVER 12W | V536 |
| 32357139 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357143 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357147 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357150 | CABLE HARNESS DRIVER 12W | V536 |
| 32357151 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357155 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272476 | CABLE HARNESS DRIVER 16W | V536 |
| 32357136 | CABLE HARNESS DRIVER 16W | V536 |
| 32357122 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357148 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32272481 | CABLE HARNESS DRIVER 16W | V536 |
| 32357140 | CABLE HARNESS DRIVER 16W | V536 |
| 32357127 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357152 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32357117 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357144 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32357132 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32357156 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32272477 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357137 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357123 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357149 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32272482 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357141 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32357128 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357153 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32357118 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357145 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32357133 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32357157 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32260926 | CABLE HARNESS DRIVER 12W | V536 |
| 32357167 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260933 | CABLE HARNESS DRIVER 10W | V536 |
| 32260934 | CABLE HARNESS DRIVER 12W | V536 |
| 32403793 | CABLE HARNESS DRIVER 12W | V536 |
| 32260937 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32260941 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32260942 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32272455 | CABLE HARNESS PASSENGER 12W | V536 |
| 32403789 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272456 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272459 | CABLE HARNESS PASSENGER 10W | V536 |
| 32272460 | CABLE HARNESS PASSENGER 12W | V536 |
| 32272461 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32272465 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32403791 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32272466 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32272474 | CABLE HARNESS DRIVER 12W | V536 |
| 32272475 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32272478 | CABLE HARNESS DRIVER 10W | V536 |
| 32272479 | CABLE HARNESS DRIVER 12W | V536 |
| 32272480 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32357115 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32357116 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32357120 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32357121 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32357124 | CABLE HARNESS PASSENGER 10W STPS | V536 |
| 32357125 | CABLE HARNESS PASSENGER 12W STPS | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32357126 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
|---|---|---|
| 32357130 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32357131 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32332207 | STPS LH | V536 |
| 32332899 | STPS RH | V536 |
| 32347334 | SBR sensor | V536 |
| 32288999 | OWS sensor system | V536 |
| 32285947 | OWS sensor system | V536 |
| 32447513 | OWS sensor system | V536 |
| 32289196 | LED lamp 3500K | V536 |
| 32408677 | LED lamp 3500K | V536 |
| 32332209 | Bracket side panel middle LH(OB) | V536 |
| 32332210 | Bracket side panel middle RH(OB) | V536 |
| 32332211 | Bracket side panel front LH ASM(OB) | V536 |
| 32332212 | Bracket side panel front  RH ASM(OB) | V536 |
| 32347332 | Bracket side panel middle LH ASM(IB) | V536 |
| 32347333 | Bracket side panel middle RH ASM(IB, BEV) | V536 |
| 32332213 | BRACKET SIDE PANEL REAR LH (OB) | V536 |
| 32332214 | BRACKET SIDE PANEL REAR RH (OB) | V536 |
| 32332994 | BRACKET SIDE PANEL REAR IB LH | V536 |
| 32332995 | BRACKET SIDE PANEL REAR IB RH | V536 |
| 32332208 | Headrest bracket | V536 |
| 32332215 | OWS bracket | V536 |
| 32357158 | Bracket for NFAB LH | V536 |
| 32357159 | Bracket for NFAB RH | V536 |
| 32272299 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32272300 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32403830 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32403831 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447024 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447025 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447663 | Undercarriage,  8 way power with memory , with manual cushion extension LH | V536 |
| 32447664 | Undercarriage,  8 way power with memory, with manual cushion extension  RH | V536 |
| 32447174 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32447685 | Undercarriage,  8 way power with memory, with manual cushion extension  RH w End Stop | V536 |
| 32206981 | Undercarriage,  6 way power with memory LH | V536 |
| 32206983 | Undercarriage,  6 way power with memory RH | V536 |
| 32272301 | Undercarriage,  6 way power with memory LH | V536 |
| 32272302 | Undercarriage,  6 way power with memory RH | V536 |
| 32447635 | Undercarriage,  6 way power with memory RH w End Stop | V536 |
| 32272330 | Backrest, power with memory LH | V536 |
| 32272331 | Backrest, power with memory RH | V536 |
| 32272340 | END STOP | V536 |
| 31652731 | ECU PSM 10W | V536 |
| 32315708 | ECU PSM 12W | V536 |
| 32315709 | ECU PSM 16W | V536 |
| 31652749 | CONTROL PANEL POWER SEAT LEFT | V536 |
| 31652750 | CONTROL PANEL POWER SEAT RIGHT | V536 |
| 31652747 | CONTROL PANEL POWER SEAT CAP (KNOB) | V536 |
| 32332734 | Side airbag LH | V536 |
| 32332735 | Side airbag RH | V536 |
| 32227909 | Far Side airbag LH | V536 |
| 32227910 | Far Side airbag RH | V536 |
| 32131828 | Belt buckle w hall element LH | V536 |
| 32131829 | Belt buckle w hall element RH | V536 |
| 32394091 | Belt buckle w hall element LH | V536 |
| 32394092 | Belt buckle w hall element RH | V536 |
| 32131830 | Belt buckle w BTS, USA/Canada | V536 |
| 32288993 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32447165 | Heater mat cushion,  w/o extension, Comfort seat | V536 |
| 32288992 | Heater mat cushion, w cushion extension, Comfort seat | V536 |
| 32288991 | Heater mat cushion,  w vent, w cushion extension, Comfort seat | V536 |
| 32273214 | Heater mat backrest, w vent, w massage, Comfort seat V536 | V536 |
| 32273213 | Heater mat backrest, w vent, Comfort seat V536 | V536 |
| 32273209 | Heater mat backrest, Comfort seat V536 | V536 |
| 32288813 | Lumbar support 4-way, w Vent | V536 |
| 32288996 | Cushion Ventilation fan assembly | V536 |

| | | |
|---|---|---|
| 32450839 | Cushion Ventilation fan assembly | V536 |
| 32288994 | Lumbar support 2-way, wo mem | V536 |
| 32450838 | Lumbar support 2-way, wo mem | V536 |
| 32273210 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32288995 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32288998 | Lumbar support 4-way, wo mem | V536 |
| 32447637 | Lumbar support 4-way, w Vent | V536 |
| 32447638 | Lumbar support 4-way, w Massage, w Side support | V536 |
| 32447639 | Lumbar support 4-way, w Mem, w Massage, w Vent, w Side support | V536 |
| 32447636 | Lumbar support 4-way, wo mem | V536 |
| 32347347 | ASSEMBLY COST FRONT SEAT BASIC | V536 |
| 32347345 | ASSEMBLY COST FRONT SEAT CUSHION EXT | V536 |
| 32347341 | ASSEMBLY COSTS FRONT SEAT LEATHER | V536 |
| 32347351 | ASSEMBLY COSTS FRONT SEAT TEXTILE/VINYL | V536 |
| 32347342 | ASSEMBLY COST FRONT SEAT VENT | V536 |
| 32347340 | ASSEMBLY COST FRONT SEAT MASSAGE | V536 |
| 32347348 | ASSEMBLY COST FRONT SEAT FSAB | V536 |
| 32367422 | ASSEMBLY COST FRONT SEAT SPEAKER HR | V536 |
| 32347359 | ASSEMBLY COST FRONT SEAT OWS RH | V536 |
| 32367417 | ASSEMBLY COST FRONT SEAT STPS | V536 |
| 32367418 | ASSEMBLY COST FRONT SEAT 8-WAY POWER | V536 |
| 32367419 | ASSEMBLY COST FRONT SEAT BTS | V536 |
| 32367421 | Assembly cost front seat HR w speaker Leather | V536 |
| 32367738 | FRONT SEAT PROTECTOR BAG LH/RH | V536 |
| 32260832 | Frt Head Rest w/o Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272726 | Frt Head Rest w/o Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272727 | Frt Head Rest w/o Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260833 | Frt Head Rest w Speaker Perforated Nappa 1 (CHS) | V536 |
| 32272409 | Frt Head Rest w Speaker Perforated Nappa 2 (Cardmom) | V536 |
| 32272410 | Frt Head Rest w Speaker Perforated Nappa 3 (Dawn/Porcelain) | V536 |
| 32260830 | Frt Head Rest w/o Speaker Leather Free 1 (Textile/Vinyl, ChS/Metal grey) | V536 |
| 32272390 | HEAD REST,CHARCOAL, FRONT VINYL | V536 |
| 32272405 | HEAD REST,CARDAMOM, FRONT VINYL | V536 |
| 32272396 | HEAD REST,WHITE | V536 |
| 32260831 | HEAD REST,CHARCOAL, FRONT VINYL W SPEAKER | V536 |
| 32272407 | HEAD REST,CARDAMOM, FRONT VINYL W SPEAKER | V536 |
| 32272416 | HEAD REST,WHITE, FRONT VINYL W SPEAKER | V536 |
| 32332704 | Headrest guide sleeve | V536 |
| 32403047 | Cushion Extension Assembly | V536 |
| 32273847 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32273856 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32273849 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32273852 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32273864 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32273870 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32273866 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32273868 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |
| 32273890 | STRUCTURE 3RD ROW LH CUSHION | V536 |
| 32273891 | STRUCTURE 3RD ROW RH CUSHION | V536 |
| 32332882 | STRUCTURE 3RD ROW BACK W ISOFIX | V536 |
| 32447134 | STRUCTURE 3RD ROW BACK WO ISOFIX | V536 |
| 32403994 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32403995 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32447281 | STRUCTURE 2nd ROW OUT 7-S EE LH | V536 |
| 32447282 | STRUCTURE 2nd ROW OUT 7-S EE RH | V536 |
| 32403998 | STRUCTURE 2nd ROW CTR 7-S NO ICS | V536 |
| 32403999 | STRUCTURE 2nd ROW CTR 7-S ICS | V536 |
| 32403996 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32403997 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447283 | STRUCTURE 2nd ROW OUT 5-S LH | V536 |
| 32447284 | STRUCTURE 2nd ROW OUT 5-S RH | V536 |
| 32447026 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447027 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32447285 | STRUCTURE 2nd ROW OUT 6-S EE LH | V536 |
| 32447286 | STRUCTURE 2nd ROW OUT 6-S EE RH | V536 |
| 32420916 | STRUCTURE 2nd ROW CTR 5-S NO ICS | V536 |
| 32420917 | STRUCTURE 2nd ROW CTR 5-S ICS | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32332244 | ICS STRUCTURE | V536 |
| 32332245 | FOAM 2nd ROW RSC LH EE | V536 |
| 32332246 | FOAM 2nd ROW RSC RH EE | V536 |
| 32403806 | FOAM 2nd ROW RSC LH EE | V536 |
| 32403807 | FOAM 2nd ROW RSC RH EE | V536 |
| 32447405 | FOAM 2nd ROW RSC LH EE | V536 |
| 32447406 | FOAM 2nd ROW RSC RH EE | V536 |
| 32332247 | FOAM 2nd ROW RSB LH EE | V536 |
| 32332248 | FOAM 2nd ROW RSB RH EE | V536 |
| 32447014 | FOAM 2nd ROW RSB LH EE | V536 |
| 32447015 | FOAM 2nd ROW RSB RH EE | V536 |
| 32332249 | FOAM 2nd ROW RSC CTR NO ICS | V536 |
| 31693742 | FOAM 2nd ROW RSC CTR ICS REAR | V536 |
| 32332250 | FOAM 2nd ROW RSC CTR ICS FRONT | V536 |
| 32332251 | FOAM 2nd ROW RSB CTR | V536 |
| 32332252 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32332253 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32447012 | FOAM 2nd ROW RSB LH NO EE | V536 |
| 32447013 | FOAM 2nd ROW RSB RH NO EE | V536 |
| 32332317 | FOAM 3RD ROW RSC LH | V536 |
| 32347510 | FOAM 3RD ROW RSC RH | V536 |
| 32332318 | FOAM 3rd ROW RSB LH W ISOFIX | V536 |
| 32332319 | FOAM 3rd ROW RSB RH W ISOFIX | V536 |
| 32447135 | FOAM 3rd ROW RSB LH WO ISOFIX | V536 |
| 32447136 | FOAM 3rd ROW RSB RH WO ISOFIX | V536 |
| 32357329 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32357330 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32403915 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32403916 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32447574 | FOAM 2nd ROW RSC LH EE 6-SEAT | V536 |
| 32447575 | FOAM 2nd ROW RSC RH EE 6-SEAT | V536 |
| 32357332 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32357333 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32447010 | FOAM 2nd ROW RSB LH EE 6-SEAT | V536 |
| 32447011 | FOAM 2nd ROW RSB RH EE 6-SEAT | V536 |
| 32332254 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32332255 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32447682 | HEATING PAD RSC 2nd ROW LH 5-S | V536 |
| 32447683 | HEATING PAD RSC 2nd ROW RH 5-S | V536 |
| 32345383 | HEATING PAD RSC 2nd ROW 7-S | V536 |
| 32345384 | HEATING PAD RSC 2nd ROW RH 7-S | V536 |
| 32332256 | HEATING PAD RSB 2nd ROW | V536 |
| 32357326 | HEATING PAD RSC 2nd ROW 6-S | V536 |
| 32357327 | HEATING PAD RSC 2nd ROW RH 6-S | V536 |
| 32357328 | HEATING PAD RSB 2nd ROW 6-S | V536 |
| 32357316 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32357318 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32357317 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32357319 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32332257 | PLASTIC HANDLE EZ ENTRY 2R LH Charcoal | V536 |
| 32345157 | PLASTIC HANDLE EZ ENTRY 2R LH Dawn | V536 |
| 32332258 | PLASTIC HANDLE EZ ENTRY 2R RH Charcoal | V536 |
| 32345158 | PLASTIC HANDLE EZ ENTRY 2R RH Dawn | V536 |
| 32332259 | EE BEZEL 2ROW Charcoal | V536 |
| 32345159 | EE BEZEL 2ROW Dawn | V536 |
| 32332260 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32345160 | D-LOOP COVER 2ROW Dawn | V536 |
| 32332261 | D-LOOP 2ROW | V536 |
| 32332262 | BELT GUIDE 2ROW Charcoal | V536 |
| 32345161 | BELT GUIDE 2ROW Dawn | V536 |
| 32332263 | RECLINER HANDLE LH 2ROW Charcoal | V536 |
| 32345162 | RECLINER HANDLE LH 2ROW Dawn | V536 |
| 32332264 | RECLINER HANDLE RH 2ROW Charcoal | V536 |
| 32345163 | RECLINER HANDLE RH 2ROW Dawn | V536 |
| 32332265 | TRACK COVER LH R2 Charcoal | V536 |
| 32345164 | TRACK COVER LH R2 Dawn | V536 |
| 32332266 | TRACK COVER RH R2 Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32345165 | TRACK COVER RH R2 Dawn | V536 |
| 32332267 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32345166 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32332268 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32345167 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32332269 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |
| 32345168 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
| 32332270 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32345169 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32332271 | COVER RECLINER 20 LH Charcoal | V536 |
| 32345170 | COVER RECLINER 20 LH Dawn | V536 |
| 32332272 | COVER RECLINER 20 RH Charcoal | V536 |
| 32345171 | COVER RECLINER 20 RH Dawn | V536 |
| 32332273 | REAR BACK COVER OB LH Charcoal | V536 |
| 32345172 | REAR BACK COVER OB LH Dawn | V536 |
| 32332274 | REAR BACK COVER OB RH Charcoal | V536 |
| 32345173 | REAR BACK COVER OB RH Dawn | V536 |
| 32332275 | REAR BACK COVER CTR LH Charcoal | V536 |
| 32345174 | REAR BACK COVER CTR LH Dawn | V536 |
| 32332276 | REAR BACK COVER CTR RH Charcoal | V536 |
| 32345175 | REAR BACK COVER CTR RH Dawn | V536 |
| 32332277 | CENTER COVER | V536 |
| 32332278 | IMPACT ABSORBER PLATE | V536 |
| 32332279 | GAP CLOSURE LH Charcoal | V536 |
| 32345176 | GAP CLOSURE LH Dawn | V536 |
| 32332280 | GAP CLOSURE RH Charcoal | V536 |
| 32345177 | GAP CLOSURE RH Dawn | V536 |
| 32332281 | CONNECTOR BRACKET OTR LH | V536 |
| 32332282 | CONNECTOR BRACKET OTR RH | V536 |
| 32332283 | CONNECTOR BRACKET CTR | V536 |
| 32332284 | SEAT RAIL COVER LH Charcoal | V536 |
| 32345178 | SEAT RAIL COVER LH Dawn | V536 |
| 32332285 | SEAT RAIL COVER RH Charcoal | V536 |
| 32345179 | SEAT RAIL COVER RH Dawn | V536 |
| 32357320 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32357321 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32357322 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32357323 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32357324 | CARRIER SEAT RAIL INBOARD LH | V536 |
| 32357325 | CARRIER SEAT RAIL INBOARD RH | V536 |
| 32332290 | RELEASE STRAP RH 2ROW Charcoal | V536 |
| 32345180 | RELEASE STRAP RH 2ROW Dawn | V536 |
| 32332322 | SIDE VALANCE OUTBOARD 3rd ROW LH Charcoal | V536 |
| 32332323 | SIDE VALANCE OUTBOARD 3rd ROW RH Charcoal | V536 |
| 32332320 | CENTER COVER REAR CHARCOAL | V536 |
| 32345128 | CENTER COVER REAR DAWN | V536 |
| 32332325 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32403829 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32447182 | CENTER RECLINER COVER REAR CHARCOAL | V536 |
| 32357195 | Carrier, Armrest LH | V536 |
| 32357196 | Carrier, Armrest RH | V536 |
| 32403989 | Carrier, Armrest LH | V536 |
| 32403990 | Carrier, Armrest RH | V536 |
| 32447584 | Carrier, Armrest LH | V536 |
| 32447585 | Carrier, Armrest RH | V536 |
| 32332291 | CABLE HARNESS 2nd ROW OTR 7-S LH | V536 |
| 32332292 | CABLE HARNESS 2nd ROW OTR 7-S RH | V536 |
| 32403751 | CABLE HARNESS 2nd ROW OTR 6/7-S LH No Heat | V536 |
| 32403752 | CABLE HARNESS 2nd ROW OTR 6/7-S RH No Heat | V536 |
| 32403173 | CABLE HARNESS 2nd ROW OTR 6-S LH | V536 |
| 32403174 | CABLE HARNESS 2nd ROW OTR 6-S RH | V536 |
| 32332293 | CABLE HARNESS 2nd ROW OTR 5-S LH | V536 |
| 32332294 | CABLE HARNESS 2nd ROW OTR 5-S RH | V536 |
| 32403749 | CABLE HARNESS 2nd ROW OTR 5-S LH No Heat | V536 |
| 32403750 | CABLE HARNESS 2nd ROW OTR 5-S RH No Heat | V536 |
| 32332295 | CABLE HARNESS 2nd ROW CTR 7-S | V536 |
| 32332296 | CABLE HARNESS 2nd ROW CTR 5-S | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332329 | CABLE HARNESS 3rd ROW LH | V536 |
|---|---|---|
| 32367077 | CABLE HARNESS 3rd ROW RH | V536 |
| 32332298 | HEAD REST MECH 2nd ROW OTR MECH | V536 |
| 32447016 | HEAD REST MECH 2nd ROW OTR MECH LH | V536 |
| 32447017 | HEAD REST MECH 2nd ROW OTR MECH RH | V536 |
| 32332299 | HEAD REST MECH 2nd ROW CTR | V536 |
| 32332300 | HEAD REST BEZEL 2nd ROW CTR Charcoal | V536 |
| 32345181 | HEAD REST BEZEL 2nd ROW CTR Dawn | V536 |
| 32332297 | HEAD REST MECH 3rd ROW ELEC | V536 |
| 32332304 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447028 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32447961 | CARPET 2nd ROW LH + RH 5-S Charcoal | V536 |
| 32345185 | CARPET 2nd ROW LH + RH 5-S Dawn | V536 |
| 32332305 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32447029 | CARPET 2nd ROW CTR 5 + 7-S Charcoal | V536 |
| 32345186 | CARPET 2nd ROW CTR 5 + 7-S Dawn | V536 |
| 32332306 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447030 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32447962 | CARPET 2nd ROW LH 7-S EE Charcoal | V536 |
| 32345187 | CARPET 2nd ROW LH 7-S EE Dawn | V536 |
| 32332307 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447031 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32447963 | CARPET 2nd ROW RH 7-S EE Charcoal | V536 |
| 32345188 | CARPET 2nd ROW RH 7-S EE Dawn | V536 |
| 32332331 | CARPET 3rd ROW | V536 |
| 32403992 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447986 | CARPET 3rd ROW W ISOFIX | V536 |
| 32447137 | CARPET 3rd ROW WO ISOFIX | V536 |
| 32332332 | CARPET 3rd ROW RH | V536 |
| 32332308 | ICS LABEL EU / ROW | V536 |
| 32447039 | ICS LABEL EU / ROW | V536 |
| 32332309 | ICS LABEL US | V536 |
| 32332310 | ICS LABEL CAN | V536 |
| 32447632 | ICS LABEL EU / ROW | V536 |
| 32447630 | ICS LABEL US | V536 |
| 32447631 | ICS LABEL CAN | V536 |
| 32332311 | ICS LABEL LATIN AMERICA | V536 |
| 32447040 | ICS LABEL LATIN AMERICA | V536 |
| 32447633 | ICS LABEL LATIN AMERICA | V536 |
| 32332312 | ICS LABEL RUSSIA | V536 |
| 32332313 | ICS LABEL CHINA | V536 |
| 32332314 | ICS LABEL TURKEY | V536 |
| 32407041 | ICS LABEL TURKEY | V536 |
| 32447634 | ICS LABEL TURKEY | V536 |
| 32131814 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32131815 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32131820 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32131821 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401664 | BELT RETRACTOR CENTER BELT A Charcoal | V536 |
| 32401666 | BELT RETRACTOR CENTER BELT A Dawn | V536 |
| 32401665 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401667 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32401908 | BELT RETRACTOR CENTER BELT B Charcoal | V536 |
| 32401909 | BELT RETRACTOR CENTER BELT B Dawn | V536 |
| 32131831 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32131833 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32131832 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32341256 | BELT BUCKLE ASSY 3R LH | V536 |
| 32341257 | BELT BUCKLE ASSY 3R RH | V536 |
| 32394097 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32394099 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32394098 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401671 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
| 32401672 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401673 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32394100 | BELT BUCKLE ASSY 3R LH | V536 |
| 32394101 | BELT BUCKLE ASSY 3R RH | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32401901 | BELT BUCKLE ASSY 2R LH Charcoal | V536 |
|---|---|---|
| 32401903 | BELT BUCKLE ASSY 2R CTR Charcoal | V536 |
| 32401902 | BELT BUCKLE ASSY 2R RH Charcoal | V536 |
| 32401899 | BELT BUCKLE ASSY 3R LH | V536 |
| 32401900 | BELT BUCKLE ASSY 3R RH | V536 |
| 32332315 | PROTECTION BAG 2R OUTER | V536 |
| 32357331 | PROTECTION BAG 2R OUTER 6 SEATER | V536 |
| 32332316 | PROTECTION BAG 2R CENTER | V536 |
| 32332333 | PROTECTION BAG 3R | V536 |
| 32332914 | ASSEMBLY COST 2R BASE | V536 |
| 32367880 | ASSEMBLY COST 2R 6S | V536 |
| 32332916 | Assy Non-textile uph | V536 |
| 32332917 | ASSEMBLY COST 2R ICS | V536 |
| 32332919 | ASSEMBLY COST 2R HEAT | V536 |
| 32332915 | ASSEMBLY COST 2R EASY ENTRY | V536 |
| 32367104 | ASSEMBLY COST 3R BASE | V536 |
| 32332738 | HEAD REST 2/3R OUTER NAPPA - Leather Charcoal | V536 |
| 32332740 | HEAD REST 2/3R OUTER NAPPA - Leather Dawn | V536 |
| 32345142 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Charcoal | V536 |
| 32345409 | HEAD REST OUTER WITH LABEL 7S / 6S LEATHER NAPPA Dawn | V536 |
| 32345403 | HEAD REST 2nd ROW CENTER Leather Charcoal | V536 |
| 32345405 | HEAD REST 2nd ROW CENTER Leather Dawn | V536 |
| 32332302 | HEAD REST OUTER WITH LABEL 7S / 6S TEXTILE-VINYL | V536 |
| 32345144 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32345145 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32447648 | HEAD REST 2/3R OUTER Vinyl Charcoal | V536 |
| 32447647 | HEAD REST 2/3R OUTER Vinyl Cardamom | V536 |
| 32345143 | HEAD REST 2/3R OUTER Vinyl Dawn | V536 |
| 32345410 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32447655 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Charcoal | V536 |
| 32345411 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32345406 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32345407 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32367895 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32447654 | HEAD REST OUTER WITH LABEL 7S / 6S VINYL Cardamom | V536 |
| 32447651 | HEAD REST 2nd ROW CENTER Vinyl Charcoal | V536 |
| 32447650 | HEAD REST 2nd ROW CENTER Vinyl Cardamom | V536 |
| 32447652 | HEAD REST 2nd ROW CENTER Vinyl Dawn | V536 |
| 32345137 | HEAD REST 2/3R OUTER Premium textile - Aspen | V536 |
| 32345184 | HEAD REST OUTER WITH LABEL 7S / 6S PREMIUM TEXTILE | V536 |
| 32345402 | HEAD REST 2nd ROW CENTER Premium Textile - Aspen | V536 |
| 32345138 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32345183 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32345182 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32447649 | HEAD REST 2/3R OUTER Recharge | V536 |
| 32447656 | HEAD REST OUTER WITH LABEL 7S / 6S RE-CHARGE | V536 |
| 32447653 | HEAD REST 2nd ROW CENTER Recharge | V536 |
| 32345398 | ARMREST ASSY V526 2ND ROW Leather Charcoal | V536 |
| 32345400 | ARMREST ASSY V526 2ND ROW Leather Dawn | V536 |
| 32357185 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32357186 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32367853 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32367854 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32367855 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32367856 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32403983 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32403984 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32403985 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32403986 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32403987 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32403988 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |
| 32447701 | ARMREST ASSY 723B 2ND ROW LH Vinyl Charcoal | V536 |
| 32447702 | ARMREST ASSY 723B 2ND ROW RH Vinyl Charcoal | V536 |
| 32447703 | ARMREST ASSY 723B 2ND ROW LH Vinyl Cardamom | V536 |
| 32447704 | ARMREST ASSY 723B 2ND ROW RH Vinyl Cardamom | V536 |
| 32447705 | ARMREST ASSY 723B 2ND ROW LH Vinyl Dawn | V536 |
| 32447706 | ARMREST ASSY 723B 2ND ROW RH Vinyl Dawn | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332303 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
| 32345401 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32367504 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447006 | ARMREST ASSY V536 2ND ROW Vinyl Charcoal | V536 |
| 32447008 | ARMREST ASSY V536 2ND ROW Vinyl Cardamom | V536 |
| 32447009 | ARMREST ASSY V536 2ND ROW Vinyl Dawn | V536 |
| 32447007 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32345397 | ARMREST ASSY V526 2ND ROW Premium Textile | V536 |
| 32345396 | ARMREST ASSY V536 2ND ROW Recharge | V536 |
| 32357187 | ARMREST ASSY 723B 2ND ROW LH TEXTILE 3 | V536 |
| 32357188 | ARMREST ASSY 723B 2ND ROW RH TEXTILE 3 | V536 |
| 31693743 | HEAD REST 2/3R OUTER Textile/Vinyl - Coarse | V536 |
| 32347360 | LOG PACK MARK COST COMMON LH | V536 |
| 32347361 | LOG PACK MARK COST COMMON RH | V536 |
| 32347362 | LOG PACK MARK COST US/CA LH | V536 |
| 32347363 | LOG PACK MARK COST US/CA RH | V536 |
| 32347364 | LOG PACK MARK COST 2W LH/RH | V536 |
| 32347365 | LOG PACK MARK COST 4W LH/RH | V536 |
| 32347366 | LOG PACK MARK COST 4W vent LH/RH | V536 |
| 32347367 | LOG PACK MARK COST 4W massage LH/RH | V536 |
| 32347368 | LOG PACK MARK COST 4W vent and masssage LH/RH | V536 |
| 32367100 | LOG PACK MARK COST HEADREST SPEAKER VINYL CHS LH/RH | V536 |
| 32367101 | LOG PACK MARK COST HEADREST VINYL CHS LH/RH | V536 |
| 32367102 | LOG PACK MARK COST HEADREST VENT TEXTILE LH/RH | V536 |
| 32347369 | LOG PACK MARK COST PSM 10W LH/RH | V536 |
| 32367917 | LOG PACK MARK COST PSM 12W LH/RH | V536 |
| 32367918 | LOG PACK MARK COST PSM 16W LH/RH | V536 |
| 32367919 | LOG PACK MARK COST HEADREST SPEAKER VINYL CDM DWN LH/RH | V536 |
| 32367920 | LOG PACK MARK COST HEADREST VINYL CDM DWN LH/RH | V536 |
| 32367921 | LOG PACK MARK COST HEADREST SPEAKER RECHARGE LH/RH | V536 |
| 32367922 | LOG PACK MARK COST HEADREST RECHARGE LH/RH | V536 |
| 32332920 | LOGISTIC COST BELT A CHS | V536 |
| 32367929 | LOGISTIC COST BELT A DWN | V536 |
| 32332921 | LOGISTIC COST BELT B CHS | V536 |
| 32367930 | LOGISTIC COST BELT B DWN | V536 |
| 32332922 | LOGISTIC COST 7S BASE | V536 |
| 32332923 | LOGISTIC COST 5S BASE | V536 |
| 32367889 | LOGISTIC COST 6S BASE | V536 |
| 32332925 | LOGISTIC COST 7S ICS STRUCTURE | V536 |
| 32332924 | LOGISTIC COST 5S ICS STRUCTURE | V536 |
| 32332926 | LOGISTIC COST HEAT 7S | V536 |
| 32367881 | LOGISTIC COST HEAT 5S | V536 |
| 32367882 | LOGISTIC COST HEAT 6S | V536 |
| 32332927 | LOGISTIC COST ARMREST 5S/7S VINYL CHS | V536 |
| 32367883 | LOGISTIC COST ARMREST 5S/7S VINYL CDM | V536 |
| 32367884 | LOGISTIC COST ARMREST 7S VINYL DWN | V536 |
| 32367885 | LOGISTIC COST ARMREST 7S RECHARGE | V536 |
| 32367886 | LOGISTIC COST ARMREST 6S VINYL CHS | V536 |
| 32367887 | LOGISTIC COST ARMREST 6S VINYL CDM | V536 |
| 32367888 | LOGISTIC COST ARMREST 6S VINYL DWN | V536 |
| 32367105 | LOGISTIC COST STRUCTURE 3RD ROW | V536 |
| 32367106 | LOGISTIC COST BELT BUCKLE | V536 |
| 32332820 | Upholstery, Midnight zinc white / Front Back LH w/o FSAB label | V536 |
| 32332821 | Upholstery, Midnight zinc white / Front Back RH w/o FSAB label | V536 |
| 32347157 | Upholstery, Midnight zinc white / Front Back LH | V536 |
| 32347158 | Upholstery, Midnight zinc white / Front Back RH | V536 |
| 32347159 | Upholstery, Midnight zinc white / Front cushion LH w CEXT | V536 |
| 32347160 | Upholstery, Midnight zinc white / Front cushion RH w CEXT | V536 |
| 32347161 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISO | V536 |
| 32347162 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISO | V536 |
| 32347163 | Upholstery, Midnight zinc white / 2nd row Back RH 7S ISIZE | V536 |
| 32347164 | Upholstery, Midnight zinc white / 2nd row Back LH 7S ISIZE | V536 |
| 32347165 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO A | V536 |
| 32347166 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO A | V536 |
| 32347167 | Upholstery, Midnight zinc white / 2nd row Back RH 5S ISO B | V536 |
| 32347168 | Upholstery, Midnight zinc white / 2nd row Back LH 5S ISO B | V536 |
| 32347169 | Upholstery, Midnight zinc white / 2nd row Center back w armrest | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32347170 | Upholstery, Midnight zinc white / 2nd row Cushion LH | V536 |
| 32347171 | Upholstery, Midnight zinc white / 2nd row Cushion RH | V536 |
| 32347172 | Upholstery, Midnight zinc white / 2nd row Cushion Center w ICS | V536 |
| 32347173 | Upholstery, Midnight zinc white / 2nd row Cushion Center no ICS | V536 |
| 32347174 | Upholstery, Midnight zinc white / Child seat | V536 |
| 32352643 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISO | V536 |
| 32352642 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISO | V536 |
| 32352645 | Upholstery, Midnight zinc white / 2nd row Back RH 6S ISIZE | V536 |
| 32352644 | Upholstery, Midnight zinc white / 2nd row Back LH 6S ISIZE | V536 |
| 32352640 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32352641 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32403907 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32403908 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32447576 | Upholstery, Midnight zinc white / 2nd row Cushion LH 6S | V536 |
| 32447577 | Upholstery, Midnight zinc white / 2nd row Cushion RH 6S | V536 |
| 32347175 | Upholstery, Midnight zinc white / 3rd row Back RH ISO | V536 |
| 32347176 | Upholstery, Midnight zinc white / 3rd row Back LH ISO | V536 |
| 32447144 | Upholstery, Midnight zinc white / 3rd row Back RH | V536 |
| 32447145 | Upholstery, Midnight zinc white / 3rd row Back LH | V536 |
| 32347179 | Upholstery, Midnight zinc white / 3rd row Cushion LH | V536 |
| 32357164 | Upholstery, Midnight zinc white / 3rd row Cushion RH | V536 |
| 32367438 | Upholstery, Charcoal/Front Back LH w FSAB | V536 |
| 32367439 | Upholstery, Charcoal/Front Back RH w FSAB | V536 |
| 32367440 | Upholstery, Charcoal/Front cushion LH w CEXT | V536 |
| 32367441 | Upholstery, Charcoal/Front cushion RH w CEXT | V536 |
| 32367442 | Upholstery, Charcoal/2nd row Back RH 7S ISO | V536 |
| 32367443 | Upholstery, Charcoal/2nd row Back LH 7S ISO | V536 |
| 32367444 | Upholstery, Charcoal/2nd row Back RH 7S ISIZE | V536 |
| 32367445 | Upholstery, Charcoal/2nd row Back LH 7S ISIZE | V536 |
| 32367447 | Upholstery, Charcoal/2nd row Cushion LH | V536 |
| 32367448 | Upholstery, Charcoal/2nd row Cushion RH | V536 |
| 32367452 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32367453 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |
| 32367454 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
| 32367455 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32367456 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32367457 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32367458 | Upholstery 3rd row Back RH | V536 |
| 32367459 | Upholstery 3rd row Back LH | V536 |
| 32367460 | Upholstery 3rd row Cushion LH | V536 |
| 32367461 | Upholstery 3rd row Cushion RH | V536 |
| 32332816 | Upholstery, Charcoal solid / Front Back LH w/o FSAB label | V536 |
| 32332817 | Upholstery, Charcoal solid / Front Back RH w/o FSAB label | V536 |
| 32332560 | Upholstery, Charcoal solid / Front Back LH | V536 |
| 32332561 | Upholstery, Charcoal solid / Front Back RH | V536 |
| 32332562 | Upholstery, Charcoal solid / Front cushion LH n CEXT | V536 |
| 32332563 | Upholstery, Charcoal solid / Front cushion RH n CEXT | V536 |
| 32431814 | Upholstery, Charcoal solid / Front cushion LH no CEXT | V536 |
| 32431815 | Upholstery, Charcoal solid / Front cushion RH no CEXT | V536 |
| 32367463 | Upholstery, Charcoal solid / Front cushion LH w CEXT | V536 |
| 32367464 | Upholstery, Charcoal solid / Front cushion RH w CEXT | V536 |
| 32332564 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISO | V536 |
| 32332565 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISO | V536 |
| 32347272 | Upholstery, Charcoal solid / 2nd row Back RH 7S ISIZE | V536 |
| 32347273 | Upholstery, Charcoal solid / 2nd row Back LH 7S ISIZE | V536 |
| 32332566 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISO | V536 |
| 32332567 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISO | V536 |
| 32347274 | Upholstery, Charcoal solid / 2nd row Back RH 5S ISIZE | V536 |
| 32347275 | Upholstery, Charcoal solid / 2nd row Back LH 5S ISIZE | V536 |
| 32332568 | Upholstery, Charcoal solid / 2nd row Center back | V536 |
| 32332569 | Upholstery, Charcoal solid / 2nd row Cushion LH | V536 |
| 32332570 | Upholstery, Charcoal solid / 2nd row Cushion RH | V536 |
| 32332571 | Upholstery, Charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32332572 | Upholstery, Charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32332573 | Upholstery, Charcoal solid / Child seat | V536 |
| 32357685 | Upholstery, Charcoal / 2nd row Back RH 6S ISO | V536 |
| 32357686 | Upholstery, Charcoal / 2nd row Back LH 6S ISO | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32357687 | Upholstery, Charcoal / 2nd row Back RH 6S ISIZE | V536 |
|---|---|---|
| 32357688 | Upholstery, Charcoal / 2nd row Back LH 6S ISIZE | V536 |
| 32357689 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32357690 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32403909 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32403910 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32447578 | Upholstery, Charcoal / 2nd row Cushion LH 6S | V536 |
| 32447579 | Upholstery, Charcoal / 2nd row Cushion RH 6S | V536 |
| 32332574 | Upholstery, Charcoal solid / 3rd row Back RH ISO | V536 |
| 32332575 | Upholstery, Charcoal solid / 3rd row Back LH ISO | V536 |
| 32447139 | Upholstery, Charcoal solid / 3rd row Back RH | V536 |
| 32447138 | Upholstery, Charcoal solid / 3rd row Back LH | V536 |
| 32332576 | Upholstery, Charcoal solid / 3rd row Cushion LH | V536 |
| 32357163 | Upholstery, Charcoal solid / 3rd row Cushion RH | V536 |
| 32347117 | Upholstery, Cardamom / Front Back LH Quilted | V536 |
| 32347118 | Upholstery, Cardamom / Front Back RH Quilted | V536 |
| 32447425 | Upholstery, Cardamom / Front Back LH | V536 |
| 32447426 | Upholstery, Cardamom / Front Back RH | V536 |
| 32347119 | Upholstery, Cardamom / Front cushion LH n CEXT | V536 |
| 32347120 | Upholstery, Cardamom / Front cushion RH n CEXT | V536 |
| 32431816 | Upholstery, Cardamom / Front cushion LH no CEXT | V536 |
| 32431817 | Upholstery, Cardamom / Front cushion RH no CEXT | V536 |
| 32367465 | Upholstery, Cardamom / Front cushion LH w CEXT | V536 |
| 32367466 | Upholstery, Cardamom / Front cushion RH w CEXT | V536 |
| 32347121 | Upholstery, Cardamom / 2nd row Back RH 7S ISO Quilted | V536 |
| 32347122 | Upholstery, Cardamom / 2nd row Back LH 7S ISO Quilted | V536 |
| 32347278 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE Quilted | V536 |
| 32347279 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE Quilted | V536 |
| 32347123 | Upholstery, Cardamom / 2nd row Back RH 5S ISO Quilted | V536 |
| 32347124 | Upholstery, Cardamom / 2nd row Back LH 5S ISO Quilted | V536 |
| 32347280 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE Quilted | V536 |
| 32347281 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE Quilted | V536 |
| 32447431 | Upholstery, Cardamom / 2nd row Back RH 5S ISO | V536 |
| 32447432 | Upholstery, Cardamom / 2nd row Back LH 5S ISO | V536 |
| 32447434 | Upholstery, Cardamom / 2nd row Back RH 5S ISIZE | V536 |
| 32447433 | Upholstery, Cardamom / 2nd row Back LH 5S ISIZE | V536 |
| 32347125 | Upholstery, Cardamom / 2nd row Center back | V536 |
| 32347126 | Upholstery, Cardamom / 2nd row Cushion LH | V536 |
| 32347127 | Upholstery, Cardamom / 2nd row Cushion RH | V536 |
| 32347128 | Upholstery, Cardamom / 2nd row Cushion Center w ICS | V536 |
| 32347129 | Upholstery, Cardamom / 2nd row Cushion Center no ICS | V536 |
| 32347130 | Upholstery, Cardamom / Child seat | V536 |
| 32357691 | Upholstery, Cardamom / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357692 | Upholstery, Cardamom / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357693 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357694 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357695 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32357696 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32403911 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32403912 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32447580 | Upholstery, Cardamom / 2nd row Cushion LH 6S | V536 |
| 32447581 | Upholstery, Cardamom / 2nd row Cushion RH 6S | V536 |
| 32347131 | Upholstery, Cardamom / 3rd row Back RH ISO | V536 |
| 32347132 | Upholstery, Cardamom / 3rd row Back LH ISO | V536 |
| 32447140 | Upholstery, Cardamom / 3rd row Back RH | V536 |
| 32447141 | Upholstery, Cardamom / 3rd row Back LH | V536 |
| 32347133 | Upholstery, Cardamom / 3rd row Cushion LH | V536 |
| 32357166 | Upholstery, Cardamom / 3rd row Cushion RH | V536 |
| 32367467 | Upholstery, Dawn / Front Back LH Quilted | V536 |
| 32367468 | Upholstery, Dawn / Front Back RH Quilted | V536 |
| 32447447 | Upholstery, Dawn / Front Back LH | V536 |
| 32447448 | Upholstery, Dawn / Front Back RH | V536 |
| 32367469 | Upholstery, Dawn / Front cushion LH w CEXT | V536 |
| 32367470 | Upholstery, Dawn / Front cushion RH w CEXT | V536 |
| 32367471 | Upholstery, Dawn / 2nd row Back RH 7S ISO Quilted | V536 |
| 32367472 | Upholstery, Dawn / 2nd row Back LH 7S ISO Quilted | V536 |
| 32367473 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE Quilted | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32367474 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE Quilted | V536 |
| 32367479 | Upholstery, Dawn / 2nd row Center back | V536 |
| 32367480 | Upholstery, Dawn / 2nd row Cushion LH | V536 |
| 32367481 | Upholstery, Dawn / 2nd row Cushion RH | V536 |
| 32367482 | Upholstery, Dawn / 2nd row Cushion Center w ICS | V536 |
| 32367483 | Upholstery, Dawn / 2nd row Cushion Center no ICS | V536 |
| 32367484 | Upholstery, Dawn / Child seat | V536 |
| 32357697 | Upholstery, Dawn / 2nd row Back RH 6S ISO Quilted | V536 |
| 32357698 | Upholstery, Dawn / 2nd row Back LH 6S ISO Quilted | V536 |
| 32357699 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE Quilted | V536 |
| 32357700 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE Quilted | V536 |
| 32357701 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32357702 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32403913 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32403914 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32447582 | Upholstery, Dawn / 2nd row Cushion LH 6S | V536 |
| 32447583 | Upholstery, Dawn / 2nd row Cushion RH 6S | V536 |
| 32367485 | Upholstery, Dawn / 3rd row Back RH ISO | V536 |
| 32367486 | Upholstery, Dawn / 3rd row Back LH ISO | V536 |
| 32447143 | Upholstery, Dawn / 3rd row Back RH | V536 |
| 32447142 | Upholstery, Dawn / 3rd row Back LH | V536 |
| 32367487 | Upholstery, Dawn / 3rd row Cushion LH | V536 |
| 32367488 | Upholstery, Dawn / 3rd row Cushion RH | V536 |
| 32332814 | Upholstery, Metal grey / Front Back LH w/o FSAB label | V536 |
| 32332815 | Upholstery, Metal grey / Front Back RH w/o FSAB label | V536 |
| 32347134 | Upholstery, Metal grey / Front Back LH | V536 |
| 32347135 | Upholstery, Metal grey / Front Back RH | V536 |
| 32347136 | Upholstery, Metal grey / Front cushion LH | V536 |
| 32347137 | Upholstery, Metal grey / Front cushion RH | V536 |
| 32347138 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347139 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347140 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347141 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347142 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347143 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347144 | Upholstery, Metal grey / 2nd row Back RH | V536 |
| 32347145 | Upholstery, Metal grey / 2nd row Back LH | V536 |
| 32347152 | Upholstery, Metal grey / 3rd row Back RH | V536 |
| 32347153 | Upholstery, Metal grey / 3rd row Back LH | V536 |
| 32332822 | Upholstery Front Back LH (-Unique 722D) | V536 |
| 32332823 | Upholstery Front Back RH  (-Unique 722D) | V536 |
| 32347180 | Upholstery Front Back LH w FAB label | V536 |
| 32347181 | Upholstery Front Back RH w FAB label | V536 |
| 32347182 | Upholstery Front cushion LH w  Mec CEXT | V536 |
| 32347183 | Upholstery Front cushion RH w Mec CEXT | V536 |
| 32347184 | Upholstery 2nd row Back  RH 7 seater ISOFIX | V536 |
| 32347185 | Upholstery 2nd row Back  LH 7 seater ISOFIX | V536 |
| 32347186 | Upholstery 2nd row Back  RH 7 seater ISIZE | V536 |
| 32347187 | Upholstery 2nd row Back  LH 7 seater ISIZE | V536 |
| 32347188 | Upholstery 2nd row Back  RH 5 seater ISOFIX* | V536 |
| 32347189 | Upholstery 2nd row Back  LH 5 seater ISOFIX* | V536 |
| 32347190 | Upholstery 2nd row Back  RH 5 seater ISIZE* | V536 |
| 32347191 | Upholstery 2nd row Back  LH 5 seater ISIZE* | V536 |
| 32347192 | Upholstery 2nd row Center back w armrest | V536 |
| 32347193 | Upholstery 2nd row Cushion LH | V536 |
| 32347194 | Upholstery 2nd row Cushion RH | V536 |
| 32347195 | Upholstery 2nd row Cushion Center w ICS | V536 |
| 32347196 | Upholstery 2nd row Cushion Center no ICS | V536 |
| 32347197 | ICS | V536 |
| 32347198 | Upholstery 3rd row Back  RH ISOFIX | V536 |
| 32347199 | Upholstery 3rd row Back  LH ISOFIX | V536 |
| 32347202 | Upholstery 3rd row Cushion LH | V536 |
| 32357165 | Upholstery 3rd row Cushion RH | V536 |
| 32347203 | Upholstery, charcoal solid / Front Back LH | V536 |
| 32347204 | Upholstery, charcoal solid / Front Back RH | V536 |
| 32347205 | Upholstery, charcoal solid / Front cushion LH | V536 |
| 32347206 | Upholstery, charcoal solid / Front cushion RH | V536 |

| | | |
|---|---|---|
| 32347207 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347208 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347209 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347210 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347211 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347212 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347213 | Upholstery, charcoal solid / 2nd row Back RH | V536 |
| 32347214 | Upholstery, charcoal solid / 2nd row Back LH | V536 |
| 32347215 | Upholstery, charcoal solid / 2nd row Center back w armrest | V536 |
| 32347216 | Upholstery, charcoal solid / 2nd row Cushion LH | V536 |
| 32347217 | Upholstery, charcoal solid / 2nd row Cushion RH | V536 |
| 32347218 | Upholstery, charcoal solid / 2nd row Cushion Center w ICS | V536 |
| 32347219 | Upholstery, charcoal solid / 2nd row Cushion Center no ICS | V536 |
| 32347220 | Upholstery, charcoal solid / Child seat | V536 |
| 32347221 | Upholstery, charcoal solid / 3rd row Back RH | V536 |
| 32347222 | Upholstery, charcoal solid / 3rd row Back LH | V536 |
| 32347225 | Upholstery, charcoal solid / 3rd row Cushion LH | V536 |
| 32357160 | Upholstery, charcoal solid / 3rd row Cushion RH | V536 |
| 32347249 | Upholstery, dawn/porcelain / Front Back LH | V536 |
| 32347250 | Upholstery, dawn/porcelain / Front Back RH | V536 |
| 32347251 | Upholstery, dawn/porcelain / Front cushion LH | V536 |
| 32347252 | Upholstery, dawn/porcelain / Front cushion RH | V536 |
| 32347253 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347254 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347255 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347256 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347257 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347258 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347259 | Upholstery, dawn/porcelain / 2nd row Back RH | V536 |
| 32347260 | Upholstery, dawn/porcelain / 2nd row Back LH | V536 |
| 32347261 | Upholstery, dawn/porcelain / 2nd row Center back w armrest | V536 |
| 32347262 | Upholstery, dawn/porcelain / 2nd row Cushion LH | V536 |
| 32347263 | Upholstery, dawn/porcelain / 2nd row Cushion RH | V536 |
| 32347264 | Upholstery, dawn/porcelain / 2nd row Cushion Center w ICS | V536 |
| 32347265 | Upholstery, dawn/porcelain / 2nd row Cushion Center no ICS | V536 |
| 32347266 | Upholstery, dawn/porcelain / Child seat | V536 |
| 32347267 | Upholstery, dawn/porcelain / 3rd row Back RH | V536 |
| 32347268 | Upholstery, dawn/porcelain / 3rd row Back LH | V536 |
| 32347271 | Upholstery, dawn/porcelain / 3rd row Cushion LH | V536 |
| 32357162 | Upholstery, dawn/porcelain / 3rd row Cushion RH | V536 |
| 32367931 | Edge Protector LH | V536 |
| 32367932 | Edge Protector RH | V536 |
| 32367908 | V536 7S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367909 | V536 7S Center seat (Cardamom vinyl + ICS) | V536 |
| 32367910 | V536 7S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32367911 | 723B 6S Outer seat LH (Cardamom vinyl + seat heating) | V536 |
| 32367912 | 723B 6S Outer seat RH (Cardamom vinyl + seat heating) | V536 |
| 32403626 | ECU PSM 10W | V536 |
| 32403627 | ECU PSM 12W | V536 |
| 32403628 | ECU PSM 16W | V536 |
| 966214 | Six point socket M6X16 Trim list FAB | V536 |
| 961613 | Weld nut inb. Trimlist  FAB | V536 |
| 30622524 | SIX POINT SOCKET SCREW M5x12 | V536 |
| 986060 | Six point socket screw PF5*12, front bracket | V536 |
| 30622814 | Self thread plastic PT5x14 | V536 |
| 999495 | Plastic rivet, 5,2*9,3, rear panel inner | V536 |
| 30624298 | Six point socket screw, M6*10, bracket front | V536 |
| 30697666 | Hogring | V536 |
| 30622533 | Six point socket screw, M5*14, hardback | V536 |
| 985865 | Screw for AB rivet nut | V536 |
| 986061 | Six point socket screw PF*14, lid harness | V536 |
| 982755 | SCREW M6x12 | V536 |
| 9475400 | Push pin plastic | V536 |
| 30776075 | SIX POINT SOCKET SCREW M5X14 | V536 |
| 30622665 | SIX POINT SOCKET SCREW M4x25 | V536 |
| 986113 | SHEETtracs Schraube, M5*14 | V536 |
| 32272827 | SCREW M8x20 | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 982756 | Screw M6x12 | V536 |
| 985955 | FLANGE NUT M10 HEX15 | V536 |
| 30622544 | SCREW M10 T50 | V536 |
| 985921 | FLANGE NUT M8 | V536 |
| 988867 | SEMS SCREW M6X18 | V536 |
| 30640977 | ITW EXPANDING RIVET 6,5x18 | V536 |
| 30622615 | RAYMOND FIXATION CLIP | V536 |
| 30622595 | RAYMOND FIXATION CLIP | V536 |
| 3521768 | PLASTIC CLIP | V536 |
| 32403707 | Screw for high grade steel | V536 |
| 32447626 | Screw for high grade steel | V536 |
| 30640964 | HEAD SCREW WITH SPEC IAL DOG POINT M5*12 | V536 |
| 949937 | Spring Nut M5 | V536 |
| 32447627 | Spring Nut M5 | V536 |
| 32403706 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 30746746 | SIX POINT SOCKET TAPPING SCREWS WITH PAN COLLAR HEAD PF5*12 | V536 |
| 31109159 | Expansion Rivet | V536 |
| 32403705 | Six point socket screw, M6*10 | V536 |
| 30640814 | Tapping Flange Screw  M5*14 | V536 |
| 30769443 | Six point socket screw ST4.8x19 | V536 |
| 32403708 | Rivet Pop M4.75 | V536 |
| 32401663 | Blind Rivet 6.4 | V536 |
| 949921 | Spring Nut M6 | V536 |
| 986214 | SIX POINT SOCKET PAN HEAD SCREWS M6x16 | V536 |
| 30640782 | SCREW M8x20 | V536 |
| 985858 | FLANGE NUT M6X14 | V536 |
| 999127 | FLANGE NUT M10 HEX15 | V536 |
| 985860 | FLANGE NUT M8 | V536 |
| 30746829 | Six point socket screw M10*18,75, assebly cushion and backrest | V536 |
| 30769349 | M10 marriage bolt | V536 |
| 30769353 | M12 marriage bolt | V536 |
| 30746811 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 30746812 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 32403185 | 3R Marriage bolt upper M10*12+18.1 | V536 |
| 32403202 | 3R Marriage bolt lower M10*8,4+7 | V536 |
| 982794 | SCREW M8x20 | V536 |
| 31109219 | Push pin plastic | V536 |
| 986716 | Rivet Pop M4.75 | V536 |
| 32403172 | Boltscrew M6 x 1 x 22 Taptite 2000 | V536 |
| 9401876 | 2R Seat Module | V536 |
| 9401899 | 3R Seat Module | V536 |
| 32347372 | FS LH Seat Module | V536 |
| 32347373 | FS RH Seat Module | V536 |
| 30746912 | Screw thread forming M4x0.7x25 Taptite 2000 | V536 |
| 30769431 | Screw plastic tapping M6x2.14x14 Delta PT | V536 |
| 32403732 | ECU PSM 10W | V536 |
| 32403734 | ECU PSM 12W | V536 |
| 32403736 | ECU PSM 16W | V536 |
| 32403864 | ECU PSM 10W | V536 |
| 32403866 | ECU PSM 12W | V536 |
| 32403868 | ECU PSM 16W | V536 |
| 32447292 | ECU PSM 10W | V536 |
| 32447293 | ECU PSM 12W | V536 |
| 32447294 | ECU PSM 16W | V536 |
| 30624270 | Pop Rivet | V536 |
| 32403993 | Pop Rivet | V536 |
| 32403839 | RECLINER COVER LH SEAT IB 6SEAT Charcoal | V536 |
| 32403840 | RECLINER COVER LH SEAT IB 6SEAT Dawn | V536 |
| 32403841 | RECLINER COVER RH SEAT IB 6SEAT Charcoal | V536 |
| 32403842 | RECLINER COVER RH SEAT IB 6SEAT Dawn | V536 |
| 32403824 | D-LOOP COVER 2ROW Charcoal | V536 |
| 32403825 | D-LOOP COVER 2ROW Dawn | V536 |
| 32403812 | RECLINER COVER LH OB 2ROW Charcoal | V536 |
| 32403813 | RECLINER COVER LH OB 2ROW Dawn | V536 |
| 32403814 | RECLINER COVER RH OB 2ROW Charcoal | V536 |
| 32403815 | RECLINER COVER RH OB 2ROW Dawn | V536 |
| 32403816 | RECLINER COVER LH SEAT IB 2ROW Charcoal | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32403817 | RECLINER COVER LH SEAT IB 2ROW Dawn | V536 |
| 32403818 | RECLINER COVER RH SEAT IB 2ROW Charcoal | V536 |
| 32403819 | RECLINER COVER RH SEAT IB 2ROW Dawn | V536 |
| 32403820 | COVER RECLINER 20 LH Charcoal | V536 |
| 32403821 | COVER RECLINER 20 LH Dawn | V536 |
| 32403822 | COVER RECLINER 20 RH Charcoal | V536 |
| 32403823 | COVER RECLINER 20 RH Dawn | V536 |
| 32403808 | SEAT RAIL COVER LH Charcoal | V536 |
| 32403809 | SEAT RAIL COVER LH Dawn | V536 |
| 32403810 | SEAT RAIL COVER RH Charcoal | V536 |
| 32403811 | SEAT RAIL COVER RH Dawn | V536 |
| 32403835 | SEAT RAIL COVER INNER LH Charcoal | V536 |
| 32403837 | SEAT RAIL COVER INNER RH Charcoal | V536 |
| 32403836 | SEAT RAIL COVER INNER LH Dawn | V536 |
| 32403838 | SEAT RAIL COVER INNER RH Dawn | V536 |
| 32403529 | Upholstery, Charcoal solid / Front Back LH Ventilated | V536 |
| 32403530 | Upholstery, Charcoal solid / Front Back RH Ventilated | V536 |
| 32403535 | Upholstery, Charcoal solid / Front cushion LH w CEXT Ventilated | V536 |
| 32403536 | Upholstery, Charcoal solid / Front cushion RH w CEXT Ventilated | V536 |
| 32403531 | Upholstery, Cardamom / Front Back LH Ventilated | V536 |
| 32403532 | Upholstery, Cardamom / Front Back RH Ventilated | V536 |
| 32403537 | Upholstery, Cardamom / Front cushion LH w CEXT Ventilated | V536 |
| 32403538 | Upholstery, Cardamom / Front cushion RH w CEXT Ventilated | V536 |
| 32403541 | Upholstery, Cardamom / 2nd row Back RH 7S ISO | V536 |
| 32403542 | Upholstery, Cardamom / 2nd row Back LH 7S ISO | V536 |
| 32403543 | Upholstery, Cardamom / 2nd row Back RH 7S ISIZE | V536 |
| 32403544 | Upholstery, Cardamom / 2nd row Back LH 7S ISIZE | V536 |
| 32403545 | Upholstery, Cardamom / 2nd row Back RH 7S ISO C | V536 |
| 32403546 | Upholstery, Cardamom / 2nd row Back LH 7S ISO C | V536 |
| 32403547 | Upholstery, Cardamom / 2nd row Back RH 6S ISO | V536 |
| 32403548 | Upholstery, Cardamom / 2nd row Back LH 6S ISO | V536 |
| 32403549 | Upholstery, Cardamom / 2nd row Back RH 6S ISIZE | V536 |
| 32403550 | Upholstery, Cardamom / 2nd row Back LH 6S ISIZE | V536 |
| 32403551 | Upholstery, Cardamom / 2nd row Back RH 6S ISO C | V536 |
| 32403552 | Upholstery, Cardamom / 2nd row Back LH 6S ISO C | V536 |
| 32403533 | Upholstery, Dawn / Front Back LH Ventilated | V536 |
| 32403534 | Upholstery, Dawn / Front Back RH Ventilated | V536 |
| 32403539 | Upholstery, Dawn / Front cushion LH w CEXT Ventilated | V536 |
| 32403540 | Upholstery, Dawn / Front cushion RH w CEXT Ventilated | V536 |
| 32403553 | Upholstery, Dawn / 2nd row Back RH 7S ISO | V536 |
| 32403554 | Upholstery, Dawn / 2nd row Back LH 7S ISO | V536 |
| 32403555 | Upholstery, Dawn / 2nd row Back RH 7S ISIZE | V536 |
| 32403556 | Upholstery, Dawn / 2nd row Back LH 7S ISIZE | V536 |
| 32403557 | Upholstery, Dawn / 2nd row Back RH 7S ISO C | V536 |
| 32403558 | Upholstery, Dawn / 2nd row Back LH 7S ISO C | V536 |
| 32403559 | Upholstery, Dawn / 2nd row Back RH 6S ISO | V536 |
| 32403560 | Upholstery, Dawn / 2nd row Back LH 6S ISO | V536 |
| 32403561 | Upholstery, Dawn / 2nd row Back RH 6S ISIZE | V536 |
| 32403562 | Upholstery, Dawn / 2nd row Back LH 6S ISIZE | V536 |
| 32403563 | Upholstery, Dawn / 2nd row Back RH 6S ISO C | V536 |
| 32403564 | Upholstery, Dawn / 2nd row Back LH 6S ISO C | V536 |
| 32447183 | Upholstery,CHARCOAL/Front Back LH | V536 |
| 32447184 | Upholstery,CHARCOAL/Front Back RH | V536 |
| 32447185 | Upholstery,CHARCOAL/Front cushion LH | V536 |
| 32447186 | Upholstery,CHARCOAL/Front cushion RH | V536 |
| 32447187 | Upholstery,CHARCOAL/2nd row Back RH 7S ISOFIX | V536 |
| 32447188 | Upholstery,CHARCOAL/2nd row Back LH 7S ISOFIX | V536 |
| 32447538 | Upholstery,CHARCOAL/2nd row Back RH 7S ISIZE | V536 |
| 32447539 | Upholstery,CHARCOAL/2nd row Back LH 7S ISIZE | V536 |
| 32447189 | Upholstery,CHARCOAL/2nd row Cushion LH 7S | V536 |
| 32447190 | Upholstery,CHARCOAL/2nd row Cushion RH 7S | V536 |
| 32447191 | Upholstery,CHARCOAL/2nd row Center back w armrest | V536 |
| 32447192 | Upholstery,CHARCOAL/2nd row Cushion Center no ICS | V536 |
| 32447515 | Upholstery,CHARCOAL/2nd row Cushion Center with ICS | V536 |
| 32447516 | Upholstery,CHARCOAL/2nd row ICS | V536 |
| 32447193 | Upholstery,CHARCOAL/2nd row Back RH 6S ISOFIX | V536 |
| 32447194 | Upholstery,CHARCOAL/2nd row Back LH 6S ISOFIX | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32450448 | Upholstery,CHARCOAL/2nd row Back RH 6S ISIZE | V536 |
|---|---|---|
| 32450447 | Upholstery,CHARCOAL/2nd row Back LH 6S ISIZE | V536 |
| 32447195 | Upholstery,CHARCOAL/2nd row Cushion LH 6S | V536 |
| 32447196 | Upholstery,CHARCOAL/2nd row Cushion RH 6S | V536 |
| 32447197 | Upholstery,CHARCOAL/3rd row Back RH ISOFIX | V536 |
| 32447198 | Upholstery,CHARCOAL/3rd row Back LH ISOFIX | V536 |
| 32447540 | Upholstery,CHARCOAL/3rd row Back RH | V536 |
| 32447541 | Upholstery,CHARCOAL/3rd row Back LH | V536 |
| 32447199 | Upholstery,CHARCOAL/3rd row Cushion LH | V536 |
| 32447200 | Upholstery,CHARCOAL/3rd row Cushion RH | V536 |
| 32447201 | Upholstery,CARDAMOM/Front Back LH | V536 |
| 32447202 | Upholstery,CARDAMOM/Front Back RH | V536 |
| 32447203 | Upholstery,CARDAMOM/Front cushion LH | V536 |
| 32447204 | Upholstery,CARDAMOM/Front cushion RH | V536 |
| 32447205 | Upholstery,CARDAMOM/2nd row Back RH ISOFIX | V536 |
| 32447206 | Upholstery,CARDAMOM/2nd row Back LH ISOFIX | V536 |
| 32447542 | Upholstery,CARDAMOM/2nd row Back RH ISIZE | V536 |
| 32447543 | Upholstery,CARDAMOM/2nd row Back LH ISIZE | V536 |
| 32447207 | Upholstery,CARDAMOM/2nd row Cushion LH | V536 |
| 32447208 | Upholstery,CARDAMOM/2nd row Cushion RH | V536 |
| 32447209 | Upholstery,CARDAMOM/2nd row Center back w armrest | V536 |
| 32447210 | Upholstery,CARDAMOM/2nd row Cushion Center no ICS | V536 |
| 32447517 | Upholstery,CARDAMOM/2nd row Cushion Center with ICS | V536 |
| 32447518 | Upholstery,CARDAMOM/2nd row ICS | V536 |
| 32447211 | Upholstery,CARDAMOM/2nd row Back RH 6S ISOFIX | V536 |
| 32447212 | Upholstery,CARDAMOM/2nd row Back LH 6S ISOFIX | V536 |
| 32450450 | Upholstery,CARDAMOM/2nd row Back RH 6S ISIZE | V536 |
| 32450449 | Upholstery,CARDAMOM/2nd row Back LH 6S ISIZE | V536 |
| 32447213 | Upholstery,CARDAMOM/2nd row Cushion LH 6S | V536 |
| 32447214 | Upholstery,CARDAMOM/2nd row Cushion RH 6S | V536 |
| 32447215 | Upholstery,CARDAMOM/3rd row Back RH ISOFIX | V536 |
| 32447216 | Upholstery,CARDAMOM/3rd row Back LH ISOFIX | V536 |
| 32447544 | Upholstery,CARDAMOM/3rd row Back RH | V536 |
| 32447545 | Upholstery,CARDAMOM/3rd row Back LH | V536 |
| 32447217 | Upholstery,CARDAMOM/3rd row Cushion LH | V536 |
| 32447218 | Upholstery,CARDAMOM/3rd row Cushion RH | V536 |
| 32447219 | Upholstery,DAWN/Front Back LH | V536 |
| 32447220 | Upholstery,DAWN/Front Back RH | V536 |
| 32447221 | Upholstery,DAWN/Front cushion LH | V536 |
| 32447222 | Upholstery,DAWN/Front cushion RH | V536 |
| 32447223 | Upholstery,DAWN/2nd row Back RH ISOFIX | V536 |
| 32447224 | Upholstery,DAWN/2nd row Back LH ISOFIX | V536 |
| 32447546 | Upholstery,DAWN/2nd row Back RH ISIZE | V536 |
| 32447547 | Upholstery,DAWN/2nd row Back LH ISIZE | V536 |
| 32447225 | Upholstery,DAWN/2nd row Cushion LH | V536 |
| 32447226 | Upholstery,DAWN/2nd row Cushion RH | V536 |
| 32447227 | Upholstery,DAWN/2nd row Center back w armrest | V536 |
| 32447228 | Upholstery,DAWN/2nd row Cushion Center no ICS | V536 |
| 32447519 | Upholstery,DAWN/2nd row Cushion Center with ICS | V536 |
| 32447520 | Upholstery,DAWN/2nd row ICS | V536 |
| 32447229 | Upholstery,DAWN/2nd row Back RH 6S ISOFIX | V536 |
| 32447230 | Upholstery,DAWN/2nd row Back LH 6S ISOFIX | V536 |
| 32450452 | Upholstery,DAWN/2nd row Back RH 6S ISIZE | V536 |
| 32450451 | Upholstery,DAWN/2nd row Back LH 6S ISIZE | V536 |
| 32447231 | Upholstery,DAWN/2nd row Cushion LH 6S | V536 |
| 32447232 | Upholstery,DAWN/2nd row Cushion RH 6S | V536 |
| 32447233 | Upholstery,DAWN/3rd row Back RH ISOFIX | V536 |
| 32447234 | Upholstery,DAWN/3rd row Back LH ISOFIX | V536 |
| 32447548 | Upholstery,DAWN/3rd row Back RH | V536 |
| 32447549 | Upholstery,DAWN/3rd row Back LH | V536 |
| 32447235 | Upholstery,DAWN/3rd row Cushion LH | V536 |
| 32447236 | Upholstery,DAWN/3rd row Cushion RH | V536 |
| 32447239 | HEADREST DAWN FRONT W/O AUDIO | V536 |
| 32447237 | HEADREST CHARCOAL FRONT W/O AUDIO | V536 |
| 32447238 | HEADREST CARDAMOM FRONT W/O AUDIO | V536 |
| 32447242 | HEADREST AUDIO DAWN FRONT | V536 |
| 32447240 | HEADREST AUDIO CHARCOAL FRONT | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32447241 | HEADREST AUDIO CARDAMOM FRONT | V536 |
| 32431788 | HEADREST W LABEL CHARCOAL OUTER | V536 |
| 32431785 | HEADREST W LABEL CARDAMOM OUTER | V536 |
| 32431280 | HEADREST W LABEL DAWN OUTER | V536 |
| 32447660 | HEADREST W LABEL DAWN OUTER | V536 |
| 32431790 | HEADREST WITHOUT LABEL CHARCOAL OUTER | V536 |
| 32431787 | HEADREST WITHOUT LABEL CARDAMOM OUTER | V536 |
| 32431284 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32447662 | HEADREST WITHOUT LABEL DAWN OUTER | V536 |
| 32431789 | HEADREST CHARCOAL CENTER | V536 |
| 32431786 | HEADREST CARDAMOM CENTER | V536 |
| 32431282 | HEADREST DAWN CENTER | V536 |
| 32447658 | HEADREST DAWN CENTER | V536 |
| 32447248 | ARMREST DAWN | V536 |
| 32447246 | ARMREST CHARCOAL | V536 |
| 32447247 | ARMREST CARDAMOM | V536 |
| 32431343 | ARM REST DAWN LH | V536 |
| 32431344 | ARM REST DAWN RH | V536 |
| 32431797 | ARM REST CHARCOAL LH | V536 |
| 32431798 | ARM REST CHARCOAL RH | V536 |
| 32431799 | ARM REST CARDAMOM LH | V536 |
| 32431800 | ARM REST CARDAMOM RH | V536 |
| 32431333 | ASSEMBLY COSTS FRONT SEAT LEATHER LH/RH | V536 |
| 32431334 | ASSEMBLY COSTS 2ROW/7 SEAT LEATHER | V536 |
| 32431335 | ASSEMBLY COSTS 2ROW/6 SEAT LEATHER LH/RH | V536 |
| 32431336 | ASSEMBLY COSTS 3ROW LEATHER LH/RH | V536 |
| 32431337 | LOGISTIC COST ARMREST 7S LEATHER | V536 |
| 32431338 | LOGISTIC COST ARMREST 6S LEATHER LH/RH | V536 |
| 32431339 | LOGISTIC COST DAWN HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431340 | LOGISTIC COST DAWN HEADREST STD LEATHER LH/RH | V536 |
| 32447558 | LOGISTIC COST CARDAMOM HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32447559 | LOGISTIC COST CARDAMOM HEADREST STD LEATHER LH/RH | V536 |
| 32431492 | LOGISTIC COST CHARCOAL HEADREST SPEAKER LEATHER LH/RH | V536 |
| 32431493 | LOGISTIC COST CHARCOAL HEADREST STD LEATHER LH/RH | V536 |
| 32450416 | OWS Service Kit | V536 |
| 32450417 | OWS Service Kit Vent | V536 |
| 32431937 | LOGISTIC COST FS LH , W/O EXTENSION | V536 |
| 32431938 | LOGISTIC COST FS RH , W/O EXTENSION | V536 |
| 32447793 | LOGISTIC COST / ARM REST, CHARCOAL LEATHER | V536 |
| 32447794 | LOGISTIC COST / ARM REST, CARDAMOM LEATHER | V536 |
| 32447795 | LOGISTIC COST / ARM REST, DAWN LEATHER | V536 |
| 32447901 | CABLE HARNESS DRIVER 10W | V536 |
| 32447885 | CABLE HARNESS DRIVER 12W | V536 |
| 32447886 | CABLE HARNESS DRIVER 16W | V536 |
| 32447894 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447902 | CABLE HARNESS DRIVER 10W STPS | V536 |
| 32447887 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447895 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447888 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447896 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447889 | CABLE HARNESS DRIVER 12W | V536 |
| 32447897 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447890 | CABLE HARNESS DRIVER 16W | V536 |
| 32447898 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447891 | CABLE HARNESS DRIVER 12W STPS | V536 |
| 32447899 | CABLE HARNESS DRIVER 12W VENT STPS | V536 |
| 32447892 | CABLE HARNESS DRIVER 16W STPS | V536 |
| 32447900 | CABLE HARNESS DRIVER 16W VENT STPS | V536 |
| 32447893 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447929 | CABLE HARNESS DRIVER 10W | V536 |
| 32447921 | CABLE HARNESS DRIVER 12W | V536 |
| 32447925 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447922 | CABLE HARNESS DRIVER 16W | V536 |
| 32447926 | CABLE HARNESS DRIVER 16W VENT | V536 |
| 32447923 | CABLE HARNESS DRIVER 12W | V536 |
| 32447927 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447924 | CABLE HARNESS DRIVER 16W | V536 |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32447928 | CABLE HARNESS DRIVER 16W VENT | V536 |
|---|---|---|
| 32447919 | CABLE HARNESS PASSENGER10W | V536 |
| 32447903 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447911 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447904 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447912 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447920 | CABLE HARNESS PASSENGER 10W OWS | V536 |
| 32447905 | CABLE HARNESS PASSENGER 12W OWS | V536 |
| 32447913 | CABLE HARNESS PASSENGER 12W VENT OWS | V536 |
| 32447906 | CABLE HARNESS PASSENGER 16W OWS | V536 |
| 32447914 | CABLE HARNESS PASSENGER 16W VENT OWS | V536 |
| 32447907 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447915 | CABLE HARNESS DRIVER 12W VENT | V536 |
| 32447908 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447916 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447909 | CABLE HARNESS PASSENGER 12W STPS | V536 |
| 32447917 | CABLE HARNESS PASSENGER 12W VENT STPS | V536 |
| 32447910 | CABLE HARNESS PASSENGER 16W STPS | V536 |
| 32447918 | CABLE HARNESS PASSENGER 16W VENT STPS | V536 |
| 32447938 | CABLE HARNESS PASSENGER 10W | V536 |
| 32447930 | CABLE HARNESS PASSENGER 12W | V536 |
| 32447934 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447931 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447935 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32447932 | CABLE HARNESS DRIVER 12W | V536 |
| 32447936 | CABLE HARNESS PASSENGER 12W VENT | V536 |
| 32447933 | CABLE HARNESS PASSENGER 16W | V536 |
| 32447937 | CABLE HARNESS PASSENGER 16W VENT | V536 |
| 32272400 | HEAD REST,CHARCOAL SOLID | 723N |
| 32272422 | HEAD REST,CHARCOAL SOLID | 723N |
| 32296023 | SIDE AIR BAG | 723N |
| 32296024 | SIDE AIR BAG | 723N |
| 32131682 | ADAPTER END FITTING | 723N |
| 32131683 | ADAPTER END FITTING | 723N |
| 32131693 | SEAT BELT,CHARCOAL | 723N |
| 32131694 | SEAT BELT,GOLD | 723N |
| 32131695 | SEAT BELT,CHARCOAL | 723N |
| 32131696 | SEAT BELT,GOLD | 723N |
| 32394094 | BELT CATCH | 723N |
| 32394096 | BELT CATCH | 723N |
| 986344 | SIX POINT SOCKET SCREW | 723N |
| 989922 | FLANGE SCREW | 723N |
| 31379190 | BACKREST FRAME | 723N |
| 31379191 | BACKREST FRAME | 723N |
| 32272230 | ARM REST,JUPITER | 723N |
| 32272231 | ARM REST,DARK ZINC | 723N |
| 32272613 | COVER | 723N |
| 32272614 | COVER | 723N |
| 32272627 | ARM REST | 723N |
| 32272628 | ARM REST | 723N |
| 32272629 | ARM REST | 723N |
| 32288647 | PIVOT | 723N |
| 32288648 | PIVOT | 723N |
| 39841471 | COVER,CHA | 723N |
| 39841477 | D-LOOP | 723N |
| 32272562 | LOCK,CHAR | 723N |
| 32272564 | LOCK,CHAR | 723N |
| 32272597 | LOCK | 723N |
| 32272598 | LOCK | 723N |
| 32272599 | LOCK | 723N |
| 32272600 | LOCK | 723N |
| 32431035 | LUMBAR SUPPORT 4-VÄGS | 723N |
| 32394095 | BELT CATCH | 723N |
| 32296021 | SIDE AIR BAG | 723N |
| 32296022 | SIDE AIR BAG | 723N |
| 32393991 | UPHOLSTERY JUPITER LH LEATHER- BACKREST LH | 723N |
| 32393992 | UPHOLSTERY LUNA LH LEATHER- BACKREST LH | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | | |
|---|---|---|
| 32393994 | UPHOL CS-MICRO TECH- BACKREST LH | 723N |
| 32393995 | UPHOLSTERY CS-WEAVE TECH- BACKREST LH | 723N |
| 32393996 | UPHOLSTERY JUPITER LH LEATHER- CUSHION LH | 723N |
| 32393997 | UPHOLSTERY LUNA LH LEATHER- CUSHION LH | 723N |
| 32393998 | UPHOL CS-PREMIUM TEXTILE- CUSHION LH | 723N |
| 32393999 | UPHOL CS-MICRO TECH- CUSHION LH | 723N |
| 32431001 | UPHOLSTERY JUPITER RH LEATHER- BACKREST RH | 723N |
| 32431002 | UPHOLSTERY LUNA RH LEATHER- BACKREST RH | 723N |
| 32431004 | UPHOL CS-MICRO TECH- BACKREST RH | 723N |
| 32431375 | UPHOLSTERY CS-WEAVE TECH- BACKREST RH | 723N |
| 32431006 | UPHOLSTERY JUPITER RH LEATHER- CUSHION RH | 723N |
| 32431007 | UPHOLSTERY LUNA RH LEATHER- CUSHION RH | 723N |
| 32431008 | UPHOL CS-PREMIUM TEXTILE- CUSHION RH | 723N |
| 32431009 | UPHOL CS-MICRO TECH- CUSHION RH | 723N |
| 32431015 | UPHOLSTERY LUNA | 723N |
| 32431016 | UPHOLSTERY LUNA | 723N |
| 32431017 | UPHOLSTERY LUNA | 723N |
| 32431019 | UPHOLSTERY JUPITER | 723N |
| 32431020 | UPHOLSTERY JUPITER | 723N |
| 32431021 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431022 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431023 | UPHOSLTERY PREMIUM TEXTILE | 723N |
| 32431024 | UPHOLSTERY MICRO TECH | 723N |
| 32431025 | UPHOLSTERY MICRO TECH | 723N |
| 32431026 | UPHOLSTERY MICRO TECH | 723N |
| 32431027 | UPHOLSTERY WEAVE TECH | 723N |
| 32431028 | UPHOLSTERY WEAVE TECH | 723N |
| 32431029 | UPHOLSTERY WEAVE TECH | 723N |
| 32431018 | UPHOLSTERY JUPITER RSB RH | 723N |
| 32272200 | HEATER | 723N |
| 32272201 | HEATER | 723N |
| 32272202 | HEATING PAD SEAT | 723N |
| 32272206 | HEATING PAD SEAT | 723N |
| 32273211 | HEATING PAD | 723N |
| 32357198 | HEATING PAD SEAT | 723N |
| 32273207 | HEATING PAD SEAT | 723N |
| 32272585 | OWS System | 723N |
| 32386816 | BELT,CHARCOAL / GOLD | 723N |
| 32386817 | BELT,CHARCOAL / GOLD | 723N |
| 32393857 | LOGISTIC COST FRONT SEAT | 723N |
| 32393557 | SUBMARINE BRACKET | 723N |
| 983750 | CABLE TIE | 723N |
| 32260792 | PADDING | 723N |
| 32260793 | PADDING | 723N |
| 32260796 | CARPET,CH | 723N |
| 32260797 | CARPET,CH | 723N |
| 32260800 | PLASTIC B | 723N |
| 32260801 | PLASTIC B | 723N |
| 32260802 | PLASTIC B | 723N |
| 32260803 | PLASTIC B | 723N |
| 32260923 | CABLE HAR | 723N |
| 32260924 | CABLE HAR | 723N |
| 32260927 | CABLE HAR | 723N |
| 32260928 | CABLE HAR | 723N |
| 32260931 | CABLE HAR | 723N |
| 32260932 | CABLE HAR | 723N |
| 32260935 | CABLE HAR | 723N |
| 32260936 | CABLE HAR | 723N |
| 32260947 | PADDING | 723N |
| 32260948 | PADDING | 723N |
| 32260949 | PADDING | 723N |
| 32260950 | PADDING S | 723N |
| 32260951 | PADDING | 723N |
| 32260953 | PADDING | 723N |
| 32260956 | CARRIER | 723N |
| 32260958 | PADDING S | 723N |
| 32272203 | TAPE | 723N |

| | | |
|---|---|---|
| 32272204 | HARNESS | 723N |
| 32272205 | HARNESS | 723N |
| 32272207 | HARNESS | 723N |
| 32272209 | HARNESS | 723N |
| 32272234 | HEAD REST | 723N |
| 32272235 | HEAD REST | 723N |
| 32272360 | TRIMLIST | 723N |
| 32272361 | TRIMLIST | 723N |
| 32272363 | SIDE PANE | 723N |
| 32272364 | SIDE PANE | 723N |
| 32272432 | PADDING | 723N |
| 32272434 | PADDING | 723N |
| 32272601 | BUSHING | 723N |
| 32272602 | BUSHING | 723N |
| 32272603 | GUIDE BUS | 723N |
| 32272604 | GUIDE BUS | 723N |
| 32272605 | LATCH BEZ | 723N |
| 32272606 | LATCH BEZ | 723N |
| 32272607 | LATCH BEZ | 723N |
| 32272608 | LATCH BEZ | 723N |
| 32272609 | CASING, | 723N |
| 32272610 | CASING, | 723N |
| 32272611 | CASING, | 723N |
| 32272612 | CASING, | 723N |
| 32272615 | SIDE BOLS | 723N |
| 32272616 | SIDE BOLS | 723N |
| 32272623 | SIDE BOLS | 723N |
| 32272624 | SIDE BOLS | 723N |
| 32272633 | HEAD REST | 723N |
| 32272635 | HEAD REST | 723N |
| 32272636 | HEAD REST | 723N |
| 32272637 | HEAD REST | 723N |
| 32273822 | TRIMLIST | 723N |
| 32273823 | TRIMLIST | 723N |
| 32273824 | BRACKET | 723N |
| 32273825 | CARRIER | 723N |
| 32273827 | PLASTIC C | 723N |
| 32273828 | CASE SIDE | 723N |
| 32273829 | CASE SIDE | 723N |
| 32273830 | HARDBACK, | 723N |
| 32273831 | HARDBACK, | 723N |
| 32273832 | COULISSE, | 723N |
| 32273833 | COULISSE, | 723N |
| 32273834 | SENSOR | 723N |
| 32273835 | BRACKET | 723N |
| 32273836 | BRACKET | 723N |
| 32273837 | BRACKET | 723N |
| 32273838 | BRACKET | 723N |
| 32273839 | BRACKET | 723N |
| 32273840 | BRACKET | 723N |
| 32273842 | BRACKET | 723N |
| 32273843 | CABLE GUI | 723N |
| 32273844 | CABLE GUI | 723N |
| 32273845 | HANDLE,CH | 723N |
| 32332184 | RETAINER | 723N |
| 32332406 | PADDING | 723N |
| 32332407 | ANCHORAGE | 723N |
| 32332408 | PROTECTIN | 723N |
| 32332409 | PROTECTIN | 723N |
| 32332410 | PROTECTIN | 723N |
| 32332411 | GUIDE BUS | 723N |
| 32332412 | BUSHING,C | 723N |
| 32332415 | HATCH,CHA | 723N |
| 32332416 | LOCK COVE | 723N |
| 32332417 | LATCH BEZ | 723N |
| 32332418 | LATCH BEZ | 723N |
| 32332419 | COVER,CHA | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32332420 | COVER,CHA | 723N |
|---|---|---|
| 32332423 | RIM,CHARC | 723N |
| 32332424 | BRACKET | 723N |
| 32332425 | BRACKET | 723N |
| 32332427 | TRIM PLAT | 723N |
| 32332428 | TRIM PLAT | 723N |
| 32332433 | SIDE PANE | 723N |
| 32332489 | CASE SIDE | 723N |
| 32332490 | CASE SIDE | 723N |
| 32332491 | COVER,CHA | 723N |
| 32332492 | COVER,CHA | 723N |
| 32332493 | CASE SIDE | 723N |
| 32332494 | CASE SIDE | 723N |
| 32332602 | PANEL,CHA | 723N |
| 32332603 | PANEL,CHA | 723N |
| 32332621 | BRACKET | 723N |
| 32333655 | FRONT SEA | 723N |
| 32333866 | SKI HATCH | 723N |
| 32347570 | BRACKET | 723N |
| 32393705 | ARM REST | 723N |
| 32393706 | ARM REST,CHARCOAL SOLID | 723N |
| 32393707 | ARM REST,JUPITER | 723N |
| 32393708 | ARM REST,DARK ZINC | 723N |
| 32393878 | ARM REST,CHARCOAL SOLID | 723N |
| 32273212 | HEATING PAD BACKREST | 723N |
| 32357197 | HEATING PAD SEAT | 723N |
| 32367596 | LUMBAR SUPPORT | 723N |
| 32403160 | LOGISTIC COST | 723N |
| 32431152 | SPRING WASHER | 723N |
| 32431160 | CABLE HARNESS | 723N |
| 32431161 | CABLE HARNESS | 723N |
| 32431164 | CABLE HARNESS | 723N |
| 32431165 | CABLE HARNESS | 723N |
| 51081161 | ARM REST,CHARCOAL SOLID | 723N |
| 32403718 | ECU | 723N |
| 32403720 | ECU | 723N |
| 32285903 | SIX POINT SOCKET SCREW | 723N |
| 32272452 | CABLE HARNESS DRIVER 16W | 723N |
| 31109168 | SCREW-HARDBACK | 723N |
| 986215 | SCREW-SIDE PANEL TRIMLIST | 723N |
| 32272454 | CABLE HARNESS PASS 12W HEAT | 723N |
| 32431000 | UPHOLSTERY CS-WEAVE TECH- CUSHION LH | 723N |
| 32431010 | UPHOLSTERY CS-WEAVE TECH- CUSHION RH | 723N |
| 32393993 | UPHOL CS-PREMIUM TEXTILE- BACKREST LH | 723N |
| 32431003 | UPHOL CS-PREMIUM TEXTILE- BACKREST RH | 723N |
| 32393133 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393134 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393142 | CABLE HARNESS DRIVER 12 HEAT SPEAKER W | 723N |
| 32393143 | CABLE HARNESS DRIVER 12 HEAT WITH VENT | 723N |
| 32393146 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393147 | CABLE HARNESS DRIVER 16 HEAT WO VENT | 723N |
| 32393156 | CABLE HARNESS DRIVER 16 HEAT SPEAKER W | 723N |
| 32393157 | CABLE HARNESS DRIVER 16 HEAT WO VENT U | 723N |
| 32272448 | CABLE HARNESS DRIVER 16W HEAT | 723N |
| 32393135 | CABLE HARNESS PASS 12W  HEAT SPEAKER W | 723N |
| 32393136 | CABLE HARNESS PASS 12W HEAT WITH VENT | 723N |
| 32393144 | CABLE HARNESS PASS 12W HEAT SPEAKER  W | 723N |
| 32393145 | CABLE HARNESS PASS 12W HEAT  WITH VENT | 723N |
| 32393148 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393149 | CABLE HARNESS PASS 16W HEAT WO VENT | 723N |
| 32393158 | CABLE HARNESS PASS 16W HEAT SPEAKER WO | 723N |
| 32393159 | CABLE HARNESS PASS 16W HEAT WO VENT US | 723N |
| 32272450 | CABLE HARNESS PASSENGER 16W HEAT | 723N |
| 32393129 | PADDING BACKREST LH FRONT SEAT MASSAGE | 723N |
| 32393131 | PADDING BACKREST LH FRONT SEAT VENT | 723N |
| 32393130 | PADDING BACKREST RH FRONT SEAT MASSAGE | 723N |
| 32393132 | PADDING BACKREST RH FRONT SEAT VENT | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| 32431011 | UPHOLSTERY FRONT LH BACK BEA WOOL, CHA | 723N |
|---|---|---|
| 32431012 | UPHOLSTERY FRONT LH  BACK MICROTECH CH | 723N |
| 32431013 | UPHOLSTERY FRONT RH BACK BEA WOOL, CHA | 723N |
| 32431014 | UPHOLSTERY FRONT RH  BACK MICROTECH CH | 723N |
| 30622757 | SCREW-ARMREST TO BACKREST FRAME | 723N |
| 30622762 | PLASTIC RIVET-ARMREST COVER | 723N |
| 32403622 | ECU PSM 12W | 723N |
| 32403623 | ECU PSM 16W | 723N |
| 32273206 | HEATING PAD SEAT FRONT SEAT | 723N |
| 32206974 | STS SENSOR | 723N |
| 31377491 | END STOP | 723N |
| 32288875 | UNDERCARRIAGE LH POWER MAN | 723N |
| 32288876 | UNDERCARRIAGE RH POWER MAN | 723N |
| 32273215 | LUMBAR SUPPORT | 723N |
| 32332644 | Air Distribution Back Rest | 723N |
| 32332645 | Air Distribution Cushion (for vent foam) | 723N |
| 32332797 | Front A-side spacer | 723N |
| 32332796 | Rear A-side spacer | 723N |
| 31446700 | Bolster A-side spacer | 723N |
| 31498088 | VENTILATION SEAT | 723N |
| 31488221 | MASSAGE UNIT | 723N |
| 30622539 | SCREW-CUSHION AND BACKREST | 723N |
| 32332651 | Air Distribution Cushion OWS Version | 723N |
| 32288877 | BACKREST FRAME LH ENGINE W | 723N |
| 32288878 | BACKREST FRAME RH ENGINE W | 723N |
| 32393229 | LUMBAR SUPPORT 4-WAY W MASSAGE W SIDE | 723N |
| 32393230 | LUMBAR SUPPORT 4-WAY W VENT | 723N |
| 31379170 | FRAMEWORK LH RELEASE MECHANISM | 723N |
| 31379228 | FRAMEWORK RH RELEASE MECHANISM | 723N |
| 32272963 | ASSEMBLY COSTS FRONT SEAT MASSAGE | 723N |
| 32272965 | ASSEMBLY COSTS FRONT SEAT VENT | 723N |
| 32272967 | ASSEMBLY COSTS FRONT SEAT SIDE SUPPORT | 723N |
| 32272968 | ASSEMBLY COSTS FRONT SEAT 4W LUMBAR | 723N |
| 32272969 | ASSEMBLY COSTS FRONT SEAT  CUSHION EXT | 723N |
| 32272970 | ASSEMBLY COSTS FRONT SEAT  HEAT | 723N |
| 32272971 | ASSEMBLY COSTS FRONT SEAT BASIC | 723N |
| 32403150 | ASSEMBLY COST FRONT STPS | 723N |
| 32403151 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403152 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32403153 | ASSEMBLY COST FRONT OWS | 723N |
| 32403154 | ASSEMBLY COST FRONT STPS | 723N |
| 32403155 | ASSEMBLY COST HEADREST SPEAK | 723N |
| 32403156 | ASSEMBLY COST FAR SIDE ARIBAG | 723N |
| 32260804 | ASSEMBLY COST REAR SEAT | 723N |
| 32260805 | ASSEMBLY COST SEAT HEATING | 723N |
| 32272972 | LOGISTIC COST FRONT SEAT LAMP LED | 723N |
| 32272974 | LOGISTIC COST FRONT SEAT CONTROL PANEL    (Switch) | 723N |
| 32272975 | LOGISTIC COST FRONT SEAT ECU PSM | 723N |
| 32328704 | LOGISTIC COST FRONT SEAT STRUCTURE. ENDSTOP, STPS SENSOR | 723N |
| 32393858 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM | 723N |
| 32403157 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403158 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403159 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328707 | LOGISTIC COST FRONT SEAT HEADREST | 723N |
| 32403164 | LOGISTIC COST FRONTSEAT HEADREST SPEAK | 723N |
| 32403183 | LOGISTIC COST FRONT SEAT RESTRAINT | 723N |
| 32403161 | LOGISTIC COST FRONT SEAT MASSAGE, SIDE SUPPORT | 723N |
| 32403162 | LOGISTIC COST FRONT SEAT VENT | 723N |
| 32403163 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT | 723N |
| 32328706 | LOGISTIC COST FRONT SEAT OWS | 723N |
| 32403175 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403176 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403177 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32403178 | LOGISTIC COST FRONT SEAT ECU PSM 16W | 723N |
| 32403179 | LOGISTIC COST FRONT SEAT COMFORT SYSTEM, VENT | 723N |
| 32403180 | LOGISTIC COST FRONT SEAT LUMBAR SUPPORT, MASSAGE, VENT, SIDE | 723N |
| 32288645 | LOGISTIC COST ARM REST | 723N |

| 32403181 | LOGISTIC COST REAR COMFORT | 723N |
|---|---|---|
| 32288643 | LOGISTIC COST STRUCTURE | 723N |
| 32403182 | LOGISTIC COST RS BELT | 723N |
| 32393520 | HARDBACK BCOMP WITH MAP POCKET LH | 723N |
| 32393521 | HARDBACK BCOMP WITH MAP POCKET RH | 723N |
| 32431357 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431358 | P519 FRONT BACK TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431359 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid LH | 723N |
| 32431360 | P519 FRONT CUSHION TRIM ASM Animal welfare Nappa leather VARIANT Charcoal Solid RH | 723N |
| 32431361 | UPHOLSTERY,Charcoal Solid LH BACKREST | 723N |
| 32431362 | UPHOLSTERY,Charcoal Solid RH BACKREST | 723N |
| 32431363 | UPHOLSTERY,Charcoal Solid CUSHION | 723N |
| 32431400 | HEAD RESTRAINT Charcoal leather CTR | 723N |
| 32431356 | P519 amrest_Leather perforation charcoal with chamfer | 723N |
| 32467128 | TRIMLIST INNER BOLSTER LH | 723N |
| 32467129 | TRIMLIST INNER BOLSTER RH | 723N |
| 32467130 | TRIMLIST OUTER BOLSTER LH | 723N |
| 32467131 | TRIMLIST OUTER BOLSTER RH | 723N |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #3

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## PRODUCTION MATERIAL GLOBAL TERMS AND CONDITIONS

1     **DEFINITIONS**

1.1     In the Purchase Agreement, the following definitions apply:

**Affiliate** means a legal entity that, directly or indirectly, Controls, is Controlled by, or is under common Control with a Party. In addition thereto, Affiliates of the Buyer include entities listed in Appendix 1.

**Authority** means a governmental (federal, state or municipal, etc.) agency, authority or administration, including any private entity acting on behalf of such agency, authority or administration, that has a right to investigate or regulate the Goods, the products into which the Goods may be installed, Buyer, Supplier or any of their Affiliates.

**Background IPR** means IPR owned by a Party (or its Affiliates) before entering into force of the Purchase Agreement, or IPR generated by a Party (or its Affiliates) outside the scope of the Purchase Agreement.

**Blanket Purchase Order** means one of the following instruments: (i) production Purchase Order: meaning purchase order used to purchase Goods for serial production, or (ii) nonproduction Purchase Order: meaning a purchase order used to purchase Service Parts or Components.

**BOM** means a list specifying the Components and the quantities of each Component needed to manufacture the Goods.

**Build-To-Print Goods** means Goods supplied by Supplier under the Purchase Agreement in accordance with design specifications provided solely by Buyer.

**Buyer** means the Party that issues a Purchase Order for the Purchase Agreement, or on whose behalf a Purchase Order is issued for the Purchase Agreement.

**Buyer Instruction** means Buyer's specific instructions listed in Appendix 2.

**Buyer-Owned Tooling** shall have the meaning ascribed to it in Section 18.2.1.

**Call-Off** means single or multiple instruction(s) issued in writing (printed or electronic) under a Blanket Purchase Order by Buyer, or on Buyer's behalf, to Supplier to supply a specified quantity of Goods to be delivered at a specified location by a specified date and time. The instruction includes information on binding quantities for actual delivery and on Volume Projections, in accordance with the relevant Buyer Instruction.

**Code of Conduct** means the code of conduct(s) listed in Appendix 3.

**Component** means an individual component, as specified in a BOM, of the Goods.

**Confidential Information** means the terms of the Purchase Agreement and all business, technical, financial and any other information that is provided by the Disclosing Party to the Receiving Party under the Purchase Agreement, or information generated under the Purchase Agreement, excluding information (i) that is or becomes generally available to the public (other than as a result of a disclosure by the Receiving Party, or any Affiliate, agent or consultant for whom the Receiving Party is responsible, in violation of these terms), (ii) that

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

was in the Receiving Party's possession before the Receiving Party received it from the Disclosing Party, (iii) that was or is rightfully disclosed by a third party to the Receiving Party without being subjected to confidentiality obligations, or (iv) that was or is independently developed without use of information disclosed by the Disclosing Party.

**Contract Documents** means the documents as specified in Section 3.3(ii)-(iii).

**Control** means the possession, directly or indirectly, by agreement or otherwise, of (i) at least 50% of the voting stock, partnership interest or other ownership interest, or (ii) the power (a) to appoint or remove a majority of the board of directors or other governing body of an entity, or (b) to cause the direction of the management of an entity.

**Criminal Laws** shall have the meaning ascribed to it in Section 21.5.1(i).

**Defect Trend** means an analysis made by Buyer (i) that is based on a sufficient quantity of actual Non-Conforming Goods, and (ii) that clearly shows that the cumulative number of Non-Conforming Goods (a) continuously and steadily has increased, and (b) is likely to continue to continuously and steadily increase.

**Delay** means the failure by Supplier to deliver to Buyer any relevant Goods by the time and date stated in the relevant Contract Document(s).

**Directed Sub-tier Supplier** means a particular Sub-tier Supplier as stated in Section 11.3.

**Disclosing Party** means the Party disclosing Confidential Information to the other Party under the Purchase Agreement.

**EDI** means electronic data interchange.

**ESOW** means an agreed written document setting out an engineering statement of work with respect to specific Goods, including any services to be performed, a job split between the Parties, final and interim completion dates or gateways and any and all documents referred to in such engineering statement of work.

**Field Service Action** means a recall, service action, extended warranty, safety, maintenance or improvement program, or similar action, involving or relating to Non-Conforming Goods, implemented or performed by Buyer, its Affiliates, dealers or other authorized repair facilities.

**Force Majeure** means a cause or event (including acts of God (such as fire, flood, earthquake, and other natural disaster)), riots, civil disorders, and war or acts of terrorism (whether or not declared as such by a government) beyond the reasonable control of a Party and that is not attributable to such Party's fault or negligence. Strikes, lock-outs or other industrial action or disputes solely related to Supplier, its Affiliates and/or its Sub-tier Suppliers, subcontractors or agents shall not be deemed as events of Force Majeure.

**Foreground IPR** means IPR to such results generated through design or development or other engineering services performed under the Purchase Agreement.

**Framework Purchase Agreement** means the agreement, including any attachments or appendixes thereto, between Buyer (or one of its Affiliates) and Supplier (or one of its Affiliates) that establishes the general terms applicable to Buyer's purchase of Goods from Supplier, under which Buyer and Supplier may enter into single or multiple Purchase Agreements stating the responsibilities and obligations specific to the applicable Goods.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**General Purchase Agreement Documents** means these terms and Buyer Instructions, including any updates thereof as updated and/or issued in accordance with these terms by Buyer from time to time, which form part of the Purchase Agreement.

**Goods** means the goods and services to be supplied by Supplier under the Purchase Agreement, including: (i) goods used in serial production, (ii) goods used as service parts or as accessories, (iii) components of goods referred to in items (i)-(ii), (iv) prototypes, (v) raw materials, (vi) software, irrespective if embedded in physical goods or supplied separately, (vii) Tooling, (viii) packaging in relation to goods referred to in items (i)-(vii), and (ix) design and development or other engineering services or any processing or assembly services in relation to goods referred to in items (i)-(viii).

**Incoterms** means the rules of the version of Incoterms as stated in the relevant Buyer Instruction.

**IPR** means all forms of intellectual property rights in any country or region, including patents, copyrights, design, and all other intellectual property rights of a similar nature (whether or not registrable, or registered or applied for registration), excluding Trademarks.

**Level One Materials** means Supplier's technical information categorized in accordance with Section 10.2.2.

**Level Two Materials** means Supplier's technical information categorized in accordance with Section 10.2.2.

**Listed Person** means (i) any individual, company, entity or organization designated for trade sanctions or export control restrictions on a list published by the EU, US, UN or other relevant country or authority, or otherwise subject to such trade sanctions or export control restrictions, and (ii) companies, entities or organizations that are owned 50% or greater by any combination of persons stated in item (i), or controlled by such persons.

**Losses** means all losses (including liabilities, damages, expenses and costs, as well as fees for attorneys, experts and other consultants, settlement costs and judgments) incurred by Buyer or any of its Affiliates, and their directors, officers, and employees.

**Lump-Sum Purchase Order** means one of the following instruments: (i) prototype Purchase Order: meaning purchase order used to purchase prototype Goods (except Tooling), (ii) prototype Tooling Purchase Order: meaning purchase order used to purchase prototype Tooling, (iii) production Tooling Purchase Order: meaning purchase order used to purchase Tooling for production of Goods for serial production, or (iv) engineering services Purchase Order: meaning purchase order used to purchase design and development or other engineering services or any processing or assembly services in relation to Goods.

**Minor Nonconformity** means a nonconformity in Non-Conforming Goods that does not, or that only in an immaterial way, adversely affect the performance, durability, interchangeability, reliability, maintainability, effective use or operation, weight or appearance of the Goods or of the product which the Goods are to be incorporated into or operate with.

**Non-Conforming Goods** means Goods that do not conform in all respects to the requirements stated in Sections 14.1 and 14.2.

**Offer** shall have the meaning ascribed to it in Section 3.1.

**Parties** means Buyer and Supplier and **Party** means either Buyer or Supplier.

**Personal Data** means all information that a Party obtains from the other Party as a result of the Purchase Agreement (i) relating to an identified or identifiable natural person, including the other Party's employees and customers, that directly or indirectly can identify that person, or (ii) deemed personal data according to applicable national, federal, state, and international laws and regulations now or hereafter in effect.

**Purchase Agreement** means the agreement for the purchase of Goods between Buyer and Supplier entered into pursuant to Section 3.2, including the Contract Documents.

**Purchase Order** means an instrument issued in writing (printed or electronic) by Buyer, or on Buyer's behalf, to Supplier for the purchase of Goods, that instrument being either (i) a Blanket Purchase Order, that will allow Buyer to issue Call-Offs during the term of such Blanket Purchase Order, or (ii) a Lump-Sum Purchase Order, that encompasses an order for the specified Goods.

**Quality Reject** means an instrument issued in writing (printed or electronic) by Buyer, or on Buyer's behalf, to Supplier upon (or in relation to) receipt of Goods that are subject to a Blanket Purchase Order and that are (i) received before or after the delivery date, (ii) in excess of the quantity in the Purchase Order(s) or Call-Off(s), or (iii) Non-Conforming Goods.

**Receiving Party** means the Party receiving Confidential Information from the other Party under the Purchase Agreement.

**Returnable Containers** means returnable racks, bins and other containers that are owned by Buyer or its Affiliates.

**Service Part** means Goods used as an interchangeable part (including both repairable and consumable parts) for the service or repair of Buyer products.

**Sub-tier Supplier** means a member of Supplier's direct or indirect sub-tier supply base (including Directed Sub-tier Suppliers and subcontractors of Supplier) that provides goods and/or services in connection with the Goods.

**Supplier** means the Party that accepts a Purchase Order for the Purchase Agreement.

**Supplier-Owned Tooling** shall have the meaning ascribed to it in Section 18.3.1.

**Supplier Portal** means the website(s) listed in Appendix 4 or such other website(s) as Buyer has informed Supplier in writing.

**Systematic Non-Conformity** means a nonconformity in the Goods (i) attributable to the same, or substantially the same, root cause, (ii) that occurs, or is likely to occur, at a statistically significant level, during the Warranty Period, and (iii) that causes the Goods to be Non-Conforming Goods. A single Minor Nonconformity will not be deemed a Systematic Non-Conformity, provided however that multiple Minor Nonconformities may, when considered collectively, be deemed a Systematic Non-Conformity.

**Technical Specification** means the drawings, specifications, samples, designs, instructions, standards, technical, functional, performance or property requirements or other technical or commercial information relating to the design, development, manufacture, packaging and labelling, delivery, installation, assembly, testing and/or use of the Goods that have

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

been furnished, specified or approved by Buyer, including information in a part folder, ESOW, temporary part deviation or temporary change approval, as applicable.

**Tooling** means the tools, including prototype and production tools, dies, fixtures, jigs, gauges, molds, patterns, including modifications, refurbishments and replacements, specifically manufactured or adapted for manufacture or quality control of Goods.

**Trademarks** means intellectual property rights in trademarks (including part numbers that are trademarks), service marks, trade names, business names or company names, in each case whether registered or unregistered, anywhere in the world, including all applications, registrations, renewals and the like, to the extent such rights are enforceable against a third party.

**Use** means to make, have made, use (including in a process), import, reproduce, prepare derivative works, develop, distribute to third parties, publicly perform and display, including the right to have a third party carry out such activities on the relevant Party's behalf.

**Volume Projections** means Buyer's estimates, forecasts or projections of its future volume, quantity or capacity requirements for the Goods, primarily as stated in the appendices to the Framework Purchase Agreement or in a Call-Off.

**Warranty Period** means the period that begins on the date the Goods are delivered to Buyer (or a third party designated by Buyer) and expires on the date that is the later of (i) the date on which the applicable period stated in the relevant Buyer Instruction ends, or (ii) the date on which any applicable government requirement covering the Goods ends, or (iii) with respect to Systematic Non-Conformities: 84 months after the Goods are delivered to the end-customer.

**Written Notice** means such notice as specified in Section 28.3.

## 2       GENERAL

2.1     These terms apply to, and form part of, any and all agreements on purchase of Goods by Buyer and its Affiliates, unless specified otherwise in the relevant agreement.

2.2     Buyer and its Affiliates may issue a Purchase Order to Supplier. Further, upon conclusion of a Purchase Agreement, Buyer may purchase Goods from Supplier under that Purchase Agreement. Except for obligations resulting from single or multiple Purchase Orders or Call-Offs, Buyer will not be responsible for any liabilities arising from any Purchase Orders or Call-Offs issued by any of its Affiliates under these terms.

2.3     Nothing in the Purchase Agreement prevents Buyer or any of its Affiliates from engaging others to provide goods or services the same as, or similar to, the Goods.

## 3       CONCLUSION OF PURCHASE AGREEMENT AND CONTRACT DOCUMENTS

3.1     A Lump-Sum Purchase Order constitutes an offer by Buyer to purchase Goods from Supplier. A Blanket Purchase Order constitutes an offer by Buyer to purchase Goods from Supplier if a Call-Off is issued thereunder for quantities of Goods as stated therein for actual

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

delivery. That Lump-Sum Purchase Order, or that first Call-Off under a Blanket Purchase Order, as the case may be, shall hereinafter be referred to as the Offer.

3.2 A Purchase Agreement is concluded when Supplier accepts the Offer. This occurs upon the earlier of:

    (i)    Supplier beginning work or performance pursuant to the Offer,

    (ii)    the date on which Buyer has received Supplier's notice of its acceptance of the Offer,

    (iii)    20 working days from the date of issue of the Offer, provided that Supplier has not, before the end of such time-period, notified Buyer in writing that it does not accept the Offer, and provided further that Buyer has not, in the absence of any acceptance from Supplier as stated in (i)-(ii), within 20 working days from the date of issue of the Offer revoked the Offer or relevant Blanket Purchase Order (such right of revocation being a right of Buyer, not an obligation, and shall, if used, be made without incurring any liability towards Supplier).

3.3    The following will apply upon conclusion of a Purchase Agreement:

    (i)    Supplier shall provide or manufacture, sell and deliver Goods, all in accordance with the terms stated in the Purchase Agreement,

    (ii)    the following terms will form part of the Purchase Agreement:

        (a)    the appendices to the Framework Purchase Agreement, to the extent such Framework Purchase Agreement is duly signed by the Parties,

            a.

        (b)    these terms, if no framework Purchase Agreement has been signed,

        (c)    the terms in all documents referenced or otherwise stated in these terms and further referenced or otherwise stated in such documents, including:

            a.    the Code of Conduct,

            b.    Buyer Instructions, to the extent such are published on Supplier Portal at the date of the conclusion of the Purchase Agreement, or subsequently published pursuant to the procedure stated in Section 7.1,

            c.    Purchase Order(s), to the extent such are issued by Buyer in accordance with these terms,

            d.    Call-Off(s), to the extent such are issued by Buyer in accordance with these terms, and

            e.    Technical Specification(s), or other supporting engineering or technical documents, to the extent such other documents are agreed by Buyer and Supplier in accordance with these terms,

    (iii)    certain documents stated in Section 3.3(ii) including the Code of Conduct, Buyer Instructions, Buyer standards, Buyer customer specific requirements or third party standards, are available online (at Buyer website, Supplier Portal, Buyer corporate standard website or such other source that publishes Buyer customer specific requirements or third party standards) and are incorporated herein, and

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(iv)    each Purchase Agreement is a stand-alone agreement between the Parties to such Purchase Agreement and the conclusion of any Purchase Agreement by Buyer shall not obligate any Affiliate of Buyer to enter into any Purchase Agreement, each such Purchase Agreement to be entered into at the sole discretion of Buyer or that Affiliate.

3.4    Subject to Section 7.1.3, if there are any inconsistencies or contradictions between the terms of the Contract Documents, the documents will take precedence in the numerical order stated in Section 3.3 (ii), provided that the Technical Specification shall be deemed included in Section 3.3(ii)e (i.e. not in 3.3(ii)(a)) .

3.5    No terms in Supplier's quotation, acknowledgment, confirmation accepting the Purchase Order, Call-Off, invoice, specification, or similar document will form part of the Purchase Agreement. Supplier hereby expressly waives any right to rely on such terms.

## 4    TERM OF THE PURCHASE AGREEMENT

4.1    The Purchase Agreement will enter into force on the date stated on the relevant Purchase Order.

4.2    Subject to Section 24.4.1, the Purchase Agreement under a Blanket Purchase Order will be valid until terminated as stated in Section 24.

4.3    Subject to Section 24.4.1, the Purchase Agreement under a Lump-Sum Purchase Order will, unless terminated as stated in Section 24, be valid until Buyer's and Supplier's completion of their respective supply and payment obligations under that Purchase Agreement.

## 5    CALL-OFFS, CAPACITY AND QUANTITIES

5.1    Unless otherwise stated in a Blanket Purchase Order, Buyer may during the term of the Purchase Agreement issue Call-Offs on the terms stated in the Purchase Agreement. Supplier may only reject Call-Offs that fail to conform to the Purchase Agreement. If any Call-Off fails to conform to the Purchase Agreement, Supplier shall immediately notify Buyer, otherwise, the Call-Off will be deemed accepted by Supplier.

5.2    Supplier shall have sufficient production capacity to manufacture and supply to Buyer the volume of Goods in a given period, which at any given time corresponds to the requirements stated in the appendices to the Framework Purchase Agreement as they may be amended in accordance with Section 7.3.

5.3    Supplier shall manufacture and supply to Buyer the volumes of Goods at those times as stated in Call-Offs that conform to the Purchase Agreement.

5.4    Buyer will not be required to purchase the quantities stated in the Volume Projection. Buyer's purchase obligation is only as stated in the relevant Lump-Sum Purchase Order or in the relevant Call-Off as stated for actual delivery, as the case may be.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## 6      DESIGN AND DEVELOPMENT OF GOODS

6.1      If the Purchase Agreement comprises design and development or other engineering services as part of the Goods to be delivered by Supplier, such services will be stated in one or more Technical Specification(s) issued by Buyer to Supplier. Supplier shall exercise reasonable diligence and apply the best engineering practices in the industry to comply with the relevant Technical Specification(s). Each Party shall cooperate with the other Party for the timely achievement of final and interim completion dates or gateways stated in the Technical Specification(s). Supplier acknowledges that completion dates or gateways for deliverables are of the essence for Buyer.

6.2      When Supplier has completed to the reasonable satisfaction of Buyer all design, development or other engineering services relating to the Goods stated in the Technical Specification(s), Buyer will notify Supplier of that completion and its approval of the Technical Specification for such Goods. Supplier acknowledges that such completion and approval are conditions for any issue of a Blanket Purchase Order with respect to the relevant Goods, such to be issued at the sole discretion of Buyer.

6.3      Supplier acknowledges that all information and documentation provided by Buyer in, or in connection with, any agreed Technical Specification(s), including tests required by Buyer, are solely provided to ensure the completion of a final Technical Specification. All such information and documentation, or any approvals or confirmations given by, or on behalf of, Buyer in connection therewith, including under Section 6.2, will not limit or affect any of the warranties stated in Section 14. Supplier expressly acknowledges that Buyer will, notwithstanding any information or documentation furnished by Buyer relating to the Goods, rely on the particular skill and knowledge base of Supplier to develop and supply Goods which fulfil the warranties set out in Section 14, and that Supplier is responsible for, at its own expense, identifying and conducting such tests as Supplier may deem necessary to achieve such fulfilment.

## 7      AMENDMENTS, MODIFICATIONS, DEVIATIONS AND CHANGES

*7.1      Amendments, modifications and deviations to the Purchase Agreement*

7.1.1      Buyer may amend the General Purchase Agreement Documents, either as annual amendment(s) or as other amendment(s) as stated in this Section 7.1.1. Any amendment(s) of the General Purchase Agreement Documents will be published on Supplier Portal as follows:

(i)      in case of annual amendment(s): on or around 1 May and will be effective as of the following 1 July, or a date stated by Buyer that is not earlier than 45 days after publication, and

(ii)      in case of other amendment(s): on the date stated by Buyer in Written Notice to Supplier, including the date on which such other amendment(s) become effective, however not earlier than 45 days after the date of that notice.

7.1.2      If Supplier determines that it would not be possible for Supplier to comply with any amendment published by Buyer in accordance with Section 7.1.1 and Supplier gives Buyer a Written Notice of its objection no later than two weeks after the publishing date of such amendments on Supplier Portal, then

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(i)    Supplier will not be bound by the amendment(s) to which Supplier has objected and the relevant term(s) in the General Purchase Agreement Document stated in Supplier's notice will remain unchanged in the Purchase Agreement(s),

(ii)    all other amendments will become effective as stated in Section 7.1.1, and

(iii)    Buyer may terminate the Purchase Agreement in accordance with Section 24.1.1.

7.1.3    Notwithstanding Section 3.4

    (i)    any amendment to the Purchase Agreement not made in accordance with this Section 7 will be binding on Buyer only if that amendment is signed by authorized representatives of the Parties, and

    (ii)    any amendment or waiver of the General Purchase Agreement Documents will be binding on Buyer only if it is

        (a)    approved by the Senior Vice President(s) for Procurement of that Buyer group

            (as listed in Appendix 1) affected by that amendment or waiver, and

        (b)    stated that it is amending or waiving a term of the General Purchase Agreement Documents.

*7.2    Changes to the Goods etc.*

7.2.1    Supplier shall not make, and shall cause its Sub-tier Suppliers not to make, any changes to Goods, including changes to the Technical Specification and/or the design, functionality, performance or properties of the Goods or any changes to the manufacturing process of Goods, including a transfer of any portion of the design, manufacturing, or assembly process to a different facility or to different location within the same facility, without Buyer's prior written consent.

7.2.2    Buyer may request changes to Goods during the term of the Purchase Agreement, including changes to the Technical Specification and/or the design, functionality or performance of the Goods. Such requests will be submitted to Supplier in writing. Supplier shall within ten working days after the date of Buyer's request, or within such period as the Parties have agreed in writing, submit to Buyer a quotation. If within that time Supplier does not submit a quotation to Buyer, Supplier will be deemed to have accepted a change requested by Buyer.

Supplier's quotation shall be submitted in the same way and format as Supplier's (or any of its Affiliates') initial quotation submitted to Buyer (or any of its Affiliates) prior to entering into the Framework Purchase Agreement for the business including the Goods. Supplier's quotation shall state costs in accordance with the agreed cost structure applicable for the Purchase Agreement. Further, Supplier's quotation shall include details of the possible effects of that change requests, including

    (i)    the schedule for completing the engineering activities required by the requested change(s),

    (ii)    any effect on quality, unit pricing or delivery time, and

    (iii)    any other factors that Supplier believes to be relevant.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

If Supplier concludes that the possible effects are substantial, Supplier shall clearly state such substantial effects in the quotation.

7.2.3   If Supplier submits a quotation to Buyer in accordance with Section 7.2.2, the Parties shall negotiate in good faith the cost and timing impact of Buyer's change request and Supplier shall use reasonable efforts to meet Buyer's requests. Unless otherwise notified by Buyer, the Parties shall continue to perform their respective obligations under the Purchase Agreement pending agreement regarding that change request. If the Parties are unable to reach such an agreement in 20 working days from when Buyer received Supplier's quotation, Buyer may remove the affected Goods from the scope of the Purchase Agreement as of the date stated by Buyer, without affecting the remaining Goods under the Purchase Agreement and without incurring any liability to Supplier.

*7.3   Changes to capacity requirements*

7.3.1   Buyer may request increases to the capacity requirement stated in Section 5.2 during the term of the Purchase Agreement. Such requests will be submitted to Supplier in writing or stated in a Call-Off. Supplier shall within ten working days after the date of Buyer's request, or within such period as the Parties have agreed in writing, submit to Buyer a quotation. If within that time Supplier does not submit a quotation to Buyer, Supplier will be deemed to have accepted a change requested by Buyer.

Supplier's quotation shall be submitted in the same way and format as Supplier's (or any of its Affiliates') initial quotation submitted to Buyer (or any of its Affiliates) prior to entering into the Framework Purchase Agreement for the business including the Goods. Supplier's quotation shall state costs in accordance with the agreed cost structure applicable for the Purchase Agreement. Further, Supplier's quotation shall include details of the possible effects of that change request, including

(i)     the schedule for completing the activities required by the requested change(s),

(ii)    any effect on quality, unit price and delivery, and

(iii)   any other factors that Supplier believes to be relevant.

If Supplier concludes that the possible effects are substantial, Supplier shall clearly state such substantial effects in the quotation.

7.3.2   If Supplier submits a quotation to Buyer in accordance with Section 7.3.1, then Section 7.2.3 shall apply with necessary conforming changes.

*7.4   Changes to Purchase Orders*

7.4.1   If Buyer elects to terminate a Purchase Order, in whole or in part, the Parties' respective rights and obligations will be as stated in Section 24.

**8       PACKAGING, MARKING, LABELLING, SHIPPING, DELIVERY**

8.1      Supplier shall comply with Buyer's requirements for packing, marking, labeling, and shipping as stated in the relevant Buyer Instruction.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

8.2    For Goods to be timely delivered, they must be delivered in the quantity, and at the time, date and location, stated in the Purchase Order or Call-Off. If necessary for timely delivery, Supplier shall at its expense use expedited delivery. Accordingly, Supplier recognizes that time stipulated for delivery and correct quantity are of the essence.

8.3    This Section 8.3 applies to Supplier's that supply Goods which require delivery of specified Goods at a specified time and in the specified sequence immediately before they are required for serial production. Consistent with Buyer group's use of just-in-time and just-insequence manufacturing principles, Supplier shall

    (i)    arrange for standby personnel to appear at Buyer's production facility within reasonable time (taking into account the urgency of solving any Buyer production issues related to the Goods), and

    (ii)    ensure at least one person of the standby personnel speaks English (or such other language as agreed with Buyer).

8.4    The agreed delivery term shall be interpreted in accordance with Incoterms. Unless otherwise stated in the relevant Purchase Order or, in the Call-Off, the delivery term shall be as stated in the relevant Buyer Instruction.

8.5    Title to Goods will pass to Buyer at the same time as the risk passes to Buyer in accordance with Section 8.3, except that title to Tooling will pass to Buyer in accordance with Section18.2.1.

8.6    Buyer will not be required to inspect or test the Goods upon delivery or before use of the Goods.

## 9    QUALITY

9.1    Supplier shall work to continuously improve quality in its manufacture, production, and distribution of Goods. Supplier shall comply with Buyer's quality-assurance processes, inspections, and standards in effect at any given time for suppliers providing goods or services similar to the Goods. These standards include Buyer's quality program, ISO/TS 16949, and/or IATF 16949 (as applicable), including Buyer customer-specific requirements for IATF, ISO 15504, ISO 14001, and Buyer's supplier performance rating program.

9.2    Buyer may initiate programs designed to improve its products, including improve quality, increase customer satisfaction, efficiently reduce environmental impact, and reduce costs. Supplier shall participate in any such initiatives to the extent requested by Buyer.

## 10    IPR, SUPPLIER'S TECHNICAL INFORMATION AND TRADEMARKS

### 10.1    Suppliers Use of Buyer's IPR

10.1.1    Supplier may use the IPR, Trademarks, and Confidential Information of Buyer and its Affiliates only when performing under the Purchase Agreement. Accordingly, Supplier or its Affiliates may not without Buyer's written consent use Buyer and its Affiliates' IPR, Trademarks and Confidential Information for the production and/or supply of any goods or services to any third party or for any other purpose, except for providing a limited

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

sublicense to Sub-tier Suppliers for the sole purpose of providing Goods to Buyer under the Purchase Agreement.

10.2    *Buyer's Use of Supplier's Technical Information*

10.2.1    Supplier shall provide Buyer and its Affiliates with technical information Buyer needs to install, assemble, and otherwise use the Goods. Such technical information must comply with all standards of Buyer and its Affiliates in effect at any given time (including standards for computer-aided design, drafting, and approval). That information includes:

(i)    information necessary to support Buyer's and its Affiliates' engineering release systems, as detailed in said standards,

(ii)    package and installation drawings with functional requirements,

(iii)    information required to support Buyer's and its Affiliates' obligations under law to provide information to others (including anyone performing service and repair), and

(iv)    if the Goods include software

(a)    a list that complies with the relevant Buyer Instruction stating the software components, licenses and copyright licensors or owners of the software, and

(b)    source code to software components, that are subject to license terms that require distribution of that source code, if any.

10.2.2    Supplier and Buyer shall negotiate in good faith to categorize Supplier's technical information as Level One Materials or Level Two Materials and, if appropriate, itemize them in a Technical Specification or other written document. For the avoidance of doubt, the information to be provided pursuant to Section 10.2.1 will be categorized as Level One Materials irrespective of any itemization in a Technical Specification or other written document.

10.2.3    Buyer may use or disclose Level One Materials without restriction, including sharing Level One Materials with anyone, regardless of whether those Level One Materials are marked Confidential, Proprietary or similarly, except that Buyer may not make or have made products

(i)    that incorporate any Supplier patent that constitutes part of Supplier's Background IPR, and

(ii)    bear one or more of Supplier's or its Affiliates' Trademarks.

10.2.4    Level Two Materials constitute Confidential Information.

10.2.5    If Supplier supplies software for use with the Goods, then the machine code of that software will constitute Level One Materials and, if not otherwise agreed, the source code of that software will constitute Level Two Materials.

10.3    *Ownership of Foreground IPR*

10.3.1    The Party performing work that creates Foreground IPR will own that IPR.

10.3.2    If in performing work jointly Buyer and Supplier create Foreground IPR and it is not possible to determine the extent to which each was responsible for that work or it is not possible to distinguish the contributions of Supplier from those of Buyer and Buyer and Supplier have

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

not agreed in writing on ownership of the related Foreground IPR, Buyer and Supplier will jointly own equal undivided shares in such Foreground IPR. Buyer and Supplier and their respective Affiliates will have the worldwide, perpetual, sub-licensable, and irrevocable right to Use such Foreground IPR to market and sell goods or services, independently of and without requiring consent from or the need to account to the other Party with whom such Foreground IPR is jointly owned and without payment of compensation to the other Party.

10.4     *Licenses to Supplier IPR*

10.4.1   Supplier hereby grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up license to copyright embodied in

(i)      technical information, and

(ii)     software,

provided to Buyer under the Purchase Agreement.

The copyright license granted hereunder includes the right

(i)      to reproduce and prepare derivative works, and

(ii)     to distribute to third parties, publicly perform and display, provided however, that this item (ii) applies only to Level One Materials

to the extent required for Buyer and its Affiliates, dealers and repairers to install, assemble, service, repair and otherwise use the Goods, and includes the right to have a third party carry out such activities on its behalf.

The copyright license granted hereunder is valid for the term during which such copyright is protected under law.

10.4.2   Except as stated in Sections 10.4.1, 10.4.5 and 18.2.1, and if not otherwise agreed, in these terms Supplier is not granting to Buyer or any of its Affiliates any licenses to its or its Affiliates' Background IPR.

10.4.3   If the Purchase Agreement contemplates Supplier or one or more Sub-tier Suppliers performing design and development or other engineering services and Buyer pays, or otherwise compensates Supplier for such services, by direct payment or by issue of a Purchase Order or Call-Off for the relevant Goods or otherwise, then Supplier hereby grants, and shall cause its Affiliates and Sub-tier Suppliers to grant, Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up license to Use and to market and sell goods or services that incorporate the relevant Foreground IPR of Supplier, its Affiliates or Sub-tier

Suppliers. The license granted hereunder is valid for the term during which such Foreground IPR is protected under law.

10.4.4   In performing services described in Section 10.4.3, Supplier shall promptly after creation provide Buyer with a report on any relevant Foreground IPR that is registerable under applicable law. To the extent Supplier has incorporated its or its Affiliates' or Sub-tier Supplier's registerable IPR in the Goods and an application to register that IPR is filed after Supplier starts performing those services, that IPR will be deemed to constitute relevant Foreground IPR licensed under Section 10.4.3.

10.4.5   Supplier hereby grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

permanent, paid-up license under any IPR that is owned or controlled by Supplier or its Affiliates (now or in the future) necessary to remanufacture and/or have remanufactured, but not to have newly manufactured, the Goods. Upon Buyer's request the Parties will negotiate in good faith any support to be provided by Supplier to Buyer for such activities. Section 19 applies for supply of Components, if any.

10.5     *Use of software*

10.5.1   Unless Buyer has consented in writing, Supplier shall not incorporate into the Goods any software, whether owned by Supplier or anyone else, that subject Buyer to license terms other than these terms. Buyer's consent in accordance with this Section will not affect any Supplier warranty or liability under the Purchase Agreement.

10.5.2   A Party shall not reverse engineer, reverse compile, disassemble or otherwise attempt to derive the source code to any software that has been provided as machine code by the other Party.

10.6     *Claims of infringement – Supplier's indemnification*

10.6.1   Supplier shall indemnify Buyer, its Affiliates, and their respective directors, officers, and employees of and from any and all Losses arising out of any claim of infringement of IPR or Trademarks, or misappropriation of third party confidential information, brought against Buyer, its Affiliates, or their respective directors, officers, or employees relating to the sale, use or handling of the Goods

   (i)     alone,

   (ii)    in combination by reason of their content, design or structure, or

   (iii)   in combination with Supplier's recommendations.

10.6.2   Supplier's indemnification obligations under Section 10.6.1 will apply even if Buyer or its Affiliates have furnished a portion of the design of the Goods and/or specifies all or a portion of the processing of the Goods used by Supplier. Supplier's indemnification obligations will however not apply with respect to the design of Build-To-Print Goods.

10.6.3   If a claim of infringement or misappropriation is brought against Buyer, its Affiliates, or their directors, officers, or employees or other third parties (including dealers or importers), Buyer shall give Supplier notice thereof without undue delay. Buyer's failure to provide such notice will not relieve Supplier's indemnification obligations but will only result in a reduction of Supplier's indemnifications obligations, however, only if, and only to the extent, Supplier is actually prejudiced by that failure. Upon such notice, Supplier shall, at its

   own cost and expense, take control of the defense and investigation of such claim, save that Buyer may, at its own cost and expense, employ and engage its own attorney(s) to cooperate with Supplier to participate in, handle and defend the same. Further, Buyer shall

   (i)     provide control to Supplier to defend and settle the claim at Supplier's discretion,

   (ii)    not agree to any liability, infringement or misappropriation, and

   (iii)   agree to co-operate, at Supplier's expense, in good faith with Supplier in the defense as Supplier may reasonably request.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0800840

Supplier shall continuously inform Buyer of the development of any negotiations and proceedings. Supplier shall not enter into any settlement that involves any responsibility, commitment or other obligation of Buyer, its Affiliates, or their directors, officers, or employees or other third parties without the prior written consent of Buyer.

## 11    SUB-TIER SUPPLIERS

11.1    Supplier shall require all Sub-tier Suppliers to enter into written agreements with Supplier obligating the Sub-tier Suppliers, when acting in their capacity as Sub-tier Suppliers, to conduct themselves in a way that is consistent with the terms of the Purchase Agreement, including to undertake each action that is required of Supplier with regard to such Sub-tier Supplier under these terms. Supplier will be responsible for any and all actions, omissions, and defaults of any Sub-tier Supplier as if they were the actions, omissions, or defaults of Supplier.

11.2    Upon Buyer's request, Supplier shall

   (i)    confirm to Buyer in writing that all Sub-tier Suppliers have entered to written agreements with Supplier in accordance with Section 11.1, and

   (ii)    enforce Supplier's rights under such agreements for the benefit of Buyer.

11.3    At the written request of Buyer, Supplier shall use a Directed Sub-tier Supplier as Supplier for the goods and/or services stated in that request. Buyer shall also have the right to bring any claims against a Directed Sub-tier Supplier for any non-conforming goods and/or services supplied by that Directed Sub-tier Supplier, and Supplier shall procure that Buyer has such a right, unless the subject matter of the claim is covered by a separate agreement by Buyer and the relevant Directed Sub-tier Supplier.

11.4    The subcontracting of any work to Sub-tier Suppliers will not relieve Supplier from any of its obligations under the Purchase Agreement, except that Supplier shall not, subject to the fulfilment of its obligations stated in this Section 11, be responsible for any NonConforming Goods if such non-conformance is solely attributable to actions, omissions or defaults of a Directed Sub-tier Supplier.

## 12    CONFIDENTIALITY

12.1    Receiving Party shall use reasonable care to treat Confidential Information of Disclosing Party as confidential and shall not directly or indirectly disclose the Confidential

Information, in whole or in part, to any third party, except as explicitly stated in the Purchase Agreement. "Reasonable care" is the standard of care that the Party holding the information would use in protecting the confidentiality of its own confidential information.

12.2    Receiving Party may share Confidential Information of Disclosing Party with its Affiliates, consultants, Sub-tier Suppliers, contractors, experts, and agents, on condition that the person or entity with whom or which the information is being shared has agreed in writing to keep that information confidential on terms substantially similar to those stated in this Section 12. Notwithstanding the foregoing, Supplier shall obtain the prior written consent of Buyer before Supplier (or any of its Affiliates) shares any Buyer (or Directed Sub-tier

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

Supplier) Confidential Information with anyone that manufactures or distributes motor vehicles or otherwise directly or indirectly competes with Buyer or the Directed Sub-tier Supplier, as the case may be, anywhere in the world.

12.3    Receiving Party may disclose Confidential Information of Disclosing Party if such disclosure is required by

    (i)     law,

    (ii)    a decision of an Authority to which Receiving Party is subject,

    (iii)   any judicial or arbitral proceeding, or

    (iv)    any securities exchange,

    if the disclosure is limited to only Confidential Information required to be disclosed and that Receiving Party notifies the Disclosing Party in advance and uses reasonable efforts to obtain confidential treatment of such Confidential Information.

12.4    Supplier acknowledges that some of Buyer's and its Affiliates' electronic systems are designed for collaboration and sharing information among multiple parties, including other suppliers. Buyer recommends that Supplier does not enter Supplier Confidential Information into any electronic system of Buyer or any of its Affiliates unless Buyer or any of its Affiliates has provided Written Notice to Supplier that such system is configured to keep confidential any information that is entered into it. Otherwise, Buyer will not be required to treat as confidential the information entered into such electronic systems.


**13      PRICE AND PAYMENT TERMS**

13.1    The price for the Goods will be that stated in the Purchase Order and will include storage, packaging, handling, duties, if applicable, fees, and taxes (except for VAT and sales tax) in the country of origin, unless otherwise stated in the relevant Buyer Instruction. That price will remain in effect throughout the term of the Purchase Agreement, except for any changes mutually agreed to by the Parties in writing.

13.2    For Supplier's invoices to be valid, they must comply with the relevant Buyer Instruction. If required by Buyer and permitted in accordance with applicable legislation of both Buyer and Supplier, the Parties agree to apply self-billing, and Supplier accepts the terms of that self-billing agreement as stated in the relevant Buyer Instruction.

13.3    The time allowed for payment of Supplier invoices is as stated in the Purchase Order or the relevant Buyer Instruction.

13.4    Supplier shall separately show on its invoice all items of the total amount owed other than the price of the Goods. Supplier shall provide Buyer documents and information evidencing those items.

13.5    Unless prohibited by applicable law, Buyer may without notifying Supplier set off any Losses against Supplier against any performance or payment due to Supplier. Buyer will use reasonable efforts to give Supplier a Written Notice to enable the Parties to have good faith negotiations before making a set off.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

13.6    Buyer and Supplier shall cooperate to reduce the cost to Supplier of producing Goods, improve the quality of Goods, and make manufacture and assembly of Goods more efficient. Buyer and Supplier shall negotiate in good faith reducing the price Supplier charges Buyer for Goods to reflect any reduction in the cost to Supplier of producing Goods.

13.7    If another supplier offers Buyer goods equivalent to Goods (i.e. meaning goods that conform to a specification that is equivalent to the Technical Specification) at a total cost lower than the total cost of the same volume of Goods and Buyer notifies Supplier of that fact, then either

   (i)    effective no later than 60 days after it receives that notice, Supplier shall reduce the price it charges Buyer for Goods to match that lower total cost, or

   (ii)   Buyer may either

       (a)    terminate the Purchase Agreement, in whole or in part, effective no sooner than 60 days after Buyer notifies Supplier that it wishes to so terminate the Purchase Agreement, or

       (b)    purchase from that other supplier the equivalent goods, in which case any Buyer obligation to purchase a specified volume of Goods stated in a Purchase Order or Call-Off will be reduced accordingly effective 60 days after Buyer's notice to Supplier under this Section 13.7.

   Buyer is not required to reveal to Supplier the identity of any such other supplier.

## 14     WARRANTY

14.1    Supplier warrants that the Goods will:

   (i)    conform in all respects to the agreed or approved Technical Specification, if issued,

   (ii)   comply with all laws of the countries in which the Goods, or the products into which the Goods are to be incorporated, are to be sold,

   (iii)  be free from faults in design, even if the design has been approved by Buyer,

   (iv)   be free from faults in title, materials and workmanship,

   (v)    be suitable for their intended use by Buyer (i.e. use in or in relation to a motor vehicle for sale and use by Buyer, its Affiliates and its customers in various territories throughout the world), taking into account the specified performance in the assembly, system, subsystem and vehicle location specified by Buyer and the

       environment in which the Goods are to perform or would reasonably be expected to perform, and

   (vi)   be free from any traces of such prohibited materials or substances as stated in Buyer Instruction referenced in Section 21.2.3.

14.2    In addition to the warranties provided under Section 14.1, Supplier warrants, with respect to any services to be provided under the Purchase Agreement as part of the Goods, that it will perform such services in accordance with the Technical Specification(s), if issued, and in a good and workmanlike manner, free from faults, exercising the knowledge, skill, and care

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

of an expert in the performance of similar services but in no event less than reasonable level of knowledge, skill and care and using competent, suitable experienced and properly trained, certified, licensed and skilled personnel.

14.3    Supplier will be liable for Non-Conforming Goods where the nonconformity is discovered or occurs during the Warranty Period, provided however that such time limitation shall not apply for such Non-Conforming Goods

(i)     that may cause or has caused damage or poses a significant threat of damage to property or to the health or safety of any person, or

(ii)    that result in a Field Service Action that Buyer or its Affiliates reasonably determine must be performed, either mandated by or voluntarily agreed upon by Buyer or its Affiliates, to comply with law or any requirement of an Authority.

14.4    The warranties by Supplier stated in this Section 14 shall survive any inspection, testing, delivery or acceptance of, or payment by Buyer for, the Goods.

14.5    The warranties by Supplier stated in this Section 14 are subject to the below limitations.

Supplier shall be under no liability of any Non-Conforming Goods:

(i)     resulting from any design specification provided solely by Buyer with respect to Build-To-Print Goods,

(ii)    resulting from normal wear and tear, willful damage, and negligence outside of Supplier's, or any of its Sub-tier Supplier's, control, or

(iii)   if Buyer fails to notify Supplier of the Non-Conforming Goods within one year of the non-conformance becoming apparent to Buyer. In case of a Systematic NonConformity, a non-conformance shall be deemed apparent to Buyer only when there is a Defect Trend. Supplier will be deemed to have been notified if a notice of NonConforming Goods is made in a Buyer electronic system to which Supplier has or has been offered access.

## 15    SUPPLIER'S LIABILITY FOR NON-CONFORMING DELIVERIES

*15.1    Delays and incorrect quantities*

15.1.1  Supplier shall promptly notify Buyer of

(i)     anything that will or might result in any Delay or Supplier's inability to fulfil the quantities stated in Purchase Order(s) or Call-Off(s), and

(ii)    how Supplier intends to minimize its effect.

15.1.2  Buyer may reject and/or return at Supplier's expense all or part of a delivery of Goods received in excess of the quantity in Purchase Order(s) or Call-Off(s) as stated for actual delivery. If Buyer issues a Quality Reject on such Goods under this Section 15.1.2, Supplier shall be liable to pay Buyer liquidated damages equal to an amount as stated in the relevant Buyer Instruction. The Parties agree that such amounts are not a penalty.

15.1.3  If a Delay occurs, Buyer may

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(i)  terminate, in whole or in part, the Purchase Agreement in accordance with Section 24.1.1 and any agreement with Supplier for purchase of other goods that Buyer does not need because of the Delay, and

(ii)  make substitute purchases from other supplier(s).

15.1.4  Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against all Losses arising out of the Delay.

15.1.5  Without limiting other remedies available to Buyer, if a Delay occurs

(i)  with respect to Goods ordered by Buyer under a Lump-Sum Purchase Order and that Delay is attributable to Supplier or any of its Sub-tier Suppliers, Supplier shall pay Buyer liquidated damages for that Delay equal to the amount of 2% of the total price stated in the relevant Purchase Order for each complete week of delay up to a maximum of 15% of the total price stated in the relevant Purchase Order in the aggregate, or

(ii)  with respect to Goods ordered by Buyer under a Blanket Purchase Order and that Delay is attributable to Supplier or any of its Sub-tier Suppliers, Supplier shall pay Buyer liquidated damages for that Delay equal to an amount as stated in the relevant Buyer Instruction.

The Parties agree that such amounts are not a penalty.

*15.2  Non-Conforming Goods*

15.2.1  Supplier shall promptly notify Buyer of any Non-Conforming Goods of which it has knowledge and any measures that Supplier is taking or proposes taking to remedy or minimize the effect of that nonconformity.

15.2.2  If Supplier delivers any Non-Conforming Goods, Buyer may demand that Supplier either

(i)  performs immediate rectification, or

(ii)  promptly delivers substitute conforming Goods.

If Buyer issues a Quality Reject on such Goods under this Section 15.2.2, Supplier shall pay Buyer liquidated damages equal to an amount as stated in the relevant Buyer Instruction. The Parties agree that such amounts are not a penalty.

15.2.3  If Supplier is unable to perform immediate rectification or deliver substitute conforming Goods in accordance with Section 15.2.2, as the case may be, or if doing so would interfere with Buyer's operations, Buyer may at Supplier's expense

(i)  do whatever is required to repair the Goods, or

(ii)  reject, in whole or in part, the delivery and/or terminate, in whole or in part, the Purchase Agreement in accordance with Section 24.1.1 and any agreement with Supplier for purchase of other goods which Buyer does not need because of the NonConforming Goods, and to make substitute purchases from other supplier(s).

15.2.4  Supplier has a right to perform rectification of Non-Conforming Goods only if Supplier can perform that rectification

(i)  at its premises, or, subject to Buyer's approval, at Buyer's site,

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

    (ii)    without causing disruption or delay to Buyer or its Affiliates processes, and

    (iii)   within the deadline established by Buyer.

If Buyer or its Affiliates have started to use any Non-Conforming Goods (including any preassembly, fitment or distribution to third parties) Supplier shall have no right to perform rectification of that Non-Conforming Goods and Buyer will, at its sole discretion, decide what actions to take to perform rectification.

15.2.5    Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against all Losses arising out of the Non-Conforming Goods, including, but not limited to, all Losses arising out of a Field Service Action.

15.2.6    Subject to Section 14.3, Supplier's warranty, as to any Goods that are repaired or replaced in accordance with this Section 15.2, shall

    (i)    continue to apply to such Goods for the full remaining balance of the original Warranty Period of the Goods as originally delivered, or

    (ii)    apply to such Goods for the Warranty Period applicable for Service Parts,

whichever period is longer.

*15.3    Field Service Actions*

15.3.1    Only Buyer may decide if to conduct a Field Service Action and how to conduct it, whether or not such Field Service Action is

    (i)    required by law or an Authority (either mandated by or voluntarily agreed upon by Buyer or its Affiliates), or

    (ii)    initiated independent of any Authority for any reason.

15.3.2    If Buyer determines a Field Service Action is necessary to remedy Non-Conforming Goods, Buyer shall promptly inform Supplier, but Buyer's failure to do so will not affect Supplier's liability for Non-Conforming Goods.

15.3.3    If Buyer so elects, Supplier shall pay Buyer up to half of all actual costs which Buyer incurs in connection with a Field Service Action, up to three times the aggregate price under the Purchase Agreement for the Goods that is subject of the Field Service Action, if

    (i)    Buyer has determined in good faith that Supplier is likely to be liable for a portion of those costs, taking into account all relevant information then available, including Buyer's and Supplier's assessments of their respective responsibility, and

    (ii)    in the 90 days after start of that Field Service Action Buyer and Supplier have not agreed in writing on how to allocate those costs.

For purposes of this Section 15.3.3, actual costs will be limited to the cost of parts and labor (including consultants, advisors and subcontractors) incurred by Buyer and its Affiliates, calculated in accordance with the relevant Buyer Instruction. If Supplier makes an interim payment under this Section 15.3.3, neither Buyer nor Supplier will be deemed to have

    (i)    admitted that the interim amount (or the maximum amount) of that Field Service Action determined in accordance with this Section 15.3.3 is the amount for which Supplier is ultimately liable in connection with that Field Service Action, or

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(ii)    waived any right against the other Party relating to those Non-Conforming Goods.

## 16    PROTECTION OF SUPPLY

16.1    Supplier shall promptly notify Buyer of

(i)    any inability on its part, or the part of a Sub-tier Supplier, to perform their respective obligations under the Purchase Agreement, and

(ii)    its breach of the Purchase Agreement.

16.2    Supplier shall maintain a disaster recovery plan that includes emergency back-up capacity and record-protection and recovery. At Buyer's written request, Supplier shall provide Buyer a reasonably detailed description of its disaster recovery plan.

16.3    Supplier shall notify Buyer at least 30 days in advance of expiration of a Supplier collective bargaining agreement or other labor contract and shall promptly notify Buyer of any potential labor dispute involving or affecting Supplier that could affect Buyer's operations or the supply of Goods under the Purchase Agreement. Supplier shall include in any such notice its plan to avoid adverse effects to Buyer's operations or to ensure that Buyer's purchase of Goods will be met without disruption for at least 30 days after expiration of the collective bargaining agreement or labor contract or commencement of that labor dispute. After so notifying Buyer, Supplier shall keep Buyer informed of any changes to that plan and its labor situation.

## 17    WORK ON BUYER PREMISES

17.1    If Supplier performs any work on the premises of Buyer or its Affiliates, or utilizes any property owned or leased by Buyer or its Affiliates (whether on or off the premises of Buyer or its Affiliates), Supplier shall indemnify Buyer, its Affiliates, and their directors, officers, and employees against any Losses for damages to any property or injuries (including death) arising out of Supplier's performance of work or use of the property of Buyer or its Affiliates, except for any such liability, claim, or demand arising out of negligence of Buyer, its Affiliates, or their directors, officers, or employees.

## 18    TOOLING

*18.1    General*

18.1.1    Supplier shall at its expense do the following regarding Tooling in its possession, regardless of who owns it:

(i)    maintain it in the condition necessary to produce the Goods, repairing it and replacing it as required by wear-and-tear and damage,

(ii)    properly store it,

(iii)    refrain from comingling it with property owned by Supplier or others,

(iv)    refrain from modifying or replacing it without Buyer's prior written approval,

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(v)    for a period of 15 years following the end of Buyer's serial production for which that Tooling is used, maintain it in the condition necessary for the continued supply of Service Parts and Components under a Blanket Purchase Order. Supplier will no longer be required to maintain such Tooling after that 15-year period has ended, unless the Parties otherwise agree in writing.

18.1.2    Supplier shall enter into a contract with each Sub-tier Supplier under which the Sub-tier Supplier is obligated to maintain Tooling in accordance with terms corresponding to Section 18.1.1.

## 18.2     Buyer-Owned Tooling

18.2.1    If Buyer purchases Tooling from Supplier, title to that Tooling (Buyer-Owned Tooling) will pass to Buyer when Buyer issues a Prototype Tool Order or Production Tool Order for that Tooling and Supplier fabricates or purchases that Tooling, regardless of whether Buyer has paid Supplier for that Tooling. Buyer will not be required to pay for that Tooling until the Tooling has been completed as stated in Section 18.2.8. Upon Buyer's payment for that Tooling, Supplier grants, and shall cause its Affiliates to grant, to Buyer and its Affiliates a world-wide, non-exclusive, fully paid-up, sub-licensable license to IPR of Supplier, if any, to use that Tooling only for producing Goods or Components, as applicable, for Buyer and its Affiliates.

18.2.2    Supplier will be responsible for insuring Buyer-Owned Tooling.

18.2.3    Supplier will bear the risk of loss and damage to Buyer-Owned Tooling beyond reasonable wear and tear.

18.2.4    Supplier shall permit, and cause its Sub-tier Suppliers to permit, Buyer to enter Supplier's and its Sub-tier Supplier's premises at any time of the day with no advance notice to inspect, retrieve, or recover Buyer-Owned Tooling and related Supplier records.

18.2.5    At Buyer's written request, Supplier shall promptly release Buyer-Owned Tooling to Buyer or deliver it, including information stated in Section 18.2.7 (if not already delivered) and other material related to that Buyer-Owned Tooling, to Buyer at any location designated by Buyer, properly packed and marked in accordance with the requirements of the carrier selected by Buyer. Buyer shall reimburse Supplier the reasonable cost of so delivering Buyer-Owned Tooling.

18.2.6    When permitted by law, Supplier waives any liens, claims, encumbrances, interests, or other rights that Supplier has with respect to Buyer-Owned Tooling for work performed on that Buyer-Owned Tooling or for any other reason.

18.2.7    No later than when samples of the Goods are produced using Buyer-Owned Tooling, Supplier shall provide Buyer with

(i)    drawings, CAD-data (e.g. 3D-data-models) and other technical information in a format customary in the industry required to install, assemble, maintain, and use that Buyer-Owned Tooling,

(ii)    a complete list of that Buyer-Owned Tooling and a document identifying where it is located, and

(iii)    information on the manufacturer of such Buyer-Owned Tooling.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

18.2.8    Buyer-Owned Tooling will be deemed completed when Buyer has approved it as stated in the relevant Buyer Instruction.

18.2.9    At Buyer's written request, Supplier shall promptly provide Buyer with status reports on construction or acquisition of Buyer-Owned Tooling that identify that Buyer-Owned Tooling and state any subcontractors working on that Buyer-Owned Tooling, the percentage of completion of the Tooling, and the percentage of sunk costs already expended.

18.2.10   Buyer will not be required to accept Buyer-Owned Tooling unless it is meeting the requirements to produce and capable of meeting the Volume Projections for the Goods, including the Service Parts.

18.2.11   Supplier shall mark the Tooling as property of Buyer and as further stated in the relevant Buyer Instruction. Supplier shall not otherwise mark Buyer-Owned Tooling in a way that might confuse or mislead anyone as to who owns that Buyer-Owned Tooling.

18.2.12   Supplier shall not relocate Buyer-Owned Tooling without Buyer's written consent, except

    (i)     in case of emergency, to safeguard that Buyer-Owned Tooling, and

    (ii)    for routine maintenance, if Supplier has notified Buyer in advance.

18.2.13   Supplier shall not destroy or scrap Buyer-Owned Tooling without Buyer's prior written consent.

18.2.14   Without Buyer's prior written consent, Supplier may not use Buyer-Owned Tooling to produce goods for anyone other than Buyer and its Affiliates.

18.2.15   Supplier shall not charge Buyer more for Buyer-Owned Tooling than an amount equal to the least of

    (i)     the maximum purchase price stated in the Production Tool Order,

    (ii)    Supplier's actual costs of acquiring that Buyer-Owned Tooling from a toolmaker, excluding markup, and

    (iii)   Supplier's actual costs of fabricating that Buyer-Owned Tooling in accordance with Buyer's guidelines

    except that if in the Framework Purchase Agreement the purchase price is explicitly stated to be a fixed price, Supplier shall charge Buyer that amount for that Buyer-Owned Tooling.

    Supplier shall permit Buyer to verify the price of any Buyer-Owned Tooling.

18.2.16   This Section 18.2 shall apply with necessary conforming changes with respect to Returnable Containers and other property that is owned by Buyer and is in the possession or under the control of Supplier for use under the Purchase Agreement.

*18.3      Supplier-Owned Tooling*

18.3.1    Supplier will be responsible for all costs it incurs relating to Tooling owned by Supplier or its Sub-tier Suppliers (Supplier-Owned Tooling).

18.3.2    If the Tooling includes Tooling with an expected life of less than 12 months after the date of start of production using that Tooling, Buyer will procure the first set of that Tooling.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

18.3.3    If Buyer or any of its Affiliates

(i)    pays, or otherwise compensates, Supplier for Supplier-Owned Tooling, or

(ii)    has any IPR or Trademarks in Supplier-Owned Tooling, or

(iii)    has any IPR or Trademarks in Goods manufactured using Supplier-Owned Tooling,

Supplier shall not without Buyer's prior written consent use that Supplier-Owned Tooling to produce Goods or Components for anyone other than Buyer and its Affiliates.

18.3.4    Supplier hereby grants Buyer an option to purchase during the term of the Purchase Agreement and for 180 days thereafter some or all Supplier-Owned Tooling. If Buyer exercises this option, the purchase price will equal Supplier's actual cost for that Tooling minus the aggregate amount recovered by Supplier in the piece price of Goods. Supplier shall permit Buyer to verify Supplier costs and recovered amounts. If Buyer exercises the option under this Section 18.3.4, that Tooling shall become Buyer-Owned Tooling and Section 18.2 shall apply. The option under this Section 18.3.4 does not include SupplierOwned Tooling that Supplier uses, at the date when Buyer exercises its option, for the manufacture or quality control of goods for supply to other than Buyer and its Affiliates.

## 19    SERVICE PARTS AND COMPONENTS

19.1    During serial production of a Buyer product in which Goods are incorporated and for 15 years thereafter, Supplier shall supply Buyer and its Affiliates with whatever quantities of Service Parts and Components they order. Supplier shall enter into a contract with each Sub-tier Supplier under which that Sub-tier Supplier is obligated to supply Buyer and its Affiliates with Service Parts and Components in accordance with term(s) that corresponds to this Section 19.1, with any necessary conforming changes.

19.2    During serial production of Buyer products in which the Goods are incorporated, Supplier shall charge Buyer and its Affiliates for Service Parts no more than what Buyer, at the time of the relevant Call-Off, pays for such Goods for use in the relevant serial production.

19.3    For three years, or such period as the Parties have agreed in writing, after the end of serial production of Buyer products in which Goods are incorporated, Supplier shall charge Buyer

and its Affiliates for Service Parts no more than what Buyer paid for such Goods at the end of the relevant serial production. Buyer and Supplier shall negotiate in good faith the price to be paid by Buyer for Service Parts after that period. If the Parties are not able to reach an agreement, the price of Service Parts will equal the price of Goods at the end of said serial production.

19.4    Sections 19.2 and 19.3 shall apply to Components, with necessary conforming changes.

## 20    FINANCIAL AND OTHER INFORMATION

### 20.1    Financial information

20.1.1    At Buyer's written request, Supplier shall provide Buyer promptly after they become available an annual report, including balance sheet, profit and loss statement, and cash

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

flow report, and a Supplier group consolidated annual report. At Buyer's written request, Supplier shall provide Buyer corresponding documentation on its Sub-tier Suppliers.

20.1.2    At Buyer's written request, Supplier shall promptly provide Buyer with any additional financial and other business information related to Supplier and its Affiliates that Buyer reasonably requires to evaluate Supplier's performance under the Purchase Agreement.

20.1.3    If Supplier enters into composition proceedings, is declared bankrupt, goes into liquidation or for any other reason can be assumed to have become insolvent, Supplier shall promptly notify Buyer. Supplier shall promptly notify Buyer of any other event that might have a material adverse effect on Supplier's financial status or on Supplier's performance of its obligations under the Purchase Agreement.

20.1.4    If Supplier breaches any of its obligations under this Section 20.1, Supplier shall permit Buyer to perform, at Supplier's expense, an audit of Supplier in accordance with Section 22 to evaluate Supplier's financial performance.

20.2    *Technical and other information*

20.2.1    Supplier shall promptly notify Buyer via e-mail directed to PCO@volvocars.com if it has provided information to an Authority regarding the Goods, including information on potential or actual Non-Conforming Goods. Supplier shall include in that e-mail

(i)     the date it notified that Authority,

(ii)    which Authority has been notified,

(iii)   what Goods were involved, and

(iv)    the report type.

The obligation shall also apply with respect to goods of a comparable or derivative nature to the Goods.

20.2.2    Supplier shall promptly notify Buyer via e-mail directed to PCO@volvocars.com if Supplier has reason to believe it has information on potential or actual Non-Conforming Goods, even if Supplier has not provided that information to an Authority. Supplier shall include in that e-mail what Goods were involved.

20.2.3    At Buyer's written request, Supplier shall within ten business days provide Buyer and its Affiliates with access to and copies of any data, materials, or information provided to an Authority relating to the Goods, or any materials or substances used in the Goods or in connection with their production, including any test, manufacturing, field performance, or warranty data.


## 21    RESPONSIBLE BUSINESS

21.1    *Applicable laws and Code of Conduct*

21.1.1    Each Party shall comply with all applicable laws when performing their obligations under the Purchase Agreement. Without limiting the generality of the foregoing, Supplier shall, and shall cause its Sub-tier Suppliers to, at all times comply with all applicable laws, regulations and statutory requirements including but not limited to those relating to labor

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

and employment, the environment, competition, data privacy, anti-corruption and bribery and export control and trade sanctions. Additionally, Supplier shall, at its own expense, obtain and maintain all certifications, authorizations, licenses and permits necessary for it to perform its obligations under the Purchase Agreement.

21.1.2   Supplier shall comply with the Code of Conduct or similar principles. Supplier shall ensure that the Code of Conduct or similar principles are communicated and complied with by its employees, subcontractors and Sub-tier Suppliers.

*21.2     Environment, substance and materials reporting and compliance*

21.2.1   Supplier acknowledges that it is important to Buyer group that manufacture and sale of Buyer products be as efficient and sustainable as possible in terms of its impact on the environment. Supplier shall comply with the requirements stated in the relevant Buyer Instruction.

21.2.2   Supplier shall send Buyer copies of any information that relates to the Goods, their composition, and any hazardous materials used in making the Goods or that Buyer reasonably needs to comply with environmental laws, or is needed, to enable compliance with any requirement of an Authority (either mandated or voluntarily agreed upon by Buyer or any of its Affiliates) relating to the hazardous, toxic or other content or nature of the Goods, or the ability to recycle the Goods or materials in the Goods.

21.2.3   Supplier shall comply with Buyer's requirements relating to use (or prohibition on use) of certain materials and substances in the Goods and utilize and comply with Buyer's reporting processes and requirements relating to any data, materials or other information described in Section 21.2.1, as well as sustainability data, as stated in the relevant Buyer Instruction.

*21.3     Export control, trade sanctions and customs rules*

21.3.1   Supplier shall obtain and maintain any export license(s) required to sell Goods to Buyer.

21.3.2   Supplier shall provide Buyer with all other information and documentation necessary or useful for Buyer to comply with laws relating to import, export or re-export of Goods. Before the Parties agree on the final Technical Specification, Supplier shall provide Buyer

with the following information, under EU and/or US laws and regulations or those of other relevant jurisdictions:

(i)      the relevant export control classification numbers (also known as ECCN or dual-use numbers) of the Goods, (ii)        the origin of the Goods,

(iii)    the percentage, by value, of the content of the Goods that is of US origin, and the export control classification numbers of any such US-origin content,

(iv)    a description of any trade sanctions that apply to the Goods and/or Supplier selling Goods to Buyer,

(v)     the applicable customs classification codes, and

(vi)    at the request of Buyer

(a)     Supplier's declaration for preferential origin in the form required by Buyer, and

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(b)    a copy of the export license (individual or global), or a description of any general license, license exception, exemption, or lack of a licensing requirement (such as "No License Required" or "NLR")) on which Supplier is relying to lawfully export the Goods to Buyer.

21.3.3    In the event of any changes in any Goods, in the law, in any export licenses, or in Supplier's approach to international trade compliance, and as necessary to ensure continued compliance with applicable laws and regulations, Supplier shall update any information it provides to Buyer in accordance with Section 21.3.2.

21.3.4    Supplier represents and warrants that Supplier

(i)    is not, has not been and will not be a Listed Person, and

(ii)    shall not, in the course of performing under the Purchase Agreement

(a)    conduct any business activity, directly or indirectly, with any Listed Person, including by supplying to Buyer items sourced from a Listed Person,

(b)    conduct any business activity prohibited or restricted under trade sanctions or export control laws applicable to Buyer, or

(c)    engage in any transaction that evades or attempts to violate restrictions under any trade sanctions or export control laws applicable to Buyer.

*21.4*    *Protection of Personal Data*

21.4.1    The Parties shall conduct any processing of Personal Data in compliance with applicable national, federal, state, and international laws and regulations relating to such Personal Data now or hereafter in effect. The Parties acknowledge that the intention is that neither Party will process Personal Data on behalf of the other Party under or in connection with the Purchase Agreement.

21.4.2    Notwithstanding Section 21.4.1, if either Party anticipates that a Party will process Personal Data on behalf of the other Party under or in connection with the Purchase Agreement, that Party shall promptly notify the other Party of that fact. To the extent necessary, the

Parties to that Purchase Agreement shall then negotiate in good faith amending or supplementing the Purchase Agreement so as to permit that the processing of Personal Data is performed in a way that complies with applicable laws, and neither Party shall process Personal Data on behalf of the other until the Purchase Agreement has been so amended or supplemented.

*21.5*    *Anti-corruption*

21.5.1    Supplier represents and warrants that Supplier and its directors and officers:

(i)    have conducted and will conduct their operations and transactions, in particular those related to the Purchase Agreement, in compliance with all applicable laws, regulations and rules relating to anti-money laundering, anti-bribery and anticorruption, including the United States Foreign Corrupt Practices Act, the United Kingdom Bribery Act 2010, and all other applicable laws prohibiting bribing government officials and private persons (the "Criminal Laws"), and

(ii)    are not, have not been within a five year period prior to the date of the Framework Purchase Agreement and will not be condemned or sentenced by any judicial or administrative authority for any corrupt or illegal practice under the Criminal Laws.

21.5.2    Supplier represents and warrants that Supplier and its Affiliates have implemented policies and procedures aiming at preventing corruption and bribery, including effective sanctions against any activity of its directors, officers and employees that might be considered a corrupt or illegal practice under the Criminal Laws.

*21.6    Consequences of non-compliance*

21.6.1    Supplier shall promptly notify Buyer any breach of the terms of this Section 21. Failure by Supplier and its directors, officers and employees to comply with the terms of Section 21 shall always be deemed to constitute a material breach of the Purchase Agreement and

(i)    result in Supplier having to take necessary remedies and indemnify Buyer, its Affiliates, and their directors, officers, and employees from any and all Losses resulting from or arising out of or relating to such failure to comply with obligations under this Section 21, and

(ii)    give Buyer a right to terminate, in whole or in part, the Purchase Agreement pursuant to Section 24.1.1.

## 22    AUDIT RIGHTS

22.1    Supplier shall permit, and shall cause its Sub-tier Suppliers to permit, one or more of Buyer and its designated representatives to conduct an audit of, and inspect the premises of, Supplier and its Affiliates and Sub-tier Suppliers, on at least five days' notice to determine whether Supplier has complied with its obligations under the Purchase Agreement. If Buyer reasonably believes that advance notice will interfere with Buyer verifying whether Supplier has complied with its obligations under the Purchase Agreement, Supplier will permit an audit without prior notice. Buyer will be responsible for the cost of each such audit, unless the audit shows that Supplier has breached one or more obligations under the Purchase Agreement, in which cases Supplier will be responsible for the cost of any such audit.

22.2    Supplier shall cooperate with, and shall cause its Affiliates and Sub-tier Suppliers to cooperate with, Buyer and its designated representatives in conduct of an audit under this Section 22 and shall provide, and shall cause its Affiliates and Sub-tier Suppliers to provide, Buyer with access to all premises, information and personnel that Buyer reasonably requests to have access to. Supplier may withhold information only if Supplier demonstrates that disclosing that information would be unlawful, would violate stock exchange regulations, or would breach a confidentiality obligation contained in a contract between Supplier and anyone other than one of its Affiliates or a Sub-tier Supplier.

22.3    During the term of the Purchase Agreement and two years thereafter or as long as required by law, whichever is longer, Supplier shall maintain, and shall cause its Affiliates and Subtier Suppliers to maintain, in accordance with best practices in the industry, sufficient records to allow Buyer to determine whether Supplier has complied with its obligations under the Purchase Agreement.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**23    ADVERTISING, PUBLICITY AND NEWS RELEASES**

23.1    Supplier shall not disseminate publicly advertising or promotional materials mentioning Buyer, its Affiliates, Trademarks of Buyer or its Affiliates or Goods without Buyer's prior written consent in accordance with the relevant Buyer Instruction.

23.2    Supplier shall not disseminate publicly news releases and other forms of publicity mentioning Buyer, its Affiliates, Trademarks of Buyer or its Affiliates or Goods without Buyer's prior written consent in accordance with the relevant Buyer Instruction.

**24    TERMINATION**

*24.1    Termination for cause by Buyer*

24.1.1    Buyer may terminate a Purchase Agreement in accordance with Sections 7.1.2, 13.7, 15.1.3, 15.2.3, 21.6.1 and 26.4.

24.1.2    Buyer may terminate the Purchase Agreement, in whole or in part, upon Written Notice to Supplier:

(i)    if Supplier fails to comply with any requirement(s) of the Purchase Agreement. If the noncompliance relates to an obligation of Supplier that is, in the opinion of Buyer, capable of cure as stated in Section 24.1.3, Buyer may terminate under this Section 24.1.2 only if Supplier has failed to timely cure the noncompliance (as described in Section 24.1.3),

(ii)    if Control of Supplier, or Supplier's ultimate parent company, changes. For purpose of this Section 24.1.2 a change of Control includes

(a)    the sale or lease of Supplier's assets used for the production of the Goods, provided that such sale or lease is not made solely for the purpose of restructuring Supplier's financial arrangements, or

(b)    exchange of a substantial portion of Supplier's assets used for the production of the Goods, provided that such exchange is not made solely for the purpose to maintaining or increasing Supplier's manufacturing, technical or quality capabilities.

Supplier will provide Buyer with Written Notice of a change of Control within ten days after the change of Control has become effective. Buyer will have 60 days from the date of Supplier's Written Notice within which to notify Supplier of its decision to terminate the Purchase Agreement and the effective date of the termination, which will be no sooner than 30 days from the date of Buyer's notice, or

(iii)    if Supplier

(a)    becomes insolvent,

(b)    files a voluntary petition in bankruptcy,

(c)    has an involuntary petition in bankruptcy filed against it,

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

       (d)     has a receiver, administrator, custodian or trustee appointed over Supplier or its assets, or

       (e)     executes an assignment for the benefit of its creditors.

In each case, Supplier is liable for all actual costs incurred by Buyer, including those for attorneys, experts, consultants and other professionals.

24.1.3    For all failures by Supplier to comply with the requirements of the Purchase Agreement, Buyer may, at its sole discretion, require Supplier to within ten days (or less if commercially reasonable under the circumstances) after Buyer's notice in writing to Supplier specifying the failure to cure the nonperformance.

24.1.4    A termination as stated in this Section 24.1 is effective on a date stated by Buyer in the Written Notice that is not later than 15 months after the date of that notice, unless otherwise agreed by the Parties.

24.1.5    No termination of the Purchase Agreement will relieve Supplier of any breach of, or any other liability accrued under, the Purchase Agreement.

*24.2*    *Termination for cause by Supplier*

24.2.1    Supplier may, subject to Section 27.6, terminate the Purchase Agreement, in whole or in part, upon Written Notice to Buyer:

       (i)     in accordance with Section 26.4,

       (ii)    if Buyer materially breaches

          (a)     Section 28.7,

          (b)     Section 13.3 and that breach causes a significant financial impact on Supplier,

          (c)     Section 12.1 with respect to Confidential Information of significant importance to Supplier, or

       (iii)   if Buyer

          (a)     becomes insolvent,

          (b)     files a voluntary petition in bankruptcy,

          (c)     has an involuntary petition in bankruptcy filed against it,

          (d)     has a receiver, administrator, custodian or trustee appointed over Buyer or its assets, or

          (e)     executes an assignment for the benefit of its creditors.

In each case, Buyer is liable for all actual costs incurred by Supplier, including those for attorneys, experts, consultants and other professionals.

24.2.2    Notwithstanding Section 24.2.1, Buyer shall have 90 days, after receipt of Written Notice from Supplier in accordance with Section 24.2.1, in which to cure the basis for such notice, and the Purchase Agreement shall not terminate if Buyer cures such basis within said cure period.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

*24.3    Termination without cause*

24.3.1    A Party may terminate a Purchase Agreement, in whole or in part, at any time and for any reason, based on a Blanket Purchase Order upon 15 months Written Notice to the other Party, provided that, if the Purchase Agreement is terminated by Supplier, a condition for such termination is that Supplier gives such Written Notice sufficiently in advance, which may be more than 15 months, to enable Buyer to secure an alternative and acceptable supplier of goods equivalent to the Goods to prevent suspension of Buyer's serial production.

24.3.2    Buyer may terminate a Purchase Agreement, in whole or in part, at any time and for any reason, based on Lump-Sum Purchase Order, upon Written Notice to Supplier. Except as stated in Section 24.2, Supplier may not terminate a Purchase Agreement, in whole or in part, based on a Lump-Sum Purchase Order.

24.3.3    Notwithstanding Section 24.3.1, Buyer may terminate a Purchase Agreement, in whole or in part, at any time and for any or no reason, based on a Blanket Purchase Order upon notice in writing to Supplier, subject to Section 24.3.5.

24.3.4    A termination as stated in Section 24.3.1, 24.3.2 or 24.3.3

   (i)    will not result in the termination of any Framework Purchase Agreement, unless otherwise stated by Buyer in the notice of termination, and

   (ii)    will be effective as of the date stated in the notice, provided that the effective date of termination pursuant Section 24.3.1 shall not be earlier than 15 months from the date of the notice.

24.3.5    If Buyer terminates a Purchase Agreement as stated in Section 24.3.2 or 24.3.3, Buyer will pay Supplier, subject to Section 13.5, as a sole remedy for such termination:

   (i)    for unpaid Goods previously delivered that conform to the requirements of the Purchase Agreement,

   (ii)    any outstanding balance that Buyer owes Supplier for Tooling subject to a Purchase Agreement and that conforms to the requirements of that Purchase Agreement,

   (iii)    for undelivered finished Goods that

      (a)    conform to the requirements of the Purchase Agreement, and

      (b)    were produced in accordance with delivery or Call-Off schedules approved by Buyer and outstanding as of the date the termination was effective,

   provided that such Goods are delivered to Buyer in accordance with the Purchase Agreement,

   (iv)    actual costs that Supplier incurred before the date of the termination for work-inprocess and raw materials that

      (a)    are not damaged or destroyed,

      (b)    were not purchased by a third party with Buyer's prior approval in writing,

      (c)    cannot be used by Supplier to produce goods for itself or other customers, and

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

(d)    are transferred to Buyer in accordance with Section 24.5.1,

provided, however, that this item (iv) is limited to costs for work-in-process and raw materials that Supplier acquired to complete quantities of Goods in accordance with delivery or Call-Off schedules approved by Buyer and outstanding as of the date the termination was effective,

(v)    actual costs incurred by Supplier in protecting Buyer's property pending delivery or return to Buyer, and

(vi)    other costs stated in the relevant Buyer Instruction.

24.4    *Survival*

24.4.1    Without limitation of the survivability of any terms hereunder which by their nature would reasonably be construed as surviving any expiration or termination of the Purchase Agreement, Sections 1, 3.3-3.5, 10, 12, 14, 15, 18, 19, 20.2, 21.2, 24.5, 25, 27, 28.2, 28.4-28.5 and 28.7-28.9 will survive the expiration or termination of the Purchase Agreement.

24.5    *Consequences of termination or expiration*

24.5.1    Upon, or in preparation for, the expiration or termination of the Purchase Agreement, Supplier shall do the following:

(i)    take all actions necessary to protect any of Buyer's property in the possession of Supplier or its suppliers and Sub-tier Suppliers,

(ii)    cooperate with Buyer to avoid disrupting production and to optimize outstanding deliveries of any Goods ordered under a Purchase Agreement based on a Blanket Purchase Order,

(iii)    upon request from Buyer, transfer title and possession of the Goods, Tooling owned by Supplier, work-in-process and raw materials that Buyer has agreed to acquire from Supplier and return Tooling and other property of Buyer,

(iv)    terminate all orders and subcontracts related to work to be performed after the effective date of any expiration or termination, and

(v)    subject to Section 24.4, cease all work under the Purchase Agreement after the effective date of any expiration or termination unless Buyer instructs Supplier to do, or the Parties have agreed, otherwise.

## 25    SUPPLIER CLAIMS

25.1    To bring against Buyer a claim arising out of the Purchase Agreement, including a claim arising out of amendments, modifications, deviations or changes as stated in Section 7, Supplier must provide Buyer with Written Notice of that claim no later than 30 days after Supplier becomes aware of the basis for that claim or 60 days after the date of the occurrence giving rise to the relevant claim, whichever is earlier and include in that notice sufficient supporting information to permit Buyer to assess that claim. Without limiting the foresaid, any and all claims by Supplier against Buyer, arising out of or in connection with the Purchase Agreement, must be notified by Supplier for dispute resolution not later than 12 months following the date on which such claim was received by Buyer. The failure to

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

notify within the time(s) stated in the preceding sentences will constitute a waiver by Supplier of such claim.

25.2    Buyer will be liable for direct costs incurred by Supplier only as stated in the relevant Buyer Instruction.

25.3    Unless prohibited by law or the Purchase Agreement, Buyer has no liability to Supplier or any of its Affiliates for any indirect or consequential losses, loss of production, loss of product, loss of use, and loss of revenue, profit, or anticipated profit, whether or not the losses were foreseeable at the time of entering into the Purchase Agreement, and whether or not incurred directly or indirectly by Supplier, any of its Affiliates, or their Sub-tier Suppliers or suppliers.

## 26    FORCE MAJEURE

26.1    A Party shall not be considered in breach of the Purchase Agreement to the extent that such Party's performance of its obligations under the Purchase Agreement is prevented by an event of Force Majeure that arises after conclusion of the Purchase Agreement and which could reasonably not have been foreseen or prevented.

26.2    The Party claiming Force Majeure shall promptly inform the other Party in writing and shall furnish within ten days thereafter evidence of the occurrence and expected duration of such event of Force Majeure.

26.3    In the event of Force Majeure, the Parties shall immediately consult with each other in order to find an equitable solution and shall use all reasonable efforts to minimize the consequences of such event of Force Majeure. Further, Buyer shall be entitled

   (i)    to acquire the Goods covered by the Purchase Agreement from other sources for the duration of Supplier's inability to perform due to the event of Force Majeure, and

   (ii)   to reduce without any obligation to Supplier, the quantity of the Goods stated in the relevant Purchase Order and/or Call-Off.

26.4    If the consequences of the Force Majeure event continue for a period of 30 days without a solution acceptable to both Parties, the Party that is not subject to Force Majeure shall be entitled to immediately terminate the relevant Purchase Agreement, without incurring any liability to the other Party as a result.

## 27    GOVERNING LAW AND DISPUTES

27.1    The Purchase Agreement (including the General Purchase Agreement Documents) shall be governed by and construed in accordance with the laws as stated in Section 27.2, without regard to any rules on conflict of laws. The terms stated in the United Nations Convention for the International Sale of Goods (CISG) do not apply to any Purchase Agreement.

27.2    Any disputes arising out of or relating to the Purchase Agreement shall be finally settled as follows:

   (i)    If Buyer's principal place of business is Sweden (or any other country than as stated in this Section 27.2, or, with respect to item (v) Supplier's place of registration is outside

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

China, or, with respect to item (vi) Supplier's place of registration is outside India), then the Purchase Agreement shall be governed by the substantive laws of Sweden. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Gothenburg, Sweden. The language to be used shall be English.

(ii)    If Buyer's principal place of business is Belgium, then the Purchase Agreement shall be governed by the substantive laws of Belgium. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Arbitration Institute of the Stockholm Chamber of Commerce. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Gent, Belgium. The language to be used shall be English.

(iii)   If Buyer's principal place of business is Malaysia, then the Purchase Agreement shall be governed by the substantive laws of Malaysia. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the Singapore International Arbitration Centre. The arbitral tribunal shall be composed of three arbitrators. The seat of arbitration shall be Singapore. The language to be used shall be English.

(iv)    If Buyer's principal place of business is United States of America, then South Carolina law, without regard to the conflict of law principles, governs all matters arising out of the Purchase Agreement. The Parties will bring any proceeding arising out of the Purchase Agreement only in the appropriate state or federal court of jurisdiction in Berkeley County, South Carolina. Each Party submits to the exclusive jurisdiction of those courts and waives any claim that the venue of that proceeding is improper. The Parties waive any right to jury trial.

(v)     If both Buyer's and Supplier's principal place of business is China, then the Purchase Agreement shall be governed by the substantive laws of China. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of the China International Economic and Trade Arbitration Commission (CIETAC), with the following additions:

(a)    the arbitral tribunal shall be composed of three arbitrators,

(b)    no arbitrator needs to be a member of the Panel of Arbitrators issued by CIETAC,

(c)    the arbitral tribunal shall adopt an adversarial approach when examining the case, and

(d)    the Summary Procedure for claims not exceeding RMB 500,000 stated in Chapter IV of the CIETAC Arbitration Rules shall not apply.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

The seat of arbitration shall be Shanghai, China. The language to be used shall be English.

(vi)     If both Buyer's and Supplier's principal place of business is India, then the Purchase Agreement shall be governed by the substantive laws of India. Any dispute, controversy or claim arising out of or in connection with the Purchase Agreement, or the breach, termination or invalidity thereof, shall be finally settled by arbitration in accordance with the Arbitration Rules of Singapore International Arbitration Centre. The arbitral tribunal shall be composed by three arbitrators. The seat of arbitration shall be Bangalore, India. The Parties agree that the courts at Bangalore shall continue to have the exclusive jurisdiction to entertain any proceedings under sections 9, 27 and clause (c) of subsection (1) and subsection (3) of section 37 of the Arbitration and Conciliation Act 1996 as amended from time to time. The language to be used shall be English.

27.3     The Parties shall keep confidential any arbitral proceedings conducted in accordance with Section 27.2, all information disclosed in any such proceedings, and all documents submitted or issued by or on behalf of any of the disputing parties or the arbitrators in any such proceedings, as well as all decisions and awards made or declared in the course of any such proceedings, unless the Party to which any such information relates or, in the case of a decision or award, the other disputing parties give their prior written consent. The Parties shall not use any such information for any purpose other than conduct of any such proceedings and enforcement of any decision or award.

27.4     Notwithstanding Section 27.1 and 27.2, if anyone brings a claim against Buyer or any of its Affiliates for death, personal injury, or property damage resulting from a defect in the

Goods or because of an infringement of IPR or Trademark, or misappropriation of third party confidential information, Buyer may, at its sole discretion, conduct the court procedures necessary to enforce the indemnification against Supplier in accordance with these terms. In such case, the laws of the forum state shall govern exclusively the rights and obligations of Buyer and Supplier, however only with respect to that specific dispute.

27.5     Nothing in this Section 27 prevents a Party from applying to a court for any other remedies that are available by law, including specific injunction and interim relief.

27.6     Irrespective of any discussions or disputes between the Parties, Supplier shall always continue to fulfil its undertakings under the Purchase Agreement unless

(i)     Buyer has given a notice in writing that Supplier shall discontinue its fulfilments, or

(ii)     a court or an arbitral tribunal (in accordance with this Section 27) decides otherwise.

## 28     MISCELLANOUS

*28.1     EDI*

28.1.1     The Parties have agreed to apply EDI with respect to certain communication. Such EDI shall comply with and Supplier accepts the terms of that EDI agreement as stated in the relevant Buyer Instruction.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

*28.2    No waiver*

28.2.1    No failure or delay by either Party in exercising any right or remedy provided under the Purchase Agreement or by law will constitute a waiver of that or any other right or remedy, nor will any single or partial exercise of any right or remedy preclude any other or further exercise of it or the exercise of any other right or remedy. Any amount paid by Buyer for the Goods will not be deemed to be a waiver of any breach by Supplier or any amount otherwise due to Buyer under the Purchase Agreement.

*28.3    Written Notices*

28.3.1    A Written Notice as stated in the Contract Documents must be in legible writing in the English language delivered by personal delivery, email transmission or prepaid overnight courier using an internationally recognized courier service and shall be effective upon receipt, which shall be deemed to have occurred:

    (i)    at the time and on the date of personal delivery,

    (ii)    if sent by email, at the time and on the date indicated on a confirmation of receipt relating to such email,

    (iii)    at the time and on the date of delivery if delivered by courier as confirmed in the records of such courier service, or

    (iv)    at such time and date as delivery by personal delivery or courier is refused by the addressee upon presentation,

in each case provided that such receipt occurred on a business day at the location of receipt. A notice sent by email will be deemed to have been duly given, only if the recipient has confirmed receipt of such email within three business days calculated from the time of sending such e-mail and in such case the notice will be deemed to have occurred at the time of sending the receipt. An automatic email reply shall not be construed as a confirmation hereunder.

28.3.2    All such notices shall be addressed as stated in the Framework Purchase Agreement.

*28.4    Damages in addition to liquidated damages*

28.4.1    Buyer will be entitled to damages in addition to any liquidated damages that Supplier is required to pay under the Purchase Agreement, if the Losses that occur exceed the amount of those liquidated damages.

*28.5    Entire agreement*

28.5.1    The Purchase Agreement, including the terms of the documents expressly referred to herein (which are hereby incorporated by reference), constitutes the entire agreement among the Parties with respect to the subject matter of the Purchase Agreement and, except as expressly contemplated herein, supersedes all prior agreements, commitments, understandings and negotiations, both written and oral, among the Parties with respect to the subject matter of the Purchase Agreement.

*28.6    Relationship of the Parties*

28.6.1    Supplier, in providing Goods to Buyer under the Purchase Agreement, is acting as an independent contractor. Supplier is not an agent of Buyer or any of its Affiliates and has no

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

authority to represent them as to any matters, except as expressly permitted in the Purchase Agreement. The Purchase Agreement does not constitute a partnership or joint venture.

*28.7    Assignment*

28.7.1    The Parties shall not assign the whole or any part of the Purchase Agreement or any benefit or interest under the Purchase Agreement, without first obtaining the other Party's consent thereto in writing. Notwithstanding the aforesaid, Buyer may, without Supplier's consent, assign the Purchase Agreement to any of its Affiliates.

*28.8    Severability*

28.8.1    If any term of the Purchase Agreement, or part thereof, is found to be invalid or unenforceable, the remainder of the terms of the Purchase Agreement shall remain in full force and effect and shall be enforceable. Supplier and Buyer shall use their commercially reasonable efforts to replace the invalid or unenforceable term by a valid and enforceable one reflecting as closely as possible the original intention of Supplier and Buyer.

*28.9    Interpretation*

28.9.1    Any additional words or phrases other than those stated in Section 1.1 that are defined in other Sections of these terms will have the meaning stated in that other Section.

28.9.2    Words or phrases defined in these terms will have the same meaning in all documents that form part of the Purchase Agreement. Words or phrases defined in any other document

being part of the Purchase Agreement will have the meaning stated in that document only if that definition does not constitute an amendment or waiver of any term under these terms.

28.9.3    The headings and captions are provided for convenience only and do not create or affect any substantive rights.

28.9.4    Examples are provided for illustrative purposes only.

28.9.5    No term will be construed against Buyer as the drafting party.

28.9.6    The term "including" means including without limitation. The term "days" means calendar days. The term "document" means a document in printed or electronic form. Words in the singular shall include the plural and vice versa.

28.9.7    The English version of any of the General Purchase Agreement Documents will control if the Parties disagree over any translation. For the avoidance of doubt, if one or more, but not all, General Purchase Agreement Documents are translated, this shall not be construed (nor imply) that non-translated documents are not applicable.

**APPENDIX 1**

Groups of Affiliates

**Geely Auto Group** means Geely Automobile Holdings Limited incorporated in the Cayman Islands (with shares listed on the Hong Kong Stock Exchange), and any company, entity or organization which Geely Automobile Holdings Limited Controls.

**Lynk & Co Group** means Lynk & Co Investment Co., Ltd and any company, entity or organization which Lynk & Co Investment Co., Ltd. Controls

**Polestar Group** means Polestar Holding AB, having its principal seat in Gothenburg, Sweden with organization number 556786-7840. and any company, entity or organization which Polestar Holding AB. Controls.

**Volvo Car Group** means the Swedish limited liability company Volvo Car AB, Swedish company reg. no. 556810-8988, and any company, entity or organization which Volvo Car AB Controls.

**Zhejiang Geely Group** means Zhejiang Geely Holding Group Co. Limited, a company incorporated under the laws of China, and any company, entity or organization which Zhejiang Geely Holding Group Co. Limited Controls, however, excluding the Geely Auto Group, the Lynk & Co Group, the Polestar Group and the Volvo Car Group.

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**APPENDIX 2**

This Appendix 2 is divided into sub-appendixes 2:1-5. Each sub-Appendix 1 applies as stated below.

**Sub-Appendix 2:1**

The following instructions apply to Purchase Agreements where Buyer is part of the Geely Auto Group:

Instructions will be provided if applicable

**Sub-Appendix 2:2**

The following instructions apply to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Instructions will be provided if applicable

**Sub-Appendix 2:3**

The following instructions apply to Purchase Agreements where Buyer is part of the Polestar Group:

Instructions will be provided if applicable

**Sub-Appendix 2:4**

The following instructions, published on Supplier Portal stated in Sub-Appendix 4:4, apply to Purchase Agreements where Buyer is part of the Volvo Car Group:

| | |
|---|---|
| Claims Instruction | Global |
| Global Customs & Export Control Instruction | Global |
| Global Standard Payment Instruction | Global |
| Instruction for Obsolete Claims Caused by Termination at Buyers Option | Global |
| Instruction for Overtime Claims Requested by Buyers Option | Global |
| Logistics Instruction | Global |
| Packaging Requirements Instruction | Global |
| Packaging Rental Pricelist | Global |
| Packaging Replacement Pricelist | Global |
| Schedule A Special Packaging Requirements | Global |
| Schedule B Expendable Packaging Portfolio | Global |
| Schedule C Packaging Portfolio APAC | Asia |

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

| | |
|---|---|
| Schedule D Packaging Portfolio EMEA | Europe |
| Schedule E Packaging Portfolio Americas | Americas |
| Service Parts Logistics Instruction | Global |
| Service Parts Packaging Requirements | Global |
| Software Bill of Material Instruction | Global |
| Supplement to Volvo Cars Instructions for Logistics – Volvo Cars Charleston | Charleston |
| Supplier Advertising and Reference Instruction | Global |
| Supplier Manufacturing Instruction | Global |
| Tax Instruction | Global |
| Tooling Procurement and Audit Instruction | Global |
| Volvo Cars Global Procurement Sustainability Instruction | Global |
| Warranty and Cost Recovery Instruction | Global |
| Warranty Instruction | Global |

#### Sub-Appendix 2:5:

The following instructions apply to Purchase Agreements where Buyer is part of the Zheijiang Geely Group:

Instructions will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## APPENDIX 3

This Appendix 3 is divided into sub-appendixes C:1-5. Each sub-Appendix 1pplies as stated below.

### Sub-Appendix 3:1:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Geely Auto Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:2:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:3:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Polestar Group:

Code of Conduct will be provided if applicable

### Sub-Appendix 3:4:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Volvo Car Group: The code of conduct for business partners adopted by Volvo Car AB and in effect at any given time and made available at https://group.volvocars.com/sustainability or successor sites.

### Sub-Appendix 3:5:

The following code of conduct applies to Purchase Agreements where Buyer is part of the Zhejiang Geely Group:

Code of Conduct will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**APPENDIX 4**

This Appendix 4 is divided into sub-appendixes D:1-5. Each sub-Appendix 1pplies as stated below.

**Sub-Appendix 4:1:**

The following website apply to Purchase Agreements where Buyer is part of the Geely Auto Group:

Link will be provided if applicable

**Sub-Appendix 4:2:**

The following website apply to Purchase Agreements where Buyer is part of the Lynk & Co Group:

Link will be provided if applicable

**Sub-Appendix 4:3:**

The following website apply to Purchase Agreements where Buyer is part of the Polestar Group:

Link will be provided if applicable

**Sub-Appendix 4:4:**

The following website apply to Purchase Agreements where Buyer is part of the Volvo Car Group:
Supplier Portal - Global Terms and Conditions

**Sub-Appendix 4:5:**

The following website apply to Purchase Agreements where Buyer is part of the Zhejiang Geely Group:

Link will be provided if applicable

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #4

**Jeremy E. Bowers**

| | |
|---|---|
| **From:** | Wood, David <DWood02@lear.com> |
| **Sent:** | Monday, May 5, 2025 5:15 PM |
| **To:** | daniel.harvey@volvocars.com; Mccaslin, Joshua; Curtis, Alana; Fowler, Doris; Harlin, Fredrik (FH; Vostry, Michal; Kaindl, Martina; Jones, Mark |
| **Cc:** | Alban, Matt; Staples, Corey; Baird, Paul; Puckett, Mike; Nelson, Shaun |
| **Subject:** | Release Rejection due to lack of tariff authorization. |

Daniel

We have received your release on 5/5/2025 . In the absence of tariff authorization by Volvo, Lear rejects all new releases issued by Volvo Charleston including your recent release.

Please keep in mind that Volvo Charleston and Lear Duncan are on release-by-release contract and by rejection of release by Lear, there is no contract in place between the parties. Lear will not be responsible for any costs due to an impact at Volvo Charleston.

Lear reserves all of its rights in this matter.


**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan |
| | 1200 Woods Chapel Road |
| | Duncan, SC 29334 |

 **LEAR**

Legal Disclaimer

This e-mail message and any attachments may contain legally privileged, confidential or proprietary information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**Lear Corporation**

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #5

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**V O L V O**

May 13, 2025

J. Calhoun Watson
Robinson Gray
2151 Pickens Street, Suite 500
P.O. Box 11449
Columbia, SC 29211
cwatson@robinsongray.com

Re: Purchase Agreement for SPA2 Seat Programs ("Agreement")

Dear Cal:

This letter is in response to your May 9, 2025 letter.

In your letter, you state that Lear has no obligation to accept, and can reject, Volvo Cars' call-offs, and that there is "no enforceable contract between the parties as to quantities contained in future call-offs." However, this statement is erroneous. A binding agreement between the parties was formed when Volvo Cars issued a blanket purchase order and call-offs under it, which Lear accepted by accepting the first call-off. Pursuant to the Agreement, Lear is required to comply with and supply parts as ordered in call-offs, unless a call-off fails to conform to the Agreement. See Section 5.1 of the Production Material Global Terms and Conditions. This has been our practice from the beginning of our business relationship and is also the prevailing industry practice. Lear's threats to reject call-offs are not in good faith and are in breach of the Agreement and our prior established practices.

In the same letter, you indicate Lear is willing to resume supply if the parties "resolve[s] the commercial claims related to the volume drops in the SPA2 Programs." This position is inherently contradictory. On the one hand, you argue for a call-off-by-call-off arrangement, yet on the other, you request a resolution for a compensation claim that is based on overall volume expectations and long-term investment. These positions are fundamentally incompatible. If Lear insists there is no blanket supply obligation, then it cannot simultaneously assert a claim based on failed volume expectations. Please let us know if Lear intends to formally waive any and all volume-related claims.

From our side, we reiterate our position that there is a valid and enforceable agreement between the parties and remind Lear of its obligation to timely deliver parts as specified in the call-offs under the Agreement. We must emphasize, from prior conversations and correspondence with Lear, that timely and conforming delivery is critical to ensure uninterrupted manufacturing operations. Failure to deliver per call-offs and rejection of call-offs will cause substantial irreparable harm and have severe consequences for Volvo Cars' operations, our employees, and customers.

The amount and number of liquidated damages is the current industry standard for nonconforming delivery and delivery delays causing manufacturing interruptions. If Lear does not deliver conforming products in a timely manner, it causes a loss of production that is difficult

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

**V O L V O**

to fully measure because the loss of production must be carried through to the loss of sales of finished vehicles. While you dispute this number, it is the industry standard particularly for smaller manufacturing operations. This is particularly critical for Volvo Cars' Charleston, South Carolina location, where there is not an opportunity for redirection of employees to other lines if Lear causes delivery delays, and a delay in one shop affects all shops as they are not isolated as in larger facilities. The liquidated damages amount provided is proportionate to the damages that are probable because of delays and does not constitute a penalty. It is a probable loss caused by the breach of the Agreement's terms for timely and nonconforming delivery.

In your letter, you also asked us to reach an agreement on how tariffs should be handled. However, you should be aware that your client has unilaterally taken decisions on how to handle tariffs and has been debiting tariff-related costs to our directed Tier 2 suppliers without any authorization from us and without any contractual or legal basis for doing so. We demand that such practices cease immediately. We expect full and prompt correction and confirmation of such.

Lear's conduct and threats to stop shipments create significant concern for our production planning and operation purposes in the immediate future. Accordingly, this letter should also serve as Volvo Cars' demand for adequate assurances of Lear's continued performance in accordance with the Agreement, UCC §2-609, its state equivalent and applicable law. Under Section 2-609, a party to a contract has the right to demand adequate assurance of due performance where reasonable grounds of insecurity arise, as they have in this case. Therefore, Volvo Cars demands that, on or before 5:00 p.m. ET on Thursday, May 15, 2025, Lear provide written assurances that it will timely deliver parts to Volvo Cars in accordance with the Agreement.

Furthermore, Volvo Cars would like to remind Lear of its contractual obligation to continue to deliver in accordance with the Agreement, purchase orders, and subsequent call-offs consistent with our established practices and industry standards even if there is a disagreement about the Agreement between the parties. In accordance with Section 27.6 of the Production Material Global Terms and Conditions, Lear has the obligation to continue delivery irrespective of any dispute between the parties. Should deliveries fail to occur as scheduled, Volvo Cars will incur irreparable harm and substantial losses including the liquidated damages provided by our team. Lear's threats to reject call-offs are not in good faith and are in breach of the Agreement and prior practices.

We desire to work through the current disputes and move forward under the current Agreement. However, Volvo Cars reserves all legal and contractual rights and remedies.

Sincerely,

Katya Gill,
Sr Legal Counsel
Volvo Car USA LLC

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

# EXHIBIT #6

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840

## Jeremy E. Bowers

| | |
|---|---|
| **From:** | Wood, David <DWood02@lear.com> |
| **Sent:** | Friday, May 16, 2025 5:41 PM |
| **To:** | daniel.harvey@volvocars.com; Mccaslin, Joshua; Fowler, Doris; Harlin, Fredrik (FH; Vostry, Michal; Kaindl, Martina; Jones, Mark; Capozzi, Joseph; Dassin, Philippe; Carlander-Reuterfelt, Désirée |
| **Cc:** | Alban, Matt; Staples, Corey; Baird, Paul; Puckett, Mike; Nelson, Shaun |
| **Subject:** | RE: No Surprise Communication |

All,

As a follow up to our rejection of release communication on 5/5/2025 and the letter from our legal counsel on 5/9/2025, Lear is sending this communication to inform VCCH that beyond the below detailed sequences to meet the accepted release/call-off, transport for production material pickup will not be loaded by Lear Corporation. We would estimate based on your current demand and material coverage at VCCH you could see your first impacts to your assembly line on 5/20/2025

The last seats to be shipped from Lear Duncan are as follows:

| | |
|---|---|
| Front Seats: | Sequence 141699 |
| V536 2nd & #$^{rd}$ Row: | Sequence 141598 |
| 723 2nd Row | Sequence 141602 |

Volvo should coordinate & communicate to your labor force the production impact date to minimize your costs. **Lear does not assume any responsibility or costs attributable for plant shutdown, if any.**

Lear reserves all its rights in this matter.

**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan<br>1200 Woods Chapel Road<br>Duncan, SC 29334 |

**✪ LEAR**

**From:** Wood, David
**Sent:** Monday, May 5, 2025 5:15 PM
**To:** daniel.harvey@volvocars.com; Mccaslin, Joshua <joshua.mccaslin@volvocars.com>; Curtis, Alana <alana.curtis@volvocars.com>; Fowler, Doris <doris.fowler@volvocars.com>; Harlin, Fredrik (FH <fredrik.harlin@volvocars.com>; Vostry, Michal <michal.vostry@volvocars.com>; Kaindl, Martina <martina.kaindl@volvocars.com>; Jones, Mark <mark.jones@volvocars.com>

**Cc:** Alban, Matt <MAlban@lear.com>; Staples, Corey <CStaples@lear.com>; Baird, Paul <PBaird@lear.com>; Puckett, Mike <MPuckett@lear.com>; Nelson, Shaun <SNelson08@lear.com>
**Subject:** Release Rejection due to lack of tariff authorization.

Daniel

We have received your release on 5/5/2025 . In the absence of tariff authorization by Volvo, Lear rejects all new releases issued by Volvo Charleston including your recent release.

Please keep in mind that Volvo Charleston and Lear Duncan are on release-by-release contract and by rejection of release by Lear, there is no contract in place between the parties. Lear will not be responsible for any costs due to an impact at Volvo Charleston.

Lear reserves all of its rights in this matter.

**Dave Wood**
Plant Manager

Making every drive better™

| | |
|---|---|
| **Mobile** | 864.524.4681 |
| **Office** | 864.479.2563 |
| **Location** | Lear Corporation - Duncan<br>1200 Woods Chapel Road<br>Duncan, SC 29334 |

 *LEAR*

Legal Disclaimer

This e-mail message and any attachments may contain legally privileged, confidential or proprietary information. If you are not the intended recipient(s), or the employee or agent responsible for delivery of this message to the intended recipient(s), you are hereby notified that any dissemination, distribution or copying of this e-mail message is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this e-mail message from your computer.

**Lear Corporation**

ELECTRONICALLY FILED - 2025 May 29 3:51 PM - BERKELEY - COMMON PLEAS - CASE#2025CP0801840